## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES W. BELLON, ROBERT E.        )
EAKIN, JUDY GAY BURKE, LOUISE       )
NICHOLS, WILTON G. WALLACE,         )
BERNADOT F. VEILLON, BARBARA        )
BROWN, and ROBERT E. WILLIAMS, on   )
behalf of themselves and others similarly  )    No. 5:18-CV-114
situated,                           )
                                    )    CLASS ACTION
                    Plaintiffs,     )
                                    )
            v.                      )
                                    )
THE PPG EMPLOYEE LIFE AND           )
OTHER BENEFITS PLAN, PPG            )
INDUSTRIES, INC., and the PPG PLAN  )
ADMINISTRATOR,                      )
                                    )
                    Defendants.     )

## <u>DECLARATION OF KAREN RATHBURN</u>

I, Karen Rathburn, declare under penalty of perjury that the following is true and correct

pursuant to 28 U.S.C. § 1746:

1.     I am currently the HR Director, Global Benefits and Mobility, for PPG Industries,

Inc.  During the time period before and after the Axiall transaction, I was responsible for, among

other things, employee benefits for active and retired PPG employees.

2.     I have served as the Plan Administrator for the PPG Employee Life and Other

Benefits Plan, Plan No. 579, and its predecessor plans since 2011.

3.     I have had responsibilities at PPG for employee benefits since approximately 1998.

During that time and continuing until today, PPG's practice has been to distribute summary plan

descriptions ("SPD") to our employees and retirees as those various SPDs were updated.

1

4.     For example, as it relates to the retiree life insurance benefits at issue in this lawsuit, since 1989, SPDs were distributed in 2005 and 2011.

5.     PPG's records also show that an SPDs related to the retiree life insurance benefit at issue in this lawsuit were also issued in 1989.

6.     SPDs are also available online and can be requested from PPG's benefit service center.

7.     After the Axiall transaction was completed in January 2013, PPG and Axiall continued to discuss whether the obligations of a few retirees should have been transferred to Axiall.  Attached to this email as Exhibit O is a true and correct copy of a June 18, 2013 email I received regarding the parties' discussion on that topic.

8.     Towards the bottom of the first page of Exhibit O there is a reference to PPG's responsibility "for individuals who are not specifically listed on Exhibit B" of the Employee Matters Agreement.  The two individuals mentioned, Janice Murphy and Kristine Scharf Hester, were surviving spouses who were not eligible for any post-retirement medical or life insurance benefits.

9.     Attached to this Exhibit P is a true and correct copy of an email chain that includes emails on August 2, August 5, and August 9, 2013.  These emails all relate to the same topic discussed immediately above.

10.     In the August 9, 2013 email, PPG agreed that "participants not included on Exhibit B, including the Deferred surviving spouses...will remain the responsibility of PPG."  These are the same two surviving spouses referenced above.

11.     Attached as Summary Judgment Exhibit A is a true and correct copy of my fact deposition transcript.

2

12.     Attached as Summary Judgment Exhibit B is a true and correct copy of Exhibit 2 to my fact deposition.

13.     Attached as Summary Judgment Exhibit C is a true and correct copy of Exhibit 3 to my fact deposition.

14.     Attached as Summary Judgment Exhibit D is a true and correct copy of Exhibit 5 to my fact deposition.

15.     Attached as Summary Judgment Exhibit E is a true and correct copy of Exhibit 11 to my fact deposition.

16.     Attached as Summary Judgment Exhibit F is a true and correct copy of the transcript of my deposition as PPG's corporate representative.

17.     Attached as Summary Judgment Exhibit G is a true and correct copy of Exhibit 3 to my corporate representative deposition.

18.     Attached as Summary Judgment Exhibit H is a true and correct copy of Exhibit 4 to my corporate representative deposition.

19.     Attached as Summary Judgment Exhibit I is a true and correct copy of Exhibit 5 to my corporate representative deposition.

20.     Attached as Summary Judgment Exhibit J is a true and correct copy of PPG's 1989 Summary Plan Description, Bates stamp beginning at PP000001.

21.     Attached as Summary Judgment Exhibit K is a true and correct copy of PPG's 2005 Summary Plan Description, Bates stamp beginning at PPG000032.

22.     Attached as Summary Judgment Exhibit L is a true and correct copy of PPG's 2011 Summary Plan Description, Bates stamp beginning at PPG000144.

23.     Attached as Summary Judgment Exhibit M is a true and correct copy of a letter PPG sent to Plan participants in the summer of 2012, first announcing the merger, Bates stamp beginning at PPG000025.

24.     Attached as Summary Judgment Exhibit N is a true and correct copy of a letter PPG sent to Plan participants in January 2013, following up with more information about the merger, Bates stamp beginning at PPG002893.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2020.

By: _____
Karen Rathburn

# EXHIBIT A



# Transcript of Karen Rathburn

**Date:** August 11, 2020
**Case:** Bellon, et al. -v- The PPG Employee Life and Other Benefits Plan, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

**Page 1**

```
1        IN THE UNITED STATES DISTRICT COURT
2      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
3    ----------------------------x
4    CHARLES W. BELLON, ROBERT    : Case No.
5    E. EAKIN, JUDY GAY BURKE,    : 5:18-cv-00114
6    LOUISE NICHOLS, WILTON G.    :
7    WALLACE, BERNADOT F. VEILLON,:
8    BARBARA BROWN, and ROBERT E. :
9    (Caption continued on next page.)
10
11        Deposition of KAREN RATHBURN
12            Conducted Virtually
13          Tuesday, August 11, 2020
14               9:18 a.m. EST
15
16   Job No.: PB310128
17   Pages: 1 - 105
18   Reported by: Pamela L. Beck
19
20
21
22
23
24
```

**Page 2**

```
1    (Caption continued from previous page.)
2    ----------------------------x
3    WILLIAMS, on behalf of       :
4    themselves and others        :
5    similarly situated,          :
6            Plaintiffs,          :
7            v.                   :
8    THE PPG EMPLOYEE LIFE AND    :
9    OTHER BENEFITS PLAN, PPG     :
10   INDUSTRIES INC., and THE PPG :
11   PLAN ADMINISTRATOR,          :
12           Defendants.          :
13
14        Deposition of KAREN RATHBURN, Conducted
15   Virtually:
16
17
18
19
20        Pursuant to Notice, before Pamela L. Beck,
21   Court Reporter and Notary Public in and for the
22   Commonwealth of Pennsylvania.
23
24
```

**Page 3**

```
1           A P P E A R A N C E S
2    ON BEHALF OF PLAINTIFFS:
3        JAMES T. CARNEY, ESQUIRE
4        jtcarney10@comcast.net
5        845 Northridge Drive
6        Pittsburgh, Pennsylvania 15216
7        (412) 561-0533
8
9        MAUREEN DAVIDSON-WELLING, ESQUIRE
10       mdw@stembercohn.com
11       STEMBER COHN & DAVIDSON-WELLING, LLC
12       The Hartley Rose Building
13       425 First Avenue, 7th Floor
14       Pittsburgh, Pennsylvania 15219
15       (412) 338-1445
16
17       MICHAEL A. ADAMS, ESQUIRE
18       michael.adams@lewisbrisbois.com
19       LEWIS BRISBOIS BISGAARD & SMITH LLP
20       3054 Pennsylvania Avenue
21       Weirton, West Virginia 26062
22       (304) 491-4728
23
24
```

**Page 4**

```
1    A P P E A R A N C E S   C O N T I N U E D
2    ON BEHALF OF DEFENDANTS:
3        JOSEPH J. TORRES, ESQUIRE
4        jtorres@jenner.com
5        JENNER & BLOCK
6        353 N. Clark Street
7        Chicago, Illinois 60654-3456
8        (312) 222-9350
9
10       LINDSAY GAINER, ESQUIRE
11       LITTLER MENDELSON, P.C.
12       707 Virginia Street East
13       Suite 1010
14       Charleston, West Virginia 25301
15       (304) 599-4600
16
17   ALSO PRESENT:
18       ENRIQUE CASAS, AV Technician
19
20
21
22
23
24
```

25

1  My question was:  Does PPG have the right to change
2  these benefits for people who retired prior to
3  September 1, 1984?
4      MR. TORRES:  Same objection to the extent
5  it calls for a legal conclusion.  Go ahead and
6  answer, Karen.
7      **A      Again, PPG made a decision to grandfather**
8  **people that were retired prior to September 1st,**
9  **1984.**
10     Q      Given that PPG made that decision, did
11  PPG have the right to change their benefits?
12     **A      I'm sorry, I missed the beginning of the**
13  **question.**
14     Q      Granted that PPG make a decision to
15  grandfather these people, does PPG have the right to
16  change their benefits?
17         MR. TORRES:  Same objection to the extent
18  it calls for a legal conclusion.  Go ahead and
19  answer, Karen.
20     **A      Again, PPG made that decision to**
21  **grandfather the benefits for those groups of**
22  **employees.**
23     Q      But my question is not whether PPG made
24  the decision to grandfather the people or not.  My

26

1  question is:  As plan administrator, does PPG have
2  the right to change their benefits?
3         MR. TORRES:  Well, I'm going to object to
4  the extent it calls for a legal conclusion, and to
5  the extent it assumes facts regarding what
6  obligations that the plan administrator has.  But go
7  ahead and answer if you can.
8      **A      Again, I stick with my original answer.**
9  **We made that decision to grandfather those retirees**
10  **because they were retired at the time, and we made**
11  **that decision.  Again, I'm not a lawyer, so I can't**
12  **speak to rights or not, but we made that decision,**
13  **and we've basically stood by that.**
14     Q      But you are the plan administrator,
15  right?
16         MR. TORRES:  Object to the form of the
17  question as argumentative, and it assumes facts
18  regarding whether or not the plan administrator has
19  any obligation or rights to take any action with
20  respect to the topics that you're asking her.  But
21  go ahead and answer if you can.
22     **A      Again, it goes back to a decision that**
23  **PPG made, and we've stayed with that decision.**
24     Q      You are a plan administrator responsible

27

1  for interpreting the plan, right?
2      **A      Correct.**
3      Q      I'm asking you for your interpretation as
4  the plan administrator.
5         MR. TORRES:  No, you're asking her to
6  speculate.  You're asking her hypotheticals.  You're
7  not asking her facts, so it's an improper question.
8  And it assumes facts regarding whether the plan
9  administrator has any role in applying reservation
10  of rights clause.  But you can go ahead and answer
11  the question if you can.
12     **A      So, whether or not to change a benefit**
13  **plan, we don't always change benefit plans, and**
14  **we've made the decision over the years with respect**
15  **to certain benefits not to change them.  And that's**
16  **the decision that we've made with respect to people**
17  **who retired prior to September 1st, 1984.**
18     Q      Did PPG ever change benefits for
19  insurance coverage for pre-September 1, 1984
20  retirees?
21     **A      You know, things can have changed over**
22  **the years, and there are times when medical policies**
23  **change and medical administration changes, and**
24  **there's been some subtle changes that have happened**

28

1  **over the years.  For example, you know, when a lot**
2  **of the people retired, you know, MRIs didn't exist,**
3  **you know, certain things didn't exist.  So, you**
4  **know, things change in the plan because life goes on**
5  **with respect to medical technology and those sorts**
6  **of things.  So, yes, have there been changes to the**
7  **plans over the years?  Absolutely with respect --**
8      Q      I'm not -- excuse me.  My question was:
9  Has PPG changed the provision of the retiree life
10  insurance program for the pre-September 1, 1984
11  retirees?
12     **A      So, you're just speaking about life**
13  **insurance?**
14     Q      Yes.
15     **A      The answer is no, we have not.**
16     Q      Now, in the context of the Axiall
17  transaction, did PPG say that it could not change
18  the benefits, retiree life insurance benefits for
19  people who retired prior to September 1, 1984?
20     **A      All we could have done was describe to**
21  **them how we administer the plan.  We would never**
22  **tell them -- it wasn't our job to tell them what**
23  **they couldn't and could not do.  That's for them to**
24  **make that decision.  We would have told them how we**

Transcript of Karen Rathbun
Conducted on August 11, 2020

45

1    AV TECHNICIAN:  Got it.  Stand by.
2    (Exhibit 5 was marked for
3 identification.)
4    MR. CARNEY:  Would you scroll down that
5 document so Ms. Rathburn can read it.
6    THE WITNESS:  Okay.
7    MR. CARNEY:  There are several pages, so
8 we have to scroll down all of the pages.
9    THE WITNESS:  You can keep moving.
10   AV TECHNICIAN:  Okay, just let me know,
11 Ms. Rathburn.
12   THE WITNESS:  Okay, keep going.  Okay.
13   MR. CARNEY:  There's one more.
14   THE WITNESS:  Okay.
15 BY MR. CARNEY:
16   Q    Now, do you recognize that document?
17   **A    Yes.**
18   Q    Okay.  What is it?
19   **A    It's a communication that -- it's a draft**
20 **of a communication that would have gone to active**
21 **employees.**
22   Q    Was a letter ever sent to active
23 employees?
24   **A    Yes.**

46

1    Q    Was it one of these letters?
2    MR. TORRES:  Object to the form of the
3 question as vague.  Go ahead and answer if you can.
4    **A    There was a formal letter, it may -- I**
5 **don't know exactly if this was the exact letter that**
6 **went to active employees.**
7    Q    Now, did the active employees have a part
8 of a benefit plan of retiree life and retiree
9 medical?
10   **A    Some did, some did not.**
11   Q    What about the salaried employees from
12 commodity chemicals?
13   **A    Some did have post-retirement benefits**
14 **and some did not.**
15   Q    Do you remember what group from commodity
16 chemicals salaried employees did not have retiree
17 life and retiree medical?
18   **A    Oh, people hired after a particular date**
19 **don't have retiree medical.**
20   Q    Did you note the words in the last
21 sentence, for plan year 2014, we will harmonize
22 benefits for the new company?
23   **A    That's the Georgia Gulf -- that was**
24 **Georgia Gulf writing, not --**

47

1    Q    Did you read that letter?
2    **A    I'm reading it right now.**
3    Q    What did harmonize mean to you?
4    MR. TORRES:  Objection.  The question
5 assumes facts.  Go ahead and answer if you can.
6    **A    I don't know except to say -- I don't**
7 **know.  But I know from my own experience that**
8 **sometimes there's different carriers available.**
9 **There's different plan designs.**
10   Q    Was a similar letter sent to retirees of
11 PPG?
12   **A    I don't know.**
13   Q    Wouldn't you know if such a letter was
14 sent?
15   MR. TORRES:  Objection to the form of the
16 question as argumentative.  Are you asking her what
17 she knows today?  Does she think she saw something
18 back in 2012?  Show her the document.  Go ahead and
19 answer if you can, Karen.
20   **A    There was a communication to retirees.  I**
21 **do not recall the contents.**
22   Q    And who sent the communication?
23   MR. TORRES:  Objection to the form of the
24 question as vague.  Go ahead and answer if you can.

48

1    **A    The fulfillment house that is responsible**
2 **for sending out mail.**
3    Q    You don't know who signed the
4 communication?
5    **A    I don't recall.**
6    MR. CARNEY:  Can we pull up 6094, Bates
7 stamp 6094.
8    AV TECHNICIAN:  Counsel, I don't see that
9 number in what you sent me.  Repeat that again.
10   MR. CARNEY:  6094.
11   AV TECHNICIAN:  I don't have anything
12 under that number.
13   MR. CARNEY:  Okay.  We'll go on.
14 BY MR. CARNEY:
15   Q    Ms. Rathburn, did you have a transition
16 meeting with the Georgia Gulf representatives?
17   **A    Yes.**
18   Q    About how many did you have?
19   **A    I don't know.**
20   Q    Any idea?
21   MR. TORRES:  Objection, it's been asked
22 and answered.  Don't guess, Karen.  Just testify to
23 the best of your recollection.
24   Q    Do you have any idea?

Transcript of Karen Rathburn
Conducted on August 11, 2020

13 (49 to 52)

49

1       MR. TORRES:  Asked and answered.  Go
2  ahead and answer the question, Karen.
3     **A      Twenty-five.**
4     Q     Now, did the subject of harmonization
5  ever come up in these meetings?
6     **A      No.**
7       MR. TORRES:  Asked and answered.
8       MR. CARNEY:  She said no.
9     Q     Just double checking your answer.  You
10  said no?
11    **A      Correct, no.**
12    Q     Now, did you ever ask any Georgia Gulf
13  representative what they were going to do with the
14  benefits for recurrent retirees?
15    **A      No.**
16    Q     Did anyone at PPG instruct you not to ask
17  that question?
18    **A      No.**
19    Q     Did anyone at PPG ever tell you that
20  Georgia Gulf intended to harmonize benefits between
21  the Axiall employees and retirees and PPG employees
22  and retirees?
23      MR. TORRES:  Objection to the form of the
24  question.  It's compound as phrased.  Go ahead and

50

1  answer if you can, Karen.
2     **A      So, the letter you show showed that they
3  were going to -- they mentioned what they were going
4  to harmonize benefits, and that was an active
5  employee letter.  I don't have any insight or
6  knowledge into retirees.**
7     Q     So, no one at PPG told you anything about
8  their plans?
9       MR. TORRES:  Objection.  Go ahead and
10  answer it again.
11    **A      No.**
12    Q     Did PPG ever suggest to Axiall or Georgia
13  Gulf that it could reduce costs for a new company by
14  reducing PPG level of benefits?
15    **A      No.**
16    Q     Now, why did PPG propose to transfer the
17  OPAC liability for current retirees to Axiall?
18      MR. TORRES:  Objection, lack of
19  foundation.  Go ahead and answer if you can.
20    **A      So, when you're selling the business and
21  you're selling the entire business, and you have a
22  buyer who is willing to take on liabilities, that's
23  what this buyer was willing to do, was to take on
24  liabilities.**

51

1     Q     And that was the reason for the proposal?
2       MR. TORRES:  Objection, lack of
3  foundation.  Go ahead and answer if you can.
4     **A      I'm sorry, I did not understand the
5  question.**
6     Q     Was that the reason in your mind for the
7  proposal to transfer the retirees in the OPAC
8  liabilities?
9       MR. TORRES:  Objection, lack of
10  foundation.  Go ahead and answer if you can.
11    **A      My experience is every deal is different.**
12    Q     Well, did anybody tell you that that was
13  the reasoning for the proposal?
14      MR. TORRES:  Objection to the form of the
15  question as vague.  Go ahead and answer if you can,
16  Karen.
17    **A      So, each deal is different, and there are
18  buyers who are willing to take on liabilities, which
19  in this particular case also included
20  post-retirement benefit obligations, and they were
21  willing to take that on.**
22      MR. CARNEY:  Ms. Reporter, would you read
23  back the question.
24      (The record was read back by the

52

1  Reporter.)
2     **A      No.**
3     Q     Was the reasoning for the transfer of the
4  liability the fact that this transaction was a
5  Morris Trust, Reverse Morris Trust transaction?
6       MR. TORRES:  Objection, lack of
7  foundation.  Go ahead and answer if you can.
8     **A      Sorry, I did not understand the question.**
9     Q     Did anyone -- excuse me, I'll strike
10  that.  Was the reasoning for the transfer of the
11  liability the fact that this transaction to perform
12  a Reverse Morris Trust transaction?
13      MR. TORRES:  Same objection.
14    **A      No.**
15    Q     No?
16    **A      No.  It was a consequence of the Reverse
17  Morris Trust.**
18    Q     But was it a necessary consequence of
19  using a Reverse Morris Trust?
20      MR. TORRES:  Objection, asked and
21  answered again.  Go ahead and answer the question,
22  Karen.
23    **A      No, it was a consequence of a Reverse
24  Morris Trust.**

Transcript of Karen Rathbun

Conducted on August 11, 2020

61

1  to be asking about an answer that was subsequently
2  amended.  But go ahead and answer if you can, Karen.
3      **A    I don't know the answer to that.**
4      Q    You don't know whether you made any
5  effort to check the accuracy or not?
6          MR. TORRES:  Of the question?  I'll
7  object to the form of the question as vague.
8      Q    You may answer.
9          MR. TORRES:  Can you answer the question
10 as phrased, Karen?
11         THE WITNESS:  I cannot.
12         MR. TORRES:  Let's go off the record for
13 a minute.
14         (There was a recess in the proceedings
15 from 11:40 a.m. to 11:51 a.m.)
16         MR. CARNEY:  Back on the record.
17 BY MR. CARNEY:
18     Q    Ms. Rathburn, you testified before that
19 there was a transition period when you were working
20 with the Axiall people to transitioning benefits
21 over to them.
22         Do you recall testifying to that?
23         MR. CARNEY:  I missed -- Pam, can you
24 read the question back.  I missed the first part.

62

1          (The record was read back by the
2  Reporter.)
3      **A    Yes.**
4      Q    When was that transition period?  When
5  did it start and when did it end?
6      **A    It started on the day of closing, and it**
7  **ended I believe on July 1st of that same year.**
8      Q    2013?
9      **A    Yes.**
10     Q    After that, did you have any expectation
11 as to whether or not Axiall would continue to
12 provide indefinitely PPG retiree life and retiree
13 medical?
14         MR. TORRES:  Objection to the extent it
15 calls for speculation.  Go ahead and answer if you
16 can.
17     **A    No.**
18     Q    You had no expectation?
19     **A    I didn't -- no, I had no thought about**
20 **it.**
21     Q    Now, you've testified that the transfer
22 of the retirees was the consequence of the
23 transaction, right?
24     **A    Yes.**

63

1      Q    Did anybody ever give you any reasoning,
2  other than that, for the transfer of retirees?
3          MR. TORRES:  Objection, it's vague as to
4  time, and it's also generally vague.  But go ahead
5  and answer if you can.
6      Q    At the time that the Axiall transaction
7  was taking place in 2012 and 2013, did anyone ever
8  give you an explanation for any reason for the
9  transfer other than what you've put down and
10 testified in Answers to Interrogatories?
11     **A    No.**
12     Q    After that time, has anyone ever given
13 you any other reason for the transfer of retirees
14 and OPAC liability?
15     **A    No.**
16     Q    Now, have you ever been involved in any
17 other sale of PPG units both before or after the
18 actual transaction?
19         MR. TORRES:  Did you say PPG units?
20     Q    Yeah, units of PPG, such as commodity
21 chemicals?
22     **A    Yes.**
23     Q    What transactions have you been involved
24 in?

64

1      **A    I've been involved in a variety of sales**
2  **of businesses and acquisitions of businesses for**
3  **PPG.**
4      Q    In the sales of businesses, what units
5  were involved in the sales?
6      **A    Fiberglass, automotive glass and flat**
7  **glass.**
8      Q    When were these transactions
9  accomplished?
10     **A    They ranged from 2008 to 2016.**
11     Q    Did PPG transfer retirees and OPAC
12 liability for current retirees from these units?
13     **A    No.**
14     Q    Did PPG make any proposal to transfer
15 retirees from these units in these negotiations?
16         MR. TORRES:  Objection, lack of
17 foundation, but go ahead and answer if you can.
18     **A    I don't know.**
19     Q    Did PPG have the financial wherewithal to
20 pay for the OPAC liabilities that were transferred
21 to Axiall?
22         MR. TORRES:  Object to the form of the
23 question.  Go ahead and answer if you can.
24     **A    Yes.**

Transcript of Karen Rathburn
Conducted on August 11, 2020

---

65

1    Q      Would there have been any practical
2  problem for PPG to continue the benefits for the PPG
3  retiree who were transferred to Axiall?
4          MR. TORRES:  Object to the form of the
5  question, also lack of foundation.  Go ahead and
6  answer if you can.
7    A      No.
8    Q      By transferring the OPAC liability to
9  Axiall, was PPG able to take the value of these
10 liabilities off its books?
11         MR. TORRES:  Object to the form of the
12 question.  Go ahead and answer if you can.
13   A      Yes.
14   Q      What was the value of the OPAC liability
15 when PPG transferred to Axiall?
16         MR. TORRES:  Objection, it's vague as to
17 time.  But go ahead and answer if you can.
18   A      I don't recall the specific number.
19   Q      Would 190 million sound right?
20   A      I don't recall the specific number.
21   Q      Now, how did PPG determine -- strike
22 that.
23         Did PPG determine at the time of the sale
24 the value of the liability that it was transferring?

66

1    A      Did PPG value it?
2    Q      Yes.
3    A      No.
4    Q      Did PPG have someone value it?
5    A      Yes.
6    Q      Who?
7    A      Our actuary.
8    Q      Mercer?
9    A      Yes.
10   Q      Now, do you know in a general sense how
11 Mercer valued the liabilities?
12   A      Yes.
13   Q      Would you describe in a general sense how
14 Mercer would determine the liabilities or value the
15 liabilities.
16   A      They look at the census information, they
17 look at the -- they are required to look at a
18 particular life expectancy table.  They look at the
19 value, and they have some very complicated
20 accounting to then come up with the valuation of it.
21   Q      Is a key number or factor in the
22 valuation the discount rate?
23         MR. TORRES:  Is a key factor?
24         MR. CARNEY:  Key factor.

67

1          MR. TORRES:  Object to the form of the
2  question, assumes facts.  Go ahead and answer if you
3  can.
4    A      I don't know exactly.
5    Q      Do you know generally, not exactly?
6          MR. TORRES:  Same objection.  Go ahead
7  and answer if you can.
8    A      I don't know with respect to retiree
9  life.  With respect to pension, yes.
10   Q      What about retiree medical?
11         MR. TORRES:  Objection, just a general
12 objection.  There's no issue in this lawsuit about
13 retiree medical, but you keep asking about it.  So,
14 I'm going to object to the extent it's not relevant
15 to the issues in the lawsuit.  But go ahead and
16 answer if you can.
17   A      I don't know.  We have actuaries who do
18 that work.  It's not my area of expertise.
19   Q      Did you find out at some point in time
20 that Axiall had terminated retiree life for the PPG
21 retirees?
22         MR. TORRES:  Asked and answered.  You can
23 go ahead and answer it again.
24   A      Yes.

68

1    Q      When was that?
2          MR. TORRES:  When did she learn or when
3  did they terminate them?
4    Q      When did you learn?
5          MR. TORRES:  Asked and answered also, but
6  go ahead and answer again.
7    A      I learned after Axiall had made the
8  decision to terminate the benefits, and they
9  notified participants, we heard from participants.
10         MR. CARNEY:  Could we pull up document
11 151.
12         (Exhibit 8 was marked for
13 identification.)
14   Q      Ms. Rathburn, these are a series of
15 emails.  Would you have the technician scroll
16 through those so you can read them.
17         THE WITNESS:  Okay.  Okay.  Okay.
18         MR. TORRES:  Can you go back up to the
19 first one, please.  Scroll back down to the second
20 one, please.  Give me one second before you ask your
21 question.
22         MR. CARNEY:  I haven't asked a question
23 yet.
24         MR. TORRES:  Just hold on a second here.

Transcript of Karen Rathburn
Conducted on August 11, 2020

69

1        MR. CARNEY:  Are you ready?
2        MR. TORRES:  No, I'm not.  I'll tell you
3 when I am.
4        MR. CARNEY:  Okay.
5        MR. TORRES:  One more second.  Sorry.
6 All right, go on.
7 BY MR. CARNEY:
8    Q    Now, do you recognize any of these
9 emails?
10   **A    Yes.**
11   Q    What are they?
12   **A    They're an email from Michael McGarry to**
13 **me because he wanted to talk to me.**
14   Q    And what did you talk about?
15   **A    I don't have the specifics on that**
16 **meeting.  I meet with him frequently.**
17   Q    Would you have talked about the fact that
18 Axiall had terminated the retiree benefits and
19 retiree life benefits?
20   **A    I don't recall specifically.**
21   Q    Do you recall asking for the number of
22 people who had SIB who were retirees transferred to
23 Axiall?
24   **A    I don't understand the question.**

70

1    Q    Do you recall asking at this time for the
2 number of retirees who had transferred to Axiall and
3 who had elected SIB?
4    **A    This is the general time frame when I**
5 **believe that they canceled coverage, and we would**
6 **have heard from retirees, so yes.**
7    Q    Do you remember what you and Mr. McGarry
8 said in this meeting?
9        MR. TORRES:  Asked and answered.  Go
10 ahead and answer it again.
11   **A    I don't recall the specifics of this**
12 **particular meeting.**
13   Q    Okay.  Now, did you take any action --
14       MR. CARNEY:  Excuse me, you can take away
15 the exhibit.
16   Q    Now, did you take any action to remove
17 commodity chemicals retiree from the PPG welfare
18 plan applicable to them?
19       MR. TORRES:  Pam, can you read that back.
20 I missed about half of it.
21       (The record was read back by the
22 Reporter.)
23       MR. TORRES:  Vague as to time.  Go ahead
24 and answer if again.

71

1    A    So, we -- you know, as part of the
2 transaction, Axiall acquired the liabilities, which
3 included post-retirement liabilities, which then we
4 transferred retirees to Axiall.
5    Q    Did you transfer them to Axiall, or did
6 you transfer them to anybody else besides Axiall?
7        MR. TORRES:  Object to the form of the
8 question as vague.  Go ahead and answer if you can.
9 I would also object to the extent it calls for a
10 legal conclusion.  Sorry, go ahead.
11   A    I don't know which entity that they were
12 transferred to, but Axiall took them on.
13   Q    What action did you take to transfer
14 them?
15   A    So, we did transition of benefits for a
16 period of time, and then at some point Axiall took
17 them on.  So, we would have sent their information
18 to Axiall for them to ensure that it was on their
19 system.
20   Q    Did you remove them from the PPG plan?
21   A    Well, once the transition of services
22 benefit was over, then we would have termed their
23 coverage in our plan because they were going over to
24 Axiall.

72

1    Q    How did you term the coverage in your
2 plan under the PPG plan?
3    A    Well, actually, just to clarify, once the
4 transaction closed, even though we were doing a
5 transition of benefits, we had removed them
6 from PPG's coverage and would have put them into
7 their separate group to do the transition.  And then
8 once the transition happened at the end when Axiall
9 had taken them on to their own systems, then we
10 would have developed a services agreement at that
11 point.
12   Q    What steps did you take to remove them
13 from the PPG plan?
14   A    The normal terminations process that we
15 do for everybody who terminates coverage.
16   Q    What is that process?
17   A    Go into the system, and as of a
18 particular date, you know, their coverage would be
19 terminated.  And then that information then makes
20 its way to the carrier.
21   Q    You terminated each one individually and
22 sent that information to the carriers?
23   A    That's right.
24   Q    What authority did you have to take such

73

1  action?
2      MR. TORRES:  Objection to the extent it
3  calls for a legal conclusion.  And when you're
4  saying you, are you asking her individually, or are
5  you asking her -- I think you need to clarify that.
6      MR. CARNEY:  Well, in this deposition,
7  I'm asking her as an individual.  Maureen will be
8  asking her questions about PPG's position.
9      MR. TORRES:  That doesn't answer my
10 objection, because you've been asking about stuff
11 that PPG did, you've been asking about stuff that
12 she did.  I'm simply asking you whether when you're
13 asking her this question, when you say you, are you
14 saying PPG or her individually?  That's the --
15 BY MR. CARNEY:
16     Q    What did you do individual?
17     **A    What did I do individually?  Could you**
18 **repeat the question, please.**
19     Q    Yes.
20     **A    I'm sorry, could you repeat the question,**
21 **please.**
22     Q    What action did you take as an individual
23 to remove these people from the PPG plan?
24     MR. TORRES:  That's been asked and

74

1  answered.  Go ahead and answer it again.
2      **A    I personally took no action.**
3      Q    What action did PPG take?
4      MR. TORRES:  Asked and answered.  Go
5  ahead and answer it again, Karen.
6      **A    So, the team would have gone through the**
7  **process of taking the coverage and terminating it in**
8  **our system and sending the information to Axiall,**
9  **and then making sure that our carriers were notified**
10 **that the coverage had been terminated under PPG.**
11     Q    Now, did PPG arrange for these retirees
12 to be transferred to a different PPG entity?
13     MR. TORRES:  Objection to the extent it
14 calls for a legal conclusion.  It's also vague as to
15 time.  Go ahead and answer if you can.
16     **A    No.**
17     Q    Is that a no?
18     **A    Correct.**
19     Q    Now, was your action in removing the
20 people from the -- was PPG's action -- strike that.
21         Now, you said you took no individual
22 action to remove these people from the PPG plan,
23 correct?
24     **A    Correct, me personally, I did not.**

75

1      Q    Okay.  Now, did you order somebody in
2  your group to do it?
3      **A    Yes, as part of our actions, we would**
4  **have had people in the team take the action to**
5  **terminate the coverage.**
6      Q    Were you acting in a fiduciary capacity
7  when you gave instruction to the group to go ahead
8  and remove these people?
9      MR. TORRES:  Objection, it calls for a
10 legal conclusion.  Go ahead and answer.
11     **A    No.**
12     Q    Pardon me, I didn't hear your answer.
13     MR. TORRES:  She said no three times.
14     **A    No.**
15     Q    Were you changing the eligibility role
16 for the plan?
17     **A    No.**
18     Q    Were you keeping the eligibility role
19 part of your function as the plan administrator?
20     **A    The role didn't change.**
21     Q    Isn't that a function of your duties as
22 plan administrator?
23     MR. TORRES:  Objection, it's
24 argumentative, asked and answered.  Go ahead and

76

1  answer it again.
2      **A    No, that's not a plan administrator duty,**
3  **because the eligibility role did not change.**
4      Q    Now, did anyone else besides your group
5  take any action to remove the commodity chemicals
6  retirees from the PPG plan?
7      MR. TORRES:  Objection, lack of
8  foundation.  Go ahead and answer if you can.
9      **A    No.**
10     Q    Now, what in the plan permitted such an
11 action?
12     MR. TORRES:  Objection, the question
13 assumes facts, it also calls for a legal conclusion.
14 Go ahead and answer if you can.
15     **A    Nothing in the plan prohibited the**
16 **transfer of retirees.**
17     Q    Did anything in the plan permit it?
18     MR. TORRES:  Asked and answered.  Go
19 ahead and answer it again.
20     **A    Nothing in the plan prohibited the**
21 **transfer of the retirees.**
22     Q    But my question was, did anything permit
23 it?
24     MR. TORRES:  Objection, asked and

# EXHIBIT B

**From:** Microsoft Exchange on behalf of McGarry, Michael H. [mcgarry@ppg.com]
**Sent:** Monday, May 14, 2012 9:37 PM
**To:** thompsong@ggc.com; Joseph Breunig; JAMES WORRELL
**Subject:** Benefits
**Attachments:** Benefits (58.2 KB)

Sender: mcgarry@ppg.com
Subject: Benefits
Message-Id: <7F79321A2D84C1468D9103C7F931D95A0B7D012A6B@SDRSMSXMBX03.nac.ppg.com>
To: thompsong@ggc.com
To: breunig@ggc.com
To: WORRELLJ@ggc.com



Exhibit

Rathburn 2

EC 8-11-20

**From:** McGarry, Michael H.
**Sent:** Monday, May 14, 2012 9:37 PM
**To:** thompsong@ggc.com; Joseph Breunig; JAMES WORRELL
**Subject:** Benefits
**Attachments:** 2012 Scarlet Retiree Benefits Information.docx; 2012 Scarlet Salaried Benefits Information.docx

James – attached you will find a matrix of PPG benefits. Pls fill in the column labeled Grizzly benefits and also provide a summary of the Grizzly benefit overview for your retirees.  We can discuss this in more depth tomorrow- thanks- Michael

CONFIDENTIALITY NOTICE
This email (including any attachments) is intended for the sole use of the intended recipient/s and may contain confidential information, which also may be legally privileged. Any reliance upon, access to, review, disclosure, copying, forwarding or other distribution of any or all of the contents in this message by others who are not the intended recipients is STRICTLY PROHIBITED. If you are not the intended recipient, please delete the message and all copies and confirm to the sender by email. Your cooperation is appreciated.

## 2012 Benefits Overview
## PPG Retired Employees

| Benefit | Salaried | Lake Charles Union | Natrium Union |
|---|---|---|---|
| **Pre-Reservation and Post-Reservation Dates** | Employees who retired prior to 9/1/1984 are considered to be 'pre-reservation' retirees, which means that the Company has made very few changes to the retiree health care plan and monthly contributions of these retirees.<br><br>Employees who retired on or after 9/1/84 are considered to be 'post-reservation' retirees and PPG has reserved the right to amend, modify or terminate retiree health care coverage. Since 2001, the Company has made annual changes to the health care and prescription drug plan designs and/or changes to monthly contributions for this group of retirees. | Employees who retired prior to 5/15/1987 are considered to be 'pre-reservation' retirees, which means that the Company has made very few changes to the retiree health care plan, prescription drug plan and monthly contributions of these retirees.<br><br>Employees who retired on or after 5/15/87 are considered to be 'post-reservation' retirees and PPG has reserved the right to amend, modify or terminate health care coverage. Health care plans and monthly contributions for union retirees are identical to the plans and contributions of salaried retirees. Since 2001, the Company has made annual changes to the health care and prescription drug plan designs and/or changes to monthly contributions for this group of retirees.<br><br>Please note that if an employee retires and the contact under which he/she retired has not yet expired, then that person is considered to be a 'current contract' retiree and his/her retiree health care coverage remains tied to the active plan until the contract (under which they retired) expires. | Employees who retired prior to 3/1/1987 are considered to be 'pre-reservation' retirees, which means that the Company has made very few changes to the retiree health care plan, prescription drug plan and monthly contributions of these retirees.<br><br>Employees who retired on or after 3/1/87 are 'post-reservation' retirees and PPG has reserved the right to amend, modify or terminate health care coverage. Health care plans and monthly contributions for union retirees are identical to the plans and contributions of salaried retirees. Since 2001, the Company has made annual changes to the health care and prescription drug plan designs and/or changes to monthly contributions for this group of retirees.<br><br>Please note that if an employee retires and the contact under which he/she retired has not yet expired, then that person is considered to be a 'current contract' retiree and his/her retiree health care coverage remains tied to the active plan until the contract (under which they retired) expires. |

1

Confidential Information

PPG009152

**2012 Benefits Overview**
**PPG Retired Employees**

| Benefit | Salaried | Lake Charles Union | Natrium Union |
|---------|----------|--------------------|--------------| 
| **Post-Reservation: Pre-Medicare Retirees** | Enroll in PPO and Prescription Drug Plan Sponsored by PPG *OR*<br><br>Enroll in a plan not sponsored by PPG and receive a monthly reimbursement of up to $359 per month per participant (less a $10 per participant per month administrative contribution), up to a maximum of two reimbursements<br><br>**PPG Sponsored Plan Overview:**<br>• $400 in-network annual deductible/$800 Out-of-network annual deductible<br>• $1,250 annual in-network out-of-pocket maximum/$2,500 annual out-of-network out-of-pocket maximum<br>• $30 office visit co-pay<br>• 80% coverage for most other in-network services/60% out-of-network<br>• Prescription Drugs:<br>   $150 per participant annual prescription drug plan deductible Retail: 30% co-insurance for generic and preferred brand name prescription drugs, 50% co-insurance for non-preferred brand name drugs, 35% co-insurance biotech - $1,200 out-of-pocket maximum, mandatory generic. Mail (up to a 90 day supply): $20 co-payment for generic prescriptions, $70 co-payment for preferred brand name prescriptions and $90 for non-preferred brand name prescriptions.<br>• Monthly Contribution **$162 per participant, maximum two** | Once the contract under which employee retires expires, then Lake Charles retirees have the same plan options and retiree contributions as salaried post-reservation pre-Medicare retirees, as described in the first column. | Once the contract under which employee retires expires, then Natrium retirees have the same plan options and retiree contributions as salaried post-reservation pre-Medicare retirees, as described in the first column. |

2

PPG009153

## 2012 Benefits Overview
## PPG Retired Employees

| | contributions | | |
|---|---|---|---|
| **Benefit** | **Salaried** | **Lake Charles Union** | **Natrium Union** |
| **Post-Reservation: Medicare Eligible Retirees** | Enroll in Medicare Advantage PPO (FreedomBlue) and/or Prescription Drug (Caremark) Plan Sponsored by PPG *OR* Enroll in a plan not sponsored by PPG and receive a monthly reimbursement of up to $100 per month per participant, up to a maximum of two reimbursements, with supporting documentation.<br><br>**PPG Sponsored Plan Overview:**<br>• $175 in-network annual deductible/$250 Out-of-network annual deductible<br>• $1,150 annual in-network out-of-pocket maximum/$2,100 annual out-of-network out-of-pocket maximum<br>• $20 office visit PCP and $30 specialist co-pay<br>• 90% coverage for most other in-network services/80% out-of-network<br>• Prescription Drugs:<br> $150 per participant annual prescription drug plan deductible<br> Retail: 20% co-insurance for generic and preferred brand name prescription drugs, 40% co-insurance for non-preferred brand name drugs, 35% co-insurance biotech - $1,500 out-of-pocket maximum, mandatory generic.<br> Mail (up to a 90 day supply): $20 co-payment for generic prescriptions, $45 co-payment for preferred brand name prescriptions, $70 for non-preferred brand name and $100 for biotech prescriptions.<br>• Monthly Contributions:<br> ✓ **FreedomBlue and Caremark: $131 per participant, maximum two contributions**<br> ✓ **FreedomBlue Only: $63**<br> ✓ **Caremark Only: $68**<br> ✓ **Non-Sponsored:$5** | Once the contract under which employee retires expires, then Lake Charles retirees have the same plan options and retiree contributions as salaried post-reservation Medicare-eligible retirees, as described in the first column. | Once the contract under which employee retires expires, then Natrium retirees have the same plan options and retiree contributions as salaried post-reservation Medicare-eligible retirees, as described in the first column. |

3

**2012 Benefits Overview**
**PPG Retired Employees**

| Benefit | Salaried | Lake Charles Union | Natrium Union |
|---|---|---|---|
| Litigation | None | In 2001, when PPG announced changes to retiree health plans for current and future retirees, a group of unions, including the unions representing employees at Lake Charles and Natrium, filed a suit in federal court in Pittsburgh (the "Pennsylvania case") seeking to compel arbitration of the retirees' claim that the retiree health benefits were vested lifetime benefits. The district court dismissed the suit, holding that the benefits in question were not vested.  The Third Circuit affirmed. <br>In 2005, while the Pennsylvania case was pending, a putative class consisting of PPG retirees who had been represented by five different unions, including the unions that had filed the Pennsylvania case, filed a class action in Ohio again alleging that PPG could not change the Plaintiffs' retiree health benefits because they were vested lifetime benefits.  The district court dismissed the action with respect only to those retirees who had been represented by the unions involved in the Pennsylvania case, holding that they were bound by the findings in that case.  The Plaintiffs appealed to the Sixth Circuit which recently held oral argument.  A decision is expected in Summer 2012. | Same as Lake Charles column |

4

## 2012 Benefits Overview
## PPG Retired Employees

| Benefit | Salaried | Lake Charles Union | Natrium Union |
|---|---|---|---|
| **Pre-Reservation Retiree Plans** | **Retirees prior to 1/1/1984:** $100/$200 deductible Co-insurance varies – 80% - 100% Stop Loss – When covered charges exceed $7,000 individual, then 100% for remainder of year and the following calendar year. **Retirees between 1/1/1984 – 9/1/1984:** $100/$200 deductible Co-insurance varies – 80% - 100% Stop Loss – When covered charges exceed $7,000 individual or $12,500 family, then 100% for remainder of year. | **Lake Charles Over age 65 and retired between 5/84 – 5/87 (0052):** Basic/Major Medical Plan Major Medical Deductible: $150/$450, co-insurance varies by service – 50% - 90% Base: 100% co-insurance<br><br>**Lake Charles Under age 65 and retired Prior to 5/84 (0054):** Basic/Major Medical Plan Major Medical Deductible: $100/$300, 80% co-insurance Base: 100% co-insurance<br><br>**Lake Charles Over age 65 and retired Prior to 5/84 (0057):** Basic/Major Medical Plan Major Medical Deductible: $100/$300, 80% co-insurance Base: 100% co-insurance | Natrium Over 65 and retired prior to 3/87 Basic/Major Medical Plan Major Medical Deductible: $100/$300, 80% co-insurance Base: 100% co-insurance |
| **Retiree Life Insurance** | Varies | Varies | Varies |

5

PPG009156

A-22

## 2012 Benefits Comparison
## PPG Active Employee Salaried Benefit Plans

| Benefit | PPG Salaried | Grizzly |
|---|---|---|
| **PPO Health Care Plan** | • $500/$1,000 in-network deductible<br>• $2,500/$5,000 annual Out-of-pocket maximum<br>• $20 PCP and $30 specialist co-pay per visit<br>• 80% coverage for most other in-network services/60% out-of-network<br>• Prescription Drugs:<br>Retail: 30% co-insurance for generic and preferred brand name prescription drugs and 50% co-insurance for non-preferred brand name drugs, $1,000 out-of-pocket maximum, mandatory generic.<br>Mail (up to a 90 day supply): $20 co-payment for generic prescriptions, $70 co-payment for preferred brand name prescriptions and $90 for non-preferred brand name prescriptions.<br>• Examples of Monthly Contribution (other contributions may apply depending upon level of coverage selected:  Tobacco –Free Employee/Employee Plus Spouse/Employee Plus Spouse and 3 or more children **$121/$284/$428** | |
| **HMO Plan (available to some employees, based upon zip code)** | • $20 co-payment for PCP and $30 for Specialist<br>• Hospital In-patient Co-payment of $250<br>• Most other services covered at 100%.<br>• Prescription Drugs<br>✓ Retail (up to 30 days): $15 co-payment for generic prescriptions and $30 co-payment for preferred and $45 for non-preferred brand name prescriptions when a generic is not available. Mandatory generic substitution required.<br>✓ Mail Order (up to 90 days): $30 co-payment for generic prescriptions and $60 co-payment for preferred and $90 co-payment for non-preferred brand name prescriptions when a generic is not available. Mandatory generic substitution required. | |

1

## 2012 Benefits Comparison
## PPG Active Employee Salaried Benefit Plans

| Benefit | PPG Salaried | Grizzly |
|---------|--------------|---------|
| **Aetna Health Fund (Consumer Directed Health Plan)** | **Aetna Health Fund 90:**<br>• HealthFund: $500/$1,000 (maximum 3 times HealthFund)<br>• Deductible: $1,000/$2,000<br>• In-Network Co-Insurance: 90%/10%<br>• Out-of-Pocket Maximum: $3,200/$6,400<br>• Prescription Drug: 30%/30%/50% Retail and $20/$70/$90 Mail Order<br>• Examples of Monthly Contribution (other contributions may apply depending upon level of coverage selected: Tobacco –Free Employee/Employee Plus Spouse/Employee Plus Spouse and 3 or more children: **$91/$214/$322**<br><br>**Aetna Health Fund 80:**<br>• HealthFund: $300/$600 (maximum 3 times HealthFund)<br>• Deductible: $2,000/$4,000<br>• In-Network Co-Insurance: 80%/20%<br>• Out-of-Pocket Maximum: $4,000/$8,000<br>• Prescription Drug: 30%/30%/50% Retail and $20/$70/$90 Mail Order<br>• Examples of Monthly Contribution (other contributions may apply depending upon level of coverage selected: Tobacco –Free Employee/Employee Plus Spouse/Employee Plus Spouse and 3 or more children **$76/$179/$269** | |
| **Dental Plan** | • $75/$150 Annual Deductible<br>• Annual Plan Maximum - $1,500<br>• Orthodontia Lifetime Maximum  - $1,500<br>• Examples of Monthly Contribution (other contributions may apply depending upon level of coverage selected: Tobacco –Free Employee/Employee Plus Spouse/Employee Plus Spouse and 3 or more children **$12/$28/$43** | |
| **Enrollment** | Employee is eligible immediately for coverage – 31 days to elect coverage; same sex domestic partner coverage available | |

2

PPG009158

**2012 Benefits Comparison**
**PPG Active Employee Salaried Benefit Plans**

| Benefit | PPG Salaried | Grizzly |
|---------|--------------|---------|
| Life Insurance | One times salary, up to $50,000 | |
| Group Universal Life Coverage | Voluntary Employee Program<br><br>1-5 times annual base pay, up to a maximum of $4,000,000. Coverage also available to spouse (maximum of $100,000) and dependents (maximum of $10,000 per dependent).<br><br>Cost of coverage dependent upon age, level of coverage and smoker status. | |
| Employee Assistance Program | Plan provided at no cost to employee; up to 8 sessions for participants for counseling and other services | |
| Accidental Death & Dismemberment (AD&D) Coverage | One times salary, up to $50,000 | |
| Voluntary AD&D Coverage | Coverage up to 10 times base pay, up to a maximum of $400,000.<br><br>Cost of coverage: $0.23 per $10,000 of coverage and $0.30 per $10,000 for family coverage. | |
| Designer Full Voluntary and Affinity Discount Vision Plans | Employees can enroll in the Designer Full voluntary vision plan which includes eye exams, contacts, glasses, etc. Cost of coverage: $8.76/$15.76/$24.53<br><br>No cost (to employee) discount vision plan provided to those who do not elect voluntary plan coverage | |
| Other Voluntary Plans | PPG offers several voluntary plans including: legal plan, Auto/Home, pet insurance, etc. | |
| Flexible Spending Account (also known as the Benefit Account) | Employees can contribute pre-tax dollars as follows:<br>Health Care: Up to $5,000 annual<br>Dependent Care: Up to $5,000 annually | |

3

## 2012 Benefits Comparison
## PPG Active Employee Salaried Benefit Plans

| Benefit | PPG Salaried | Grizzly |
|---------|-------------|---------|
| **Short Term Disability** | Provided by the Company<br><br>Salary – paid at 100% or 50% depending upon service, up to 180 days | |
| **Long Term Disability** | Provided at no cost to the employee.<br>50% of base pay at the time that the disability commenced. (Employees can also purchase supplemental long term disability coverage equal to 15% of base pay. Cost of the coverage is dependent upon age and amount of coverage). | |
| **Education Assistance** | PPG covers 90% of the total cost of tuition, registration, etc. | |
| **Death Benefit** | Based on years of service, a benefit of either one-half or a full month's base salary paid as a lump sum to surviving spouse or other survivors. | |
| **Vacation** | During the first calendar year of employment, if hired before July 2, employees are entitled to one week of vacation after four months of service.  Employees hired on or after July 2 are entitled to 2 weeks of vacation after 6 months of service.<br><br>After first calendar year:<br><table><tr><th>Continuous Service</th><th>Weeks of Vacation</th></tr><tr><td>1 – 4 years</td><td>2 weeks</td></tr><tr><td>5 – 11 years</td><td>3 weeks</td></tr><tr><td>12 - 19 years</td><td>4 weeks</td></tr><tr><td>20 or more years</td><td>5 weeks</td></tr></table> | |
| **Business Travel Accident (no cost to employee)** | Provided if the employee dies while traveling on PPG business.<br><br>Benefit of 4 times the employee's base salary, up to $400,000 | |
| **Seat Belt Coverage (no cost to employee)** | $10,000 lump-sum benefit in the event that the employee or any dependent covered under the medical plan dies in an automobile accident while wearing a properly fastened seatbelt. | |

4

## 2012 Benefits Comparison
## PPG Active Employee Salaried Benefit Plans

| Benefit | PPG Salaried | Grizzly |
|---------|--------------|---------|
| **Adoption Assistance** | Up to $2,000 for eligible expenses | |
| **Commuter Benefit** | Eligible expenses incurred to and/or from their job at PPG can be reimbursed on a pre-tax basis. Maximums Apply. | |
| **Retirement Plan (Defined Benefit and Defined Contribution Plans)** | Employees hired prior to 1/1/06 and who had 60 or more points (combination of age and service) as of December 31, 2011 participate in a defined benefit plan. Employees hired prior to 1/1/06 and who had fewer than 60 points (age and service) as of December 31, 2011 or who were hired on or after 1/1/06 participate in a Defined Contribution Retirement Plan. DC Plan design: PPG contributes between 2% and 5% of base salary based on age and service, with three year vesting. | |
| **Retiree Health Care Coverage and Retiree Life Insurance** | Employees hired prior to 10/1/04 are eligible for retiree health care if they meet the eligibility requirements. Employees hired on or after 10/1/04 are not eligible for retiree health care coverage. Retiree life insurance equals ½ of annual salary in force prior to retirement, up to $50,000. | |

5

## 2012 Benefits Comparison
## PPG Active Employee Salaried Benefit Plans

| Benefit | PPG Salaried | Grizzly |
|---------|--------------|---------|
| **Savings Plan** | The employee can elect to contribute from 1% to 50% of eligible Plan compensation, subject to certain Plan and legal limitations.  Payroll-deducted contributions can be made on a before-tax, after-tax, Roth 401(k) or on a combined basis. Catch-up contributions are permitted for eligible employees who are at least age 50 in the current year.  All employee contributions are immediately 100% vested.<br><br>Although participation in the Employee Savings Plan is voluntary, new employees are subject to automatic enrollment at a 4% before-tax contribution rate. The employee has the ability to change the rate or opt out of contributing altogether, if desired. In addition, there is an automatic rate escalation feature (in at 4% before-tax and then increased by 2% until it reaches 10%).<br><br>There are 9 investment funds available, including the PPG Stock Fund.  In addition, 9 targeted retirement funds are available based on the employee's projected retirement date. Fund transfers are permitted each day the New York Stock Exchange is open.<br><br>Employees can borrow up to 50% of their vested account balance by paying a $75 processing fee.  Repayments are payroll-deducted.<br><br>In 2012, PPG's matching contribution is: $0.75 for every $1 contributed by the employee, up to a maximum of 6%. | |

6

# EXHIBIT C

**From:** Microsoft Exchange on behalf of Roe, Howard [roe@ppg.com]
**Sent:** Wednesday, March 28, 2012 7:54 AM
**To:** Davies, Jeffrey C
**Subject:** FW: Project Scarlet - OPEB/Pension
**Attachments:** Pension (14.5 KB)

Sender: roe@ppg.com
Subject: FW: Project Scarlet - OPEB/Pension
Message-Id: <6FC04F59A320D84D838D0FAD8887D56902BC4A902D@SGOFMSXMBX05.nac.ppg.com>
To: jdavies@ppg.com



**From:** Roe, Howard
**Sent:** Wednesday, March 28, 2012 7:54 AM
**To:** Davies, Jeffrey C
**Subject:** FW: Project Scarlet - OPEB/Pension

Jeff,
Please see Karen's status report on OPEB/Pension.  Before getting back to her, we should discuss how much effort should we place on this prior to getting a good feel for the scope of the deal.  Apparently she does not have in her work plan the issue of dealing with the separation of active employees.  We may be able to do that strictly through a payroll sort but I will follow-up with Bill Schaupp this morning.
Howard

---

**From:** Rathburn, Karen
**Sent:** Wednesday, March 28, 2012 8:44 AM
**To:** Roe, Howard
**Cc:** Schaupp, William
**Subject:** RE: Project Scarlet - OPEB/Pension

Howard,
As a follow-up to my email yesterday – at our meeting last week, Bill had indicated that I only needed to obtain Monroeville, G.O. and Lake Charles for retirees, surviving spouses and terminated vested employees.
I received the information from Mercer – but, much of it is scant – for example, there are no names associated with any surviving spouses.
I don't really have any idea how long it will take – but, given that there are approximately 2,300 names to go though and *individually* research – I am estimating that it could take 6 weeks to 8 weeks complete (and I really don't have any idea if that is even close to being correct). Frankly, I do not know if this if this task is really even possible on an individual basis as I do not yet know if we will be able to ascertain if the person, upon termination from PPG, had been in this specific SBU. There are lots of unknowns.
My real question for you is: Is it realistic to think that Grizzly is really going to absorb these non-active people? It would be my observation that if this is less than a 75% - 85% chance – then, we may want to wait to commence this work – after all – you can present the 'general numbers' to them so they have a feel for the magnitude – the individual names are really of no value to them until the closing. We should really discuss this in greater detail as I don't want to pull resources to complete a task that gets thrown out because the buyer has no interest whatsoever in picking up this group of non-active individuals.
Karen

---

**From:** Roe, Howard
**Sent:** Wednesday, March 28, 2012 8:17 AM
**To:** Rathburn, Karen
**Subject:** RE: Project Scarlet - OPEB/Pension

Karen,
How long do you think it will take you to develop the separation list we talked about and have accurate numbers of assets/liabilities to pass folks to a New Grizzly? What resources will you need to accomplish the task?
Thanks!
Howard

---

**From:** Rathburn, Karen
**Sent:** Tuesday, March 27, 2012 5:11 PM
**To:** Roe, Howard
**Subject:** Re: Project Scarlet - OPEB/Pension

I got the US locations - it's all of Beauharnois - so, don't think we need that detail.

Sent from my iPhone

On Mar 27, 2012, at 4:53 PM, "Roe, Howard" <roe@ppg.com> wrote:

> Karen,
> Just checking in on how you have made out on the project we discussed last Thursday. I think you were going back to Mercer to see if we could have them dump active and retirees from their data base to an Excel file for the following locations.
>
> Lake Charles
> Natrium
> LaPorte
> Beauharnois (separate Canadian plan)
> Monroeville
> General Office, Sales Offices, Home Offices
> TCI (if there are any "PPG" employees)
> We felt that from the Mercer data it would not be too difficult to separate out active employees that would be involved with the Scarlet scope. It is the retirees that are likely to cause us heartburn, but I think we agreed we would get the data to see how difficult it is going to be to identify the retirees.
> **We have a status meeting this Thursday morning, so I would appreciate an update. Additionally, it would be helpful if you could approximate a third party cost to get this information.**
> Thanks much,
> Howard

PPG007353

# EXHIBIT D

**From:** Rathburn, Karen [rathburn@ppg.com]
**Sent:** 9/15/2012 11:49:29 AM
**To:** Jordan, Craig [craigjordan@ppg.com]
**Subject:** Cover letter for Annual Election for CA&D employees
**Attachments:** Georgia Gulf Original Communication.doc; Annual Election Cover Letter - PPG and Georgia Gulf together.doc

Craig,

One of the things that we have been discussing with Georgia Gulf is the inclusion of a cover letter in the annual election packet of all employees (and also retirees) who are impacted by the CA&D announcement.

It was my opinion that we needed to explain to people why they were receiving an annual election packet, what it meant to them for the 2013 benefits and what actions they needed to take. Georgia Gulf agreed with this approach.

They crafted some language (which is attached) for the active employees. I know from an email from Mike Smith at the end of the day yesterday that the attached is not the final version – apparently, their attorneys have adjusted the language (which I have not yet received).

I am presuming that you agree with the inclusion of a letter in the packet (but, tell me if I am wrong in that presumption).

Based upon that, below are some questions for you (I want to ensure that I understand your opinion before finalizing the communication and once I receive feedback from you, I will then ask the same of Michael McGarry):

- Since the information contained in the first attachment is from Georgia Gulf, it seems to me that the letter should be 'signed' by Georgia Gulf, but, I wonder if the **best** approach is to have a 'two-sided' letter where the 'front' side is from PPG and the 'reverse' side is from Georgia Gulf. Please see the second attachment for an example of that approach. Please provide me with your opinion on which approach you prefer.

- I think in either case the communication(s) should have a signature (recognizing feedback from Chuck). For the PPG communication, do you prefer yourself or Michael? I will ask GGC whom they prefer.

- Regarding distribution, since we all know that the benefit plans for the union employees will not change, the attached letter would not be correct – I am leaning towards no additional communication at all – but, please let me know your thoughts on this (for Lake Charles – it is really a non-event as they don't really have an annual election per se – it is really more of a required notification – so, I am really specifically referring to the inclusion of a letter in the Natrium packets). Include communication for Natrium or not?

Once I have your opinion, I will discuss with Michael, our attorneys, Dan Hubert as well as Georgia Gulf.

If you prefer to simply discuss this live – feel free to call me on my cell (412.302.3988). As an aside, we are trying to get everything to the printer by mid-next week – so, I appreciate your insight. Thanks.

Karen



**<u>DRAFT</u>**

Dear PPG Employee:

As part of our effort to successfully integrate our organizations once the merger is complete, we at Georgia Gulf would like to give you some guidance on what to expect for your benefits in 2013.

This fall, you will be going through Open Enrollment with PPG as usual and maintain the benefits you elect through 2013.  The 401(k) Retirement Plan you will be offered through Georgia Gulf may be with a different provider but you will have the same match and defined contribution as you currently have with PPG.  Investment options will be different but very similar to your current PPG options.

We want to assure you that after the merger is completed, you will not experience any gaps in coverage or loss of benefits from what you select during Open Enrollment for 2013.  For the plan year 2014 we will harmonize benefits for the new company.  Further communications will be provided as needed.  We look forward to working with you.

Thank you,

PPG006489

## VERSION 2 DRAFT – PPG AND GEORGIA GULF COMBINED COMMUNICATION

**PPG 'Front' Side:**

October 2012

Dear PPG Employee,

As you are aware, in July, it was announced that PPG will form a new company by separating its commodity chemicals business and will then immediately merge this business with Georgia Gulf or a subsidiary of Georgia Gulf. The closing is expected to occur in late 2012 or early 2013, subject to approval by Georgia Gulf stockholders, customary closing conditions, relevant tax authority rulings and regulatory approvals.

Each October, you are advised of plan design changes and employee contributions for the upcoming year and have the opportunity to make your benefit elections for heath care, dental, benefit account, and various voluntary benefits, as well as complete your annual certifications for spousal/domestic partner and tobacco use during the open enrollment period.

While at this point, the closing date has not yet been finalized, we have determined that it is appropriate to have an open enrollment period for employees impacted by the announcement. Georgia Gulf has advised us that it their intent to continue the benefits that you elect during the open enrollment period for all of 2013 (no matter when the closing occurs), with the same employee contributions. Please read the communication from Georgia Gulf found on the other side of this letter.

As in the past, the information in the enclosed packet (which is applicable to all salaried employees of PPG) will describe the benefit plan options and employee contributions for 2013; please carefully read all the information contained in this packet and on the open enrollment website and complete your 2013 annual election and required certification (if you cover a spouse or same-gender domestic partner) no later than 11:59 p.m. Eastern time on October 17th.

If you have questions, please feel free to contact the PPG HR Shared Services at 1.888.774.2626.

Sincerely,


J. Craig Jordan

PPG006490

**Georgia Gulf Side:**

Dear PPG Employee:

As part of our effort to successfully integrate our organizations once the merger is complete, we at Georgia Gulf would like to give you some guidance on what to expect for your benefits in 2013.

This fall, you will be going through Open Enrollment with PPG as usual and maintain the benefits you elect through 2013.  The 401(k) Retirement Plan you will be offered through Georgia Gulf may be with a different provider but you will have the same match and defined contribution as you currently have with PPG.  Investment options will be different but very similar to your current PPG options.

We want to assure you that after the merger is completed, you will not experience any gaps in coverage or loss of benefits from what you select during Open Enrollment for 2013.  For the plan year 2014 we will harmonize benefits for the new company.  Further communications will be provided as needed.  We look forward to working with you.

Thank you,

PPG006491

# EXHIBIT E

# PPG INDUSTRIES, INC.
# MASTER WELFARE BENEFIT PLAN DOCUMENT
## (EFFECTIVE AS OF JANUARY 1, 2016)



PPG000305

**PPG Industries, Inc.**
**Master Welfare Benefit Plan Document**
**(Effective as of January 1, 2016)**

Table of Contents

Page

ARTICLE I

DEFINITIONS

| | | |
|---|---|---|
| 1.1 | Active Medical Plan | 2 |
| 1.2 | Beneficiary | 2 |
| 1.3 | Board of Directors | 2 |
| 1.4 | Child | 2 |
| 1.5 | Claimant | 2 |
| 1.6 | Claims Administrator | 2 |
| 1.7 | COBRA | 3 |
| 1.8 | COBRA Continuation Coverage | 3 |
| 1.9 | Code | 3 |
| 1.10 | Company | 3 |
| 1.11 | Component Plans | 3 |
| 1.12 | Dependent | 4 |
| 1.13 | Domestic Partner | 4 |
| 1.14 | Effective Date | 4 |
| 1.15 | Eligible Employee | 4 |
| 1.16 | Employee | 5 |
| 1.17 | Employer | 5 |
| 1.18 | ERISA | 5 |
| 1.19 | FMLA | 5 |
| 1.20 | HIPAA | 5 |
| 1.21 | Incorporated Documents | 5 |
| 1.22 | Insurance Company or Insurer | 6 |
| 1.23 | Insurance Contract | 6 |
| 1.24 | Named Fiduciary | 6 |
| 1.25 | Participant | 6 |
| 1.26 | Participating Employer | 6 |
| 1.27 | Plan | 6 |
| 1.28 | Plan Administrator | 6 |
| 1.29 | Plan Year | 6 |
| 1.30 | Spouse | 6 |
| 1.31 | USERRA | 7 |

i

## ARTICLE II

## PARTICIPATION

| | | |
|---|---|---|
| **2.1** | Commencement of Participation | 8 |
| **2.2** | Dual Coverage Rule | 8 |
| **2.3** | Cessation of Participant's Participation | 8 |
| **2.4** | Cessation of Dependent's Participation | 9 |
| **2.5** | COBRA Continuation Coverage | 9 |
| **2.6** | Reinstatement of Former Participants | 9 |
| **2.7** | Participation During Leaves of Absence under the FMLA | 9 |
| **2.8** | Participation During Periods of Qualified Military Service under USERRA | 10 |

## ARTICLE III

## BENEFITS AVAILABLE

| | | |
|---|---|---|
| **3.1** | Description of Benefits | 11 |
| **3.2** | Incorporated Documents | 11 |

## ARTICLE IV

## FUNDING OF BENEFITS

| | | |
|---|---|---|
| **4.1** | Funding of Benefits | 12 |
| **4.2** | Self-Insured Benefits Solely from General Assets | 12 |
| **4.3** | Limitation of Company and Employer Liability | 12 |
| **4.4** | Participant Contributions | 12 |

## ARTICLE V

## HIPAA PRIVACY AND SECURITY

| | | |
|---|---|---|
| **5.1** | General HIPAA Provision | 13 |
| **5.2** | HIPAA Privacy Provisions | 13 |
| **5.3** | HIPAA Security Provisions | 16 |
| **5.4** | Interpretation and Limited Applicability | 17 |
| **5.5** | Services Performed for the Employer: | 17 |

## ARTICLE VI

## ADMINISTRATION

| | | |
|---|---|---|
| **6.1** | Plan Administrator | 18 |
| **6.3** | Reliance by Plan Administrator | 19 |
| **6.4** | Bonding | 19 |
| **6.5** | Named Fiduciaries | 20 |
| **6.6** | Allocation of Responsibilities | 20 |

**PPG000307**

| 6.7 | Indemnification | 20 |

## ARTICLE VII

## CLAIMS AND REVIEW PROCEDURES

| 7.1 | General | 21 |
| 7.2 | Claims Procedures for Determinations of Disability | 22 |
| 7.3 | Claims Procedures for Group Health Plans | 24 |
| 7.4 | Claims Procedures for Other Plans | 31 |

## ARTICLE VIII

## PARTICIPATION BY OTHER EMPLOYERS

| 8.1 | Adoption of Plan | 33 |
| 8.2 | Withdrawal from Participation | 33 |
| 8.3 | Company Authorized to Act for Employers | 33 |
| 8.4 | Employer Reimbursement | 33 |
| 8.5 | Company's Right to Terminate Adoption | 33 |

## ARTICLE IX

## AMENDMENT OR TERMINATION

| 9.1 | Amendment | 34 |
| 9.2 | Termination | 34 |
| 9.3 | Determination of Effective Date of Amendment or Termination | 34 |

## ARTICLE X

## MISCELLANEOUS

| 10.1 | Limitation of Rights | 35 |
| 10.2 | No Vested Rights | 35 |
| 10.3 | Right of Recovery | 35 |
| 10.4 | Subrogation and Reimbursement | 35 |
| 10.5 | Incorrect Information, Fraud, Concealment, or Error | 37 |
| 10.6 | Nonassignment of Rights | 37 |
| 10.7 | No Guarantee of Tax Consequences | 38 |
| 10.8 | Withholding Taxes | 38 |
| 10.9 | Indemnification of Employer by Participants | 38 |
| 10.10 | Information to be Furnished | 38 |
| 10.11 | Notices and Elections | 38 |
| 10.12 | Instructions | 39 |
| 10.13 | Incapacity to Receive Payment | 39 |
| 10.14 | Failure to Cash Check | 39 |
| 10.15 | Payment of Expenses | 39 |

PPG000308

**10.16**   Disclosures Via Other Media ................................................................39
**10.17**   Section 105(h) of the Code ................................................................39
**10.18**   Qualified Medical Child Support Orders ..........................................40
**10.19**   Compliance with Federal and State Mandates ..................................40
**10.20**   Construction ......................................................................................40
**10.21**   Severability ......................................................................................40
**10.22**   Governing Law ................................................................................40

Exhibit A – Plans and Component Plans

PPG000309

## PPG Industries, Inc. Master Welfare Benefit Plan
### (Effective as of January 1, 2016)

### Introduction

PPG Industries, Inc. (the "Company") sponsors the welfare benefit plans (each, a "Plan") set forth on Exhibit A attached hereto.  This Master Welfare Plan Document ("Master Document") constitutes a part of, and is incorporated into, each Plan.

Each Plan is intended to comply with all relevant provisions of the Code and ERISA and must be interpreted in a manner consistent with the requirements of such laws.  Each Plan consists of this Master Document and the Incorporated Documents with respect to such Plan, but each Plan is, and must be treated as, a single welfare benefit plan solely for purposes of annual Form 5500 filings.  For all other purposes under ERISA, the Code, COBRA, HIPAA, the Patient Protection and Affordable Care Act, the Health Care and Education Reconciliation Act of 2010 and any other applicable legal requirements, each Component Plan that is part of a Plan is, and must be treated as, a separate plan.  Benefits under any Component Plan that provides dental benefits or vision benefits are "excepted benefits" as defined in Sections 732(c)(1) and 733(c)(2) of ERISA and Sections 9831(c)(1) and 9832(c)(2) of the Code.

**PPG000310**

## DEFINITIONS

The following terms when used in the Plans have the following meanings, unless otherwise defined in the Plan's applicable Component Plan or a different meaning is plainly required by the context. Words with initial capital letters not defined herein have the meaning ascribed to them in the Plan's applicable Component Plan.

### Active Medical Plan

Any of the various medical plans sponsored by the Company for the benefit of active Eligible Employees, as amended from time to time. Such Active Medical Plans are the Component Plans that are designated on Exhibit A as Active Medical Plans.

### Beneficiary

The individual or entity designated by a Participant or otherwise entitled pursuant to any Component Plan, as applicable, to receive benefits under the Component Plan attributable to the Participant after, or on account of, the Participant's death. Unless otherwise provided in the applicable Component Plan, a Beneficiary designation, including a change in Beneficiary designation, is not effective unless made in the form and in accordance with the procedure prescribed for Beneficiary designation and properly filed.

### Board of Directors

The Board of Directors of the Company or its delegate.

### Child

A person who is the Participant's child as defined in the applicable Component Plan. Subject to any additional requirements set forth in the applicable Component Plan, a person ceases to be a Child of a Participant on the first day on which the person no longer meets the requirements for Child status outlined in such Component Plan.

### Claimant

An Employee, Dependent or Beneficiary who makes an eligibility or enrollment claim or a claim for benefits under a Component Plan.

### Claims Administrator

A third-party administrator or Insurer designated by the Company to review and process claims for benefits under a Component Plan.

2

PPG000311

**COBRA**

The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended. References to COBRA include the valid and binding governmental regulations, court decisions and other regulatory and judicial authority issued or rendered thereunder.

**COBRA Continuation Coverage**

Continuation of coverage elected under COBRA.

**Code**

The Internal Revenue Code of 1986, as amended.  References to the Code include the valid and binding governmental regulations, court decisions and other regulatory and judicial authority issued or rendered thereunder.

**Company**

PPG Industries, Inc., and/or any successor thereto.

**Component Plans**

The specific arrangements by which a Plan provides certain types of benefits.  A Component Plan may be changed from time to time as specified in such Component Plan or by the Board of Directors.  The Component Plans for each Plan are listed on Exhibit A.

PPG000312

**Dependent**

Subject to any additional requirements set forth in the applicable Component Plan, or as set forth in this Section, a Participant's (or deceased Participant's) Spouse, Domestic Partner or Child who meets the eligibility requirements set forth in such Component Plan.  The term "Dependent" for purposes of the Component Plans is limited to a person who is the Participant's dependent for purposes of Sections 213(d) or 105(b) of the Code, as applicable, or, with respect to eligibility for health coverage under the Component Plans (except for eligibility for coverage of a Domestic Partner or a Domestic Partner's child), meets the Code requirements for such coverage, and resulting benefits, to be received tax-free, under Sections 104, 105 and 106 of the Code, including references to a dependent under Section 152 of the Code.

**Domestic Partner**

A person who meets, and continues to meet, all of the requirements to be a Domestic Partner as set forth in a Component Plan providing for Domestic Partner benefits.  Subject to any additional requirements, or survivor coverage provisions set forth in the applicable Component Plan, a person ceases to be a Domestic Partner of a Participant on the first day on which the person and the Participant no longer continuously meet the requirements for Domestic Partner status contained in such Component Plan.

**Effective Date**

The effective date of this Master Document is January 1, 2014, except that with respect to any Employer thereafter joining a Plan and any Component Plan(s) as a participating Employer with a later effective date, the Effective Date is the date on which the Employer joins such Plan and the Component Plan(s).

**Eligible Employee**

For the benefits coverage or benefits provided under a particular Component Plan, an active Employee who:  (i) is eligible under the terms of the Component Plan to be covered under and/or to participate in such Component Plan, or a former such active Employee on an Employer-approved leave of absence or receiving installment severance payments, where the Component Plan permits coverage or other participation to be continued during such leave of absence or installment severance payment period, (ii) is properly enrolled under the Component Plan, if required, (iii) satisfies any contribution requirements for the Component Plan and (iv) meets all other requirements for participation in the Component Plan, is eligible to participate in the Component Plan, except that the following individuals are not Eligible Employees:

any individual who is not eligible for coverage or participation under any of the Component Plans;

any person classified by an Employer as a supplemental contract worker, leased employee, expatriate employee or other worker supplied by a third party personnel agency or professional employer organization, temporary employee, seasonal employee, independent contractor, agent or consultant, or any other person who is not identified as an Employee in the personnel records of any Employer, whether or not such classification by the Employer is upheld in any legal

PPG000313

controversy concerning the person's employment status; or has been reclassified by the Employer as an employee;

any Employee whose terms and conditions of employment with the Employer expressly preclude such Employee's participation in the Plan; or

any Employee who is employed by a division or other business unit or operation of an Employer to which division, unit or operation the Plan has not been extended.

For purposes of eligibility to participate in a Component Plan, an employee is considered to be employed only by the Employer identified as the employee's employer in the Company's payroll system.

**Employee**

Any person identified in and paid through the Company's payroll system as a common law employee of an Employer.

**Employer**

The Company and any Participating Employer.

**ERISA**

The Employee Retirement Income Security Act of 1974, as amended.  References to ERISA include the valid and binding governmental regulations, court decisions and other regulatory and judicial authority issued or rendered thereunder.

**FMLA**

The Family and Medical Leave Act of 1993, as amended.  References to the FMLA include the valid and binding governmental regulations, court decisions and other regulatory and judicial authority issued or rendered thereunder.

**HIPAA**

The Health Insurance Portability and Accountability Act of 1996, as amended.  References to HIPAA include valid and binding governmental regulations, court decisions and other regulatory or judicial authority issued or rendered thereunder.

**Incorporated Documents**

The plan documents/summary plan descriptions, Insurance Contracts or other documents under which health and welfare benefits are provided to Eligible Employees and which are described in Exhibit A, including any and all attachments, amendments and supplements thereto, as well as any documents incorporated by reference into such plan documents/summary plan descriptions, Insurance Contracts or other documents (such as the application and certificate of insurance booklet).

PPG000314

**Insurance Company or Insurer**

An Insurance Company that enters into an Insurance Contract with the Company (or any Employer authorized to do so) to provide benefits coverage or benefits under one or more of the Component Plans.

**Insurance Contract**

Each insurance policy, contract and/or other agreement issued by, or entered into with, an Insurance Company pursuant to which the Insurance Company accepts the risk and obligation to provide benefits coverage or benefits under any of the Component Plans, and all amendments and endorsements thereto.

**Named Fiduciary**

An individual or entity designated in Article VI to carry out fiduciary responsibilities under any of the Component Plans as set forth in any Plan.

**Participant**

Any Eligible Employee who has properly enrolled as such in a Component Plan, if required, and is paying any required contributions.

**Participating Employer**

An employer affiliated with the Company that:

is treated as a single employer with the Company under Section 414(b), 414(c) or 414(m) of the Code; and

adopts a Plan pursuant to the provisions of Section 0.

**Plan**

A welfare benefit plan set forth on Exhibit A, as amended from time to time.

**Plan Administrator**

The Company or a designated officer of the Company.

**Plan Year**

Except as a Component Plan may otherwise provide, the plan year for each of the Component Plans is the calendar year.

**Spouse**

The person to whom the Participant is legally married under applicable state law and for federal income tax purposes.

PPG000315

Subject to any additional requirements, or survivor coverage provisions set forth in the applicable Component Plan, a person ceases to be the Spouse of a Participant as of the date their marriage is legally terminated by divorce or annulment or the date they become legally separated.

**USERRA**

The Uniformed Services Employment and Reemployment Rights Act of 1994, as amended. References to USERRA include valid and binding governmental regulations, court decisions and other regulatory or judicial authority issued or rendered thereunder.

PPG000316

## PARTICIPATION

**Commencement of Participation**

Subject to any additional limitations set forth in the applicable Component Plan, each Eligible Employee becomes a Participant on the date such Eligible Employee becomes a participant in a Component Plan in accordance with the terms of the Component Plan.

**Dual Coverage Rule**

No individual may be a Dependent of more than one Employee for purposes of eligibility to participate in a Plan and the Component Plans.

**Cessation of Participant's Participation**

A Participant's participation and coverage (and that of the Participant's eligible Dependents) with respect to a Plan cease as of the earliest of:

the date on which such Plan is terminated;

the date on which the Participant ceases to be an Eligible Employee under all Component Plans for such Plan and the Participant's benefit coverage expires as set forth in such Component Plans;

the end of the period for which the Participant made the last required contribution under all such Component Plans; and

the date the Company informs the Claims Administrator that the Participant is canceling coverage under all such Component Plans.

Notwithstanding any other provision of this Section, a Participant who is absent by reason of sickness, disability or other authorized leave of absence may continue as a Participant for so long as such authorized absence continues in accordance with the Plan Administrator's rules and regulations. In addition, a Participant and the Participant's qualified beneficiaries are entitled to enroll in COBRA Continuation Coverage under the Component Plans as described in Section 0. Notwithstanding any other provision of this Section, the cessation of a Participant's participation and coverage (and that of the Participant's eligible Dependents) under any Active Medical Plan will comply with the requirements of Section 2712 of the Public Health Service Act (regarding restrictions on rescissions), as incorporated by reference into Section 715 of ERISA and Section 9815 of the Code (including the valid and binding governmental regulations, court decisions and other regulatory and judicial authority issued or rendered thereunder), in accordance with rules and procedures established by the Plan Administrator or its delegate.

8

**Cessation of Dependent's Participation**

An eligible Dependent's participation and coverage cease with respect to a Plan as of the earliest of:

the date on which the Participant's coverage ends;

the date such Dependent ceases to be an eligible Dependent under all Component Plans for such Plan and the Dependent's benefit coverage expires as set forth in such Component Plans;

the end of the period for which the Participant made the last required contribution for the Dependent's coverage under all such Component Plans; and

the date on which the Participant cancels coverage for the Dependent under all such Component Plans.

Notwithstanding any other provision of this Section, the cessation of a covered Dependent's participation and coverage under any Active Medical Plan will comply with the requirements of Section 2712 of the Public Health Service Act (regarding restrictions on rescissions), as incorporated by reference into Section 715 of ERISA and Section 9815 of the Code (including the valid and binding governmental regulations, court decisions and other regulatory and judicial authority issued or rendered thereunder), in accordance with rules and procedures established by the Plan Administrator or its delegate.

**COBRA Continuation Coverage**

If, as a result of the occurrence of any "qualifying event" as defined in Section 4980B(f)(3) of the Code, an Eligible Employee (and/or any of such Employee's Dependents) loses coverage under a Component Plan that is a "group health plan" under Section 4980B of the Code and Section 601 of ERISA, such affected Eligible Employee (and/or Dependents), as applicable, will be given the option of electing COBRA Continuation Coverage.

**Reinstatement of Former Participants**

A former Participant who is reemployed by the Employer as an Eligible Employee again becomes a Participant after meeting the requirements of Section 0.

**Participation During Leaves of Absence under the FMLA**

Notwithstanding any other provision of a Plan to the contrary, a Participant who is on an authorized leave of absence under the FMLA may continue participation in such Plan for up to 12 weeks. Such participation is provided under the terms and conditions of such Plan and the Component Plans with respect to such Plan (including rate of contributions) that would have been provided if the Participant had continued employment and be subject to the terms and conditions of the Employer's policies regarding paid and unpaid leaves of absence under the FMLA.

PPG000318

**Participation During Periods of Qualified Military Service under USERRA**

The Plan Administrator shall ensure that each Plan complies with the provisions of USERRA.

PPG000319

## BENEFITS AVAILABLE

**Description of Benefits**

The benefits available under each Plan consist of the aggregate of the benefits available under each of that Plan's Component Plan, including all limitations and exclusions with respect to each Component Plan's benefits.  Exhibit A contains, for each Plan, a brief description of the benefits provided by each of such Plan's Component Plans.  The availability of benefits under any Component Plan is subject to payment by the Participant of all applicable contributions thereunder, if any.  The availability of benefits under certain Component Plans is subject to proper enrollment by the Participant in such Component Plan.  Enrollment provisions for Component Plans offered through the Company's Code § 125 cafeteria plan are found in Article V of the PPG Industries, Inc. Cafeteria Plan.  Analogous provisions apply to any Component Plan in which Participants are required to enroll and for which any applicable Participant contributions are paid on an after-tax basis, and any Component Plan in which Eligible Employees on an unpaid leave of absence participate.  Not in limitation but in amplification of the preceding sentence, such analogous provisions include Article V of the PPG Industries, Inc. Cafeteria Plan regarding limitations on a Participant's ability to change coverage elections during a Plan Year.

**Incorporated Documents**

Each Plan incorporates by reference this Master Document and the Incorporated Documents for such Plan, which contain the substantive provisions governing benefits provided through such Plan.  As the Incorporated Documents are amended or superseded, the amended or successor documents automatically become Incorporated Documents.  Except as otherwise provided in this Section, if there is a conflict between the provisions of this Master Document and any of the Plan's Incorporated Documents, the provisions of the Incorporated Documents govern.  If there is no provision in an Incorporated Document corresponding to a provision of this Master Document, to the extent applicable, the Master Document provisions apply to the Incorporated Document.  If a provision in an Incorporated Document is legally insufficient, the applicable provision of the this Master Document applies to the Incorporated Document to the extent deemed necessary by the Plan Administrator.  In any event, Articles VI and IX of this Master Document override the corresponding provisions of any Incorporated Document.

**PPG000320**

# FUNDING OF BENEFITS

**Funding of Benefits**

Funding for each Plan consists of the combined funding for all of such Plan's Component Plans. The Company has the right, in its sole discretion, to (a) pay benefits from its general assets, (b) insure any benefits under a Plan, and/or (c) establish any fund or trust for the holding of contributions or payment of benefits under a Plan, either as mandated by law or as the Company deems advisable.

**Self-Insured Benefits Solely from General Assets**

To the extent certain benefits or coverages under a Component Plan are self-insured by the Employer, the benefits or coverage provided under the Component Plans may be paid solely from the general assets of the Employer. Nothing herein may be construed to require the Employer or the Plan Administrator to maintain any fund or segregate any amount for the benefit of any Participant in a Plan or such Participant's Dependents, and no Participant, Dependent or other person has any claim against, right to, or security or other interest in, any fund, account or asset of the Employers from which any self-insured benefit payment under a Plan may be made.

**Limitation of Company and Employer Liability**

To the extent certain benefits or coverages under a Component Plan are insured, liability for providing such benefits or coverages is solely that of the Insurer issuing the applicable Insurance Contract. The Employer has no liability for any benefits due, or alleged to be due, under any applicable Insurance Contract.

**Participant Contributions**

The Company determines, in its sole discretion, the amount, if any, of Participant contributions required for the various levels of coverage applicable under a Component Plan. The Company may initiate, or change the amount of, required Participant contributions for any coverage level under any Component Plan at any time and for any reason. Where applicable, required Participant contributions for coverage under a particular Component Plan must be paid by a Participant who is an Eligible Employee either through pay reduction pursuant to Section 125 of the Code or through pay deduction, whichever is specified for such coverage under the Component Plan by the Plan Administrator. If the Participant does not have, or is not reasonably expected to have, cash pay sufficient to support the payment of required Participant contributions through the method specified by the Plan Administrator, the Participant may pay such required Participant contributions through such other method, and in accordance with such rules and procedures, if any, as the Plan Administrator may authorize.

PPG000321

## HIPAA PRIVACY AND SECURITY

**General HIPAA Provision**

**Hybrid Entity Designation:** The Company designates the Plan as a hybrid entity in accordance with 45 CFR §164.105 and only those Component Plans that would be a covered health plan under 45 CFR §160.103 constitute the health care components of the Plan. Any Component Plan that would not be a covered health plan under 45 CFR §160.103 if provided through a separate plan is a non-health care component of a hybrid entity and is not subject to 45 Code of Federal Regulations Part 160, Subparts A and E (the "Privacy Rule") or 45 Code of Federal Regulations Part 160 and 164, Subparts A and C (the "Security Rule"). Component Plans that are subject to the Privacy Rule and/or the Security Rule are referred to as the "HIPAA Plans." The Employer must comply with the requirements of the Privacy Rule and the Security Rule, as applicable, with respect to the HIPAA Plans.

**Organized Health Care Arrangement Designation:** The Plan Administrator intends the Plan to form part of an Organized Health Care Arrangement along with any other benefit under a covered health plan (under 45 CFR §160.103) provided by the Employer.

**HIPAA Privacy Provisions**

**Protected Health Information:** The HIPAA Plans use and disclose Protected Health Information (referred to as "PHI") as permitted or required by HIPAA. PHI generally means information that:

is transmitted or maintained by the HIPAA Plans;

relates to the past, present or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present or future payment for the provision of health care to an individual; and

identifies the individual or for which there is a reasonable basis to believe that the information could be used to identify the individual.

**Disclosures of PHI to Employer:** The HIPAA Plans may disclose PHI to the Employer only as permitted below or as otherwise required or permitted by HIPAA or other applicable law. Notwithstanding any provision of the HIPAA Plans to the contrary, in no event is the Employer permitted to use or further disclose PHI in a manner that is inconsistent with 45 CFR §164.504(f).

**Participation Information:** The HIPAA Plans may disclose to the Employer information regarding whether an individual is participating in a HIPAA Plan.

**Summary Health Information:** The HIPAA Plans may disclose Summary Health Information to the Employer if the Employer requests the Summary Health Information for the purpose of modifying, amending or terminating a HIPAA Plan. "Summary Health Information" means

PPG000322

information that (1) summarizes the claims history, claims expenses, or types of claims experienced by individuals for whom the Employer has provided health benefits under a HIPAA Plan; and (2) from which the information described at 45 CFR §164.514(b)(2)(i) has been deleted, except that the geographic information described in 45 CFR §164.514(b)(2)(i)(B) need only be aggregated to the level of a 5-digit zip code.

**Plan Administration Functions:**   Subject to the conditions of disclosure and written certification requirements described below, the HIPAA Plans may disclose PHI to the Employer to allow the Employer to perform plan administration functions on behalf of the HIPAA Plans. The Employer may access and use such PHI for plan administration functions that include claims processing, quality assurance, auditing, monitoring, and other activities that would constitute "payment" and "health care operations" as those terms are defined under HIPAA.   Plan administration functions do not include any functions performed by the Employer in connection with any other benefit or employee benefit plan of the Employer or any employment-related functions performed by the Employer.

**Conditions of Disclosure for Plan Administration Functions:**  With respect to PHI disclosed to the Employer by the HIPAA Plans (other than participation information and Summary Health Information which may be used and disclosed as described above), the Employer agrees as follows:

the Employer may not use or further disclose PHI other than as permitted or required by the HIPAA Plans or as required by law.

the Employer must ensure that any agent, including a subcontractor, to whom it provides PHI received from the HIPAA Plans agrees to the same restrictions and conditions that apply to the Employer with respect to such PHI.

the Employer may not use or disclose PHI for employment-related actions and decisions or in connection with any other benefits or employee benefit plan of the Employer, except to the extent a use or disclosure may otherwise be permitted by HIPAA or pursuant to an authorization that complies with 45 CFR §164.508.

if the Employer becomes aware of any use or disclosure of PHI by the Employer that is inconsistent with the uses or disclosures permitted hereunder, the Employer must report such use or disclosure of PHI to the HIPAA Plans.

the Employer must make PHI available to comply with an individual's right to access the individual's PHI in accordance with 45 CFR §164.524.

the Employer must make PHI available for amendment and incorporate any amendments to PHI in accordance with 45 CFR §164.526.

the Employer must make available the information required to provide an accounting of disclosures of PHI in accordance with 45 CFR §164.528.

the Employer must make its internal practices, books and records relating to the use and disclosure of PHI received from the HIPAA Plans available to the Secretary of the Department

14

of Health and Human Services for purposes of determining the HIPAA Plans' compliance with 45 CFR Part 164, Subpart E.

when PHI that the Employer received from the HIPAA Plans is no longer needed for the purpose for which the disclosure was made, the Employer must, if feasible, return or destroy all such PHI that the Employer still maintains in any form and retain no copies of such information.  If such return or destruction is not feasible, the Employer must limit further uses and disclosures to those purposes that make the return or destruction of PHI infeasible.

the Employer must ensure adequate separation between the Employer and the HIPAA Plans as required by 45 CFR §164.504(f)(2)(iii).

**Adequate Separation Between HIPAA Plans and Employer:**  The Employer ensures adequate separation between the HIPAA Plans and the Employer as required by 45 CFR §164.604(f)(2)(iii) as follows:  (1) the Employer causes the HIPAA Plans to adopt policies and procedures regarding permissible disclosures of PHI to the Employer for plan administration purposes or other lawful purposes; and (2) the Employer may allow only designated Employees to be given access to PHI.  Such Employees may have access to and use PHI only to the extent necessary to conduct the plan administration functions that the Employer performs for the HIPAA Plans.  Any such Employee who does not comply with this Section is subject to disciplinary action by the Employer based on the severity of the violation and in accordance with the Employer's employee disciplinary policies.  If the Employee's noncompliance results in an unauthorized use or disclosure of PHI, the Employer must report the unauthorized use or disclosure to the HIPAA Plans.  The Employer also must, to the extent practicable, take steps to mitigate any harmful effect known to the Employer that arises from such Employee's noncompliance.

**Certification of the Employer:**  The HIPAA Plans may disclose PHI to the Employer only upon the receipt of a certification by the Employer that the applicable HIPAA Plan has been amended to incorporate the provisions of 45 CFR §164.504(f)(2)(ii), and that the Employer agrees to the conditions of disclosure set forth above.

**Privacy Official:**  The Plan must designate a Privacy Official, who is responsible for the HIPAA Plans' compliance with the Privacy Rule.  The Privacy Official may contract with or otherwise utilize the services of attorneys, accountants, brokers, consultants, or other third party experts as the Privacy Official deems necessary or advisable.  In addition, and notwithstanding any provision of the HIPAA Plans to the contrary, the Privacy Official, or the Privacy Official's designee, has the authority to and be responsible for:

accepting and verifying the accuracy and completeness of any certification provided by the Employer under this Article;

transmitting the certification to any third parties as may be  necessary to permit them to disclose PHI to the Employer;

establishing and implementing policies and procedures with respect to PHI that are designed to ensure compliance by the HIPAA Plans with the Privacy Rule;

15

establishing and overseeing proper training of Employer personnel who have access to PHI; and

any other duty or responsibility that the Privacy Official, in the Privacy Official's sole capacity, deems necessary or appropriate to comply with the Privacy Rule.

**HIPAA Security Provisions**

**Electronic PHI:**  Electronic PHI generally means PHI that is (A) maintained in electronic storage media including memory devices in computers (hard drives) and any removable/transportable digital memory medium, such as magnetic tape or disk, optical disk or digital memory card; or (B) transmitted by transmission media including the internet (wide open), extranet, leased lines, dial up lines, private networks and the physical movement of removable/transportable electronic storage media.  Certain transmissions, including of paper, via facsimile and of voice via telephone are not considered to be transmissions via electronic media, because the PHI being exchanged did not exist in electronic form before the transmission.

**Conditions on Disclosure of Electronic PHI to Employer:**  With respect to Electronic PHI disclosed to the Employer by the HIPAA Plans (other than participation information and Summary Health Information as described above), the Employer agrees as follows:

the Employer must implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity and availability of the Electronic PHI that it creates, receives, maintains, or transmits on behalf of the HIPAA Plans;

the Employer must ensure that the adequate separation between the HIPAA Plans and the Employer as described above is supported by reasonable and appropriate administrative, physical and technical safeguards;

the Employer must ensure that any agent, including a subcontractor, to whom it provides Electronic PHI agrees to implement reasonable and appropriate administrative, physical and technical safeguards to protect the Electronic PHI; and

the Employer must report to the HIPAA Plans any Security Incident of which it becomes aware. A Security Incident is the attempted or successful unauthorized access, use, disclosure, modification or destruction of information or interference with system operations in an information system (an interconnected set of information resources under the same direct management control that shares common functionality that typically includes hardware, software, information, data, applications, communications and people).

**Security Official:**  The HIPAA Plans must designate a Security Official, who is responsible for the HIPAA Plans' compliance with the Security Rule.  The Security Official may contract with or otherwise utilize the services of attorneys, accountants, brokers, consultants, or other third party experts as the Security Official deems necessary or advisable.   In addition, and notwithstanding any provision of the HIPAA Plans to the contrary, the Security Official, or the Security Official's designee, has the authority to and be responsible for:

accepting and verifying the accuracy and completeness of any certification provided by the Employer under this Article;

PPG000325

transmitting the certification to any third parties as may be necessary to permit them to disclose electronic PHI to the Employer;

establishing and implementing policies and procedures with respect to electronic PHI that are designed to ensure compliance by the HIPAA Plans with the Security Rule;

establishing and overseeing proper training of Employer personnel who have access to electronic PHI; and

any other duty or responsibility that the Security Official, in the Security Official's sole capacity, deems necessary or appropriate to comply with the Security Rule.

**Interpretation and Limited Applicability**

This Article serves the sole purpose of complying with the requirements of HIPAA and must be interpreted and construed in a manner to effectuate this purpose. Neither this Article nor the duties, powers, responsibilities and obligations listed herein may be taken into account in determining the amount or nature of the benefits provided to any person covered under the HIPAA Plans, nor may they inure to the benefit of any third parties. To the extent that any of the provisions of this Article are no longer required by HIPAA, they are deemed deleted and have no further force or effect.

**Services Performed for the Employer:**

Notwithstanding any other provision of the HIPAA Plans to the contrary, all services performed by a business Employee of the HIPAA Plans in accordance with the applicable services agreement are deemed to be performed on behalf of the HIPAA Plans and subject to the Privacy Rule and the Security Rule, except services that relate to eligibility and enrollment in the HIPAA Plans. If a business Employee of the HIPAA Plans performs any services that relate to eligibility and enrollment in the HIPAA Plans, those services are deemed to be performed on behalf of the Employer in its capacity as Plan Sponsor and not on behalf of the HIPAA Plans.

PPG000326

# ADMINISTRATION

## Plan Administrator

**The Plan Administrator:**  The Plan Administrator is the general administrator of each Plan and has the discretionary responsibility for the operation and administration of each Plan, including those powers and duties set forth in Subsection 0 of this Section.  The Plan Administrator may appoint such agents as it may deem necessary for the effective performance of its duties, and may delegate to such agents such powers and authority, whether ministerial or discretionary, as the Plan Administrator may deem expedient or appropriate.  The compensation of such agents is fixed by the Plan Administrator within any limits set by the Board of Directors.  Any document required to be filed with, or any notice required to be given to, the Plan Administrator is properly filed or given if mailed or delivered to the Secretary of the Board of Directors in care of the Employer.

**Powers of Plan Administrator:** The Plan Administrator has responsibility for, and all powers necessary or desirable to control and manage the operation and administration of each Plan.  The Plan Administrator has full discretionary power to administer each Plan in all of its details, subject to applicable requirements of law.  To the extent the Plan Administrator delegates to one or more Claims Administrators authority to make claims determinations, such Claims Administrator has the same discretion.  The Plan Administrator's discretionary powers include, but are not limited to, the following discretionary authority, in addition to all other powers provided by the Plans:

To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plans, including the establishment of any claims procedures that may be required by applicable provisions of law;

To construe and interpret the provisions of the Plans, including, without limitation, by supplying omissions from, correcting deficiencies in, or resolving inconsistencies or ambiguities in, the language of the Plans;

To decide all questions concerning the Plans, including, without limitation, factual questions, and the eligibility of any person to participate in the Plans;

To decide disputes arising under the Plans and to make determinations and findings, including, without limitation, factual determinations;

To compute the amount of benefits payable to any Participant, Dependent or other person in accordance with the provisions of the Plans, and to determine the person or persons to whom such benefits are paid;

To authorize the payment of benefits;

To prepare or cause to be prepared all forms necessary or appropriate for the administration of the Plans;

18

PPG000327

To comply with all requirements of the law with respect to notice and disclosure and the preparation and filing of reports and forms;

To constitute and appoint persons to serve on a claims committee, if desired;

To make any equitable adjustments to correct any error or omission discovered in the administration of any Component Plan;

To appoint such agents, counsel, accountants, consultants, actuaries and Claims Administrators as may be required to assist in administering the Plans; and

To allocate among its members or Employees or delegate its responsibilities under the Plans and to designate other persons to carry out any of its responsibilities under the Plans, any such delegation or designation to be by written instrument and in accordance with Section 405 of ERISA.  Any such allocation or delegation includes the discretionary power of the Plan Administrator as provided in this Section.

Any determination by the Plan Administrator or its authorized delegate is final and binding in the absence of clear and convincing evidence that the Plan Administrator or delegate, as applicable, acted arbitrarily and capriciously.

**Expenses of Plan Administrator:**  The Plan Administrator shall be reimbursed by the Employer, or the Employer shall cause to be paid, all expenses incurred by the Plan Administrator in the performance of its duties under the Plans, including without limitation actuarial, legal, accounting, consulting and other administration expenses.

**Reliance by Plan Administrator**

**Reliance on Tables, Etc.:**  In administering the Plans, the Plan Administrator is entitled to the extent permitted by law to rely conclusively on all tables, valuations, certificates, opinions and reports that are furnished by, or in accordance with the instructions or recommendations of, any delegee described in Section 0, or by any other experts employed or engaged by the Plan Administrator.

**Reliance on Participant's Certifications:**  The Plan Administrator is entitled to rely conclusively on certifications and information provided by the Participant or the Participant's Dependent, unless the Plan Administrator has reason to believe that the Participant's or Dependent's certification or other information provided is incorrect.

**Bonding**

Unless otherwise determined by the Employer, or unless required by any federal or state law, the Plan Administrator is not required to give bond or other security in any jurisdiction in connection with the administration of any Plan.

PPG000328

**Named Fiduciaries**

The Plan Administrator is a Named Fiduciary for purposes of Section 402(a)(1) of ERISA, with fiduciary responsibility for administration of the Component Plans and complying with all of the reporting and disclosure requirements of Part 1 of Subtitle B of Title I of ERISA, to the extent applicable.  The Company or the Plan Administrator may designate one or more other Named Fiduciaries with responsibility for carrying out the duties of Employers under the Plans.  Such individuals may change or designate additional Named Fiduciaries and allocate and reallocate fiduciary responsibilities.  Any person may serve in more than one fiduciary capacity.

**Allocation of Responsibilities**

The Named Fiduciaries may designate other persons who are not Named Fiduciaries to carry out such fiduciary responsibilities.  The responsibilities imposed by the Plan on each Named Fiduciary are not joint responsibilities with any other fiduciary unless specifically so designated therein.  No fiduciary is responsible for the act, or failure to act, of any other fiduciary.

**Indemnification**

To the extent permitted under ERISA, each Plan indemnifies any member of the Board of Directors, any Employee acting as or on behalf of the Plan Administrator, any member of a claims committee, and any fiduciary who is a director, officer, or other Employee of an Employer (an "Indemnified Party") against any cost or liability which they may incur in the course of administering such Plan, including any Component Plan, and executing the duties assigned pursuant to such Plan.  The Employer indemnifies any Indemnified Party against any personal liability or cost not provided for in the preceding sentence which such Indemnified Party may incur as a result of any act or omission in relation to a Plan, or any Component Plan, or its Participants.  The Employer may purchase fiduciary liability insurance to insure its obligation under this Section.  Promptly after receipt by an Indemnified Party under this Section of notice of a claim subject to indemnity hereunder, such Indemnified Party must, if a claim in respect thereof is to be made against the Employer, notify the Employer of such claim.  The Employer is entitled to participate at its own expense in the defense or to assume to defense, of any action brought against the Indemnified Party.  In the event the Employer elects to assume the defense of any suit, the Employer may choose counsel which is reasonably satisfactory to the Indemnified Party to defend the action.  The Indemnified Party must pay the fees and expenses of any additional counsel retained by such Indemnified Party.

**PPG000329**

# CLAIMS AND REVIEW PROCEDURES

**General**

In accordance with Section 3.2, this Article VII applies with respect to any Plan, including any Component Plan with respect to such Plan, only to the extent not in conflict with the provisions of the Incorporated Documents for such Plan, including any Component Plan with respect to such Plan.  To the extent any such Incorporated Documents address claims and appeals, the provisions of such Incorporated Documents shall govern.

**Authority of Claims Administrator**:  Except for issues of whether an individual is eligible to participate in, or obtain coverage under, or whether an eligible individual is enrolled for participation in, or coverage under, the respective Component Plan, or option under the Component Plan, the Claims Administrator has the discretionary authority to decide claims for benefits under the Component Plan, including denied claims on review, all in accordance with such claims procedure as it may from time to time determine.  The Plan Administrator delegates to the Claims Administrator acting under this Article the authority of the Plan Administrator as provided under Sections 0 through (6).  The Plan Administrator retains the discretion to engage another third party claims administrator to review appeals of adverse benefit determinations following the conclusion of the Claims Administrator's internal claims and appeals process.

**Authority of Plan Administrator**:  Issues of whether an individual is eligible to participate in, or obtain coverage under, or whether an eligible individual is enrolled for participation in, or coverage under, the respective Component Plan, or option under the Component Plan, are determined by the Plan Administrator or its designee, or the Claims Administrator to whom the determination of such issues has been assigned, and review of denied determinations are determined by the same entity, as applicable, all in accordance with the claims procedure set forth in this Article.  Claims under a Component Plan for which no claims procedure is established must also be submitted and reviewed in accordance with the terms of this Article.

**No Designation of Claims Administrator**:  If there has not been any designation of a Claims Administrator with respect to a Component Plan, all references to the Claims Administrator below are deemed references to the Plan Administrator.

**Legal Action:** A Claimant may not bring a legal action against a Plan, any Component Plan, the Plan Administrator, any Claims Administrator, any claims committee or the Employer relating to a claim unless and until the Claimant has followed the applicable claims procedures and exhausted the administrative remedies available under such Plan and the applicable Component Plan.  No legal action may be brought more than one year following the earlier of the date of a final decision on the claim under these claims procedures, the date additional information to perfect the claim was required to be provided by the Participant, or the date a notice of demand was due.  This one-year statute of limitations on suits applies in any forum where a Claimant initiates such suit or legal action.  If a civil action is not filed within this period, the Claimant's claim will be deemed permanently waived and abandoned, and the Claimant will be precluded from reasserting it.  A Claimant's authorized representative may act on the Claimant's behalf in

pursuing a claim or appeal of an adverse benefit determination.  This Section 7.1(d) shall apply to each Plan (and to each of such Plan's Component  Plans) notwithstanding any other provision of any Incorporated Document.

**Claims Procedures for Determinations of Disability**

**Initial Claim**

**Filing:**  A Claimant may make a claim under a Component Plan providing benefits upon a determination of disability by filing a written claim with the Claims Administrator using the forms available from the Claims Administrator.

**Notification of Claim Denial:**  If a claim for benefits is denied, in whole or in part, the Claimant will receive a written notice from the Claims Administrator within a reasonable period of time, but no later than 45 days after it receives the claim. Under special circumstances, the Claims Administrator may take up to an additional 30 days to review the claim if it determines that such an extension is necessary due to matters beyond its control.  If an extension of time is required, the Claimant will be notified before the end of the initial 45-day period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.  If, prior to the end of the first 30-day extension period, the Claims Administrator determines that an additional extension is necessary due to matters beyond its control, the Claims Administrator may take up to an additional 30 days to review the claim.  If an additional extension of time is required, the Claimant will be notified before the end of the initial 30-day extension period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.  If the Claims Administrator extends its period for reviewing a claim due to special circumstances, the notice of extension the Claimant receives will include an explanation of the standards on which entitlement to benefits is based, the unresolved issues that prevent a decision on the claim and any additional information needed to resolve these issues.  The Claimant has at least 45 days to provide the specified information.

**Content of Notification of Denial:**  If the claim is denied, in whole or in part, the Claims Administrator will notify the Claimant in writing.  The notice will include:

the reason or reasons for the denial;

specific references to the pertinent plan provisions on which denial is based;

a description of any additional information or materials necessary to perfect the claim and an explanation of why such material or information is needed;

an explanation of the claims review process and the time limits applicable to such process, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefits determination on review;

a statement that a copy of any internal rule, guideline, protocol or other similar criteria relied upon in making the adverse determination is available free of charge upon request; and

a statement that if denial of the claim is based on medical necessity or experimental treatment, or a similar exclusion or limitation, the Claims Administrator will, upon request, provide the Claimant, free of charge, an explanation of the scientific or clinical judgment, applying the terms of the plan to the Claimant's medical circumstances.

## Appeals

**Appeal of Denied Claim:**   If the Claimant fails to file an appeal for review within 180 days of the denial notification, the claim will be deemed permanently waived and abandoned, and the Claimant will be precluded from reasserting it under these procedures or in a court or any other venue.   If the Claimant wishes to appeal a denial of any part of the claim, the Claimant must appeal the denial to the Claims Administrator within 180 days after the Claimant receives notice of the denial.   The request must be submitted in writing and must include:

the reasons why the Claimant feels the claim is valid; and

the reasons why the Claimant thinks the claim should not be denied.

Documents, records, written comments, and other information in support of the appeal should accompany the request.   This information will be considered by the Claims Administrator in reviewing the claim.   The Claimant may request to examine and receive copies of all documents, records, and other information relevant to the claim.   The Claims Administrator will review the claim without granting any deference to the initial decision regarding the claim.   Also, no reviewer may be a person that was involved in making the initial decision regarding the claim, or subordinate to that person.   In addition, if the claim was based in whole or in part on a medical judgment, the Claims Administrator will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. This person will not be a person or a subordinate of a person consulted by the Claims Administrator in deciding the initial claim.

**Notification of Appeal Denial:**   The Claims Administrator will notify the Claimant of its decision on the appeal within 45 days after receipt of the appeal. Under special circumstances, the Claims Administrator may take up to an additional 45 days to review the claim if it determines that such an extension is necessary due to matters beyond its control.  If an extension of time is required, the Claimant will be notified before the end of the initial 45-day period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.  If the Claims Administrator extends its period for reviewing a claim due to special circumstances, the notice of extension the Claimant receives will include an explanation of the standards on which entitlement to benefits is based, the unresolved issues that prevent a decision on the claim and any additional information needed to resolve these issues.   The Claimant has at least 45 days to provide the specified information.

**Content of Notification of Appeal Denial:**   If the claim is denied on appeal, the Claims Administrator will notify the Claimant in writing.   The notice will include:

the reason or reasons for the denial;

specific references to the pertinent plan provisions on which the denial is based;

PPG000332

a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

a statement about the Claimant's right to bring a civil action under Section 502(a) of ERISA;

a statement that a copy of any internal rule, guideline, or protocol or other similar criteria relied upon in making the adverse determination is available free of charge upon request; and

a statement that if denial of the claim is based on medical necessity or experimental treatment, or a similar exclusion or limit, the Claims Administrator will, upon request, provide the Claimant, free of charge, an explanation of the scientific or clinical judgment, applying the terms of the plan to the Claimant's medical circumstances.

Also, upon request, the Claims Administrator will provide the Claimant with a statement identifying those medical or vocational experts whose advice was obtained in connection with the appeal.

**Claims Procedures for Group Health Plans**

**Initial Claim**

**Urgent Care Claims**

**Timing of Decision:**  In the case of a claim involving urgent care under a Component Plan providing group health benefits, the Claims Administrator will review the claim and inform the Claimant in writing of its decision (whether adverse or not) as soon as possible, taking into account the medical exigencies, but not later than 72 hours after it receives the claim.

**Additional Information:** If the Claimant fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the Component Plan, the Claims Administrator will inform the Claimant as soon as possible, but no later than 24 hours after it receives the claim, of the specific information necessary to complete the claim.  The Claimant will be afforded a reasonable amount of time, taking into account the circumstances, but no less than 48 hours, to provide the specified information.  The Claims Administrator will notify the Claimant of its benefit determination as soon as possible, and no later than 48 hours after the earlier of:

the Claims Administrator's receipt of the specified information; and

the end of the period afforded to the Claimant to provide the specified additional information.

**Urgent Care Claim Defined:**  For purposes of this Article, a "claim involving urgent care" is any claim for medical care or treatment with respect to which the application of time periods for making non-urgent care determinations:

could seriously jeopardize the Claimant's life or health or the Claimant's ability to regain maximum function; or

PPG000333

in the opinion of a physician with knowledge of the Claimant's medical condition, would subject the Claimant to severe pain that could not be adequately managed without the care or treatment that is the subject of the claim.

**Pre-Service Claims**

**Timing of Decision:** In the case of a pre-service claim under a Component Plan providing group health benefits, the Claims Administrator will inform the Claimant of its decision (whether adverse or not) within a reasonable period of time appropriate to the medical condition, but not later than 15 days after it receives the claim. Under special circumstances, the Claims Administrator may take up to an additional 15 days to review the claim if it determines that such an extension is necessary due to matters beyond its control. If an extension of time is required, the Claimant will be notified before the end of the initial 15-day period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.

**Additional Information:** If additional information is needed because necessary information is missing from the request, the notice will specify what information is needed. The Claimant must provide the specified information to the Claims Administrator within 45 days after receiving the notice. The determination period will be suspended on the date the Claims Administrator sends a notice of missing information and the determination period will resume on the date the Claimant responds to the notice.

**Pre-Service Claim Defined:** For purposes of this Article, "pre-service claim" means any claim for a benefit under the Component Plan with respect to which the terms of the Component Plan condition receipt of the benefit, in whole or in part, on approval of the benefit in advance of obtaining medical care.

**Post-Service Claims**

**Timing of Decision:** In the case of a post-service claim under a Component Plan providing group health benefits, the Claims Administrator will inform the Claimant of its decision within a reasonable period of time, but not later than 30 days after it receives the claim. Under special circumstances, the Claims Administrator may take up to an additional 15 days to review the claim if it determines that such an extension is necessary due to matters beyond its control. If an extension of time is required, the Claimant will be notified before the end of the initial 30-day period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.

**Additional Information:** If additional information is needed because necessary information is missing from the request, the notice will specify what information is needed. The Claimant must provide the specified information to the Claims Administrator within 45 days after receiving the notice. The determination period will be suspended on the date the Claims Administrator sends a notice of missing information and the determination period will resume on the date the Claimant responds to the notice.

**Post-Service Claim Defined:** The term "post-service claim" means any claim for a benefit under a Component Plan that is not a pre-service claim or an urgent care claim.

PPG000334

**Concurrent Care Decisions**

**Timing of Decision:**  If a Component Plan providing group health benefits has approved an ongoing course of treatment to be provided over a period of time or number of treatments, any reduction or termination by the Component Plan of the course of treatment (other than by plan amendment or termination) before the end of the previously approved period of time or number of treatments will constitute a claim denial.  If this occurs, the Claims Administrator will notify the Claimant of its decision at a time sufficiently in advance of the reduction or termination to allow the Claimant to appeal and obtain a decision on appeal before the benefit is reduced or terminated.

**Special Rules for Urgent Care Claims:**  Any request by the Claimant to extend the course of treatment beyond the previously approved period of time or number of treatments that constitutes a claim involving urgent care will be decided as soon as possible, taking into account the medical exigencies, and the Claims Administrator will inform the Claimant of its decision (whether adverse or not) within 24 hours after it receives the claim, provided that the claim is made to the Claims Administrator at least 24 hours before the expiration of the prescribed period of time or number of treatments.

**Notice of Extension:**  If the Claims Administrator extends its period for reviewing a claim due to special circumstances as described above, the notice of extension that the Claimant receives will include:

an explanation of the standards on which entitlement to benefits is based;

the unresolved issues that prevent a decision on the claim; and

any additional information needed to resolve those issues.

**Content of Notification of Denial:**  The Claimant will be notified in writing if any part of a claim for benefits under a Component Plan providing group health benefits is denied.  This notice will include:

the specific reason or reasons for the denial;

specific references to the pertinent plan provisions on which the denial is based;

a description of any additional information or materials necessary to process the claim properly and the reasons why the materials are needed;

a description of the plan's internal claims review process and the time limits applicable to such process, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review;

a statement that a copy of any internal rule, guideline, protocol or other similar criteria relied upon in making the adverse determination is available free of charge upon request;

PPG000335

a statement that if a denial of the claim is based on medical necessity or experimental treatment, or a similar exclusion or limit, the Claims Administrator will, upon request, provide the Claimant, free of charge, an explanation of the scientific or clinical judgment, applying the terms of the plan to the Claimant's medical circumstances;

in the case of a denial concerning a claim involving urgent care, a description of the expedited review process applicable to such claims; and

with respect only to an Active Medical Plan claim:

information sufficient to identify the claim involved;

notification of the opportunity to request the diagnosis and treatment codes associated with the claim involved, including their respective meanings, and to have such information provided upon request;

a description of the Active Medical Plan's external review procedures, the time limits applicable to such procedures and how to initiate an external appeal; and

contact information for any applicable office of health insurance consumer assistance or ombudsman established to assist individuals with the internal claims and appeals process.

In addition, any such denial notification will be provided in a culturally and linguistically appropriate manner as required by the Patient Protection and Affordable Care Act and in accordance with any applicable implementing regulations or other federal agency guidance.

**Appeals**

**Appeal of Denied Claim:**  If the Claimant fails to file an appeal for review within 180 days of the denial notification, the claim will be deemed permanently waived and abandoned, and the Claimant will be precluded from reasserting it under these procedures or in a court or any other venue.  If the Claimant wishes to appeal a denial of any part of a claim under a Component Plan providing group health benefits, the Claimant must appeal the denial to the Claims Administrator within 180 days after the Claimant receives notice of the denial.  The request must be submitted in writing and must include:

the reasons why the Claimant feels the claim is valid; and

the reasons why the Claimant thinks the claim should not be denied.

Documents, records, written comments, and other information in support of the appeal should accompany the request.  This information will be considered by the Claims Administrator in reviewing the claim.  The Claimant may request to examine and receive copies of all documents, records, and other information relevant to the claim.  The Claims Administrator will review the claim without granting any deference to the initial decision regarding the claim.  Also, no reviewer may be a person that was involved in making the initial decision regarding the claim, or a subordinate to that person.  In addition, if the claim was based, in whole or in part, on a medical judgment in reviewing the claim, the Claims Administrator will consult with a health

PPG000336

care professional who has appropriate training and experience in the field of medicine involved in the medical judgment in reviewing the claim. This person will not be a person or a subordinate of a person consulted by the Claims Administrator in deciding the initial claim.

With respect to Active Medical Plan claims, the Claimant will be allowed to review the claim file and to provide evidence and testimony as part of the internal claims and appeals process. The applicable Active Medical Plan Claims Administrator will provide the Claimant, free of charge, with any new or additional evidence considered, relied upon or generated by the Active Medical Plan (or at the direction of the Active Medical Plan) in connection with the Claimant's appeal as soon as possible and sufficiently in advance of the date on which it provides the Claimant with notice of its determination on appeal, so that the Claimant will have a reasonable opportunity to respond prior to that date. In addition, if the denial of the Claimant's appeal is based on a new or additional rationale, the applicable Active Medical Plan Claims Administrator will provide the Claimant, free of charge, with the new or additional rationale as soon as possible and sufficiently in advance of the date on which it provides the Claimant with notice of its determination on appeal, so that the Claimant will have a reasonable opportunity to respond prior to that date.

**Notification of Appeal Denial**

**Urgent Care Claims:**  In the case of a claim involving urgent care, the Claims Administrator will provide this notice as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the request for review.

**Pre-Service Claims:**  In the case of a pre-service claim, the Claims Administrator will provide this notice within a reasonable amount of time appropriate to the medical circumstances but not later than 30 days after receipt of the request for review if the Component Plan provides for only one mandatory appeal of an adverse benefit determination or within 15 days for each appeal if the Component Plan provides for two mandatory appeals of an adverse determination.

**Post-Service Claims:**  In the case of a post-service claim, the Claims Administrator will provide this notice within a reasonable amount of time but not later than 60 days after receipt of the request for review if the Component Plan provides for only one mandatory appeal of an adverse benefit determination or within 30 days for each appeal if the Component Plan provides for two mandatory appeals of an adverse determination.

**Concurrent Care Claims:**  In the case of a concurrent care claim, the Claims Administrator will provide this notice within a reasonable amount of time appropriate to the medical circumstances but not later than 15 days after receipt of the request for review for each level of the Claimant's appeal.

**Content of Appeal Denial:**  The notice provided for all appeal decisions under a Component Plan providing group health benefits will include:

the specific reason or reasons for the denial;

specific references to the pertinent plan provisions on which the denial is based;

PPG000337

a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

a statement about the Claimant's right to bring a civil action under Section 502(a) of ERISA following any final internal adverse benefit determination;

a statement that a copy of any internal rule, guideline, protocol or other similar criteria relied upon in making the adverse determination is available free of charge upon request;

a statement that if a denial of the claim is based on medical necessity or experimental treatment, or a similar exclusion or limit, the Claims Administrator will, upon request, provide the Claimant, free of charge, an explanation of the scientific or clinical judgment, applying the terms of the plan to the Claimant's medical circumstances; and

with respect only to an Active Medical Plan claim:

information sufficient to identify the claim involved;

notification of the opportunity to request the diagnosis and treatment codes associated with the claim involved, including their respective meanings, and to have such information provided upon request;

a description of the Active Medical Plan's external review procedures, the time limits applicable to such procedures and how to initiate an external appeal; and

contact information for any applicable office of health insurance consumer assistance or ombudsman established to assist individuals with the internal claims and appeals and the external appeals process.


In addition, any such appeal decision notification will be provided in a culturally and linguistically appropriate manner as required by the Patient Protection and Affordable Care Act and in accordance with any applicable implementing regulations or other federal agency guidance.

Also, upon request, the Claims Administrator will provide the Claimant with a statement identifying those medical or vocational experts whose advice was obtained in connection with the appeal.

**Active Medical Plan External Review Process:**  External review is available only for certain types of adverse benefit determinations, as defined by federal regulations, and the provisions of this Paragraph apply only to those adverse benefit determinations.  Each Active Medical Plan will comply with applicable federal regulations regarding external review.  Not in limitation but in amplification of the preceding sentence, each fully-insured Active Medical Plan will comply with any applicable state external review process that meets, at a minimum, the consumer protections set forth in federal regulations.  Each fully-insured Active Medical Plan not subject

PPG000338

to such a state external review process and each self-insured Active Medical Plan will comply with the federal external review process outlined in federal regulations and other applicable guidance, and described in the remainder of this Paragraph.

**Eligibility for External Review:** A Claimant who receives a notice of an adverse benefit determination and who exhausts an Active Medical Plan's internal claims and appeals process within the meaning of applicable federal regulations may file an appeal with an independent review organization (IRO) that is accredited to conduct a review of the Claimant's claim.

**Timing for Filing External Appeal:** A Claimant must submit a request for external review to the applicable Claims Administrator within 4 months of the date of the Claimant's receipt of the Claimant's final internal adverse determination on appeal. If the Claimant fails to submit a request for external review by such deadline, the claim will be deemed permanently waived and abandoned, and the Claimant will be precluded from reasserting it under these procedures or in a court or any other venue.

**Notification of Eligibility of Appeal for External Review:** The applicable Claims Administrator will determine if the Claimant's appeal is eligible for the voluntary external review process and will provide the Claimant with a written notice of its determination. If the Claimant's request is complete but not eligible for external review, the notice will include the reason or reasons for the denial and contact information for the Department of Labor Employee Benefits Security Administration. If the Claimant's request for external review is not complete, the notice will describe the information or materials needed to make the request complete. The Claimant must provide the required information to the applicable Claim Administrator within the original 4-month filing period or within the 48-hour period following receipt of the notification, whichever is later. If the Claimant fails to provide the required information by the applicable deadline, the claim will be deemed permanently waived and abandoned, and the Claimant will be precluded from reasserting it under these procedures or in a court or any other venue.

**IRO Review of Claim:** If the Claimant's claim is eligible for external review, the applicable Claims Administrator will assign the claim to an IRO. The IRO will notify the Claimant of the acceptance of the claim for external review and the Claimant's right to submit to the IRO in writing within 10 business days following receipt of the notice any additional information the IRO should consider in conducting the external review. The IRO will review all of the information and documents it receives in a timely manner as outlined in federal regulations and other applicable guidance.

**Notification of IRO Decision:** The IRO will provide written notice to the Claimant and the applicable Active Medical Plan of the final external review decision within 45 days after the IRO receives the request for external review. The notice will include the following:

a general description of the reason for the request for external review, including information sufficient to identify the claim;

the date the IRO received the assignment to conduct the external review and the date of the IRO decision;

PPG000339

references to the evidence or documentation, including the specific coverage provisions and evidence-based standards, the IRO considered in reaching its decision;

a discussion of the principal reason or reasons for the IRO's decision, including the rationale for its decision and any evidence-based standards that were relied on in making the decision;

a statement that the determination is binding except to the extent that other remedies may be available under State or Federal law to the Claimant or the applicable Active Medical Plan;

a statement that judicial review may be available to the Claimant; and

current contact information, including phone number, for any applicable office of health insurance consumer assistance or ombudsman.

**External Review of Urgent Care Claims:** If the Claimant's request for external review relates to an urgent care claim, the applicable Claims Administrator will determine if the appeal is eligible for the voluntary external review program and will provide the Claimant with written notice of its determination immediately.  If the urgent care claim is eligible for external review, the Claims Administrator will assign the urgent care claim to an IRO as described in Subparagraph (C) of this Paragraph.  The IRO will review all of the information and documents relevant to the appeal, to the extent the information and documents are available and the IRO considers them appropriate.  The IRO will provide notice to the Claimant and the applicable Active Medical Plan of the final external review decision as soon as possible, but no more than 72 hours after the IRO receives the request for an expedited external review.  If the notice is not provided in writing, within 48 hours after the date of providing the notice, the IRO will provide the Claimant and the applicable Active Medical Plan with a written confirmation of its decision.

**Claims Procedures for Other Plans**

**Initial Claim:** To receive or apply for benefits under any Component Plan not specifically discussed in Section 0 or 0, the Claimant must submit initial claims and/or appeals, as applicable, in accordance with this Section.

(1)     **Notification of Claim Denial:** If the claim for benefits is denied, in whole or in part, the Claimant will receive a written notice from the Claims Administrator within 90 days.  Under special circumstances, the Claims Administrator may take up to an additional 90 days to review the claim if it determines that such an extension is necessary due to matters beyond its control.  If an extension of time is required, the Claimant will be notified before the end of the initial 90-day period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.

(2)     **Content of Notification of Denial:** If the claim is denied, in whole or in part, the Claims Administrator will notify the Claimant in writing.  The notice will include:

the reason or reasons for the denial;

specific references to the pertinent plan provisions on which the denial is based;

a description of any additional information or materials necessary to perfect the claim and an explanation of why such material or information is needed; and

an explanation of the claims review process and the time limits applicable to such process, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following adverse benefits determination on review.

**Appeals**

**Appeal of Denied Claim:** If the Claimant fails to file an appeal for review within 60 days of the denial notification, the claim will be deemed permanently waived and abandoned, and the Claimant will be precluded from reasserting it under these procedures or in a court or any other venue.  If the Claimant wishes to appeal a denial of any part of a claim, the Claimant must appeal the denial to the Claims Administrator within 60 days after the Claimant receives notice of the denial.  The request must be submitted in writing and must include:

the reasons why the Claimant feels the claim is valid; and

the reasons why the Claimant thinks the claim should not be denied.

Documents, records, written comments, and other information in support of the appeal should accompany the request.  This information will be considered by the Claims Administrator in reviewing the claim.  The Claimant may request to examine and receive copies of all documents, records, and other information relevant to the claim.

**Notification of Appeal Denial:** The Claims Administrator will review the appeal and inform the Claimant in writing of its decision within a reasonable period of time, but no later than 60 days after it receives the appeal.  Under special circumstances, the Claims Administrator may take up to an additional 60 days to review the claim if it determines that such an extension is necessary due to matters beyond its control.  If an extension of time is required, the Claimant will be notified before the end of the initial 60-day period of the circumstances requiring the extension and the date by which the Claims Administrator expects to render a decision.

**Contents of Notification of Appeal Denial:** If the claim is denied on appeal, the Claimant will receive written notice of the denial.  The notice will include:

the reason or reasons for the denial;

specific references to the pertinent plan provisions on which the denial is based;

a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits; and

a statement about the Claimant's right to bring a civil action under Section 502(a) of ERISA.

PPG000341

## PARTICIPATION BY OTHER EMPLOYERS

**Adoption of Plan**

With the consent of the Company, any subsidiary or affiliate of the Company that is not a Participating Employer but that is treated as a single employer with the Company under Section 414(b), 414(c), or 414(m) of the Code may become a Participating Employer under a Plan by taking such action, if any, as the Company requires to adopt scuh Plan. Such action by a Participating Employer is not required to be in writing.

**Withdrawal from Participation**

Any Employer that adopts a Plan may elect separately to withdraw from such Plan and such withdrawal constitutes a termination of such Plan as to such Employer.  Any such withdrawal and termination must be expressed in an instrument executed by the terminating Employer and filed with the Company or its delegate, and, except as may otherwise be required by applicable law, becomes effective when so filed unless some other effective date is designated in such instrument and approved by the Company or its delegate.

Unless waived by the Company, a Participating Employer is responsible for claims of its Participants and covered Dependents incurred but not presented for payment as of the date of withdrawal.

**Company Authorized to Act for Employers**

Each Employer which becomes a participating Employer pursuant to Section 0 is deemed to have appointed the Company to exercise on its behalf all the powers and authorities hereby conferred upon the Company by the terms of each Plan, including, but not limited to, the power to amend and terminate such Plan.  The authority of the Company to act as such continues until such Employer withdraws from such Plan.

**Employer Reimbursement**

Each Employer must, upon demand from the Company, reimburse the Company for the Employer's appropriate share of any expenses, insurance premiums or plan funding necessary to provide benefits under a Plan.

**Company's Right to Terminate Adoption**

The Company has the right to terminate any Employer's adoption of a Plan at any time and for any reason.

PPG000342

# AMENDMENT OR TERMINATION

## Amendment

**Authority to Amend:**  The Company reserves without limitation the right to amend, modify or change any Plan and/or any Component Plan at any time and for any reason by action of its Board of Directors or its authorized delegate(s) or an officer of the Company, including amendments which are retroactive in effect, except that any amendment, modification or change relating to any Insurance Contract must be in accordance with the provisions of such Insurance Contract.  All amendments must be made in writing.  The amendment of a Plan may affect not only active Employees (and their Dependents), but also former active Employees who retired, became disabled, died or whose employment with the Employer has otherwise terminated (and their Dependents), and also any Participant (and such Participant's Dependents) who began receiving benefit coverage or payments prior to the amendment.  The Company reserves the right to amend, modify or change any retiree coverage offered under a Plan at any time and for any reason.  Any amendment is deemed to be approved and adopted by any Participating Employer.

**Exhibits:**  From time to time, the Plan Administrator may update and revise the Exhibits attached hereto and any Incorporated Documents listed on such Exhibits.  Any such update or revision of the Exhibits or any Incorporated Document is considered a duly authorized amendment of the applicable Plan, provided that it is in writing and filed with such Plan.

## Termination

**Right to Terminate:**  The Company has established each Plan with the bona fide intention and expectation that it will be continued indefinitely, but the Company has no obligation to maintain such Plan for any given length of time, and the Company reserves without limitation the right to terminate such Plan and/or any Component Plan, including any retiree coverage under such Plan or Component Plan, as applicable, at any time with or without reason by action of its Board of Directors or its authorized delegate(s).  Such decision to terminate a Plan and/or any Component Plan must be made in writing.  In the event an Employer for any reason ceases to exist, with respect to the Eligible Employees of such Employer, the Plans, unless continued by another employer, will terminate.

**Payment of Claims Upon Termination:**  If any Plan and/or any Component Plan is terminated, the Employer has no further liability to pay any benefits pursuant to such Plan or Component Plan, as applicable, with respect to any period after such termination. Such Plan and/or any Component Plan, as applicable, will continue until all proper pending claims for benefits outstanding as of the date of termination have been paid.

## Determination of Effective Date of Amendment or Termination

Any such amendment, discontinuance or termination is effective as of such date as the Company determines.

PPG000343

# MISCELLANEOUS

**Limitation of Rights**

Neither the establishment of a Plan nor any provision thereof may be construed:

to give any person any legal or equitable right against any Employer, its officers or Employees, or the Plan Administrator, except as expressly provided herein or by law; or

to create a contract of employment with any Participant, to obligate the Employer to continue the service of any Eligible Employee or to affect or modify the Eligible Employee's terms of employment in any way.

**No Vested Rights**

No Employee of an Employer, whether or not a Participant in, or eligible to participate in, a Plan has at any time any vested rights to benefits provided under such Plan or any Component Plan. Any and all benefits provided to retirees and anyone claiming benefits through retirees are not vested and are subject to amendment, modification, change and termination by the Company at any time with or without reason by action of its Board of Directors or its authorized representatives.

**Right of Recovery**

Each Plan has the right to recover any payment it made but should not have made or made to an individual or organization not entitled to payment, from the individual or organization or anyone else benefiting from the improper payment.

**Subrogation and Reimbursement**

No Plan provides primary coverage for expenses associated with an injury or illness caused or worsened by the action of any third party which gives rise to a claim against that party, nor does it provide primary coverage for such expenses to the extent that there is other applicable coverage from a source other than such Plan (including, but not limited to, medical benefits under an automobile insurance policy).  In the event that an individual receiving benefits under a Plan ("covered individual") sustains an injury or illness as a result of an action of a third party, and a Plan pays for costs associated with such injury or illness, such Plan has the following rights:

to be subrogated to the covered individual's rights against any third parties which arise from such injury or illness; and

to be fully reimbursed (to the extent of benefits paid) by the covered individual if such covered individual obtains any financial recovery from any source, including such covered individual's own insurance carrier or another welfare benefit plan (such as a disability plan, if any) sponsored by the Employer, whether by judgment, settlement, award, government or worker's

35

compensation benefits, or otherwise, on account of such injury or illness, and the Plan has a lien on any such recovery.  Also, by accepting benefits under the Plan in connection with such an injury or illness, the covered individual assigns any recovery to the Plan and authorizes such covered individual's attorney, personal representative or Insurance Company to reimburse the Plan.  The Plan is entitled to full reimbursement:

before the covered individual is entitled to retain any part of such financial recovery, regardless of the stated reason for the financial recovery or whether the covered individual has other costs or suffered other injuries not paid for or compensated by the Plan (notwithstanding any "Make Whole Doctrine");

without regard to any claim of fault on the part of the covered individual, whether under comparative negligence or otherwise;

without reduction for attorneys' fees and other costs incurred by the Participant or Dependent in making a recovery without the prior express written consent of the Plan (notwithstanding any "Fund Doctrine," "Common Fund Doctrine," or "Attorney's Fund Doctrine"); and

notwithstanding that the recovery to which the Plan is subrogated is paid to a decedent, a minor, a decedent's estate, or an incompetent or disabled person.

Notwithstanding any other provision of the Plan, the payment of benefits under the Plan on account of an injury or illness as a result of an action of a third party is contingent on the covered individual:

informing the Plan Administrator of the action to be taken by the covered individual;

agreeing (in such form and to such documents as the Plan may require) to the Plan being reimbursed from any recovery from a third party and subrogated to any right of recovery the covered individual has against a third party;

refraining from action which would prejudice the Plan's subrogation rights (including, but not limited to, making a settlement which specifically reduces or excludes, or attempts to reduce or exclude, the benefits provided by the Plan); and

cooperating in doing what is reasonably necessary to assist the Plan in any recovery.

If the covered individual should fail or refuse to comply with this Section, the covered individual is not entitled to benefits under the applicable Plan and must reimburse such Plan for any and all costs and expenses, including attorneys' fees, incurred by such Plan in enforcing its rights hereunder.  The Plan may determine not to exercise all of the above reimbursement and/or subrogation rights in certain types of cases, with respect to certain covered groups, or with respect to certain geographic areas, without waiving its right to enforce its rights in the future as to other groups or in other geographic areas.

PPG000345

**Incorrect Information, Fraud, Concealment, or Error**

**Right to Recover Payments**: Notwithstanding anything in a Plan to the contrary, the Plan Administrator shall be entitled to recover, in any manner the Plan Administrator in its sole discretion deems necessary or appropriate for such recovery, from a Participant, Dependent, Beneficiary or other individual any or all of any benefits paid or the amount of any liability incurred and any and all expenses incidental to or necessary for such recovery if,  because of a human or systems error, or because of the provision of incorrect information or the failure to provide correct information, fraud, misrepresentation, or concealment of any relevant fact (determined in the sole discretion of the Plan Administrator) by the Participant, Dependent, Beneficiary, or other individual, such Plan:

enrolls any individual in a Component Plan, provides COBRA Continuation Coverage to any individual pursuant to Section 2.5, or pays a benefit claim under such Plan or a Component Plan;

incurs a liability for failure to so enroll, provide COBRA Continuation Coverage, or pay a benefit claim;

incurs a liability for terminating enrollment or COBRA Continuation Coverage; or

makes any payment, overpayment or erroneous payment to any individual or entity.

**Right to Terminate Participation or Take Other Appropriate Action**: Notwithstanding anything in a Plan to the contrary, the Plan Administrator will be entitled to terminate, suspend or otherwise alter the participation of any Participant, Dependent or other individual in such Plan and/or any applicable Component Plan and to take other appropriate action as determined in its sole discretion, if any of the following events occurs:

the Participant, Dependent or other individual omits, misrepresents, or provides materially false information to the Plan in connection with enrollment in or ongoing participation in the Plan or a Component Plan;

the Participant, Dependent or other individual permits an individual who is not covered under a Component Plan to use a Component Plan's ID card or to falsely obtain benefits under the Plan or a Component Plan; or

the Participant, Dependent or other individual obtains or attempts to obtain benefits under the Plan or a Component Plan by means of false, misleading or fraudulent information, acts or omissions.

**Nonassignment of Rights**

A Participant's or Dependent's right to receive any reimbursement under a Component Plan is not alienable by the Participant or Dependent by assignment or any other method except as expressly permitted under the applicable Component Plan, and is not subject to be taken by the Participant's or Dependent's creditors by any process whatsoever, and any attempt to cause such right to be so subjected is not recognized, except to such extent as may be required by law.

PPG000346

**No Guarantee of Tax Consequences**

Neither the Plan Administrator nor the Employer makes any commitment or guarantee that any amounts deposited or credited on behalf of, paid to or on behalf of, or reimbursed to or on behalf of any Participant under a Plan are excludable from the Participant's gross income for federal, state or local income tax purposes, or that any other federal, state or local tax treatment applies to or is available to any Participant.  Each Participant is obligated to determine whether each payment under a Plan is excludable from the Participant's gross income for federal, state and local income tax purposes, and to notify the Employer if the Participant has reason to believe that any such payment is not so excludable.  If for any reason it is determined that any amount paid for the benefit of a Participant or the Participant's Dependent are includable in a Participant's gross income for federal, state or local income tax purposes, then under no circumstances does the recipient have any recourse against the Plan Administrator or the Employer with respect to any increased taxes or other losses or damages suffered by the Participant as a result thereof.

**Withholding Taxes**

To the extent that an Employer is required to withhold federal, state, local or foreign taxes in connection with any payment made to a Participant under a Component Plan, the Employer may withhold the amount so determined from the payment, or the Participant may pay the amount so determined in any other manner permitted by the Plan Administrator.

**Indemnification of Employer by Participants**

If a Participant receives benefits under a Plan that do not qualify for exclusion from income under Section 105 of the Code or any other relevant provision of the Code, and the receipt of such benefit was due to the negligent or intentional act or failure to act by the Participant or the Participant's Dependent in applying for or obtaining such benefit, then the Participant must indemnify and reimburse the Employer for any taxes and other expenses incurred by the Employer due to that nonqualified benefit.

**Information to be Furnished**

Eligible Employees must provide the Plan Administrator, the Claims Administrator and any claims committee with such information and evidence, and must sign such documents, as may be requested by the Plan Administrator, the Claims Administrator and/or any claims committee from time to time for the purpose of administration of the Plans.

**Notices and Elections**

All notices and elections required to be given or made by a Participant, Dependent or Beneficiary (including requests, directions, consents, designations and applications) under any provision of any Component Plan, are invalid unless made in the form and in accordance with the procedure prescribed by the Plan Administrator and delivered in a timely and proper manner to the Plan Administrator.

PPG000347

**Instructions**

The Plan Administrator must issue written instructions to each Employer regarding cash payments to be made hereunder and the Employers must act in accordance with those instructions.

**Incapacity to Receive Payment**

In the event that the Plan Administrator or its delegate finds that any Participant or Dependent entitled to receive benefits hereunder is, at the time such benefits are payable, unable to care for the Participant's or Dependent's, as applicable, affairs because of a physical, mental, or legal incompetence, the Plan Administrator or its delegate may, in its sole discretion, cause any payment due the Participant or Dependent, as applicable, for which prior claim has not been made by a duly qualified guardian or other legal representative, to be paid to such one or more persons as may be chosen by the Plan Administrator or its delegate from among the following: the institution maintaining or responsible for the maintenance of such Participant or Dependent, the Participant's Spouse, the Participant's Children, or other relative by blood or marriage.  Any payment made pursuant to this Section is a complete discharge of all liability under the Plans with respect of such payment.

**Failure to Cash Check**

With respect to any self-insured Component Plan, if payment for benefits is made to a claimant in the form of a check, and such check is not cashed within one year from its date of issuance, then such payment reverts to the Component Plan's trust or, if none, to the Employer.

**Payment of Expenses**

The Employers may, but do not obligate themselves to, pay all or part of the expenses of administration of the Component Plans and the expenses of the Plan Administrator, and any other expenses incurred at the direction of the Plan Administrator.

**Disclosures Via Other Media**

The Plan Administrator, Claims Administrator and/or any claims committee may, in its sole discretion, use any electronic or other alternative media form that it deems necessary or appropriate to meet ERISA reporting and disclosure requirements applicable to a Plan in accordance with ERISA and any regulations thereunder then in effect.

**Section 105(h) of the Code**

For purposes of meeting the requirements of Section 105(h) of the Code to the extent applicable to any benefits under a Plan, benefit options provided through health maintenance organizations may be designated with any self-insured benefit option as a single plan intended to satisfy the requirements of Section 105(h)(2) of the Code.  Any such designation must be made by the Company and remains in effect until modified by the Company.

PPG000348

**Qualified Medical Child Support Orders**

Medical benefits under a Plan must be administered in accordance with the provisions of any qualified medical child support order to which such Plan is subject, in accordance with Part 6 of Subtitle B of Title I of ERISA.

**Compliance with Federal and State Mandates**

It is intended that each Plan meet all applicable requirements of the Code, ERISA and all other applicable federal and state laws and of all regulations issued thereunder.  Each Plan shall be construed, operated, and administered accordingly.  In the event of any conflict between any provision of a Plan and the Code, ERISA, and/or any other applicable federal law, the provisions of the Code, ERISA and other applicable federal laws are deemed controlling, and any conflicting part, clause, or provision of such Plan is deemed superseded to the extent of the conflict.

**Construction**

Whenever used in this Master Document, unless the context clearly indicates otherwise, the singular includes the plural and the plural the singular.  The conjunction "or" includes both the conjunctive and disjunctive and the adjective "any" means one or more or all.  Article, section and other headings have been inserted for convenience of reference only and are to be ignored in any construction of the provisions of this Master Document.  A reference in this Master Document to a "Section" or an "Article" means a Section or Article of this Master Document and not of another source unless another source is specified or clearly indicated.

**Severability**

If any provision of a Plan or the application thereof to any circumstance(s) or person(s) is invalidated by a court of competent jurisdiction, the remainder of such Plan and the application of such provision to other circumstances or persons is not affected thereby.

**Governing Law**

To the extent not preempted by ERISA or any other federal statutes or regulations, the Plan is governed by and construed, enforced and administered according to the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, this instrument has been executed by the Company effective as of January 1, 2016.

PPG INDUSTRIES, INC.

By: _____

Name: _____

Title: _____

PPG000349

**EXHIBIT A**

**Plans and Component Plans**

| PPG Industries, Inc. Severance Plan—Mt. Zion, IL, Plan Number 508 | | | | |
|---|---|---|---|---|
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Severance Pay Plan #3 | Self-Insured | PPG Industries, Inc. | Severance Pay Plan Policy | Severance |
| PPG Industries, Inc. Severance Plan—Fresno, CA, Plan Number 510 | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Severance Pay Plan #8 | Self-Insured | PPG Industries, Inc. | Severance Pay Plan Policy | Severance |
| PPG Industries, Inc. Group Benefits Plan—Crystal City, MO, Plan Number 516 | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Crystal City, MO) | Medical |
| PPG Industries, Inc. Group Benefits Plan—Mt. Vernon, OH, Plan Number 517 | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Mt. Vernon, OH) | Medical |
| PPG Industries, Inc. Group Benefits Plan—Creighton, PA, Plan Number 518 | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Creighton, PA) | Medical |
| PPG Industries, Inc. Group Benefits Plan—Ford City, PA, Plan Number 519 | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Ford City, PA) | Medical |
| PPG Industries, Inc. Group Benefits Plan—Cumberland, MD, Plan Number 520 | | | | |
| Component Plan | Funding | Insurer or | Incorporated Documents | Benefit |

41

**PPG000350**

**A-83**

| | | Administrator | | |
|---|---|---|---|---|
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cumberland, MD) | Medical |

| PPG Industries, Inc. Group Benefits Plan—Greensburg, PA, Plan Number 521 | | | | |
|---|---|---|---|---|
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Greensburg, PA) | Medical |

| PPG Industries, Inc. Group Benefits Plan—Fresno, CA, Plan Number 522 | | | | |
|---|---|---|---|---|
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fresno, CA) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Health Maintenance Organization | Fully-Insured | Kaiser of Northern CA United Healthcare *(Group 28998)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD<br><br>HMO Group Policy/Agreement | Medical/Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

PPG000351

| Accident and Sickness Benefit Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD | Accident and Sickness |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fresno, CA) SPD<br><br>Certificate of Coverage | Accident Insurance |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PPG Industries, Inc. Group Benefits Plan—Creighton, PA, Plan Number 525 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Creighton Salaried Union) | Medical |

| PPG Industries, Inc. Group Benefits Plan—Ford City, PA, Plan Number 526 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Ford City Salaried Union) | Medical |

| PPG Industries, Inc. Group Benefits Plan—Lexington, NC, Plan Number 531 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization | Self-Insured | Highmark | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan booklet for Hourly | Prescription Drug |

**PPG000352**

**A-85**

| | | | Employees of PPG Industries, Inc. (Fiber Glass) | |
|---|---|---|---|---|
| Dental Plan | Self-Insured | Metropolitan Life Insurance Company | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Dental |
| Voluntary Accidental Death and Dismemberment Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-68050215)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Seatbelt Wearer's Accidental Death Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83074553)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Business Travel Accident Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83091376)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Accident and Sickness Plan | Fully Insured | The Hartford *(Policy 83174145)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan | Fully Insured | The Hartford *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Supplemental Long Term Disability Insurance Plan | Fully Insured | The Hartford *(Policy #83178160)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Employee Education Assistance Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Education Assistance |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Adoption Assistance |

44

PPG000353

| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Certificate of Coverage | Vision |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

| **PPG Industries, Inc. Group Benefits Plan—Shelby, NC, Plan Number 532** | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization | Self-Insured | Highmark | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan Life Insurance Company | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Dental |
| Voluntary Accidental Death and Dismemberment Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-68050215)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Seatbelt Wearer's Accidental Death Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83074553)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Business Travel Accident | Fully Insured | Hartford Life Group | Group Benefits Plan booklet for Hourly | Accident Insurance |

45

| Insurance Plan | | Insurance Company *(Policy #SR-83091376)* | Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | |
| Accident and Sickness Plan | Fully Insured | The Hartford *(Policy 83174145)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Supplemental Long Term Disability Insurance Plan | Fully Insured | Harford Group Life Insurance Company *(Policy 83178160)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Employee Education Assistance Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Education Assistance |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Adoption Assistance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Certificate of Coverage | Vision |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

| PPG Industries, Inc. Group Benefits Plan—Barberton, OH, Plan Number 533 | | | | |
| --- | --- | --- | --- | --- |
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. | Medical |

46

**PPG000355**

**A-88**

| | | | (Barberton, OH) | |
|---|---|---|---|---|
| HealthFund | Self-Insured | Aetna | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD  PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| | | | | |
| Health Maintenance Organization | Fully-Insured | HealthSpan of Ohio *(Group 2864)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD  HMO Group Policy/Agreement | Medical/Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | PPG Industries, Inc. Health Care Plans SPD (Salaried Employees)  Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |
| Accident and Sickness Benefit Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan *(for employees hired o/a 3/3/08)* | Fully Insured | Hartford Life Group Insurance Company *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Barberton, OH)  Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford *(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD  Certificate of Coverage | Accident Insurance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. | Accident Insurance |

47

PPG000356

| | | | (Barberton, OH) SPD<br><br>Certificate of Coverage | |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Barberton, OH) SPD | Adoption Assistance |

| PPG Industries, Inc. Group Benefits Plan—Lake Charles, Plan Number 536 | | | | |
|---|---|---|---|---|
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) SPD<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Retiree Health Reimbursement Account<br>*(for employees hired o/a 9/1/06)* | Self-Insured | WageWorks, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) | Prescription Drug |
| Accident and Sickness Benefit Plan | Fully Insured | The Hartford<br>*(Policy 83174145)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan<br>*(for employees hired o/a 9/1/06)* | Fully Insured | Hartford Life Group Insurance Company<br>*(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford<br>*(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) SPD | Accident Insurance |

48

PPG000357

| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA) SPD<br><br>Certificate of Coverage | Accident Insurance |
|---|---|---|---|---|
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Lake Charles, LA)<br><br>Certificate of Coverage | Vision |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | PPG Industries, Inc. Health Care Plans SPD (Salaried Employees)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

| PPG Industries, Inc. Group Benefits Plan—Cleveland, OH, Plan Number 540 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization | Self-Insured | Highmark | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Health Maintenance Organization | Fully-Insured | HealthSpan of Ohio *(Group 2864)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>HMO Group Policy/Agreement | Medical/Prescription Drug |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland) | Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan Life Insurance Company | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. | Dental |

49

**PPG000358**

| | | | (Cleveland) | |
|---|---|---|---|---|
| Voluntary Accidental Death and Dismemberment Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-68050215)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Seatbelt Wearer's Accidental Death Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83074553)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Business Travel Accident Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83091376)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Wage Continuance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland) | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan *(for employees hired o/a 1/1/06)* | Fully Insured | Hartford Life Group Insurance Company *(Policy #83178159)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Supplemental Long Term Disability Insurance Plan *(for employees hired o/a 1/1/06)* | Fully Insured | Harford Group Life Insurance Company *(Policy #83178159)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Employee Education Assistance Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland) | Education Assistance |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland) | Adoption Assistance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland) | Vision |

**PPG000359**

| | | | Certificate of Coverage | |
|---|---|---|---|---|
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Cleveland)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

| PPG Industries, Inc. Group Benefits Plan—Delaware, OH, Plan Number 541 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Delaware, OH) | Medical |
| Retiree Health Reimbursement Account<br>*(for employees hired o/a 2/25/07)* | Self-Insured | WageWorks, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Delaware, OH) SPD | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Delaware, OH) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Delaware, OH) SPD | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Delaware, OH)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |
| Accident and Sickness Benefit Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Delaware, OH) SPD | Disability Income (Short-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford<br>*(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Delaware, OH) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford<br>*(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. | Accident Insurance |

PPG000360

| | | | (Delaware, OH) SPD<br><br>Certificate of Coverage | |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Delaware, OH) SPD | Adoption Assistance |

**PPG Industries, Inc. Group Benefits Plan—Springdale PA, Plan Number 542**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| --- | --- | --- | --- | --- |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA)<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Health Maintenance Organization | Self-Insured | HealthAmerica of Western PA | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA)<br><br>PPG Industries, Inc. HMO Plan SPD | Medical/Prescription Drugs |
| Retiree Health Reimbursement Account *(for employees hired o/a 6/30/08)* | Self-Insured | WageWorks, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA) | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA) | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA) | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |
| Accident and Sickness Benefit | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly | Disability Income |

52

**PPG000361**

| Plan | | | Employees of PPG Industries, Inc. (Springdale, PA) | (Short-Term) |
| Basic Long Term Disability Insurance Plan<br>*(for employees hired o/a 6/30/08)* | Fully Insured | Hartford Life Group Insurance Company<br>*(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Barberton, OH)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford<br>*(Policy ETB-200939)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA)<br><br>Certificate of Coverage | Accident Insurance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford<br>*(Policy S06751)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Springdale, PA)<br><br>Certificate of Coverage | Accident Insurance |

| PPG Industries, Inc. Group Benefits Plan—Circleville, OH, Plan Number 543 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Circleville, OH) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Circleville, OH)<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Retiree Health Reimbursement Account<br>*(for employees hired o/a 11/1/04)* | Self-Insured | WageWorks, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD | Prescription Drug |

53

**PPG000362**

**A-95**

| Accident and Sickness Benefit Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD | Accident and Sickness |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford *(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD | Adoption Assistance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Circleville, Ohio) SPD<br><br>Certificate of Coverage | Accident Insurance |

| PPG Industries, Inc. Group Benefits Plan—Oak Creek, WI, Plan Number 544 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) | |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Circleville, OH)<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Retiree Health Reimbursement Account *(for employees hired o/a 10/22/07)* | Self-Insured | WageWorks, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) SPD | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) SPD | Prescription Drug |
| Accident and Sickness Benefit Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak | Disability Income (Short-Term) |

PPG000363

| | | | Creek, WI) SPD | |
|---|---|---|---|---|
| Basic Long Term Disability Insurance Plan *(for employees hired o/a 10/22/07)* | Fully Insured | Hartford Life Group Insurance Company *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Barberton, OH)  Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford *(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) SPD  Certificate of Coverage | Accident Insurance |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) SPD | Adoption Assistance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Oak Creek, WI) SPD  Certificate of Coverage | Accident Insurance |

| PPG Industries, Inc. Group Benefits Plan—East Point, GA, Plan Number 545 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (East Point, GA) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (East Point, GA)  PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Retiree Health Reimbursement Account *(for employees hired o/a 12/1/07)* | Self-Insured | WageWorks, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (East Point, GA) SPD | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (East Point, GA) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly | Prescription Drug |

PPG000364

| | | | Employees of PPG Industries, Inc. (East Point, GA) SPD | |
|---|---|---|---|---|
| Accident and Sickness Benefit Plan | Fully Insured | Life Insurance Company of NA *(Policy LK-100004)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (East Point, GA) SPD | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan *(for employees hired o/a 12/1/07)* | Fully Insured | Hartford Life Group Insurance Company *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (East Point, GA)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford *(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (East Point, GA) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (East Point, GA) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (East Point, GA)<br><br>Certificate of Coverage | Vision |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (East Point, GA)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

| PPG Industries, Inc. Group Benefits Plan, Plan Number 546 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or Administrator** | **Incorporated Documents** | **Benefit** |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (BDNA Non-Union Hourly) | Medical |

| PPG Industries, Inc. Employee Welfare Plan--Salaried Employees, Plan Number 547 | | | | |
|---|---|---|---|---|
| **Component Plan** | **Funding** | **Insurer or** | **Incorporated Documents** | **Benefit** |

56

**PPG000365**

**A-98**

| Administrator | | | | |
|---|---|---|---|---|
| Preferred Provider Organization (PPO) – U.S. except Hawaii | Self-Insured | Highmark | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, and Foundation benefit plans employees | Medical |
| Preferred Provider Organization (PPO) – Hawaii | Self-Insured | CIGNA | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, and Foundation benefit plans | Medical |
| Preferred Provider Organization (PPO) – Int'l. | Self-Insured | Aetna International | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE benefit plan<br>PPG Industries, Inc. Aetna International SPD | Medical/Prescription Drug |
| HealthFund | Self-Insured | Aetna | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans | Medical |
| Health Maintenance Organization | Self-Insured | HealthAmerica of Western PA | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE benefit plan<br>PPG Industries, Inc. HMO Plan SPD | Medical<br><br>(Prescription drug for HealthAmerica and Keystone) |
| Health Maintenance Organization | Fully-Insured | Blue Choice HMO *(GA6656)*<br>Kaiser of Northern CA *(28998)*<br>Kaiser of Southern CA *(228221)*<br>HealthSpan of Ohio *(2864)*<br>Triple S *(SP0000534)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE benefit plan<br>HMO Group Policy/Agreement | Medical/Prescription Drug |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans | Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan Life | PPG Industries, Inc.  Benefit Plan SPD | Dental |

PPG000366

|  |  | Insurance Company | applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans |  |
|---|---|---|---|---|
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans<br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |
| Voluntary Accidental Death and Dismemberment Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-68050215)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans<br>Hartford Certificate of Coverage | Accident Insurance |
| Seatbelt Wearer's Accidental Death Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83074553)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans<br>Hartford Certificate of Coverage | Accident Insurance |
| Business Travel Accident Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83091376)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans<br>Hartford Certificate of Coverage | Accident Insurance |
| Company Death Benefit Plan | Self-Insured | PPG Industries, Inc. | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE and Matrix benefit plans | Death Benefit |
| Salary Continuance Plan | Self-Insured | PPG Industries, Inc. | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan | Partially Insured/Partially Self-Insured | Hartford Life Group Insurance Company *(Policy #SR-83086892)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix,  and Zenith benefit plans<br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Supplemental Long Term Disability Insurance Plan | Fully Insured | Harford Group Life Insurance Company *(Policy #SR-83089646)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, and Zenith benefit plans<br>Hartford Certificate of Coverage | Disability Income (Long-Term) |

**PPG000367**

**A-100**

| Employee Education Assistance Plan | Self-Insured | PPG Industries, Inc. | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans | Education Assistance |
| Employee Assistance Plan | Fully Insured | Magellan and some regional EAPs | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans | Employee Assistance |
| Salaried Severance Plan | Self-Insured | PPG Industries, Inc. | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, and Foundation benefit plans | Severance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision (Groups 0153801 and 0153802) | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans<br>Davis Vision Certificate of Coverage | Vision |

**PPG Industries, Inc. Group Benefits Plan—Henryetta, OK, Plan Number 552**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
|---|---|---|---|---|
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Henryetta, OK) | Medical |

**PPG Industries, Inc. Group Benefits Plan—Clarksburg, WV, Plan Number 553**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
|---|---|---|---|---|
| Indemnity Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Clarksburg, WV) | Medical |

**PPG Industries, Inc. Severance Pay Plan—Lake Charles, LA, Plan Number 560**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
|---|---|---|---|---|
| Severance Pay Plan #16 | Self-Insured | Highmark Blue Cross Blue Shield | Severance Pay Plan Policy | Severance Plan |

**PPG Industries, Inc. Group Benefits Plan—Louisville, KY, Plan Number 563**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
|---|---|---|---|---|
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. | Medical |

PPG000368

| Component Plan | Funding | Insurer or | Incorporated Documents | Benefit |
|---|---|---|---|---|
| | | | (Louisville, KY) | |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Louisville, KY)<br><br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Louisville, KY) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Louisville, KY) SPD | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Louisville, KY) SPD<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |
| Accident and Sickness Benefit Plan | Fully Insured | Life Insurance Company of NA *(Policy LK-100004)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Louisville, KY) SPD | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan *(for employees hired o/a 10/8/06)* | Fully Insured | Hartford Life Group Insurance Company *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Louisville, KY)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Emergency Squad Accidental Death and Dismemberment Insurance | Fully Insured | The Hartford *(Policy ETB-200939)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Louisville, KY) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Louisville, KY) SPD<br><br>Certificate of Coverage | Accident Insurance |

**PPG Industries, Inc. Group Benefits Plan—Chester, SC, Plan Number 571**

| Component Plan | Funding | Insurer or | Incorporated Documents | Benefit |
|---|---|---|---|---|

PPG000369

**A-102**

| | | Administrator | | |
|---|---|---|---|---|
| Preferred Provider Organization | Self-Insured | Highmark | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br>PPG Industries, Inc. Aetna HealthFund SPD | Medical |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan Life Insurance Company | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Dental |
| Voluntary Accidental Death and Dismemberment Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-68050215)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Seatbelt Wearer's Accidental Death Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83074553)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Business Travel Accident Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #SR-83091376)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Accident Insurance |
| Accident and Sickness Plan | Fully Insured | The Hartford *(Policy 83174145)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Disability Income (Short-Term) |
| Basic Long Term Disability Insurance Plan | Fully Insured | Hartford Life Group Insurance Company *(Policy #83175016)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | Disability Income (Long-Term) |
| Supplemental Long Term | Fully Insured | Harford Group Life | Group Benefits Plan booklet for Hourly | Disability Income |

61

**PPG000370**

**A-103**

| | | | | |
|---|---|---|---|---|
| Disability Insurance Plan | | Insurance Company *(Policy #83178160)* | Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Hartford Certificate of Coverage | (Long-Term) |
| Employee Education Assistance Plan | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Education Assistance |
| Adoption Assistance | Self-Insured | PPG Industries, Inc. | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass) | Adoption Assistance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Certificate of Coverage | Vision |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Fiber Glass)<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |

| PPG Industries, Inc. Retiree Medical Plan, Plan Number 576 | | | | |
|---|---|---|---|---|
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Preferred Provider Organization Plan for Non-Medicare eligible participants | Self-Insured | Highmark Blue Cross Blue Shield *(Group #15340)* | PPG Industries, Inc. Retiree Health Care Plan SPD | Medical |
| FreedomBlue Preferred Provider Organization for Medicare-eligible participants | Fully Insured | Highmark Blue Cross Blue Shield *(Group #178385)* | PPG Industries, Inc. Retiree Health Care Plan SPD<br><br>FreedomBlue Evidence of Coverage | Medical |
| Non-Sponsored Medical Reimbursement Plan | Self-Insured | N/A | PPG Industries, Inc. Retiree Health Care Plan SPD | Medical |
| Prescription Drug Plan for Non-Medicare eligible participants | Self-Insured | CVS Caremark | PPG Industries, Inc. Retiree Health Care Plan SPD | Prescription Drug |
| Prescription Drug Plan for Medicare-eligible participants | Partially Insured/Partially Self-Insured | SilverScript | PPG Industries, Inc. Retiree Health Care Plan SPD | Prescription Drug |

62

**PPG000371**

| | | | SilverScript Evidence of Coverage | |
|---|---|---|---|---|
| **PPG Industries, Inc. Employee Life and Other Benefits Plan, Plan Number 579** | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Basic Life Insurance Plan | Fully Insured | Life Insurance Company of North America *(Policy #980019)* | PPG Industries, Inc.  Benefit Plan SPD LINA Certificate of Coverage | Life Insurance |
| Basic Accidental Death and Dismemberment Plan | Fully Insured | Life Insurance Company of North America *(Policy #OK980046)* | PPG Industries, Inc.  Benefit Plan SPD applicable to employees in the CORE, Matrix, Foundation and Zenith benefit plans LINA Certificate of Coverage | Accident Insurance |
| **PPG Industries, Inc. Group Universal Life Insurance Plan, Plan Number 580** | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Group Universal Life Insurance Plan | Fully Insured | Metropolitan Life Insurance Company (Insurer) (Contract Number 92281-g) Mercer (Administrator) | PPG Industries, Inc.  Benefit Plan SPD applicable to CORE, Matrix, Foundation, Zenith, Fiber Glass and Cleveland Employees Metropolitan Certificate of Coverage | Life Insurance |
| **PPG Industries, Inc. Group Benefits Plan—Lake Charles, LA, Plan Number 586** | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Lake Charles Medical Clinic | Self-Insured | Highmark Blue Cross Blue Shield | Medical Clinic SPD | Medical |
| | | | | Benefit |
| | | | | Medical |
| **PPG Industries, Inc. Severance Pay Plan—Chicago, IL, Plan Number 588** | | | | |
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Preferred Provider Organization | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Chicago, IL) | Medical |
| HealthFund | Self-Insured | Aetna | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Chicago, IL) | Medical |

**PPG000372**

| | | | PPG Industries, Inc. Aetna HealthFund SPD | |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Chicago, IL) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Chicago, IL) SPD | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Chicago, IL) SPD <br><br> Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | Flexible Spending |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Chicago, IL) SPD <br><br> Certificate of Coverage | Accident Insurance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Chicago, IL) SPD <br><br> Davis Vision Certificate of Coverage | Vision |

**PPG Industries, Inc. Group Benefits Plan—Reading, PA Plan Number 589**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| --- | --- | --- | --- | --- |
| Preferred Provider Organization Plan | Self-Insured | Highmark Blue Cross Blue Shield | Group Benefits Plan booklet for Hourly Employees of PPG Industries, Inc. (Reading, PA) | Medical |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Reading, PA) SPD | Dental |
| Prescription Drug Plan | Self-Insured | Caremark, Inc. | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Reading, PA) SPD | Prescription Drug |
| Health Care and Dependent Care Flexible Spending Account | Self-Insured | WageWorks | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. | Flexible Spending |

64

**PPG000373**

| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
|---|---|---|---|---|
| | | | (Reading, PA) SPD<br><br>Articles V, VI and VII of the PPG Industries, Inc. Cafeteria Plan | |
| Accident and Sickness Benefit Plan | Fully Insured | Life Insurance Company of NA *(Policy LK-100004)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Reading, PA) SPD | Disability Income (Short-Term) |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Reading, PA) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Reading, PA) SPD<br><br>Davis Vision Certificate of Coverage | Vision |

| PPG Industries, Inc. Group Benefits Plan—Southern CA, Plan Number 590 | | | | |
|---|---|---|---|---|
| Component Plan | Funding | Insurer or Administrator | Incorporated Documents | Benefit |
| Health Maintenance Organization | Fully-Insured | Kaiser of Southern CA *(Group 228221)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Branch Store Bargaining) SPD<br><br>HMO Group Policy/Agreement | Medical/Prescription Drug |
| Dental Plan | Self-Insured | Metropolitan | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Branch Store Bargaining) SPD | Dental |
| Seat Belt Insurance Plan | Fully Insured | The Hartford *(Policy S06751)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Branch Store Bargaining) SPD<br><br>Certificate of Coverage | Accident Insurance |
| Vision Care Benefits Plan | Fully Insured | Davis Vision *(Groups 0153801 and 0153802)* | Group Benefits Plan for Hourly Employees of PPG Industries, Inc. (Branch Store Bargaining) SPD<br><br>Davis Vision Certificate of Coverage | Vision |

PPG000374

# EXHIBIT F



# Transcript of Karen Rathburn, Corporate Designee

**Date:** August 11, 2020
**Case:** Bellon, et al. -v- The PPG Employee Life and Other Benefits Plan, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

**Page 1**

```
 1        IN THE UNITED STATES DISTRICT COURT
 2      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
 3    ---------------------------x
 4  CHARLES W. BELLON, ROBERT    : Case No.
 5  E. EAKIN, JUDY GAY BURKE,    : 5:18-cv-00114
 6  LOUISE NICHOLS, WILTON G.    :
 7  WALLACE, BERNADOT F. VEILLON,:
 8  BARBARA BROWN, and ROBERT E. :
 9   (Caption continued on next page.)
10
11    Deposition of PPG INDUSTRIES, INC., by and through
12        its corporate designee, KAREN RATHBURN
13            Conducted Virtually
14          Tuesday, August 11, 2020
15              1:51 p.m. EST
16
17
18  Job No.: PB310128A
19  Pages: 1 - 113
20  Reported by: Pamela L. Beck
21
22
23
24
```

**Page 2**

```
 1   (Caption continued from previous page.)
 2   ---------------------------x
 3  WILLIAMS, on behalf of       :
 4  themselves and others        :
 5  similarly situated,          :
 6          Plaintiffs,          :
 7          v.                   :
 8  THE PPG EMPLOYEE LIFE AND    :
 9  OTHER BENEFITS PLAN, PPG     :
10  INDUSTRIES INC., and THE PPG :
11  PLAN ADMINISTRATOR,          :
12          Defendants.          :
13
14
15        Deposition of PPG INDUSTRIES, INC., by and
16  through its corporate designee, KAREN RATHBURN,
17  Conducted Virtually:
18
19
20
21        Pursuant to Notice, before Pamela L. Beck,
22  Court Reporter and Notary Public in and for the
23  Commonwealth of Pennsylvania.
24
```

**Page 3**

```
 1            A P P E A R A N C E S
 2    MAUREEN DAVIDSON-WELLING, ESQUIRE
 3    mdw@stembercohn.com
 4    STEMBER COHN & DAVIDSON-WELLING, LLC
 5    The Hartley Rose Building
 6    425 First Avenue, 7th Floor
 7    Pittsburgh, Pennsylvania 15219
 8    (412) 338-1445
 9
10    MICHAEL A. ADAMS, ESQUIRE
11    michael.adams@lewisbrisbois.com
12    LEWIS BRISBOIS BISGAARD & SMITH LLP
13    3054 Pennsylvania Avenue
14    Weirton, West Virginia 26062
15    (304) 491-4728
16
17  ON BEHALF OF DEFENDANTS:
18    JOSEPH J. TORRES, ESQUIRE
19    jtorres@jenner.com
20    JENNER & BLOCK
21    353 N. Clark Street
22    Chicago, Illinois 60654-3456
23    (312) 222-9350
24
```

**Page 4**

```
 1   A P P E A R A N C E S   C O N T I N U E D
 2    ON BEHALF OF DEFENDANTS:
 3      LINDSAY GAINER, ESQUIRE
 4      LITTLER MENDELSON, P.C.
 5      707 Virginia Street East
 6      Suite 1010
 7      Charleston, West Virginia 25301
 8      (304) 599-4600
 9
10    ALSO PRESENT:
11      ENRIQUE CASAS, AV Technician
12
13
14
15
16
17
18
19
20
21
22
23
24
```

5

1        C O N T E N T S

2  EXAMINATION OF KAREN RATHBURN           PAGE

3       By Ms. Davidson-Welling              6

4

5          E X H I B I T S

6        (Attached to transcript)

7  K. RATHBURN    DEPOSITION EXHIBIT        PAGE

8  Exhibit 1    Plaintiff's Amended Notice    10

9               of Deposition

10 Exhibit 2    Sal Ret Life Insurance Amounts 19

11 Exhibit 3    First Amendment to the        24

12              Employee Matters Agreement

13 Exhibit 4    Bates PPG005248 - 250         25

14 Exhibit 5    Employee Matters Agreement    84

15

16

17

18

19

20

21

22

23

24

6

1            P R O C E E D I N G S

2         REPORTER:  Will counsel please stipulate

3   that in lieu of formally swearing in the witness,

4   the reporter will instead ask the witness to

5   acknowledge that their testimony will be true under

6   the penalties of perjury, that counsel will not

7   object to the admissibility of the transcript based

8   on proceeding in this way, and that the witness has

9   verified that she is, in fact, KAREN RATHBURN.

10        ALL COUNSEL:  I agree.

11        THE WITNESS:  I agree.

12        REPORTER:  Ms. Rathburn, do you hereby

13  acknowledge that your testimony will be true under

14  the penalties of perjury?

15        THE WITNESS:  I do.

16        KAREN RATHBURN,

17      the witness herein, was examined and

18  testified under penalty of perjury as follows:

19          EXAMINATION

20  BY MS. DAVIDSON-WELLING:

21    Q    Good afternoon, Ms. Rathburn.

22    A    Good afternoon.

23    Q    Ms. Rathburn, would you please state your

24  full name for the record.

7

1     A    Karen P. Rathburn.

2     Q    And who is your current employer?

3     A    PPG Industries.

4     Q    Now, if I refer to PPG Industries,

5   Incorporated in this deposition as PPG, is that

6   okay?

7     A    Yes.

8     Q    If I refer to the PPG Employee Life and

9   Other Benefits Plan, Plan No. 579 and its

10  predecessor plans and providing retiree life

11  insurance to salaried PPG employees and former

12  employees as the PPG Plan, is that okay?

13    A    Yes.

14    Q    If I refer to PPG's sale of the commodity

15  chemicals operations to Georgia Gulf Corporation as

16  the Axiall transaction, is that okay?

17    A    Yes.

18    Q    Are you presently the plan administrator

19  for the PPG Plan?

20    A    Yes.

21    Q    And how long have you served as plan

22  administrator?

23    A    Since 2011.

24    Q    Ms. Rathburn, I know you went through a

8

1   deposition this morning, so I will try to keep this

2   brief, but I'm just going to go through a few more

3   sort of rules of the road kinds of questions very

4   quickly.  Okay?

5     A    Okay.

6     Q    Will you tell me if you don't understand

7   my question?

8     A    Yes.

9     Q    Will you tell me if you find my question

10  to be confusing?  Did you hear my question?

11    A    Yes.  I responded yes.

12    Q    Oh, okay.  I did not hear that.  Thank

13  you for answering again.  Will you tell me if I have

14  assumed an incorrect fact in a question?

15    A    Yes.

16    Q    Will you tell me if you don't know the

17  answer to a question?

18    A    Yes.

19    Q    Are you aware that your testimony today

20  is about a lawsuit involving a PPG Plan?

21    A    Yes.

22    Q    Do you understand that the answers that

23  you provide today to questions may be used in court?

24    A    Yes.

Transcript of Karen Rathburn, Corporate Designee
Conducted on August 11, 2020

5 (17 to 20)

17

1    A    Yes.

2    Q    Do you have any personal experience that
3 provides the basis for you to testify here today
4 with respect to that topic?

5         MR. TORRES:  Hold on a second.  If you're
6 going to start asking her about her personal
7 involvement, then I'm going to object as it's beyond
8 the scope of this, and you had a full morning to ask
9 her questions about her personal involvement.

10        So, we're not going to sort of reopen
11 this whole personal deposition through some backdoor
12 attempt.  So, with that said, go ahead and answer
13 the question, Karen.

14   A    So, we came up with a list of individuals
15 in March of 2012 originally, and then we refined the
16 listing throughout the time frame through July of
17 2012.  After that, we had additional discussions
18 between PPG and Georgia Gulf, which then led up to
19 the January amendment that we made to the EMA in
20 January of 2013.

21        And then discussions continued about
22 people that should be included or not included, and
23 then we got to a final listing in August of 2013.

24   Q    How many PPG retirees were transferred

18

1 from PPG's Welfare Plan, or from the PPG Plan to
2 Axiall Corporation's benefit plans as part of the
3 Axiall transaction?

4    A    I don't know the exact number, but we did
5 provide that.

6    Q    Do you have a -- I'm sorry, I cut you
7 off.

8    A    I'm sorry, I don't know the exact number.

9    Q    Do you have a ballpark?

10   A    No -- ballpark, about 1200.

11   Q    Of those who were transferred,
12 approximately how many were retired from salaried
13 employees?

14   A    Again, I don't know that information off
15 the top of my head.

16   Q    Do you have a ballpark number for that?

17   A    I don't.

18        MR. TORRES:  I'm going to object, just
19 because I think it's beyond the scope of your
20 notice.  But go ahead and answer, Karen.

21   A    I don't.

22        MS. DAVIDSON-WELLING:  Mr. Casas, would
23 you please bring up -- I think this would be the
24 30(b)(6) Exhibit 2.  It starts with PPG2420.

19

1         AV TECHNICIAN:  Okay, 30(b)(6), I have
2 Exhibit 2, I have it here.  Is that correct?

3         MS. DAVIDSON-WELLING:  I think so.  It
4 begins PPG2420 is the first Bates stamp.

5 BY MS. DAVIDSON-WELLING:

6    Q    Ms. Rathburn, would you please take a
7 look at the exhibit that's just been put in front of
8 you, which I would ask to have marked as 30(b)(6)
9 Exhibit 2.

10        AV TECHNICIAN:  Got it.

11        (Exhibit 2 was marked for
12 identification.)

13   Q    And if you would like Mr. Casas to scroll
14 down, let him know.

15        THE WITNESS:  Okay, go ahead, Mr. Casas.
16 Okay.

17   Q    Have you had a chance to review the
18 document that's in front of you?

19   A    Yes.

20   Q    Do you recognize the document that's in
21 30(b)(6) Exhibit 2?

22   A    Yes.

23   Q    Okay.  And what is this exhibit?

24   A    It's an exhibit of retirees with life

20

1 insurance amounts, and whether or not they would
2 have had -- and whether they were salaried or
3 hourly, and whether or not they had an SIB election
4 or not.

5    Q    Is this a list of the nonunion salaried
6 retirees who were transferred from the PPG Plan to
7 the Axiall Benefit Plan?

8    A    Yes, and surviving spouses.

9    Q    And surviving spouses, okay.  Were you
10 involved in the preparation of this list?

11   A    Yes.

12   Q    I think you mentioned the list reflects
13 the amount of life insurance that each nonunion
14 retired salaried employee was eligible for when
15 covered by the PPG Plan, is that right?

16   A    Yes.

17   Q    I noticed that there are, as you
18 mentioned, surviving spouses who are also on the
19 list, correct?

20   A    Yes.

21   Q    Why does the spreadsheet list N/A next to
22 the surviving spouses who were transferred in the
23 basic life coverage amount?

24   A    Because they've already been paid their

Transcript of Karen Rathburn, Corporate Designee
Conducted on August 11, 2020

25

1    THE WITNESS:  Okay, go ahead.
2    Q    Ms. Rathburn, do you recognize the email
3  chain that is in this exhibit?
4    A    Yes.
5        MS. DAVIDSON-WELLING:  Mr. Casas, I would
6  like to have this deposition marked as 30(b)(6)
7  Exhibit 4.
8        AV TECHNICIAN:  Got it.
9        (Exhibit 4 was marked for
10 identification.)
11 BY MS. DAVIDSON-WELLING:
12   Q    Did you receive a copy of the email chain
13 that's in 30(b)(6) Exhibit 4?
14   A    Is that a question to me?
15   Q    Yes, it is.
16   A    Did I receive a copy of this?
17   Q    Yes.
18   A    Of this email chain?
19   Q    Yes.
20   A    Yes.
21   Q    And this email chain is from August 2013,
22 correct?
23   A    Yes.
24   Q    Now, why were there additional changes to

26

1  the list of individuals being transferred from PPG
2  to Axiall in August of 2013?
3    A    We were trying to identify everybody that
4  was associated with the business, and so we were
5  working individually to identify people that should
6  belong and people that should not belong.
7    Q    And who was in charge of that effort to
8  identify individuals to be transferred?
9        MR. TORRES:  Object to the form of the
10 question.  Go ahead and answer if you can.
11   A    We as a benefits team worked together on
12 it.
13   Q    Is that the benefits team that you
14 managed?
15   A    Yes.
16   Q    Did PPG have difficulties in identifying
17 individuals who were associated with the commodity
18 chemicals business?
19       MR. TORRES:  Object to the form of the
20 question.  Go ahead and answer if you can.
21   A    So, for some people it was obvious, and
22 maybe they retired more recently, so their
23 information was known.  For others that maybe had
24 retired or left the company in earlier days and

27

1  especially when we had a different system, it might
2  have been more difficult.  But we did our best to
3  identify people that were associated with the
4  business.
5    Q    What steps did PPG take to try to
6  identify and select the retirees to be transferred
7  to Axiall?
8    A    We looked at records, payroll records, we
9  looked at the H&R system, we talked to people.  If
10 it was unclear on a particular person, we looked at
11 our health and welfare system.  We also looked at
12 records that would have shown, you know, the
13 location that the person worked at.  So, any and all
14 records were looked at for individuals.
15   Q    Is it fair to say that there was no
16 single set of records that answered the question
17 whether a retiree was associated with the commodity
18 chemicals business?
19   A    Correct.
20   Q    Were there some spouses of retirees
21 associated with the commodity chemicals business who
22 were not transferred to Axiall?
23   A    Our goal was to try to identify everybody
24 that had worked in the business, and if it was a

28

1  surviving spouse, to move that person over.  Again,
2  we had records to support those things, and
3  sometimes the records didn't have enough
4  information.
5    Q    I think I'm asking a slightly different
6  question, which is:  At the end of the day after the
7  list was final, was it still the case that there
8  were some spouses of retirees associated with the
9  commodity chemicals business who were not
10 transferred to Axiall?
11   A    Not to our knowledge.
12   Q    If you scroll up in this email, the
13 second page -- do you see there's an email on the
14 second page of this 30(b)(6) Exhibit 4 to you?  Do
15 you see that email?
16   A    I do.
17   Q    It's written by a gentleman named Michael
18 Smith.  Do you see that?
19   A    Yes.
20   Q    Do you see that Mr. Smith wrote to you
21 about deferred surviving spouses who were not listed
22 on Exhibit B?
23   A    I see that.
24   Q    Was he asking for confirmation from you

---

**33**

1 quite irrelevant whether she has any personal
2 knowledge, unless you're trying to ask her questions
3 that should have been asked in the morning.
4 BY MS. DAVIDSON-WELLING:
5     Q    You can answer.
6         MR. TORRES:  I'll let her answer this
7 time, but at some point we're going to get away from
8 this, what her personal knowledge is, because she's
9 not appearing in her capacity as personal knowledge.
10 So, unless you can explain to me the relevance of
11 whether she has personal knowledge, we're not going
12 to go through 20 more topics and cover this topic
13 every time.
14         MS. DAVIDSON-WELLING:  We're entitled to
15 find out what the foundation of the testimony is.
16 So, that is all that this is intended to do, and we
17 are perfectly within our rights to do that.
18         MR. TORRES:  Well, you're actually not.
19 I can bring someone off the street and prepare them
20 to answer your questions, it doesn't matter whether
21 their knowledge is personal or otherwise.
22         MS. DAVIDSON-WELLING:  I don't think
23 that's the issue, but the question is whether they
24 have foundation of knowledge.

**34**

1         MR. TORRES:  It doesn't matter whether
2 they have a foundation.  As long as they're prepared
3 to testify, it doesn't matter how they got the
4 information.  So, we're not going to do this for
5 every one of these.  We're just wasting time.  But
6 go ahead and answer the question if you can, Karen.
7     **A    So, while a transfer of retirees wasn't**
8 **required under the Reverse Morris Trust, it was a**
9 **consequence because Axiall took on the liabilities**
10 **of the business.  So, you know, originally we had an**
11 **original response, but we were advised that that**
12 **statement was incorrect, so we amended it and**
13 **modified our response.**
14     Q    Let me ask a different question.  What
15 have you done to make sure that you're able to
16 testify all of the information known to PPG about
17 topic 5?
18     **A    We had conversations to discuss the**
19 **question and to ensure that I was prepared to be**
20 **able to respond to it.**
21     Q    Did you have discussions with anyone
22 other than Mr. Adams, Mr. Jett or Mr. Torres about
23 that?
24     **A    No.**

**35**

1     Q    With respect to the Axiall transaction,
2 was PPG required to transfer retirees to satisfy
3 Reverse Morris Trust requirements?
4     **A    No.**
5     Q    Was PPG required to transfer OPAC
6 liabilities for the transaction to satisfy Reverse
7 Morris Trust requirements?
8     **A    It wasn't a requirement, but it was a**
9 **consequence, because of the fact that Axiall took on**
10 **the liabilities of the business, which included OPAC**
11 **liabilities.**
12     Q    PPG could have accomplished the sale of
13 the commodity chemicals business through a Reverse
14 Morris Trust without transferring retirees and OPAC
15 liabilities, correct?
16     **A    The Reverse Morris Trust, because they**
17 **were taking on the liabilities of the business, it**
18 **included the liabilities that were associated with**
19 **OPAC.  So, those were liabilities that they were**
20 **picking up because they were picking up liabilities**
21 **of the business.**
22     Q    I think you answered a different question
23 than I asked.  PPG could have accomplished the sale
24 of the commodity chemicals business through a

**36**

1 Reverse Morris Trust without transferring OPAC
2 liabilities, correct?
3         MR. TORRES:  It's hypothetical, but go
4 ahead and answer if you can.  Do you understand the
5 question, Karen?
6         THE WITNESS:  I do.
7     **A    Well, could you repeat the question,**
8 **please, if you would.**
9     Q    PPG could have sold the commodity
10 chemicals business and satisfied the requirements of
11 a Reverse Morris Trust transaction without
12 transferring the liabilities, correct?
13     **A    The answer is yes, they could have, but**
14 **that's not what the parties agreed to.  The parties**
15 **agreed that they would take on the liabilities of**
16 **the business, which included OPAC liabilities.**
17         MR. TORRES:  Maureen, you're starting to
18 break up again when you're asking your questions.
19         MS. DAVIDSON-WELLING:  Well, that's not
20 good.  Okay, I will try to stay a little bit closer
21 to the microphone, which will hopefully solve this
22 problem.  If it doesn't, please let me know.
23         MR. TORRES:  I'm also going to need to
24 break in a couple of minutes to return a call.

41

1    Q     But sitting here today, it sounds like
2  you don't recall which ones you looked at
3  specifically?
4    **A     The ones that are going to be most**
5  **relevant are going to be the ones that are closest**
6  **to the time frame in which the Axiall deal was**
7  **concluded, so that would have been the one that I**
8  **would have looked at.**
9    Q     And which one would that have been, what
10 year?
11   **A     2011.**
12   Q     So, you looked at the 2011 SPD?
13   **A     If that's the specific date on that, yes.**
14   Q     When you testified that you spoke with
15 various individuals to prepare to give testimony on
16 topic 12, did you speak with anyone other than
17 Mr. Torres, Mr. Jett and Mr. Adams?
18   **A     I would not have spoken with Mr. Jett**
19 **about this topic.**
20   Q     Okay.  So, you didn't speak with Mr. Jett
21 about this?
22   **A     I did not speak with Mr. Jett.**
23   Q     Other than looking at the 2011 SPDs and
24 speaking with Mr. Adams and Mr. Torres, did you do

42

1  anything else to prepare to give testimony on topic
2  12?
3    **A     No.**
4    Q     What is PPG's position on whether the PPG
5  Plan authorized removal and transfer of groups of
6  retirees out of the PPG Plan in January of 2013?
7    **A     So, the Plan didn't -- there was no**
8  **requirement for any authorization, because the Plan**
9  **did not prohibit or limit in any way PPG's actions**
10 **with respect to transferring these obligations.  So,**
11 **we weren't subject to any restrictions.**
12   Q     At any time prior to the Axiall
13 transaction, did the PPG Plan expressly provide that
14 groups of PPG retirees could be removed from the PPG
15 Plan?
16   **A     PPG reserved the right to amend, modify**
17 **or terminate the Plan in any way, shape or form**
18 **after particular dates, which we had discussed**
19 **previously.**
20   Q     I think I'm asking a slightly different
21 question.  At any time prior to the Axiall
22 transaction, did the PPG Plan expressly provide that
23 groups of PPG retirees could be removed from the PPG
24 Plan?

43

1         MR. TORRES:  It's been asked and
2  answered.  But go ahead and answer it again.
3    **A     So, retirees and active employees are**
4  **aware that PPG had reserved the right to amend,**
5  **modify or terminate the Plan.  It's in all of our**
6  **summary plan descriptions since we inserted that**
7  **language.  And it was also conveyed to employees and**
8  **retirees throughout the years on various occasions.**
9    Q     At any time prior to the Axiall
10 transaction, did the PPG Plan expressly state that
11 eligible PPG retirees could be transferred to
12 another company?
13        MR. TORRES:  It's been asked and
14 answered.  Go ahead and answer it again.
15   **A     Again, PPG reserves the right to amend,**
16 **modify or terminate the Plans as they see fit.**
17   Q     Does the PPG Plan ever -- did it ever,
18 prior to the Axiall transaction, make reference to
19 transferring employees or retirees?
20        MR. TORRES:  Same objection, it's been
21 asked and answered.  Go ahead and answer it again.
22   **A     Again, we reserve the right to modify,**
23 **amend, terminate the Plan, so that was always --**
24 **that language has been present in summary plan**

44

1  descriptions for many, many years.
2    Q     At the time of the Axiall transaction,
3  did the PPG Plan provide that PPG would provide
4  eligible retirees with their benefits?
5         MR. TORRES:  I'm sorry, can you read that
6  back or restate it.
7    Q     Sure.  At the time of the Axiall
8  transaction, did the PPG Plan provide that PPG would
9  provide eligible retirees with their benefits?
10   **A     About which population are we speaking?**
11   Q     Salaried retirees in the PPG Plan.
12   **A     Salaried retirees of PPG who were**
13 **remaining with PPG or who were transferring to**
14 **Axiall?**
15   Q     The question was about what the PPG Plan
16 stated.
17        MR. TORRES:  Well, it's vague as to time,
18 then.
19   Q     At the time of the Axiall transaction,
20 did the PPG Plan provide that PPG would provide
21 eligible retirees with their benefits?
22        MR. TORRES:  It's still vague as to time.
23 As the time of the transaction could encompass a
24 fairly large period of time, including after the

Transcript of Karen Rathburn, Corporate Designee
Conducted on August 11, 2020

12 (45 to 48)

45

1  transaction. So, I think that's the problem with
2  the question. But go ahead and answer if you can.
3     **A   I'm not certain who we're referring to,**
4  **if we're referring to those who were transferring to**
5  **Axiall. Could you help me understand the population**
6  **that we're discussing, please.**
7     Q   At the time of the Axiall transaction,
8  did the PPG Plan provide with respect to life
9  insurance, retiree life insurance that PPG would
10 provide eligible retirees with their benefits?
11    MR. TORRES: It's the same -- it's vague
12 as to time. I don't mean to keep saying that, but
13 at the time of the transaction is vague. Go ahead
14 and answer if you can.
15    **A   Again, I'm not clear based upon your**
16 **question if we were referring to those who are**
17 **transferring to the Georgia Gulf entity. Could you**
18 **help me to define the -- to which set of retirees**
19 **are we referring?**
20    Q   It's not a question about the retirees.
21 It's just a question about what the Plan stated.
22    MR. TORRES: Again, your question is
23 vague as to time. What the Plan said before the
24 transaction and after the transaction are two

46

1  different things. So, I think it's fair to clarify
2  what point in time as opposed to at the time of the
3  transaction, which could be before or after the
4  transaction was consummated.
5     MS. DAVIDSON-WELLING: Okay.
6  BY MS. DAVIDSON-WELLING:
7     Q   So, the Axiall transaction, would you
8  agree that -- the Axiall transaction, when did that
9  take place?
10    **A   The closing was in January 2013.**
11    Q   Prior to that, in 2013, during that
12 period, did the PPG Plan provide that PPG would
13 provide eligible retirees with their benefits?
14    **A   For those retirees who were participants**
15 **in the PPG Plan and who had eligibility for retiree**
16 **life insurance, PPG provided benefits to them up**
17 **until the date of closing, at which time those who**
18 **were transferred to the Axiall business, their**
19 **responsibility, the liabilities transferred to**
20 **Axiall at which time they became responsible for**
21 **providing the benefit, we helped them**
22 **transitionally, but at that point, that's when it**
23 **changed over.**
24    Q   The terms of the PPG Plan did not change

47

1  when the Axiall transaction took place, correct?
2     **A   That's correct.**
3     Q   Let me ask you about a different topic.
4  You've been designated with respect to topic No. 13
5  concerning PPG's position as to whether the SIB is a
6  pension benefit plan, is that correct?
7     **A   Yes.**
8     Q   What have you done to make sure that
9  you're able to testify to all of the information
10 known to PPG concerning topic 13?
11    **A   Again, prepared with the legal team.**
12    Q   Did you review any documents as part of
13 that preparation to testify on topic 13?
14    **A   No.**
15    Q   Other than Mr. Adams, Mr. Jett and
16 Mr. Torres, did you speak to anybody else?
17    **A   Not Mr. Jett.**
18    Q   Sorry?
19    **A   Not Mr. Jett.**
20    MR. TORRES: Just so we're clear, I think
21 she testified some time ago that the only topics she
22 conferred with Mr. Jett on is topic 5, or take
23 information from, it's just topic 5.
24    MS. DAVIDSON-WELLING: Okay.

48

1     Q   What does SIB stand for?
2     **A   Survivor income benefit.**
3     Q   Is that SIB benefit also referred to as
4  the RAL/SSB?
5     **A   Yes.**
6     Q   And what does RAL/SSB stand for?
7     **A   The RAL is escaping me at this moment in**
8  **time. The SSB is surviving spouse benefit. The RAL**
9  **is just escaping me right at this moment. I can't**
10 **think of what it is.**
11    Q   Does retired employee life insurance
12 sound right?
13    **A   There you go.**
14    Q   Are you familiar with the SIB benefits?
15    **A   Yes.**
16    Q   What is the RAL/SSB retiree life
17 insurance benefit offered by the PPG Plan?
18    **A   It's a death benefit, which by definition**
19 **makes it a welfare plan benefit that was provided to**
20 **a group of salaried people prior to a certain date**
21 **that provided that they would have a combination of**
22 **a life insurance benefit after their passing, a**
23 **partial lump sum, and then an ongoing benefit for**
24 **the surviving spouse.**

Transcript of Karen Rathburn, Corporate Designee
Conducted on August 11, 2020

13 (49 to 52)

49

1     Q     Does the RAL/SSB provide retirement
2  income to surviving spouses of deceased retired
3  former employees of PPG?
4     A     To some.
5     Q     To those who were eligible and elected
6  that benefit at retirement?
7     A     That's correct.
8     Q     Does the RAL/SSB provide a set monthly
9  payment to surviving spouses?
10    A     Yes.
11    Q     And that set monthly payment is
12 calculated based on the monthly pension benefit?
13    A     Yes, the development of the formula,
14 which calculated this welfare plan benefit, was
15 aligned with a pension, the amount of the pension.
16    Q     The RAL/SSB you said is a percentage of
17 the pension benefit, correct?
18       MR. TORRES:  Could you read that back,
19 Pam.  I lost track of that.
20       (The record was read back by the
21 Reporter.)
22    A     That's correct.
23    Q     You mentioned that the RAL/SSB is a death
24 benefit?

50

1     A     Yes.
2     Q     Well, let me ask you -- strike that.
3       What is PPG's position as to whether the
4  RAL/SSB, otherwise known as the SIB, is a pension
5  benefit plan as defined by ERISA?
6       MR. TORRES:  It's asked and answered, but
7  go ahead and answer it again.
8     A     It is not a pension benefit.  It is a
9  welfare plan benefit because it's a death benefit,
10 which by definition falls under a welfare plan
11 benefit.
12    Q     What do you understand a death benefit to
13 be?
14       MR. TORRES:  I'm going to just object to
15 the extent it calls for a legal conclusion, but
16 obviously go ahead and answer if you can.
17    A     It was a benefit that was paid upon the
18 death of the retiree because it was a life
19 insurance.
20    Q     Any other reasons why you think it was a
21 death benefit, or any other things that are part of
22 your understanding of a death benefit?
23    A     Well, because you have to be dead to get
24 it, to receive your benefits.

51

1     Q     What is the factual basis for PPG's
2  position that SIB is not a pension benefit plan?
3       MR. TORRES:  I'm going to object because
4  it's asked and answered.  She's not able to
5  testify -- I'm sorry, to the extent it calls for a
6  legal conclusion, I object to the question.  To the
7  extent you're asking her about facts, it's been
8  asked and answered.  But go ahead and answer it
9  again.
10    A     So, by definition, a death benefit is a
11 welfare plan benefit, and that's what it is.  And
12 because it is a death benefit, when we file our
13 5500s, we do it with respect to the fact that it's a
14 welfare plan benefit.
15    Q     Any other factual bases for PPG's
16 position?
17    A     No.
18       MR. TORRES:  Off the record for a second.
19       MS. DAVIDSON-WELLING:  Sure.
20       (There was a discussion off the record.)
21    Q     Ms. Rathburn, before the break, I was
22 asking you about the RAL/SSB or SIB benefits.  Do
23 you recall this?
24    A     Yes.

52

1     Q     When did the PPG Plan begin offering the
2  SIB benefits as part of its life insurance program?
3     A     I don't know the actual date.
4     Q     Do you know what decade?
5     A     No.
6     Q     Do you know if it was before 1978?
7     A     No.
8     Q     No, it was not, or no, you don't know?
9     A     No, I do not know.
10    Q     Turning to topics 14, Ms. Rathburn.  You
11 were also designated by PPG to testify as to the
12 value of the OPAC liabilities transferred to Georgia
13 Gulf Corporation and Axiall through the Axiall
14 transaction, and the amount of such liabilities
15 resulting from provision of retiree life insurance,
16 is that correct?
17    A     That's correct.
18    Q     What have you done to make sure that
19 you're able to testify regarding the information
20 known to PPG on this topic?
21    A     I looked at some information with regard
22 to what Mercer had provided.
23    Q     Anything else?
24    A     Spoke with counsel.

61

1  communicate regarding whether OPAC liabilities were
2  vested because both entities understood that welfare
3  benefits could not be vested, is that right?
4      A   I can tell you that I know that welfare
5  plan benefits are not vested benefits. It was not a
6  topic of discussion that we had with them. I cannot
7  get into their mind. I do not know what their
8  thoughts would be, but it was not a topic of
9  discussion.
10     Q   Did PPG tell Georgia Gulf that the OPAC
11 liabilities could be reduced or eliminated
12 post-transfer?
13     A   No, we never made any representations to
14 them about anything. What we discussed with them is
15 how we administered the Plan and what our Plan
16 provisions were. And that was up to them to make
17 any decisions that they were going to make.
18     Q   Did PPG tell Georgia Gulf that it would
19 be up to them whether to keep the benefits going
20 forward?
21     A   We explained how we administered the
22 Plan, and, you know, they had our summary plan
23 descriptions, they could look at our summary plan
24 descriptions. We provided all that to them. So,

62

1  again, that was their decision to make, and we
2  wouldn't have weighed in on that, because we knew
3  that that was their business and not ours.
4      Q   Did PPG tell Georgia Gulf that PPG
5  believed that the decision was up to Georgia Gulf
6  whether to keep the benefits post-transfer?
7      A   It wasn't a topic of discussion.
8      Q   You've also been designated with respect
9  to topic 16 in the 30(b)(6) Deposition Notice, which
10 is on representations made by Georgia Gulf
11 Corporation to PPG concerning the ability to pay
12 retiree benefits, or continuation of retiree benefit
13 plans post-transfer, including after any agreed-upon
14 transition period, is that correct?
15     A   That's correct.
16     Q   What have you done to make sure that you
17 are able to testify as to all of the information
18 known to PPG regarding topic 16 in the Deposition
19 Notice?
20     A   I was part of the transition as we're
21 talking about our roles and how we administer the
22 plans. I was part of that team that worked with the
23 Georgia Gulf team to discuss a variety of topics.
24 So, I was present at the vast majority of meetings

63

1  that would have ever happened, so yes.
2      Q   When you say you were present at the vast
3  majority of meetings that ever happened, what time
4  period are you referring to?
5      A   It would have been sometime in that time
6  frame. My recollection is it started somewhere
7  after announcement and ended long after closing.
8      Q   So, sometime around July of 2012 until
9  after -- until at least mid-2013, is that fair?
10     A   At least, and it was probably longer than
11 that as well, because we had other projects that we
12 were still working on with them.
13     Q   Other than -- did you speak to anyone
14 else in preparation for giving testimony on topic
15 16?
16     A   Yes, I spoke with counsel.
17     Q   Other than speaking with counsel, did you
18 do anything else to prepare to give testimony on
19 topic 16?
20     A   No.
21     Q   Were the counsel that you spoke with
22 Mr. Torres and Mr. Adams?
23     A   That's correct.
24     Q   And no other counsel, correct?

64

1      A   Correct.
2      Q   Did counsel provide you with any facts as
3  part of that preparation to give testimony on topic
4  16?
5          MR. TORRES: Just to be clear, Karen,
6  it's okay to discuss a topic that was identified
7  without getting into what specifically was discussed
8  with counsel, if that helps.
9      A   We would have talked about the -- we
10 would have talked about the knowledge with respect
11 to this particular point, 16.
12     Q   Did counsel provide you with any facts to
13 use as part of your testimony on topic 16?
14     A   There aren't -- I mean, there are no
15 facts, there are no facts with respect to
16 representations.
17     Q   So, counsel did not provide you with any
18 facts as part of the preparations to give testimony
19 on topic 16, correct?
20         MR. TORRES: Your question misstates her
21 prior testimony. But go ahead and answer if you
22 can, Karen.
23     A   I mean, I had personal knowledge.
24 Let me ask it this way: Ms. Rathburn,

69

1  prior to that date.
2      Q    And I think you had mentioned some
3  language and suggested it would be helpful to
4  actually look at the Employee Matters Agreement,
5  right?
6      A    With respect to -- I mean, if you wanted
7  to look at the specific language, yes.
8          MS. DAVIDSON-WELLING:  Mr. Casas, have
9  you received a copy of the Employee Matters
10 Agreement?  Do you have that exhibit that you could
11 pull up?
12         AV TECHNICIAN:  I do have it, counsel,
13 yes, the First Amendment Employee Matters Agreement.
14         MS. DAVIDSON-WELLING:  No, it's not the
15 First Amendment.  It was one that was just sent to
16 you I think.
17         AV TECHNICIAN:  Okay, give me one second,
18 please.
19 BY MS. DAVIDSON-WELLING:
20     Q    Ms. Rathburn, rather than have you sit,
21 we can move on, and we'll come back to that in a
22 little bit.  Does that work for you?
23     A    Sure.
24     Q    So, with respect to topic 17, you have

70

1  also been designated on behalf of PPG to testify
2  concerning any agreements between Georgia Gulf and
3  PPG related to the continuation and/or termination
4  of retiree life and retiree medical benefit plans or
5  OPAC liabilities, correct?
6      A    That's correct.
7      Q    What have you done to make sure that you
8  are able to testify as to all of the information
9  known to PPG on topic 17?
10     A    And I should have been more clear, and I
11 apologize that I wasn't on the other parts of this,
12 that, you know, when we prepare, not only -- you
13 know, we obviously provided discovery documents to
14 you all in response to questions.  So, we prepare
15 with the lawyers, but there were discovery documents
16 or things that we were looking for and did not find
17 with any of the topics we've been talking about with
18 respect to representations, anything in the
19 discovery that would have shown any representations
20 by Georgia Gulf or by PPG with respect to retiree
21 benefits.
22         So, I just wanted to make sure that I --
23 I apologize, I wasn't really as clear as I could
24 have been on that.  So, we talked to counsel, but

71

1  also, you know, obviously items had to be gathered
2  when putting together discovery.
3      Q    So, it sounds to me like you're saying
4  that your earlier testimony was not clear, and that
5  part of your testimony was based on a review of
6  documents, is that right?
7      A    Well, or the lack of documents.  So, in
8  the discovery, as you know, we provided documents in
9  discovery for this particular case.  We looked to
10 see and gather documents and searched through email
11 and all of the discoverable items as we were -- as
12 we should have and did, and didn't come up with
13 anything that showed any representations.  So,
14 there's the absence of them because they didn't --
15 none were discovered, none were found to have
16 existed.
17     Q    Before you go any further, let me ask
18 you:  Which topics does what you're talking about
19 apply to?  Are you saying that there was an absence
20 of documents with respect to -- to which topic are
21 you referring to?
22     A    So, I'm talking about representations --
23 when you were talking about the items that talk
24 about representations, both in 15 and 16.  And

72

1  obviously the other part too is that when we would
2  have been starting the transition, we would have
3  been made aware if there had been any
4  representations or any agreements as we were working
5  through that.
6          And we were never advised that there were
7  representations and never advised that there were
8  any agreements between PPG and Georgia Gulf with
9  respect to retiree benefits.
10     Q    Are there protocols that PPG has on
11 what -- written protocols on what information is
12 passed along after a merger is signed?
13         MR. TORRES:  Did you say protocols?
14         MS. DAVIDSON-WELLING:  Yeah.
15     A    I don't understand your question.
16     Q    I think you just testified that you
17 believe that if there had been some sort of
18 agreements on -- well, I'm not exactly sure which
19 topic you're referring to, that that information
20 would have been provided to you.
21         And I'm asking you, is there -- you know,
22 what is the basis for that?  Is there something in
23 writing that would support that?
24     A    There was nothing in writing that talked

Transcript of Karen Rathburn, Corporate Designee
Conducted on August 11, 2020

26 (101 to 104)

101

1 negotiating team as part of preparing to testify on
2 topic 19?
3       MR. TORRES: I'm going to object to the
4 form of the question, because it assumes facts as to
5 what she is or isn't required to do with respect to
6 this, and it also misstates her prior testimony.
7 But go ahead and answer it again.
8    **A   So, again, in preparation for this, I met**
9 **with counsel, we talked about documents that were**
10 **provided with respect to the discovery. And there**
11 **were no documents that talked about any**
12 **representations with respect to question 19.**
13     Q    Is that a no, you didn't speak to anyone
14 on the negotiating team?
15       MR. TORRES: Same objection to the
16 question, it's also argumentative. Go ahead and
17 answer it again.
18    **A   No.**
19     Q    Did PPG represent to Georgia Gulf
20 Corporation that the entire PPG Plan was a welfare
21 plan within the meaning of ERISA?
22       MR. TORRES: Objection to the extent it
23 calls for a legal conclusion. Go ahead and answer
24 if you can.

102

1    **A   Which entire PPG Plan?**
2     Q    The life insurance plan that we defined
3 as the PPG Plan at the beginning of this deposition.
4       MR. TORRES: You just said plans,
5 multiple, not singular.
6       MS. DAVIDSON-WELLING: My apologies. Let
7 me reask it then.
8     Q    Did PPG represent to Georgia Gulf
9 Corporation that the entire PPG Plan was a welfare
10 plan within the meaning of ERISA?
11    **A   We never made any representations on the**
12 **topic.**
13     Q    PPG never told Georgia Gulf that its life
14 insurance plan was a welfare plan?
15       MR. TORRES: She just answered your
16 question, Maureen. I mean, really, this is getting
17 a little bit abusive. Okay? You're asking the same
18 questions to have her say the same thing over and
19 over and over again. Go ahead and answer it again,
20 Karen.
21    **A   We never made any representations on the**
22 **topic.**
23     Q    Let me take you to -- turn to topic 22.
24 Ms. Rathburn, you were --

103

1       MR. TORRES: Topic 22 you said?
2       MS. DAVIDSON-WELLING: Topic 22.
3     Q    Ms. Rathburn, you were designated to
4 testify on behalf of PPG for topic 22 concerning
5 post-transaction communications between Georgia Gulf
6 Corporation, Axiall and PPG specifically with
7 respect to Axiall's termination of retiree life
8 insurance and changes in retiree medical benefits,
9 correct?
10    **A   Correct.**
11     Q    Okay. What did you do to make sure that
12 you had all of the information to testify on this
13 topic?
14    **A   Again, spoke with counsel, Mr. Adams,**
15 **Mr. Torres, and also, again, there was a discussion**
16 **about documents that were provided in discovery that**
17 **would have come about in discovery. And there were**
18 **none, documents to be found, because there was no**
19 **communication between PG and Georgia Gulf, Axiall at**
20 **that point in time regarding the termination of**
21 **retiree life insurance.**
22       **We learned about it after Axiall had made**
23 **its decision to terminate the benefits, and we were**
24 **notified by participants.**

104

1     Q    So, PPG at some point became aware that
2 Axiall had made changes to the retiree medical
3 benefits for PPG retirees, correct?
4    **A   Are we talking about retiree life?**
5     Q    First we're talking about retiree
6 medical.
7       MR. TORRES: Hold on, I'm going to object
8 because it's beyond the scope of the dep notice.
9 You can answer in your individual capacity.
10    **A   Again, we were not made aware until after**
11 **they made the decision to terminate the benefits for**
12 **the retirees, and we were notified by some of the**
13 **impacted retirees.**
14     Q    And PPG also learned after the fact that
15 Axiall had announced that it was eliminating retiree
16 life insurance coverage for transferred PPG
17 retirees, correct?
18    **A   Again, Axiall made the decision, we**
19 **learned about it after retirees were communicated**
20 **with. And we were advised by some of those retirees**
21 **that Axiall had made that decision, that they had**
22 **taken that action.**
23     Q    Were there any communications between PPG
24 and Axiall concerning the changes to the PPG

---

**105**

1  retiree's medical coverage after that change was
2  announced?
3      MR. TORRES:  You're asking about retiree
4  medical?
5      MS. DAVIDSON-WELLING:  Yes.
6  **A   What time frame are you talking about?**
7  Q   Probably in 2014.
8  **A   Well, at some point --**
9      MR. TORRES:  Hold on.  Just so we're all
10 on the same page here, the time reference that --
11 are you asking at any time or after it was
12 announced?  I just want to make clear we're on the
13 same time period, because I think that's what's
14 causing some of the confusion here.
15 Q   I'm just trying to find out if after it
16 was announced, there were communications between PPG
17 and Axiall about the change?
18     MR. TORRES:  Go ahead and answer if you
19 can, Karen.
20 **A   I can't speak to a specific time frame,**
21 **but eventually we had discussions with them on**
22 **retiree medical because of the union involvement**
23 **with that.**
24 Q   Do you recall whether those discussions

**106**

1  were before or after Axiall announced that it was
2  eliminating retiree life insurance?
3  **A   It was after.  There were documents that**
4  **we would have reviewed that we would have been made**
5  **aware of.  The retirees had sent us a copy of the**
6  **communication, so there were documents that we**
7  **reviewed from that, their announcement of that,**
8  **which my recollection is, it included both a**
9  **discussion about retiree life and retiree medical,**
10 **but I'm not 100 percent certain of that.**
11 Q   Did Axiall provide to PPG a copy of its
12 communications to participants notifying them that
13 it was eliminating the benefits?
14 **A   No.**
15 Q   With respect to both the medical coverage
16 and the life insurance coverage, did PPG find out
17 that Axiall had announced that it was going to make
18 changes from participants?
19 **A   Yes, because the participants notified**
20 **us.  That's how we first became aware of the**
21 **situation, that PPG was -- that Axiall was taking**
22 **action with respect to its post-retirement benefits.**
23 Q   And did PPG contact Axiall after Axiall
24 announced that it was reducing the medical coverage

**107**

1  in 2014?
2      MR. TORRES:  Objection.  This lawsuit is
3  not about retiree medical coverage, so I'm objecting
4  to this as being beyond the scope of what's
5  reasonable here.  But go ahead and answer it again
6  so we can waste some more time on some extraneous
7  topics, Karen.
8  **A   I don't know.**
9  Q   Did PPG contact Axiall after Axiall
10 announced that it was going to eliminate the retiree
11 life insurance benefits?
12 **A   I don't know.**
13     MS. DAVIDSON-WELLING:  Let's take a short
14 break.  We're getting close to the end of --
15     THE WITNESS:  Can we just finish, please.
16     MS. DAVIDSON-WELLING:  I think we need at
17 least two minutes.  You can stay right there.  It
18 won't take long.
19     MR. TORRES:  Let's take two minutes as
20 opposed to the last few breaks so she can get on
21 with her day.
22     MS. DAVIDSON-WELLING:  We're going off
23 the record.
24     (There was a recess in the proceedings

**108**

1  from 5:09 p.m. to 5:11 p.m.)
2  BY MS. DAVIDSON-WELLING:
3  Q   Ms. Rathburn, what is the basis for PPG's
4  position that it had the right to transfer retirees
5  and OPAC liabilities to Axiall?
6      MR. TORRES:  Hold on a second.  So, what
7  topic does this relate to?
8      MS. DAVIDSON-WELLING:  It would relate to
9  a couple of them I think.
10     MR. TORRES:  Not by my reading.
11     MS. DAVIDSON-WELLING:  I think both topic
12 12 and also topic 11, to the extent that it's based
13 on the Plan documents.
14     MR. TORRES:  So, you want to cover topics
15 you've already explored with this woman over the
16 last several hours again?  Is that what you're
17 saying?
18     MS. DAVIDSON-WELLING:  We're trying to do
19 this last little bit, and then we're very close to
20 being done.
21     MR. TORRES:  My question was:  You're
22 covering topics you already covered extensively with
23 this witness, is that correct?
24     MS. DAVIDSON-WELLING:  We are asking a

# EXHIBIT G

Execution Version

## FIRST AMENDMENT TO THE EMPLOYEE MATTERS AGREEMENT

**THIS FIRST AMENDMENT** (this "*First Amendment*") to the Employee Matters Agreement (the "*Agreement*"), dated as of July 18, 2012, by and among PPG Industries, Inc. ("*Burgundy*"), Eagle Spinco Inc. ("*Spinco*"), and Georgia Gulf Corporation ("*Grizzly*"), is entered into on January 25, 2013. Capitalized terms used but not otherwise defined in this First Amendment shall have the meanings ascribed to them in the Agreement.

### BACKGROUND

**WHEREAS**, the Parties wish to amend the Agreement as set forth below.

**NOW THEREFORE**, in consideration of the mutual agreements, provisions, and covenants contained in this Amendment, the Parties hereby agree as follows:

### AMENDMENT

1.  Section 1.13 of the Agreement is amended and restated as set forth below:

    1.13 "*Current Spinco Employee*" means any individual listed on *Exhibit A* to this Agreement, which *Exhibit A* may be updated by Burgundy on or prior to February 20, 2013 to reflect new hires and terminations that occur prior to the Effective Time in the ordinary course of business consistent with past practice.

2.  Section 1.17 of the Agreement is amended and restated as set forth below:

    1.17 "*Former Spinco Employee*" means any individual listed on *Exhibit B* to this Agreement, which *Exhibit B* may be updated by Burgundy on or prior to February 20, 2013 to reflect (a) any individual who is listed on *Exhibit A* as a Current Spinco Employee and who ceases to be employed by Burgundy or one of its Subsidiaries prior to the Effective Time, and (b) any individual who, after December 31, 2010, (i) became an inactive employee and was engaged in the Eagle Business prior to becoming an inactive employee or (ii) became a surviving spouse of an inactive employee who was engaged in the Eagle Business prior to becoming an inactive employee; provided, however, that Grizzly shall have the right, prior to May 1, 2013, to confirm that each of the individuals proposed to be listed on the final *Exhibit B* to this Agreement was engaged in the Eagle Business (or the surviving spouse of such an individual) and if Grizzly reasonably demonstrates to Burgundy, in Burgundy's reasonable, good faith judgment, that such individual was not engaged in the Eagle Business (or the surviving spouse of such an individual), such individual shall not be included on the final version of *Exhibit B* to this Agreement. Subject to applicable Law, Burgundy shall provide



Exhibit
Rathburn 30b6- 3
EC 8-11-20

W/2055721v5

**PPG103064**

**A-123**

to Grizzly all information reasonably available to Burgundy that is reasonably requested by Grizzly in order for Grizzly to conduct the confirmation described in the proviso to the immediately preceding sentence.

3.    The Parties agree that *Exhibit A* attached to this First Amendment constitutes *Exhibit A* to the Agreement as of the Closing Date and replaces and supersedes *Exhibit A* to the Agreement that was delivered concurrently with the Agreement on July 18, 2012.

4.    The Parties agree that *Exhibit B* attached to this First Amendment constitutes *Exhibit B* to the Agreement as of the Closing Date and replaces and supersedes *Exhibit B* to the Agreement that was delivered concurrently with the Agreement on July 18, 2012.

5.    The second sentence of Section 6.2(b) of the Employee Matters Agreement is amended and restated in its entirety as set forth below:

Mercer LLC (the "*Actuary*") shall deliver to the Parties an initial estimate of the US DB Transfer Value (the "*Estimated US DB Transfer Value*") on the first business day following the date on which the Effective Time occurs, and the Parties shall cause the transfer of Assets from the Burgundy US DB Trust to the Spinco US DB Trust equal to 90 percent of the Estimated US DB Transfer Value (the "*Initial US DB Transfer Amount*") as promptly as practicable (and in no event more than 5 days) after the date on which the Actuary has delivered to the Parties the Estimated US DB Transfer Value (such transfer, the "*Initial US DB Transfer*").

6.    Sections 6.5(b) and (c) are amended and restated as set forth below:

(b)    As of the Effective Time, Spinco shall establish a deferred compensation plan (the "*Spinco DCP I*") which is substantially identical to the corresponding Burgundy Deferred Compensation Plan, as amended July 14, 2004 then in effect ("*Burgundy DCP I*"). Notwithstanding the foregoing, the deemed investment opportunities provided under the Spinco DCP I will be the same as offered by Grizzly in its corresponding plan. For the avoidance of doubt, and consistent with the terms of the Burgundy DCP I (including Burgundy's authority to amend the Burgundy DCP I), Grizzly's authority to select deemed investment funds for the Spinco DCP I includes the following: (i) Grizzly may offer or not offer the same or similar investment funds as are offered by Burgundy as of the Closing for any period determined to be appropriate, and/or (ii) Grizzly may offer or not offer company stock as a deemed investment fund alternative, and/or (iii) (A) Grizzly may transfer the account balance of any Spinco Employee required to be held in the company stock fund to any other investment fund alternative then offered under the Spinco DCP I,

2

PPG103065

and (B) such Spinco Employee may thereafter re-direct the investment of such transferred amount to any other deemed investment fund then offered under the Spinco DCP I. From and after the Effective Time, (x) Spinco shall assume the Liabilities for all benefits under the Burgundy DCP I with respect to Spinco Employees who were participants in the Burgundy DCP I as of immediately prior to the Effective Time, (y) Spinco shall pay all such benefits under the Spinco DCP I in accordance with its terms and (z) Spinco shall indemnify Burgundy for all such Liabilities described in the immediately preceding clauses (x) and (y). Notwithstanding anything to the contrary contained in this Section 6.5(b), following the one-year anniversary of the Effective Time, Spinco shall have no obligation to provide for additional deferrals of compensation pursuant to the Spinco DCP I.

(c)       As of the Effective Time, Spinco shall establish a deferred compensation plan (the "*Spinco DCP II*") which is substantially identical to the corresponding Burgundy Deferred Compensation Plan, as amended September 24, 2008 then in effect ("*Burgundy DCP II*"). Notwithstanding the foregoing, the deemed investment opportunities provided under the Spinco DCP II will be the same as offered by Grizzly in its corresponding plan.  For the avoidance of doubt, and consistent with the terms of the Burgundy DCP II (including Burgundy's  authority to amend the Burgundy DCP II), Grizzly's authority to select deemed investment funds for the Spinco DCP II includes the following:  (i) Grizzly may offer or not offer the same or similar investment funds as are offered by Burgundy as of the Closing for any period determined to be appropriate, and/or (ii) Grizzly may offer or not offer company stock as a deemed investment fund alternative, and/or (iii) (A) Grizzly may transfer the account balance of any Spinco Employee required to be held in the company stock fund to any other investment fund alternative then offered under the Spinco DCP II, and (B) such Spinco Employee may thereafter re-direct the investment of such transferred amount to any other deemed investment fund then offered under the Spinco DCP II.  From and after the Effective Time, (x) Spinco shall assume the Liabilities for all benefits under the Burgundy DCP II with respect to Spinco Employees who were participants in the Burgundy DCP II as of immediately prior to the Effective Time, (y) Spinco shall pay all such benefits under the Spinco DCP II in accordance with its terms and (z) Spinco shall indemnify Burgundy for all such Liabilities described in the immediately preceding clauses (x) and (y). Notwithstanding anything to the contrary contained in this Section 6.5(c), following the one-year anniversary of the Effective Time, Spinco shall have no obligation to provide for additional deferrals of compensation pursuant to the Spinco DCP II.

3

PPG103066

7.      The following new Section 9.3 is added to the Agreement:

     9.3      <u>Compensation Reimbursement Arrangement</u>.

     (a)      Consistent with the terms of the Agreement, Burgundy will continue to pay on behalf of Grizzly and Spinco the total cost of compensation, benefits and related taxes for Spinco Current Employees ("***Spinco Current Employee Expenses***") for the period beginning on January 28, 2013, and ending on January 31, 2013 (such period, the "***Reimbursement Period***").

     (b)      Promptly, but in no event later than ten calendar days following the conclusion of the Reimbursement Period, Burgundy shall deliver to Grizzly an itemized invoice (the "***Invoice***") stating the amount of Spinco Current Employee Expenses in respect of the Reimbursement Period (the "***Invoiced Amount***"). Promptly, but in no event later than ten calendar days following receipt by Grizzly of the Invoice, Grizzly shall pay the Invoiced Amount to Burgundy by wire transfer of immediately available funds to an account designated by Burgundy.

8.      Except as otherwise expressly provided herein, the terms and conditions of the Agreement shall remain in full force and effect.

***[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]***

4

PPG103067

**IN WITNESS WHEREOF,** the Parties have caused this First Amendment to the Employee Matters Agreement to be duly executed as of the day and year first above written.

PPG INDUSTRIES, INC.

By: _____

Name: ___Michael H. McGarry_____

Title: ___Executive Vice President_____

EAGLE SPINCO INC.

By: _____

Name: ___Michael H. McGarry_____

Title: ___President_____

GEORGIA GULF CORPORATION

By: _____

Name: _____

Title: _____

[Signature Page to First Amendment to the Employee Matters Agreement]

PPG103068

A-127

**IN WITNESS WHEREOF,** the Parties have caused this First Amendment to the Employee Matters Agreement to be duly executed as of the day and year first above written.

PPG INDUSTRIES, INC.

By: _____

Name: _____

Title: _____


EAGLE SPINCO INC.

By: _____

Name: _____

Title: _____


GEORGIA GULF CORPORATION

By: _____

Name: _Timothy Mann, Jr._____

Title: _Executive Vice President, General Counsel_
        and Corporate Secretary

[Signature Page to First Amendment to the Employee Matters Agreement]

PPG103069

*Exhibit A*

## Current Spinco Employees

## United States

| Full Name | PPG ID |
|---|---|
| Abalo, Komlan | 198359 |
| Abbas, Sid Ali Malek (Malek) | 142294 |
| Acheson, William K | 123857 |
| Adams, Calvin | 123867 |
| Adams, Cornelius III | 253196 |
| Adams, Dwayne A | 199763 |
| Adams, Jerome | 173101 |
| Adams, Larry M | 106244 |
| Adams, Steven T | 235420 |
| Adkins, Dwane F | 106248 |
| Adkins, Jerry D | 106249 |
| Albritton, Claude F | 123932 |
| Alexander, Jason G | 168068 |
| Aliff, James F Jr | 153318 |
| Alleman, Paul N | 123967 |
| Allen, Ernie L | 100050 |
| Allen, Jess N | 100052 |
| Allen, Michael T | 106263 |
| Allison, Quincy J | 261045 |
| Alston, Crystal L | 167969 |
| Amy, Aubrey A | 106266 |
| Andenora, Carolyn S | 111421 |
| Andenora, James A | 109076 |
| Andersen, Richard P | 100076 |
| Anderson, Charles E | 124032 |
| Anderson, David J | 143703 |
| Anderson, Don G | 124038 |
| Anderson, Jacqueline T (Jackie) | 100080 |
| Anderson, Larry A | 124043 |
| Anderson, Matthew S | 124045 |
| Anderson, Megan E | 197272 |
| Anderson, Nathan B | 256760 |
| Anderson, Ryan M | 234608 |
| Anderson, Sherry D | 106268 |
| Andrepont, Anthony J | 107467 |
| Andrepont, Garrett W | 252513 |

| Full Name | PPG ID |
|---|---|
| Andrepont, Rod F | 124063 |
| Ange, Henry JR | 124070 |
| Angelini, Theresa G (Terri) | 100104 |
| Arabie, Scott Lane | 124089 |
| Arabie, Terrell G | 124090 |
| Arabie, Yvonne R | 106271 |
| Arbour, Lucious Y | 124092 |
| Archer, Nile A | 156313 |
| Ardoin, Andre' J | 124099 |
| Ardoin, Carroll K (Keith) | 100120 |
| Ardoin, Daniel K (Kent) | 124100 |
| Ardoin, David L | 124101 |
| Ardoin, Mark A | 124103 |
| Ardoin, Marvin L | 124104 |
| Ardoin, Mychelle C (Cheri) | 124105 |
| Arendt, Christopher G | 181126 |
| Armelin, Jeffrey Lyn Jr | 253928 |
| Arrant, Chad S | 161612 |
| Arredondo, Trinidad | 169388 |
| Arsement, Leonard P | 100128 |
| Art, William E | 181292 |
| Ash, Gary L | 124146 |
| Ash, Jeffrey A | 124147 |
| Ashby, Wayne | 260202 |
| Ashworth, Paulette M | 153851 |
| Aubry, Michael K | 106278 |
| Aucoin, Bobby W | 159591 |
| Aucoin, Harold A (Harry) | 124169 |
| Axtle, J Brian | 107483 |
| Ayala, Samuel JR | 189882 |
| Ayers, Kevin K | 107484 |
| Aymond, Daniel J | 179101 |
| Babaz, Michael | 144844 |
| Babe, Eric B | 124197 |
| Babineaux, Neil T | 230718 |
| Babineaux, Roy D | 176113 |

PPG103070

**A-129**

| Full Name | PPG ID |
|---|---|
| Badeaux, Richard Aaron (Aaron) | 167532 |
| Bailey, Dennis M | 100170 |
| Baker, Dean R | 110470 |
| Baker, Douglas D | 106287 |
| Baker, Julie S | 257068 |
| Baker, Lisa K | 110474 |
| Baker, Mark S | 124240 |
| Baker-Deshotel, Kimberly L | 107195 |
| Balcerek, Joshua J | 177050 |
| Baldauff, Erika A | 100190 |
| Baldauff, Joseph F Jr | 100191 |
| Baldridge, Nina L | 109111 |
| Balusek, August A JR | 167697 |
| Barbee, Mlinda A | 168518 |
| Barber, Joseph | 197912 |
| Barker, Dwight E Sr | 124327 |
| Barker, Jeffrey M | 100223 |
| Barlow, Vance C | 257184 |
| Barnaba, Peter C JR | 124337 |
| Barnett, Richard G (Rick) | 181291 |
| Barrett, Beverly F | 106298 |
| Barrow, Brandon C (Chad) | 142349 |
| Barrow, Lucas W | 124381 |
| Barrow, Wylie A | 226495 |
| Barry, Debra A | 100241 |
| Bart, Julie T | 100242 |
| Bascle, Joey J | 260409 |
| Batiste, Anthony D | 124410 |
| Batiste, Gerald M JR | 252874 |
| Baty, Barbara J | 124415 |
| Bauer, Kelly L | 160083 |
| Baxter, Dendalee D | 186475 |
| Beadle, Clifford R | 100270 |
| Beard, Arvin W | 106304 |
| Beasley, Kevin M | 140771 |
| Beaty, Eli B (Ben) | 142341 |
| Beaver, Jerald S | 124465 |
| Bechman, Randy D | 200994 |
| Beisel, Steven C | 175794 |

| Full Name | PPG ID |
|---|---|
| Bellon, Danny L | 124522 |
| Bellon, David J | 110510 |
| Bellon, Paul Lee | 124523 |
| Bellon, Shelley R | 176185 |
| Bellow, Farrah N | 193684 |
| Beltz, Joshua W | 234609 |
| Benglis, David M | 124535 |
| Bennett, Byron K | 124538 |
| Bennett, Charles R | 124539 |
| Bennett, Michael D | 145171 |
| Bennett, Pamela S | 106319 |
| Benoit, Curtis P Jr | 124545 |
| Benoit, Jammie S | 234906 |
| Benoit, Michael A | 124548 |
| Benoit, Tommy J | 124550 |
| Benoit, William Jude | 257181 |
| Bensinger, John A | 176394 |
| Benton, Larry J | 100330 |
| Benton, Lawrence B II | 228141 |
| Berardinelli, Joseph E | 100334 |
| Berardinelli, Rita M | 124559 |
| Berger, Carl R | 106324 |
| Bergstrom, Larry R | 100339 |
| Berkey, Paul E | 124567 |
| Berletch, Richard A | 153315 |
| Bern, Kurtis A | 234601 |
| Bernard, Denys S (Scott) | 107514 |
| Bernas, A G | 106325 |
| Berry, Randy | 144257 |
| Berry, Robert K | 124583 |
| Bertrand, Darren T | 141248 |
| Bertrand, Deanna J | 168568 |
| Bertrand, Derek T | 178621 |
| Bertrand, Lonnie E | 143642 |
| Bertrand, Michael L | 124589 |
| Bertrand, Ronald | 100352 |
| Berwick, Cory A | 256858 |
| Berzas, Paul R (Randy) | 236594 |
| Beshore, Diana L | 172632 |

PPG103071

| Full Name | PPG ID |
|---|---|
| Beveridge, Charles E JR | 106331 |
| Biagas, Hyland J JR | 124609 |
| Bias, Calvin J | 107516 |
| Bienvenu, James M | 229051 |
| Biessenberger, Lawrence C | 124623 |
| Bishop, Anthony R | 234610 |
| Bishop, Ronnie E | 124647 |
| Bitner, Bert D | 142225 |
| Blain, Jeremy W | 142499 |
| Blair, Amber L | 129599 |
| Blalock, Brandon A | 252450 |
| Blanchard, Gary W | 227737 |
| Blanco, Frank | 110530 |
| Blanco, Frank Thomas | 229661 |
| Bland, Anthony M | 256927 |
| Bland, Barry E | 259636 |
| Bland, Bernard E | 124700 |
| Blatt, Ronald J | 124724 |
| Blevins, Paul J | 124725 |
| Boatner, Dwight James | 232655 |
| Bodkins, Robert A | 100433 |
| Bohrer, Sarah A | 182757 |
| Bokanovich, Dawn E | 124765 |
| Bond, Matthew S | 154363 |
| Bondy, Albert R | 141404 |
| Bonin, Myra J | 107523 |
| Bonsall, Jr, Walter L | 192434 |
| Booher, John L | 106356 |
| Book, Barney Carroll Jr | 124796 |
| Boone, Brittany B | 256246 |
| Boos, Kevin A | 124806 |
| Bordelon, Stephen P | 142340 |
| Borel, Preston Reese (Reese) | 144811 |
| Boretzky, Patricia A | 106359 |
| Borrowdale, Tracie B | 253550 |
| Boudreaux, Levin Todd | 124831 |
| Boudreaux, Mark E | 124832 |
| Boughner, John D | 106362 |
| Bourgeois, Jenni R | 255667 |

| Full Name | PPG ID |
|---|---|
| Bourgeois, Kenneth J | 124838 |
| Bourgoyne, Christopher W | 256940 |
| Bourne, Kenneth D | 142347 |
| Boutte, John H (Herman) | 100486 |
| Bowen, Vicki L | 106365 |
| Bowers, April M | 230063 |
| Boxie, Roxanne G | 100497 |
| Boyett, Bryan T | 124896 |
| Boyette, David W | 100507 |
| Boyette, James K (Kevin) | 100509 |
| Bradford, Lauren M | 259542 |
| Brady, Roger A | 124921 |
| Brame, John T | 124926 |
| Brashear, Thomas N JR | 124935 |
| Brasher, Robert E | 100532 |
| Brassieur, Derrick D | 160392 |
| Brassieur, Lynda D | 109197 |
| Bray, Dedrick S | 257073 |
| Brazitis, Carey R | 100539 |
| Breaux, Katrina Diana | 252865 |
| Breaux, Teddie J | 124950 |
| Breen, William Michael | 257070 |
| Breski, Peter J | 100549 |
| Brewer, Jeren J | 257885 |
| Bridgeman, John B | 100554 |
| Bridges, Ravone Dale | 124984 |
| Brignac, Paul | 124999 |
| Brill, David C | 125000 |
| Brinkmeier, Brian D | 143700 |
| Briscoe, Carlton L | 253808 |
| Briscoe, Jerry D | 125010 |
| Brittain, Robert W | 172752 |
| Brock, Brandon T | 261044 |
| Brock, Garlon T (Trevor) | 144846 |
| Brock, Robert S | 106378 |
| Brookover, Ricky L | 125031 |
| Brookover, S L | 106378 |
| Brooks, James P | 260558 |
| Brooks, Philip A | 231229 |

PPG103072

| Full Name | PPG ID |
|---|---|
| Brooks, Robert E | 100577 |
| Brossett, Hyun J | 100581 |
| Broughman, Nelson E | 259637 |
| Broussard, Arthwayne | 125054 |
| Broussard, Bradley R (Brad) | 125056 |
| Broussard, Damon Lewis | 235053 |
| Broussard, Dustin C | 253554 |
| Broussard, James Edward | 252076 |
| Broussard, Mark A | 125057 |
| Broussard, Rapheal | 252075 |
| Brown, Andrew M | 257881 |
| Brown, Craig W | 125071 |
| Brown, Debra K | 107551 |
| Brown, Gregory R | 100589 |
| Brown, Johnnie R | 125083 |
| Brown, Jon E | 261078 |
| Brown, Larry K | 100593 |
| Brown, Peggy V | 106386 |
| Brown, Russell D | 182528 |
| Browning, Donald B | 156164 |
| Brugger, Michael R | 107556 |
| Brunet, Ana G (Grizelle) | 100612 |
| Bruno, Marguerite (Dodi) | 107557 |
| Brunson, Timothy L | 255598 |
| Buchanan, Bryan H | 125147 |
| Buchanan, Floyd | 125150 |
| Buck, Paul M | 106392 |
| Bucki, Renee M | 105875 |
| Budge, Casey A | 176875 |
| Buford, Ralph D (David) | 100627 |
| Bugler, Dennis L | 100628 |
| Bulian, Lee A | 106393 |
| Buller, Brandon W | 125172 |
| Buller, Kent W | 256920 |
| Bunch, Gregory E | 125181 |
| Bunch, Lisa M | 231676 |
| Burdette, Gregory A | 100642 |
| Burgin, Billy J | 125206 |
| Burke, Sharon J | 106396 |

| Full Name | PPG ID |
|---|---|
| Burkett, Jackie L | 125213 |
| Burkhart, Todd J | 100650 |
| Burleson, Telisa R | 128051 |
| Burney, Ryan K | 235867 |
| Burns, Benjamin D (Ben) | 144538 |
| Burr, Jake Phillip II (Phillip) | 145170 |
| Burt, Bobby R (Rusty) | 141251 |
| Burton, Dwayne D | 125258 |
| Burton, John M | 197495 |
| Busby, Virginia M (Ginger) | 100666 |
| Bush, David R | 100668 |
| Bushnell, Bryan K | 256245 |
| Bushnell, Travis J | 200423 |
| Butler, Alex | 100678 |
| Buxton, Eugene V Jr | 158804 |
| Byrd, Robert E | 229543 |
| Cain, Austin P | 236244 |
| Cain, Brenda E | 125329 |
| Cain, Donald P | 125330 |
| Cain, Joseph P | 125331 |
| Calbert, Vaughn | 230600 |
| Calcote, Jeffrey M | 153314 |
| Calcote, Lloyd L JR | 100701 |
| Callaway, Ronnie M | 106409 |
| Camara, Stephen D | 228494 |
| Camerlin, V P | 109233 |
| Campana, Guillermo | 100718 |
| Campbell, Bruce L | 110606 |
| Campbell, Harold A | 176680 |
| Campbell, Jason W | 100721 |
| Campbell, Jonita L | 125402 |
| Campbell, Melvel L | 261447 |
| Campbell, Timothy M | 167156 |
| Cantrell, Justin W | 182188 |
| Cantu, Juan R | 259468 |
| Captain, Gregory W | 168263 |
| Captain, Ray C Jr | 229758 |
| Carlisle, Erika E | 167087 |
| Carnahan, Bryan S | 125464 |

PPG103073

| Full Name | PPG ID |
|---|---|
| Carpenter, Brian D | 106424 |
| Carpenter, David J | 257541 |
| Carpenter, Duane D | 100757 |
| Carrier, Jermaine J | 231081 |
| Carson, Douglas R Jr | 256764 |
| Casey, Jessie B | 100783 |
| Castellanos, Maria Elena | 234585 |
| Castille, Linda K | 106442 |
| Castille, Vince J | 125536 |
| Castleberry, Robert L (Bob) | 100792 |
| Castro, Joe A III | 100793 |
| Ceasar, Rodney K | 125569 |
| Cecil, Matthew S | 125573 |
| Cecil, Robert W | 125574 |
| Celestine, Tasheena R | 233075 |
| Chafin, Cory P | 257882 |
| Chamberlain, Harry | 125588 |
| Chambers, Frank E | 228754 |
| Chaney, Theresa Joy | 252174 |
| Chapa, Robert L | 230178 |
| Chapman, Darren K | 177726 |
| Chapman, Nelson | 125622 |
| Chapman, Stephen J | 100811 |
| Charles, Calvin Jr. | 235954 |
| Charles, Dallas G | 259713 |
| Charles, Derrick W | 125626 |
| Charles, Norris L | 125628 |
| Chattick, Brent E | 234597 |
| Chaumont, Andre L | 125636 |
| Chavanne, Robert J | 125637 |
| Chavis, Justin L | 261444 |
| Chenevert, William W | 176820 |
| Chenier, Michael W Jr | 200422 |
| Cheramie, Tina | 182778 |
| Chesson, Kasi C | 252875 |
| Childers, Jack A | 234611 |
| Chretien, Bobby Joseph | 125672 |
| Chretien, Jeffery J | 125673 |
| Christen, Robert N | 106440 |

| Full Name | PPG ID |
|---|---|
| Ciotti, Judith A | 107594 |
| Cisar, Aaron D | 142828 |
| Clanton, Michael R | 228446 |
| Clapp, Jed Q | 197761 |
| Clapp, Mitchell R (Reed) | 100852 |
| Clark, Kathy D | 110648 |
| Clark, Robert K | 125727 |
| Clark, Stephen M | 100869 |
| Clark, Vernon W | 125731 |
| Clarke, Keith J | 125734 |
| Clausen, Jon C | 125738 |
| Clavier, Donald R | 201107 |
| Clegg, William R | 125747 |
| Clemons, Gaynell V | 100881 |
| Clifton, Douglas C | 182531 |
| Cline, Bryon | 261079 |
| Cline, Franklin D | 110654 |
| Cobaugh, Tim R | 100890 |
| Cobb, Thelma A | 106448 |
| Cochran, James A | 106450 |
| Cochran, Leroy J | 125782 |
| Colbert, Donald P | 100903 |
| Cole, Randy | 161369 |
| Coleman, Alecia A | 100912 |
| Collins, Bobby R | 125824 |
| Collins, Karen S | 125831 |
| Collins, Robert Q | 125835 |
| Collor, Marvis Y | 232911 |
| Combs, Robert A | 125850 |
| Comeaux, Brian K | 100935 |
| Comeaux, Daren P | 201379 |
| Comeaux, Eric | 252449 |
| Compton, Gregory A | 106456 |
| Coniglio, Roy C | 100940 |
| Conley, Charles O | 252509 |
| Conner, Kevin A | 125873 |
| Conner, Thomas A | 100946 |
| Conner, Troy A | 125875 |
| Conners, Gregory J | 259638 |

PPG103074

A-133

| Full Name | PPG ID |
|---|---|
| Conrad, Evan J | 228570 |
| Conrad, Sara S | 100952 |
| Conroy, Sean M | 229293 |
| Contreras, Maureen R | 180470 |
| Cook, Christopher W | 106464 |
| Cooley, Joshua K | 233803 |
| Cooley, Wiley L | 125912 |
| Cooley, William E | 152446 |
| Cooper, Douglas O | 125921 |
| Cooper, Stephen A | 125930 |
| Copper, Chad J | 125943 |
| Corbello, Frances A (Anne) | 107621 |
| Cormier, Alphonse Larry (Larry) | 100980 |
| Cormier, Roger D | 143351 |
| Cormier, Timothy L | 228973 |
| Cornman, Greg A | 199232 |
| Corpus, Arturo | 106470 |
| Correll, Jeffrey A | 153316 |
| Cosper, David A | 125981 |
| Courvelle, Donald | 126003 |
| Courvelle, Lottie R | 107618 |
| Courville, Steven G | 126004 |
| Couvillon, Colleen B | 197496 |
| Couvillon, David R | 154301 |
| Cradeur, Douglas J | 126038 |
| Craig, Rebecca S | 101018 |
| Crall, Michael D | 101021 |
| Crippen, John N | 196493 |
| Cropley, Terry L | 101049 |
| Croxdale, Pat D | 126112 |
| Croxdale, Shane H | 126113 |
| Crutcher, Justin D | 197569 |
| Cubbage, Charles J | 258153 |
| Cubero-Ponce, Lynnette M | 234389 |
| Cumpston, Barbara E | 101067 |
| Curtis, Luke A | 234612 |
| Curtis, Tony E | 106488 |
| Daigle, Craig F | 253809 |
| Daigre, Chad J | 126182 |

| Full Name | PPG ID |
|---|---|
| Daniel, Darnell D | 126202 |
| Daniels, George R | 126208 |
| Danielson, Eric O | 143701 |
| Danielson, Jesse D | 101109 |
| Dansby, Arthur JR | 126212 |
| Dargin, Carmen D | 186053 |
| Dartez, John W III | 158805 |
| Darwiche, Mary P | 101113 |
| Daugherty, Charles A | 110728 |
| Daugherty, John T | 126230 |
| Daugherty, William J | 106496 |
| Davault, Morgan LeFaye (Faye) | 175849 |
| David, John E | 101121 |
| David, Rafe N | 126240 |
| Davies-Newman, Theresa A | 101122 |
| Davis, Ermon B JR | 126264 |
| Davis, Gary E. | 153115 |
| Davis, Linard Craig (Craig) | 101135 |
| Davis, Tina M | 200062 |
| Davis, Ulric J | 256933 |
| Davis, William JR | 107650 |
| Dawson, Michael C | 126311 |
| De Michele, Teri | 101149 |
| Deal, Janelle L | 144693 |
| Dearien, David E | 126334 |
| Deboest, Milton M | 110745 |
| DeBoest, Troy A | 126340 |
| Deere, Daryl P | 257544 |
| Defelice, Matthew G | 101180 |
| Dejean, Fredrick | 126358 |
| Delafosse, Jeremy C | 182530 |
| DeLeo, Aaron P | 257886 |
| Delgado, Edna I | 200280 |
| Demeritt, Earl | 101194 |
| Dempsey, Lester R (Butch) | 101197 |
| Dennis, David G | 126392 |
| Dennis, Stanley E | 126395 |
| Dent, Garry L Jr | 252508 |
| Derby, Sandra D | 126403 |

PPG103075

A-134

| Full Name | PPG ID |
|---|---|
| Derks, Genee' L | 154981 |
| DeRoche, Rocky L | 101212 |
| Derouen, Troy K | 126406 |
| Derrick, Jason F | 126408 |
| Desadier, Ron T | 126410 |
| Deshotel, Gilbert R | 101221 |
| Deters, Ellen R | 155345 |
| Deutsch, Thomas E | 101227 |
| Diamond, Michael T | 185944 |
| Dickens, Robert J | 261237 |
| Dickerson, Brandon P | 159590 |
| Diethorn, David W | 101243 |
| Dietrich, David | 142762 |
| Dinnell, Gregory A | 257883 |
| Dishong, David E | 101251 |
| Dixon, Deshon J. | 235813 |
| Doak, Brian K | 106523 |
| Dobbs, Larry S | 106524 |
| Dobbs, Michael R | 106525 |
| Dobrasko, Michael P | 101262 |
| Dobson, Joseph A | 168386 |
| Doherty, Sandra L | 261118 |
| Domaingue, Robert L | 126513 |
| Domingue, Christopher C | 184299 |
| Domingue, Kenny L Sr | 161611 |
| Dore', Scott M | 143645 |
| Doshier, Eric A | 109384 |
| Dotson, Napoleon J JR | 177049 |
| Doty, Dennis M | 171110 |
| Doucet, Alfred JR | 126544 |
| Doucet, Buck P | 110774 |
| Doucet, Jeffrey D | 126546 |
| Doucett, Clarence R Jr | 154912 |
| Dowers, Michael W | 126563 |
| Downing, John W | 106533 |
| Downs, James E | 110781 |
| Drake, James L | 126579 |
| Dronet, Darnell A | 105924 |
| Dronet, Michael P | 126593 |

| Full Name | PPG ID |
|---|---|
| Drozda, Enoch C | 153259 |
| Drozda, Tanya J | 126595 |
| Duckworth, Christopher S | 234613 |
| Duckworth, Melinda | 234590 |
| Duff, Randall A | 261080 |
| Dufford, Richard E | 126610 |
| Duhon, Carl E | 126614 |
| Duhon, Harold | 126616 |
| Duhon, Shawn M | 183580 |
| Duhon, Travis K | 141770 |
| Duke, William E | 106537 |
| Duncan, Luke D | 176064 |
| Duncan, Mark D | 126626 |
| Duncan, Thomas M IV (Mac) | 101339 |
| Dunham, Mark D | 193680 |
| Dunham, Randal J | 126628 |
| Dunnehoo, Evon M | 106539 |
| Duplechain, Darrin J | 126637 |
| Duplechain, James K (Kendall) | 143150 |
| Duplechain, Robert W | 110795 |
| Duplechan, Glenn T | 126639 |
| Dupuis, Richard K | 126645 |
| Durio, Richard J | 126655 |
| Durkin, Janet A | 101349 |
| Dye, Deborah K | 126661 |
| Dyer, Michael E | 107682 |
| Dyer, Robert C | 153253 |
| Eaglin, Brian K | 184297 |
| Earl, John D (Dewaine) | 126677 |
| East, John Craig | 253552 |
| East, Michal G | 168920 |
| Easton, James H | 126696 |
| Eaves, Edward W (Will) | 229752 |
| Ebberts, Kent S | 234595 |
| Eddy, Craig A | 181337 |
| Eddy, Floyd | 106547 |
| Eddy, M D | 126710 |
| Edgmont, Chelsea A | 257965 |
| Edman, John T | 101371 |

PPG103076

| Full Name | PPG ID |
|---|---|
| Edwards, Andrei L | 179842 |
| Edwards, Nathaniel J | 126736 |
| Efaw, Anna M | 126741 |
| Efaw, Michael A | 101376 |
| Elkins, Kenneth D | 176116 |
| Ellender, Derrick J | 154335 |
| Ellender, Thomas E | 126758 |
| Elliott, Bennie L | 106551 |
| Elliott, Donovan L | 101399 |
| Elnikar, Lindsey E | 235868 |
| Emch, Scott E | 126789 |
| Emery, R D | 106556 |
| Emigh, Aaron E | 176180 |
| Ernst, Eric S | 101419 |
| Ernst, Gregory A | 126819 |
| Espinosa, Christopher J | 257542 |
| Estel, Jonathan W | 106558 |
| Estep, Suzanne M | 105938 |
| Estep, Timothy S | 126840 |
| Etienne, Raymond J | 126848 |
| Evans, A Randall | 126849 |
| Everritt, Joseph M (Mark) | 101451 |
| Ewing, Douglas L | 168066 |
| Ewing, Frank D (Don) | 101454 |
| Fabry, Jamie L | 126878 |
| Fajerski, Mark A | 101461 |
| Falcon, Calvin A | 126887 |
| Falk, Christine R | 234591 |
| Farbarik, Janet | 109441 |
| Fast, Aaron S | 197339 |
| Fast, Aaron W | 235419 |
| Fast, Bobby A | 126909 |
| Faulk, Scott J | 101485 |
| Feldmeier, Robert M JR | 101498 |
| Ferguson, Dale R | 106573 |
| Ferguson, Phillip S | 107703 |
| Ferguson, Richard H | 101507 |
| Ferrell, James R | 126941 |
| Ferrell, Keith A | 126943 |

| Full Name | PPG ID |
|---|---|
| Ferrell, Roger C | 101514 |
| Ferrington, Nathan K | 143340 |
| Fetty, Beryl S | 109459 |
| Fetty, Justin S | 252504 |
| Filey, Justin P | 101533 |
| Finn, David E | 126977 |
| Fiorilli, David J | 106578 |
| Fisher, John R | 101553 |
| Fleeger, Claire R | 257858 |
| Flowers, Susan D | 106583 |
| Floyd, John H | 101582 |
| Fobbs, Allison M | 176872 |
| Fokuo, Gloria A | 101587 |
| Folse, Nathan P Jr | 155059 |
| Fontenot, Brian S | 127065 |
| Fontenot, Daniel I II | 252431 |
| Fontenot, Dennis J | 127069 |
| Fontenot, Easton | 127070 |
| Fontenot, Eugenia L | 127071 |
| Fontenot, Jamie D | 230533 |
| Fontenot, John S | 127073 |
| Fontenot, Joseph B (Joey) | 197760 |
| Fontenot, Joseph R | 127074 |
| Fontenot, Joshua E | 199479 |
| Fontenot, Joshua T | 253109 |
| Fontenot, Marc J | 101593 |
| Fontenot, Michael A | 253807 |
| Fontenot, Thomas R | 145169 |
| Fontenot, Todd A | 199314 |
| Foote, Albert Jr | 160452 |
| Foote, Patricia A | 127079 |
| Ford, Theodore P | 106590 |
| Foreman, Ralph W | 232900 |
| Forrester, Donald E JR | 127105 |
| Foster, Carrie K | 198360 |
| Foster, George R | 107717 |
| Foster, Joseph S | 127122 |
| Fountain, Tiffany L | 142344 |
| Fountaine, Nicholas A | 255553 |

PPG103077

| Full Name | PPG ID |
|---|---|
| Fowler, Anthony E | 127127 |
| Fox, Charles G (Chuck) | 127131 |
| Fox, Charles M | 127132 |
| France, James N | 101624 |
| Francis, Darrel J | 127152 |
| Frank, Wilbert | 110863 |
| Franklin, Rhonda K | 107283 |
| Franklin, Samuel D | 127171 |
| Franks, Kevin C | 201381 |
| Franks, Michael D | 252610 |
| Franks, Rondal V | 127173 |
| Frazier, Alicia S | 197671 |
| Frazier, Clint W | 185880 |
| Freeman, Rufus III | 233826 |
| Frey, Nicholas E | 235421 |
| Friesner, Oland | 127217 |
| Friesner, Richard Craig | 127218 |
| Fruge, Chad A | 180504 |
| Fruge, Dean A | 127234 |
| Fruge, Jeremy C | 230530 |
| Fruge, Phillip A Jr | 256681 |
| Frye, Bruce E | 106600 |
| Frye, Ronald F | 127237 |
| Fuchs, Michael J | 176063 |
| Fuller, Matthew L | 259240 |
| Fuselier, Albert J JR | 127263 |
| Fuselier, Darrell W | 127264 |
| Fussell, Jonathan D | 236667 |
| Gabbard, Danny L | 127270 |
| Gafford, Robert J | 127282 |
| Galley, David L. | 235373 |
| Gallow, Valinda A | 127310 |
| Galloway, Harry L | 106608 |
| Galloway, Perry R JR | 106609 |
| Garcia, Alberto A | 230721 |
| Garcia, Richard R | 176230 |
| Garner, Corey | 110896 |
| Gary, Christopher J | 201221 |
| Garza, Mark A | 107737 |

| Full Name | PPG ID |
|---|---|
| Gasior, Wayne R | 101732 |
| Gaspard, Raley N | 261046 |
| Gaspard, Ricky A | 106613 |
| Gaspard, Thomas J JR | 127406 |
| Gaston, Alton A | 234614 |
| Gatian, Robert L | 127414 |
| Gaudet, Stephen M | 101739 |
| Gauding, Rudy J | 127417 |
| Gautreaux, Hubert T | 197338 |
| Gawith, Connie A | 127423 |
| Gaydos, Natalie A | 170935 |
| Gayle, Paul E Jr | 253556 |
| Gerami, Timothy J | 101769 |
| Gibbs, Richard J | 234615 |
| Gibson, Mark D | 127482 |
| Giggar, Chris D | 127496 |
| Giggar, Ryan S | 153247 |
| Gil, Denise Y | 105957 |
| Gil, Gary R | 101786 |
| Gilbert, Danny G | 127500 |
| Gilbert, Douglas J | 201105 |
| Gilchrist, Kate Y | 197340 |
| Gill, Shannon Scott | 107748 |
| Gillespie, M J | 127518 |
| Gillihan, Terrance M | 234633 |
| Gilmore, Jesse W | 182529 |
| Glover, Joel D | 110918 |
| Glover, Linda K | 101818 |
| Glover, R A | 127568 |
| Glover, Robert G | 127570 |
| Glover, William D | 101819 |
| Glow, Michael J | 143705 |
| Goddard, Pamela J | 127581 |
| Goddard, Rebecca B | 225806 |
| Goetz, Lisa A | 106630 |
| Goff, Danny L | 106631 |
| Golleher, George A | 167062 |
| Gomes, Lyndon E | 127604 |
| Gomez Pardo, Amy J | 100751 |

PPG103078

| Full Name | PPG ID |
|---|---|
| Gongola, Anthony S | 227736 |
| Gonzalez, Christopher | 185877 |
| Gonzalez, Jose L | 107761 |
| Good, Bernard R | 127631 |
| Goodfriend, Cody P | 176246 |
| Goodman, Isiah | 259813 |
| Gore, Michael Keith | 260418 |
| Gore, Thomas K | 257635 |
| Goss, Stacy M | 256553 |
| Gotcher, Jason W | 234616 |
| Goudy, Bryan M | 101864 |
| Gouldsberry, Douglas E | 127673 |
| Goulet, William L (Bill) | 106638 |
| Graham, George A | 232903 |
| Grampa, Bruno J | 106642 |
| Grantham, Terrance E | 106643 |
| Gray, Rebecca M | 101890 |
| Gray, Thomas | 261081 |
| Graybill, Clark S | 101891 |
| Green, Brandon | 185802 |
| Green, Josie F | 197847 |
| Green, Pertnan | 127720 |
| Green, Russell E | 159816 |
| Griffen, Timothy J | 127764 |
| Griffin, Janita R | 252070 |
| Griffin, Jimmie R | 127774 |
| Griffin, John D | 127776 |
| Griffin, Kenneth | 144247 |
| Griffin, Patrick B | 127779 |
| Griggers, Jonathan L | 106649 |
| Griggers, Pamela Kay | 181020 |
| Grilli, Frank R | 106650 |
| Grimes, Jeffrey M | 101929 |
| Grogan, Ronald E | 228755 |
| Groholski, Michelle A | 101934 |
| Groller, James E | 257959 |
| Grubb, Larry D | 101943 |
| Gruspier, Jeffrey M | 127828 |
| Guajardo, Delia L | 253194 |

| Full Name | PPG ID |
|---|---|
| Guerra, David | 234617 |
| Guidry, Amadia J III | 167535 |
| Guidry, Christine M | 106661 |
| Guidry, Dustin M. | 236067 |
| Guidry, James L | 127849 |
| Guidry, Jamie N | 127850 |
| Guidry, Kenneth J (Ken) | 127851 |
| Guidry, Michael I | 101955 |
| Guidry, Nicholas J | 256062 |
| Guidry, Tracie K | 158803 |
| Guillory, Abram P | 195339 |
| Guillory, David P Jr | 198681 |
| Guillory, Dwayne | 127859 |
| Guillory, Edward S | 199762 |
| Guillory, Glen J | 127861 |
| Guillory, Joseph T | 127865 |
| Guillory, Karen J | 152443 |
| Guillory, Landon B | 182189 |
| Guillory, Louis M | 107779 |
| Guillory, Matthew T | 176317 |
| Guillory, Ronald K | 127869 |
| Guillory, Russell J | 230407 |
| Guillory, Stephen R | 101957 |
| Gunderson, Christian E | 234605 |
| Gunto, Carl M | 127884 |
| Gunto, Glen A | 106666 |
| Gustin, Christopher | 145172 |
| Haas, John A | 256932 |
| Habetz, Keith J | 127911 |
| Habig, Danyel K | 127912 |
| Hagar, Janice N | 101979 |
| Hahn, Thomas M | 234618 |
| Haines, Don L | 101989 |
| Haines, Scott L | 197687 |
| Hall, Brandon S | 182593 |
| Hall, Randall M | 101998 |
| Hammers, Joshua G | 228573 |
| Hanks, Gregory J | 128049 |
| Hanney, Charles N | 128061 |

PPG103079

| Full Name | PPG ID |
|---|---|
| Hans, Sonja L | 106684 |
| Hantz, Anthony L | 128067 |
| Haraminac, Rebecca | 102029 |
| Hardesty, Justin B | 200288 |
| Hardman, Randall M | 106688 |
| Harmon, Brandy N | 196670 |
| Harmon, Leonard C | 128095 |
| Harmon, Linda S | 106689 |
| Harrell, John M (Mahlon) | 107796 |
| Harris, George Jr | 256931 |
| Harris, Ray | 253758 |
| Harris, Roy II | 184296 |
| Harris, Shannon D | 183578 |
| Harris, Thomas M | 128142 |
| Harris, Vivian E | 195341 |
| Hart, John A III | 102055 |
| Hartsfield, Douglas E | 152835 |
| Harvey, Kimberly A | 101065 |
| Harvey, Richard E | 102070 |
| Harvill, Jason C | 234619 |
| Harwell, Scotty N | 192435 |
| Hash, Aaron | 234620 |
| Hatfield, Thomas B | 102080 |
| Hathaway, Michael R | 128188 |
| Haught, Beverly A | 106699 |
| Haught, Larry L | 128202 |
| Haught, Larry L JR | 128201 |
| Haught, Steven B | 102081 |
| Hawes, Mina Hantz | 107805 |
| Hawkins, Gerald B | 106702 |
| Hawkins, Gregory P | 152447 |
| Hawkins, John A | 102088 |
| Hawkins, Keri S | 170495 |
| Hay, Fayla I | 106703 |
| Hayes, Bernard M | 128225 |
| Hayes, Charles M | 102093 |
| Hayes, Mark K | 111027 |
| Hayes, William B | 106706 |
| Hazell, Terry W | 128249 |

| Full Name | PPG ID |
|---|---|
| Heard, Horace N JR | 128257 |
| Hearod, Tommie D | 182594 |
| Heasley, Lance E | 106709 |
| Heasley, Ronald V | 102108 |
| Hebert, Archie | 128263 |
| Hebert, Belinda C (Bea) | 106710 |
| Hebert, Derrick A | 128264 |
| Hebert, Everett J | 102111 |
| Hebert, Karl D | 128266 |
| Hebert, Kenneth P | 128267 |
| Hebert, Larry J | 106711 |
| Hebert, Marcus K | 106712 |
| Hedrick, Steven D | 128292 |
| Heintzman, Chad R | 106716 |
| Heintzman, Curtis D. | 154275 |
| Henderson, John D JR | 102138 |
| Henning, Stephen B | 128347 |
| Henning, Timothy | 141769 |
| Henry, Dalton J JR | 128350 |
| Henry, Michael S JR | 128355 |
| Henthorn, James F JR | 128371 |
| Henthorn, Jason L | 256763 |
| Henthorn, N A | 127100 |
| Henthorn, William R | 106721 |
| Herpin, Adlas L | 128401 |
| Herrick, J A | 128402 |
| Herrick, Nathaniel J | 128403 |
| Hester, Thomas E | 102164 |
| Hewitt, David K | 102167 |
| Hicks, Christopher R (Ryan) | 257312 |
| Hicks, Gary J | 128441 |
| Hicks, Kelly R | 140473 |
| Hicks, Ricci W | 128446 |
| Higginbotham, Troy K | 102176 |
| Higgins, Donald K | 128452 |
| Highley, Brian K | 128454 |
| Hildebrand, Donald L | 102181 |
| Hill, C Douglas | 156315 |
| Hill, David E | 106732 |

Page A-11 of 22

PPG103080

| Full Name | PPG ID |
|---|---|
| Himel, Randall S (Shane) | 142346 |
| Hines, Mark A | 128507 |
| Hirsch, Nikolaus O | 234621 |
| Hissam, Alan E | 128524 |
| Hitt, Richard E | 106740 |
| Hizer, Timothy B | 106741 |
| Hoff, Larry | 234622 |
| Hoffpauir, Ronald W | 106744 |
| Hoggatt, Bradley C JR | 234583 |
| Hollier, Billy Joe | 128583 |
| Holmes, Patrick W | 128604 |
| Holmes, Willie JR | 128608 |
| Holstine, Donald W | 128612 |
| Holt-Cherrington, Codi L | 261017 |
| Honeycutt, Todd M | 102246 |
| Honore', Terence R | 128621 |
| Hood, Jason E | 259639 |
| Hooks, Richard J | 139503 |
| Hoops, Michael A | 102250 |
| Horan, J Thomas | 102262 |
| Horner, Joseph L | 128662 |
| Hoskinson, David A | 106754 |
| Howard, Christopher M | 105993 |
| Howard, Joseph S | 102285 |
| Howard, Kelly A | 235424 |
| Howell, Sandra K | 197441 |
| Hrovatich, Kathryn A | 128708 |
| Hubbard, Neely G Jr | 258022 |
| Huber, Michael K | 102298 |
| Hubert, Daniel J | 102299 |
| Hudson, John S | 128727 |
| Huesers, Chad S | 176179 |
| Huggins, Randy C | 128752 |
| Hughes, Rene M | 128763 |
| Hunt, Joseph R | 128801 |
| Hunt, Shannon L | 128808 |
| Ice, Christopher M | 259640 |
| Ingram, Robert H III | 106771 |
| Irwin, Anthony A | 229453 |

| Full Name | PPG ID |
|---|---|
| Irwin, Bruce E | 234624 |
| Istre, Burton W | 182363 |
| Iwanski, Donald P | 102355 |
| Jackson, Avanalist III | 181220 |
| Jackson, Charles D | 128904 |
| Jackson, David J | 106773 |
| Jackson, Mia T | 182543 |
| Jackson, Shannon | 154333 |
| Jackson, Terry A | 128925 |
| Jackson, Timothy L | 128926 |
| Jacobs, George Robin | 128931 |
| James, William L II | 102375 |
| Jamison, William B | 128958 |
| January, Donald R Jr | 228118 |
| Jeanise, Charles J | 128974 |
| Jiang, Bangwu | 197499 |
| Johnson, Donald G | 142305 |
| Johnson, Donald R | 129039 |
| Johnson, Douglas H | 102415 |
| Johnson, Gregory B (Blake) | 260915 |
| Johnson, Jacob P | 253555 |
| Johnson, Jason E | 129050 |
| Johnson, John A | 129059 |
| Johnson, Michael T | 255741 |
| Johnson, Nancy M | 161060 |
| Johnson, Roland J JR (Johnny) | 107883 |
| Johnson, Stephen W | 140645 |
| Johnson, Steven M | 234575 |
| Johnson, Therese | 106794 |
| Johnson, Tyler Z | 259641 |
| Johnston, Douglas E | 129107 |
| Jones, Adam H | 236187 |
| Jones, Amberly N | 255666 |
| Jones, Clabe P. | 252175 |
| Jones, Duane I | 102446 |
| Jones, Gregory Lance | 253756 |
| Jones, Judd E | 234602 |
| Jones, Lisa J | 234584 |
| Jones, Robert L | 102458 |

PPG103081

**A-140**

| Full Name | PPG ID |
|---|---|
| Jordan, John E | 102464 |
| Jordan, Melone L | 142578 |
| Joseph, Jason | 129223 |
| Jozwiak, Louise A | 102472 |
| Juhala, John J | 250748 |
| Kadlubar, Daniel C | 102484 |
| Kain, Edwin L | 172878 |
| Katekovich, Raymond | 102525 |
| Kayhart, Laura L | 100594 |
| Kehrer, Robert A | 109679 |
| Keigley, Richard L | 129316 |
| Keim, Donald L | 102535 |
| Keller, Gerry L | 129328 |
| Kelley, Craig A | 106823 |
| Kelley, Joshua P | 198238 |
| Kendall, Jamey J | 129363 |
| Kennard, Steven G | 143270 |
| Khoury, Mark A | 129397 |
| Kibodeaux, DeAnn M | 201220 |
| Kiger, Jesse M | 102589 |
| King, Lord C | 129452 |
| Kingham, Kerry A | 129458 |
| Kingrey, Billy R | 230409 |
| Kirk, William A | 102619 |
| Klahn, Patricia A | 106839 |
| Kleineke, Henry T | 129500 |
| Kleinschmidt, Kristopher L | 145173 |
| Knighten, Larry E | 129540 |
| Knowlton, S J | 129551 |
| Knox, David R | 102665 |
| Kober, Gerald W | 129557 |
| Kober, Reginald A | 129558 |
| Koch, David W | 129561 |
| Kocher, Stephen W | 129564 |
| Kociban, Jason A. | 145129 |
| Koerber, Jerald L | 129566 |
| Kokowsky, David J | 102681 |
| Koonce, Michael W | 129580 |
| Kovacs, Joseph P | 102703 |

| Full Name | PPG ID |
|---|---|
| Kowalski, Paul M | 144361 |
| Kramer, Elizabeth A | 106852 |
| Krejci, Richard P | 129613 |
| Krieger, Carl E | 234625 |
| Kroger, Henry V | 109714 |
| Krull, Cheryl L | 128349 |
| Kuca, Nicholas R | 261082 |
| Kuhn, Ana Martinez | 102762 |
| Kurtz, Joshua I | 227897 |
| Kwisnek, Vincent F | 142319 |
| Labby, Melvin G | 180503 |
| LaBoa, Tyna R | 234587 |
| LaBove, James M | 111198 |
| Labove, John E | 129655 |
| LaCour, James W Jr | 143646 |
| Ladner, Brittany L | 197767 |
| Lafanette, Mark A | 159592 |
| LaFleur, Andrew JR | 186049 |
| Lafosse, Pat Q | 129666 |
| Lagrange, Gary C | 129669 |
| Lallathin, Corey S | 256926 |
| LaMotte, Field | 178023 |
| Landels, Tami L | 234580 |
| Landry, Clarence | 129724 |
| Landry, Justin M | 233802 |
| Landry, Justin P | 228496 |
| Landry, Kenneth W | 107932 |
| Landry, La'Techa J | 129065 |
| Landry, Marty P | 102821 |
| Landry, Robert D (Dwayne) | 102822 |
| Landry, Russell W | 129726 |
| Langenfeld, John N | 144256 |
| Langsdorf, Michael L | 109733 |
| Lanier, Steve T | 129762 |
| Lanthier, Michael S | 230786 |
| Lartigue, Marvin A | 230535 |
| Lashley, Heather J | 169385 |
| Lavergne, Elvis L | 129807 |
| Lavergne, Joseph H | 129808 |

PPG103082

**A-141**

| Full Name | PPG ID |
|---|---|
| Lavergne, Kevin R. | 154336 |
| Lavergne, Rose M | 107940 |
| Lawrence, Christopher J | 261083 |
| Leach, Norman D | 129835 |
| Leary, Patrick J Jr | 129840 |
| LeBert, Brett R | 102879 |
| LeBlanc, Anthony J | 142119 |
| LeBlanc, Chance M | 129848 |
| Leblanc, Daniel A | 129849 |
| LeBlanc, Diana L | 106870 |
| LeBlanc, Dustin P | 129850 |
| LeBlanc, Joshua L | 196669 |
| LeBlanc, Laresa S | 171030 |
| LeBlanc, Ricky S | 102880 |
| Leblanc, Toby W | 257543 |
| Leblanc, Warren J JR | 129854 |
| LeBleu, Martin O (Marty) | 144850 |
| LeBleu, Natalie C | 129857 |
| LeBleu, Timothy G Jr | 185803 |
| LeBrun, Daniel P | 230719 |
| LeCompte, Joycelyn M. | 250964 |
| Leddy, David C | 106872 |
| Ledet, Brandon P | 181218 |
| Ledoux, Clint W | 129879 |
| Lee, Michael F | 255554 |
| Leffler, Lori L | 102892 |
| LeFrere, Bryant G | 229207 |
| Leger, Dustin M | 229542 |
| Leger, Jimmy D | 176313 |
| Leger, John E | 129904 |
| Leger, Megan A | 107680 |
| Leggett, Michael Burton | 141119 |
| Lehner, Jordan E | 234599 |
| LeJeune, Daniel T | 176022 |
| Lejeune, Leonard D | 102904 |
| LeJeune, Patrick C (Craig) | 102905 |
| Lemaire, Aaron B. | 235374 |
| Lemasters, David J | 156312 |
| Lemasters, Jerry M | 129922 |

| Full Name | PPG ID |
|---|---|
| Lemonia, Glenn M | 129931 |
| Lenhart, Robert P | 178541 |
| Leonard, Arnold Kirby | 129940 |
| Leonards, Andre' F | 129960 |
| Lerch, Gretchen D | 102921 |
| Lester, Stephen R | 102924 |
| Leveque, John J | 129972 |
| Lewis, Alvin L | 102932 |
| Lewis, Celeste S | 102934 |
| Lewis, Lorren K | 256759 |
| Lewis, Mary Kaitlyn | 229213 |
| Lewis, Michael D | 106031 |
| Lewis, Novella J | 176183 |
| Lewis, Wendy C | 106881 |
| Libby, Joshua G | 234626 |
| Liggio, Esther S | 102950 |
| Linder, Paul E | 102960 |
| Lippincott, James D JR | 102979 |
| Lloyd, Cody M | 231343 |
| Lockhart, Brian R | 111271 |
| Logan, Richard D JR | 130085 |
| Logston, Joanne C | 103004 |
| Logston, Thomas A | 103005 |
| Long, Denise A | 106900 |
| Long, Robert F | 158798 |
| Long, Tyson N | 200793 |
| Looper, Austin E | 103018 |
| Lough, Clifton C | 176006 |
| Louviere, Melissa A | 152444 |
| Louviere, Ted J | 130143 |
| Louviere, William P | 130144 |
| Love, Michael L | 130151 |
| Lovingfoss, Mickel | 234606 |
| Lowery, Arthur L | 199761 |
| Lowery, James M | 130180 |
| Lowry, Earl C | 130187 |
| Lucas, James F | 252510 |
| Luces-Phillip, Candace A | 236666 |
| Ludolph, Randall J | 106911 |

PPG103083

| Full Name | PPG ID |
|---|---|
| Ly, Anh V | 103058 |
| Lyles, Andrew J | 230720 |
| Mack, Joseph III | 161017 |
| Magee, Randy (Randy) | 103094 |
| Magurany, Ashley K | 235423 |
| Maine, Richard L JR | 130297 |
| Majors, Joseph T | 109810 |
| Mallett, Brent M. | 236678 |
| Malone, Timothy S | 259111 |
| Malveaux, Adam L JR | 109813 |
| Malveaux, Nolton M | 103122 |
| Malveaux, Raymond | 103123 |
| Manard, Patrick J | 130316 |
| Maniscalco, Christopher W | 178891 |
| Mannion, Lisa M | 103132 |
| Manns, Jonathan P | 103133 |
| Manuel, Brennan A | 252355 |
| Manuel, Casey A | 261244 |
| Manuel, David A | 229452 |
| Manuel, Dennis | 130334 |
| Manuel, Jeremy T | 158801 |
| Manuel, Larry A | 160449 |
| Manuel, Steven W | 130341 |
| Maranowski, Joseph J | 257880 |
| Marcantel, Harold J | 130347 |
| Marceaux, Allen R | 109820 |
| Marinacci, Dominic R | 130355 |
| Markan, Denis | 179976 |
| Marshall, Mark A | 106930 |
| Marshall, Nicole Y | 232649 |
| Martin, Byron S | 130398 |
| Martin, David A | 234891 |
| Martin, David L | 145003 |
| Martin, James | 130407 |
| Martin, Michael J | 103185 |
| Martin, Thomas C | 130425 |
| Martis, Joseph W JR | 106932 |
| Mascarenas, Eduardo R | 197614 |
| Mason, Larry A | 103203 |

| Full Name | PPG ID |
|---|---|
| Mathews, Bart | 130459 |
| Mathews, Joseph B | 168545 |
| Mathews, Steven H | 106940 |
| Mattes, James D | 103216 |
| Matthews, Bradford | 130468 |
| Matthews, Ernesto W | 256761 |
| Maxwell, Daniel A | 259642 |
| Maxwell, David E | 106944 |
| Maxwell, Robert W | 130482 |
| Mazza, Shayne | 234634 |
| McBride, Rene | 130528 |
| McCain, Austin A | 236317 |
| McCain, Paula D | 258354 |
| McCain, Robert A | 107998 |
| McCann, Edwin J (E.J.) | 103248 |
| McCartney, Kevin B | 234635 |
| McCaslin, Nichole | 234582 |
| McClain, Mitchell | 106952 |
| McClure, Ronnie J | 130573 |
| McCune, Brian S | 154620 |
| McCune, David M | 130603 |
| McDaniel, Chris L | 130610 |
| McDonald, Jason N | 253261 |
| McDowell, Catherine C | 130631 |
| McEachern, Christopher S | 103288 |
| McEachern, Gretchen M | 103289 |
| McFatter, Suzanne I | 106962 |
| McGee, Charlie M | 230785 |
| McGinnis, Robert L | 103300 |
| McGovern, Michael J | 130658 |
| McGuire, Kenneth A | 106964 |
| McKenzie, Joel C | 232123 |
| McKinney, Isaac L | 130689 |
| McLaughlin, Edward T | 155138 |
| McLaughlin, Robert J JR | 130702 |
| McMeekin, Elizabeth H | 103335 |
| McMullen, Jamie L | 230088 |
| McMullen, Joseph M | 103342 |
| McNabb, Rex K | 261446 |

PPG103084

| Full Name | PPG ID |
|---|---|
| McNeal, Cedric J | 176041 |
| McPeek, Allen E | 184148 |
| McPherson, Thomas W (Wayne) | 103348 |
| McPherson, William | 130744 |
| McRae, Artis W | 177658 |
| Meadows, Derick R | 103356 |
| Means, James B II | 261084 |
| Meaux, Kenneth J | 130768 |
| Meche, Andrew C | 233945 |
| Meche, Jeffrey K | 130769 |
| Meek, Barry J | 130782 |
| Meeker, Drew E | 106975 |
| Meeks, George W JR | 130785 |
| Mercer, Justin M | 180012 |
| Meredith, Andrew T | 230439 |
| Meredith, Todd D | 183517 |
| Mertes, Shawn R | 234604 |
| Messenger, Terry W | 103393 |
| Mestayer, Shannon T | 130845 |
| Meyer, Charles A III | 184142 |
| Meyers, Daniel N | 143974 |
| Meyers, Diane C | 103408 |
| Michael, Carl O | 111391 |
| Mickens, Susan R | 228976 |
| Mickey, Stephen S | 130856 |
| Midcap, Deborah S | 126135 |
| Mier, Chris W | 130860 |
| Mier, Trisha L | 100230 |
| Miles, Carmilite M | 130867 |
| Miller, Amanda L | 257063 |
| Miller, Beery W | 106068 |
| Miller, Ezria B | 259643 |
| Miller, Frank | 103440 |
| Miller, Herbert L | 103444 |
| Miller, John G | 103447 |
| Miller, Mark D | 103453 |
| Miller, Michael J | 130931 |
| Miller, Michael P | 130932 |
| Miller, Peter A | 106985 |

| Full Name | PPG ID |
|---|---|
| Miller, Robert A | 182942 |
| Miller, Ronald L Sr | 176318 |
| Miller, Stephen L | 106987 |
| Miller, Timothy B | 130951 |
| Mire, Jody | 230599 |
| Mitchell, Clayton K | 184190 |
| Mitchell, Mark L | 182947 |
| Mitchell, Michael A | 131005 |
| Mitchell, Peter D | 167533 |
| Mizwa, Joshua E | 226724 |
| Mobley, Airee V | 168701 |
| Moerbe, Brian K | 182526 |
| Monk, Joshua L | 257787 |
| Montgomery, Brent L | 106995 |
| Montgomery, Ella Mae | 131055 |
| Montgomery, Finley D | 131056 |
| Montgomery, Tamara M | 107402 |
| Moore, Anthony P | 131073 |
| Moore, David E | 131084 |
| Moore, Dina M | 217326 |
| Moreno, Marc A | 107001 |
| Morgan, Ashley K. | 235372 |
| Moring, Jaclyn P | 256554 |
| Morris, Duane D | 131157 |
| Morris, Harold S (Scott) | 143027 |
| Morris, Howard P | 131159 |
| Morris, Joshua A | 234598 |
| Morris, Theresa L | 107007 |
| Moses, Russell T | 103573 |
| Moses, Shannon L | 182621 |
| Mosley, Richard L | 252451 |
| Moss, Thomas P | 185801 |
| Mrvos, Patricia G | 103597 |
| Mueller, Beth L | 107012 |
| Mullett, Steven S | 103610 |
| Mullins, Traci A | 131236 |
| Munoz, Leonardo | 108046 |
| Murdoch, Michael H (Mike) | 250865 |
| Murdock, Michael W | 107013 |

PPG103085

| Full Name | PPG ID |
|---|---|
| Musgrove, Michael Van | 103632 |
| Myers, Charles W | 103637 |
| Myers, Clifton M (Cliff) | 142342 |
| Myers, Donald Cliff (Cliff) | 167843 |
| Myers, Holly G | 168922 |
| Myers, Mary E | 131282 |
| Myers, Reni M | 140428 |
| Myers, Russell L | 107017 |
| Narbit, Thomas S JR | 103653 |
| Nash, Rodney A | 107023 |
| Nassar, Barry L. | 236595 |
| Nassar, Larry J | 131315 |
| Natale, James F III (Jim) | 182099 |
| Nelson, Bruce H | 103667 |
| Nelson, Mary F | 103671 |
| Nelson, Richard K | 131357 |
| Nero, Kathleen C | 256168 |
| Nething, Shirley A | 107026 |
| Nething, Wayne L | 107027 |
| Newby, Frank | 131367 |
| Newman, Bryan A | 103686 |
| Newman, Kelly | 161037 |
| Newman, Ronald A | 107030 |
| Newsome, Brian | 236228 |
| Nguyen, Nathan D | 258144 |
| Nice, Benjamin D | 107031 |
| Nice, Jacob W | 131393 |
| Nichols, Terry Lee | 107033 |
| Nickl, Jeffrey | 255861 |
| Niven, Robert M | 107034 |
| Nonette, George | 257313 |
| Nope, James R | 131434 |
| Northcraft, Carla K | 131447 |
| Northcraft, Ralph E | 131448 |
| Norwood, Travis C | 131455 |
| Novel, Anthony F | 131459 |
| Nugent, Donna Mott | 126638 |
| Nunez, Benjamin D (David) | 153584 |
| Nunez, Eric D | 257783 |

| Full Name | PPG ID |
|---|---|
| Nunez, Thaddeus M | 168255 |
| Oakman, Andrew L | 131472 |
| Oathes, Ronald J JR | 234600 |
| O'Blanc, Jerod W | 153252 |
| O'Brien, Kelly S | 131483 |
| Oden, Jeremy M | 228569 |
| Ogle, Crystal G | 229322 |
| Okarma, Janet L | 107043 |
| Oligher, Timothy P | 201704 |
| Oliver, Joey J | 131520 |
| Olivier, Gregory | 109974 |
| Olivier, Rosemary D | 256750 |
| Olson, Jeffrey L | 131529 |
| Oney, David K | 106092 |
| Onken, Richard G | 131543 |
| O'Quinn, Cory J | 103777 |
| Orebeaux, Jerry J | 230531 |
| Orsot, Rico L | 103788 |
| Orsot, Stacie C | 103789 |
| Ortego, Keith W | 131563 |
| Ottenweller, Daniel J | 103800 |
| Overstreet, Robert C | 131586 |
| Overstreet, Ruth A | 103807 |
| Owens, David N | 103811 |
| Owens, Rodney S | 228866 |
| Ozment, Jennifer L | 160259 |
| Pagan Rodriguez, Lettice M | 107055 |
| Page, Jason P | 131618 |
| Palombi, Anthony T Jr | 261085 |
| Pancake, Daniel K | 109998 |
| Pankiewicz, David P | 103849 |
| Papillion, Burnell J | 131648 |
| Papillion, Craig J | 131649 |
| Pappillion, Morris W (Wayne) | 131651 |
| Pappion, Berchman J | 131652 |
| Parker, Bryan A | 103860 |
| Parker, Jason T (Todd) | 142118 |
| Parker, Julie A | 131661 |
| Parker, Robert N | 131674 |

PPG103086

| Full Name | PPG ID |
|---|---|
| Parker, Vickie L | 142376 |
| Parks, Brent | 111495 |
| Parks, Melanie C | 140202 |
| Parks, Nola J | 131691 |
| Parr, Travis Lee | 255478 |
| Parra, Ricardo | 155504 |
| Parrott, Dawn M | 234627 |
| Parson, Cynthia L | 107064 |
| Patterson, Marlene V | 103888 |
| Patterson, Ramona K | 132359 |
| Patton, Colby E | 131741 |
| Patton, Jeffrey O | 201378 |
| Pavone, Anna Marie | 257016 |
| Payne, Robert B | 160308 |
| Pearson, Donald B (Bruce) | 199310 |
| Pearson, Donald K | 103905 |
| Peet, Michelle D | 103916 |
| Pelican, Toby J | 141767 |
| Pellish, Terrence L | 107072 |
| Pennell, Tamera D | 110019 |
| Pennell, Timothy R | 103928 |
| Perez, Nelson E | 106109 |
| Perkins, Keith D | 131833 |
| Perkins, Toby F | 103941 |
| Perrodin, Nicholas B | 231764 |
| Perry, Gerald L | 103947 |
| Perry, Jeffrey C | 131841 |
| Persinger, Kimberly A | 132430 |
| Persinger, Samuel L | 131853 |
| Petross, Chad P | 230408 |
| Pharr, Mary Margaret (Meg) | 103975 |
| Pharris, John Q | 155779 |
| Phelps, Helene A | 107078 |
| Piatt, Scott M | 131926 |
| Piciacchio, Sharon G | 103989 |
| Pickens, James Z | 131927 |
| Pickens, Stanley R | 103990 |
| Pierce, Stephen G | 131943 |
| Pinchok, Diana L | 107082 |

| Full Name | PPG ID |
|---|---|
| Pinson, Joseph J (Jude) | 131958 |
| Pisarchuk, Timothy L | 234628 |
| Pittman, David Lee | 104012 |
| Plaisance, Chancey W | 142988 |
| Plauche, Andy P | 104020 |
| Plauche, Bryan J | 155806 |
| Pleskonko, W Scott | 104024 |
| Plumbar, Ronald P | 131984 |
| Poepping, Julia M | 104033 |
| Pollet, Brandon M | 236390 |
| Polus, Joseph M | 104049 |
| Porter, Gail K | 106485 |
| Porter, Timothy W | 201219 |
| Potter, Jonathan L | 185946 |
| Potts, Jonathan | 261086 |
| Pouchie, Tonia D | 132039 |
| Pousson, Brandon L | 141250 |
| Powell, Pamela S | 104070 |
| Powers, Allen R | 104072 |
| Presseisen, Scott | 234603 |
| Price, Alex L SR | 132073 |
| Price, Thomas A | 132080 |
| Proctor, Julie H | 234589 |
| Prosser, Joel A | 180775 |
| Pryor, Terri L | 111559 |
| Pundt, Daniel C | 132117 |
| Pyles, Calvin L | 177953 |
| Pyles, Matthew H | 259644 |
| Pyles, Robert J | 132134 |
| Pylypchuk, Katherine L | 132135 |
| Query, Kenneth | 104123 |
| Quinerly-Yuricha, Darla J | 107103 |
| Quinn, Aaron J | 132147 |
| Quinn, Frances C | 107104 |
| Ramirez, Abran J | 107110 |
| Ramirez, Jeff | 261137 |
| Ramos, Mario L | 132195 |
| Randle, LaDonna M | 197763 |
| Randolph, Steven D JR | 234629 |

PPG103087

| Full Name | PPG ID |
|---|---|
| Rannekleiv, Branden E | 181023 |
| Ranpariya, Nikunj D | 197690 |
| Raper, T B | 107116 |
| Ravander, David R | 234573 |
| Rearic, Melanie M | 139505 |
| Reber, Vernon L | 132262 |
| Reddin, Patrick J J JR | 104194 |
| Reed, Dayna L | 106620 |
| Reed, Diana L | 104201 |
| Reed, Russell K (Kyle) | 104203 |
| Reed, William K (Keith) | 132291 |
| Reeves, Brian B | 111586 |
| Reeves, Jr, Ronald K | 181219 |
| Rega, Robert K | 104206 |
| Reinecke, William E (Bill) | 104218 |
| Rene, Joseph H | 132322 |
| Reneau, Kenneth C | 259595 |
| Rentfrow, Jeffrey W | 230141 |
| Rentrop, Emily | 104227 |
| Reppond, Ryan Y | 255958 |
| Rewerts, Larry J | 104235 |
| Reynolds, Benjamin D JR | 104240 |
| Reynolds, Luke E | 111599 |
| Reynolds, Terry R | 104246 |
| Rhodes, Paul D | 258152 |
| Rice, Richard L JR | 104255 |
| Richard, Blanche | 161462 |
| Richard, Clint Gene | 253757 |
| Richard, Daryl W | 168257 |
| Richard, David C Jr | 158806 |
| Richard, Heather A | 167220 |
| Richard, Jason D | 230532 |
| Richard, Joseph W (JW) | 104259 |
| Richard, Michael | 176265 |
| Richard, Michael W SR | 132370 |
| Richard, Mitchel D | 132371 |
| Richard, Robert J | 200161 |
| Richard, Sandra Y | 107135 |
| Richard, Timothy W | 132373 |

| Full Name | PPG ID |
|---|---|
| Richard, Todd W | 230717 |
| Richards, Brian W | 178174 |
| Richardson, James P | 180443 |
| Richardson, Jerome J | 132387 |
| Richardson, Kathy J | 132388 |
| Rideau, Derek James | 132402 |
| Rideaux, Steve A | 132404 |
| Rideaux, Steve A II | 197335 |
| Riggs, Hubert | 132423 |
| Rimlinger, Joel J | 104286 |
| Rine, Lane P | 104287 |
| Rine, Michael J | 132431 |
| Rine, Robert D | 107143 |
| Rion, Kelvin R | 132434 |
| Ritter, Charles L | 132446 |
| Ritter, Michelle I | 104301 |
| Ritz, Larry G | 107146 |
| Roach, Elmer L | 104306 |
| Robart, Jennifer | 155505 |
| Robbins, Jeffrey W | 142228 |
| Robbins, Jeremy J. | 235814 |
| Roberts, Brian A | 189890 |
| Roberts, David E | 132484 |
| Roberts, Douglas E | 107148 |
| Robertson, Roland L | 104322 |
| Robicheaux, Cedric J JR | 132506 |
| Robinson, Gilbert L | 107152 |
| Robinson, Joseph W | 201380 |
| Robinson, Larry G | 104332 |
| Robinson, Mary M | 132532 |
| Rock, James D | 104338 |
| Rodriguez, Alberto JR | 104344 |
| Rodriguez, Sherell M | 234894 |
| Rogers, Amber D | 257962 |
| Rogers, Michael L | 189891 |
| Rogers, Vincent K | 132595 |
| Romero, Lena M | 132618 |
| Root, Timothy M | 234574 |
| Rose, Scott H | 132640 |

PPG103088

| Full Name | PPG ID |
|---|---|
| Rosenberger, Leland W | 198936 |
| Ross, Lyle A | 104385 |
| Ross, Russell C | 132668 |
| Rougeau, Crystal G | 195336 |
| Rousell, Donovan B | 195337 |
| Routh, John E | 176513 |
| Rozas, Frank D (Danny) | 104404 |
| Ruble, Elizabeth R | 110114 |
| Ruckman, Barbara E | 132709 |
| Ruffin, Eunice M | 104413 |
| Ruiz, Pablo JR | 107174 |
| Rumery, Mark W | 132723 |
| Rush, Allen L | 132731 |
| Rush, Douglas L | 258528 |
| Rush, Paul E | 107176 |
| Rusnak, James E (Jim) | 104431 |
| Russell, Richard R | 132747 |
| Rutherford, Brent A | 107177 |
| Sakowicz, Walter M JR | 104462 |
| Saldana, Hugo E | 236245 |
| Salter, William F (Billy) | 104470 |
| Samms, Lawrence D | 132797 |
| Sanchez, Stephen E | 104477 |
| Sands, Mark W | 132827 |
| Sandvik, Jodi L | 107186 |
| Santonas, David M | 104487 |
| Sapp, Charles S | 132848 |
| Sapp, Karen J | 107190 |
| Sapp, Richard L | 104491 |
| Saulnier, Gregory J | 108162 |
| Savell, Michael W Jr | 201377 |
| Savoie, Anthony R | 258785 |
| Savoie, John E | 132866 |
| Scaief, Nicholas | 234581 |
| Scalia, Dennis A | 132876 |
| Scallan, Guy B | 132878 |
| Schafer, Jerry A Sr | 141771 |
| Schafer, William J | 104518 |
| Schaller, Melodee L | 107197 |

| Full Name | PPG ID |
|---|---|
| Scharff, Angie S | 143881 |
| Scherf, Thomas E | 107198 |
| Schessler, Julianne K | 200608 |
| Schexnayder, Lawrence E | 257636 |
| Schexnider, Scott M | 234388 |
| Schiffman, Frank E | 104543 |
| Schindler, Tony F | 107201 |
| Schmidt, Michael G | 104554 |
| Schmitt, Andrew E | 104556 |
| Schoenman, Erik A | 104567 |
| Schroll, Anna F | 155777 |
| Schumacher, Shirley J | 171164 |
| Schussler, Henry W | 104585 |
| Schwenk, Robert E | 178539 |
| Schwenneker, Charles G | 107213 |
| Scollick, David A | 132947 |
| Scott, E Marie | 106301 |
| Scott, Wilson G | 132970 |
| Scroggins, Johnathan W (John) | 104614 |
| Seaford, Stan | 110155 |
| Sealund, Donald R | 259008 |
| Seamons, Shanin C | 132982 |
| Sears, Perry L | 132983 |
| Sederburg, Erin T | 234630 |
| Sedgmer, Susan L | 108188 |
| Self, John G | 201106 |
| Semien, David W | 133012 |
| Semien, Ivan C | 160744 |
| Semien, Nolan | 133015 |
| Semien, Steven J | 133016 |
| Sensat, Allen W | 133018 |
| Sevebeck, Eric W | 104655 |
| Shamburger, John P | 104668 |
| Shanley, Kevin F | 198233 |
| Sharp, Carolyn E | 107223 |
| Sharpton, Robert E | 133070 |
| Shaw, Scott L | 133080 |
| Shaw, William A | 133083 |
| Shearer, Mark P | 141751 |

PPG103089

A-148

| Full Name | PPG ID |
|---|---|
| Shelton, Dennis R | 107227 |
| Shepardson, Eric W | 155022 |
| Shepherd, Anthony P | 133104 |
| Shepherd, Jerry D | 133106 |
| Shepherd, Timothy B | 133107 |
| Sherwood, Scott | 104713 |
| Shives, Robert A | 108200 |
| Shook, Ricky V | 107231 |
| Shrieve, Tracy L | 107233 |
| Shuff, Frederick Neal | 133175 |
| Shumate, Douglas C | 133192 |
| Sias, Tarsha P | 133198 |
| Sias, Walter R SR | 133199 |
| Sibley, Waymon B | 133200 |
| Sigmund, John A | 104742 |
| Siler, Andrew F | 104744 |
| Simien, Michael G | 133214 |
| Simmons, Michael P | 182842 |
| Simmons, Rory B | 231233 |
| Simon, Bradford J | 195338 |
| Simon, Ryan M | 145168 |
| Simon, Thomas JR | 133233 |
| Simons, Judy C | 133234 |
| Sims, Narvey D | 145174 |
| Sims, Nicole E (Nikki) | 133257 |
| Sinclair, Mark J | 104769 |
| Singleton, Ronald J Jr | 257074 |
| Singleton, Ronald J SR | 133268 |
| Sivek, Brandon B | 253195 |
| Skrypek, Linda G | 107242 |
| Slaughter, Kiana L | 139791 |
| Slaydon, William M | 133304 |
| Slie, Charles S | 133306 |
| Small, Barbara T | 104805 |
| Smetana, Michael A | 234579 |
| Smith, Alex J | 234631 |
| Smith, Alton M | 133330 |
| Smith, Bonita J | 133341 |
| Smith, Chris D | 104819 |

| Full Name | PPG ID |
|---|---|
| Smith, Dana M | 134825 |
| Smith, David C | 133362 |
| Smith, David L | 145060 |
| Smith, Jackie R | 228495 |
| Smith, James C | 133392 |
| Smith, James S | 133398 |
| Smith, Jamie G | 133400 |
| Smith, Joshua E | 234632 |
| Smith, Laddie D | 133423 |
| Smith, Larry S | 108230 |
| Smith, Leslie K | 133429 |
| Smith, Mark V | 167241 |
| Smith, Ronica L | 107264 |
| Smith, Shari R | 111770 |
| Smith, Terry P | 104867 |
| Smith, Tracey L | 133480 |
| Smith, William Mark | 133483 |
| Smithart, James (Mike) | 231761 |
| Sobota, Gary R | 136408 |
| Soileau, Janice M | 133522 |
| Solomon, Jeffrey D | 104894 |
| Sonnier, Ernest JR (Ernie) | 133534 |
| Sonnier, John E | 133536 |
| Sonnier, Ronald B | 180927 |
| Sossamon, Terry L | 133541 |
| Speaks, Keith E | 104912 |
| Specht, Scott L | 253262 |
| Spencer, David M | 107278 |
| Spencer, Robert D | 260914 |
| Spier, Todd A | 104919 |
| St Romain, Louis J II | 235955 |
| Stackpole, Calvin R JR | 107279 |
| Stafford, Terrell J | 133628 |
| Stamper, Larry J | 104940 |
| Standiford, William R II | 133647 |
| Stantz, Donald E | 107282 |
| Starkey, Daniel L | 133665 |
| Starkey, James M | 133669 |
| Starkey, William S | 104951 |

PPG103090

| Full Name | PPG ID |
|---|---|
| Starling, Kenneth II | 261138 |
| Stephen, D Rebecca | 110235 |
| Stephenson, John W JR | 104976 |
| Stermole, David A | 104982 |
| Stevens, Baby Anne T | 234596 |
| Stevens, Byron J | 133720 |
| Stevens, Herbert G II | 230601 |
| Stewart, Charles F (Chuck) | 104992 |
| Stewart, David G | 133735 |
| Stewart, James B | 104993 |
| Stewart, James L | 133739 |
| Stewart, Jeffrey S | 107287 |
| Stewart, Richard E | 133745 |
| Stitt, David K | 108252 |
| Stockman, Kevin | 133760 |
| Stokes, Michael J | 133762 |
| Straub, Gary A | 156310 |
| Strauss, Seumas J | 234697 |
| Street, Chad K | 107297 |
| Street, Craig K | 107298 |
| Striker, John D | 230575 |
| Stroderd, James D (Donnie) | 142117 |
| Strother, Charles S | 177659 |
| Strothers, Ronald S JR | 107299 |
| Stuchell, Bethany M | 261281 |
| Stump, Don O | 158407 |
| Stutes, Sheldon G | 111812 |
| Suarez, Christopher J | 133846 |
| Suarez, David R (Robert) | 133847 |
| Suarez, Marlin K (Kim) | 133849 |
| Suarez, Pamela J | 107304 |
| Sulinski, Lori L | 105057 |
| Sullivan, Bruce A | 105059 |
| Sullivan, Collin J | 133857 |
| Sullivan, Pat Fred Jr | 252866 |
| Sullivan, Ricky L | 133859 |
| Sumpter, Rodger A | 160451 |
| Sumrall, Benjamin M. | 252514 |
| Surface, James M | 133870 |

| Full Name | PPG ID |
|---|---|
| Suydam, Jeremy S. | 258566 |
| Swallow, William M | 133897 |
| Swartz, Jason E | 200162 |
| Swartzmiller, Robert W | 153319 |
| Swofford, Marty A | 234636 |
| Taha, Khalid S | 259439 |
| Talbert, Kontahlee | 176311 |
| Tallent, Don S | 108270 |
| Tallman, Troy D | 107315 |
| Tam, Steven W | 110269 |
| Tanner, Roosevelt JR | 111824 |
| Targosky, Richard S | 177662 |
| Tatum, Katie E | 236186 |
| Taylor, III, Melvin F | 185878 |
| Taylor, James T | 105118 |
| Taylor, Kenneth M | 133977 |
| Taylor, Michele T | 105122 |
| Taylor, Ricky L | 176244 |
| Taylor, Russell L | 178622 |
| Teague, Donald E | 186468 |
| Tedesco, Mark S | 134002 |
| Temple, Harold L Jr (Len) | 166757 |
| Tepe, Dennis S | 183513 |
| Terry, Paul D | 105140 |
| Tester, Ramona L | 234638 |
| Thevenot, Robert J | 105147 |
| Thibodeaux, Brian K | 134041 |
| Thibodeaux, Craig | 134042 |
| Thibodeaux, Darryl K | 134043 |
| Thibodeaux, Gregory M | 134044 |
| Thibodeaux, Joseph L | 134045 |
| Thibodeaux, Lynn A | 134046 |
| Thibodeaux, Wyman L | 134048 |
| Thigpen, Donald R | 134050 |
| Thomas, Carl | 108278 |
| Thomas, Christopher A | 260554 |
| Thomas, Christopher M | 184147 |
| Thomas, Deidrick T | 250962 |
| Thomas, Eddie J | 134061 |

PPG103091

| Full Name | PPG ID |
|---|---|
| Thomas, Lonnie R | 134072 |
| Thomas, Lynn A | 134073 |
| Thomas, Michael W | 134077 |
| Thompson, Beverly J | 134094 |
| Thorn, Eric M | 252506 |
| Thorngate, Eric W | 261087 |
| Thrasher, Bill D | 134149 |
| Throckmorton, Robert C | 107332 |
| Thumma, William | 236436 |
| Tibbits, Douglas A | 105189 |
| Tiefenbach, William S | 256762 |
| Toerner, John P | 229049 |
| Tollett, Dennis L | 105205 |
| Toman, John W | 134192 |
| Tomblin, Stephen S | 143704 |
| Tomlinson, Johnny M | 134195 |
| Tooke, David H | 229756 |
| Tooke, Dennis A | 231403 |
| Tooke, Lisa S | 105216 |
| Topping, Gary W | 105221 |
| Torres, Martin C | 134214 |
| Touchstone, John T | 196358 |
| Tracy, Joseph D | 105237 |
| Trahan, Don G | 134233 |
| Trahan, Donald B | 134234 |
| Trahan, Gregory D | 105241 |
| Trahan, Jessica L | 159214 |
| Trahan, Patrick W | 134235 |
| Trahan, Susan T | 107343 |
| Trahan, Virgil D | 134236 |
| Travis, Thomas B | 134242 |
| Trevino, Jorge A | 222759 |
| Trevino, Susan R | 234586 |
| Trevino, Troy R | 234637 |
| Trouard, Benton D (Ben) | 105256 |
| Trouth, Paul E II | 134278 |
| Tucek, Trey A | 158802 |
| Tucker, Ronnie G | 105265 |
| Turano, Michael A | 134309 |

| Full Name | PPG ID |
|---|---|
| Ueltschy, Bryan W | 107363 |
| Urdiales, David G | 161370 |
| Valentine, Bradley S | 134368 |
| Valentine, Walter P | 134371 |
| Vallette, Christopher M | 141247 |
| Vallette, Jonathan T | 134374 |
| Van Winkle, Julie C | 134403 |
| Vance, Mark D | 231708 |
| Vanderlick, Brian D | 233906 |
| VanDyke, Psyche F | 144851 |
| Veillon, Tim W | 134427 |
| Verret, David B | 105357 |
| Vezina, Joseph P | 134441 |
| Vidrine, Cody A | 182527 |
| Vidrine, Gregory J | 134449 |
| Vidrine, Hans M | 159929 |
| Vidrine, Warren | 105364 |
| Vige, Carl B | 134454 |
| Vincent, Barry L | 134469 |
| Vincent, David A | 134470 |
| Vincent, David W | 107376 |
| Vincent, Heath B. | 155125 |
| Vincent, Michael S | 107377 |
| Vincent, Terry L | 105370 |
| Vincent, William B (Bill) | 134479 |
| Vinson, John W | 134483 |
| Virden, Donald E JR | 134488 |
| Vital, Earl O Sr | 134489 |
| Vitale, Gregory A | 105374 |
| Voge, John A | 199309 |
| Waak, David | 110349 |
| Waggoner, Eric L | 107381 |
| Wagner, Reginald E | 107383 |
| Waldon, James E | 107385 |
| Walker, Adam P | 257784 |
| Walker, Damon L | 134541 |
| Walker, Marlene M | 105416 |
| Walker, Terry L | 134569 |
| Wallace, James E JR (Jimmy) | 105428 |

PPG103092

A-151

| Full Name | PPG ID |
|---|---|
| Walton, Daniel A JR | 107391 |
| Walton, Fred A | 105450 |
| Warmus, John | 105466 |
| Warner, Clifton C | 167701 |
| Washington, Larry J | 134659 |
| Washington, Micheal A | 134660 |
| Washington, Shamika T | 140931 |
| Wasson, Paul P | 134666 |
| Watkins, Christopher J Sr | 106226 |
| Watkins, Marcus James | 230604 |
| Watson, Andrew W | 198673 |
| Watson, Charles A | 168213 |
| Watson, John M | 107395 |
| Watson, Nathaniel W | 107396 |
| Weaver, Leah A | 127915 |
| Webb, Robert D | 234607 |
| Weekley, Pamela S | 134763 |
| Weekley, Rodney D | 134764 |
| Weeks, Scott D | 134767 |
| Weeks, Shawn M | 180312 |
| Weizenegger, Zachary S | 257311 |
| Welch, Bobby G | 252759 |
| Welch, Clayton M | 253557 |
| Welch, Marie F | 234588 |
| Wells, Ricky L | 107401 |
| Wells, Robert A | 134799 |
| Wesley, Keith L | 107404 |
| West, Gregory R | 105544 |
| Westbrook, Cloyde J | 107405 |
| Wetzel, Rhett R. | 145128 |
| Wetzel, W R JR | 134826 |
| Whatley, Terry B (Brent) | 142115 |
| Wheeler, David A | 107408 |
| Whipple, Patricia | 105556 |
| White, Charles J (Chuck) | 105559 |
| White, Ebin A | 107410 |
| White, Joseph S | 259645 |
| White, Marvin D | 177797 |
| White, Roger D Jr | 156311 |

| Full Name | PPG ID |
|---|---|
| White, Sheila G | 167642 |
| White, Stuart Lamar (Lamar) | 105568 |
| White, Thomas E | 134884 |
| Whitehead, Brennan | 260514 |
| Whitehead, Vicki L | 134897 |
| Whitehurst, Peggy C | 105572 |
| Whittaker, Linda M | 134911 |
| Whittington, Raymond | 154821 |
| Whorton, John D | 134916 |
| Widener, Jennifer L | 111942 |
| Wiedl, Douglas J | 134924 |
| Wilburn, Mark A | 105594 |
| Williams, Atrondra R | 231181 |
| Williams, Catherine E | 101093 |
| Williams, Gerard D | 155805 |
| Williams, Harvey L Jr | 230722 |
| Williams, Jason C | 257781 |
| Williams, John D | 226273 |
| Williams, Kevin B | 251911 |
| Williams, Michael G | 135012 |
| Williams, Nelson II | 176396 |
| Williams, Rose M | 135026 |
| Williams, Samantha A | 257574 |
| Williams, Walter F (Wally) | 105623 |
| Williamson, Ronnie L | 135040 |
| Willis, Keith D | 135053 |
| Wills, Rocky W | 175796 |
| Wilson, Andrew R | 236499 |
| Wilson, Jeffrey M | 105644 |
| Wilson, Joseph M | 135086 |
| Wilson, Mark A | 105650 |
| Wilson, Michael G | 105651 |
| Wilt, Matthew C | 233827 |
| Wingo, Jacob | 259724 |
| Winters, Michael H | 140200 |
| Winters, Steven L | 258353 |
| Wolkoff, Carol P | 105691 |
| Wood, John D (Danny) | 135187 |
| Woods, Gary S | 105710 |

PPG103093

**A-152**

| Full Name | PPG ID |
|---|---|
| Woodyear, Mark E | 105715 |
| Worthy, Richard J | 111983 |
| Wright, Brian L II | 235422 |
| Wright, Charles W | 105726 |
| Wright, William H | 105731 |
| Yeater, Kevin A | 135314 |
| Yellott, Edward S | 135316 |
| Yetsko-Krol, Mary F | 256830 |
| Yoho, David B | 135337 |

| Full Name | PPG ID |
|---|---|
| Yoho, Vicki L | 107443 |
| Young, Daniel | 107444 |
| Young, Marie T | 105769 |
| Young, Ruby J | 135376 |
| Zahm, Chris | 108387 |
| Zahnow, Thomas P | 135391 |
| Zajdel-Letzelter, Alana R | 105794 |
| Zeigler, Charles C | 116787 |

PPG103094

**Canada**

| Full Name | PPG ID |
|---|---|
| Banoub, Georges | 108408 |
| Beaupré, Luc-Alain | 230807 |
| Black, Sylvie | 108432 |
| Boisvert, Christian | 186001 |
| Bourgie, Mario | 144402 |
| Campbell, Alexandre | 230929 |
| Desilets, Rolland | 108516 |
| Dionne, Michel | 108521 |
| Drainville, Denis | 141946 |
| Fredette, Steve | 160022 |
| Gagnon, Nicole | 258729 |
| Girard, Louis | 110914 |
| Girard, Stephane | 116735 |
| Guay, Louise | 172742 |
| Hall, Michael | 108582 |
| Isabel, Marie-Eve | 225626 |
| Jetté, Andre | 155767 |
| Labrie, Guillaume | 177803 |
| Lupien, Patrick | 228808 |
| Léger, Daniel | 111248 |
| Léveillé, Benoit | 153071 |
| Quinn, James J. | 108770 |
| Rioux, Carol | 111616 |
| Roy, Martin | 108795 |
| Santerre, Jacques | 108799 |
| Sicard, Jean-Sebastien | 110187 |
| Spenard, Gilles | 110217 |
| Therrien, Andre | 178651 |
| Beaudoin, Richard | 110499 |
| Belisle, Serge | 109134 |
| Bergeron, Claude | 110514 |
| Bonhomme, Michel | 109174 |
| Bouchha, Hassan | 158850 |
| Boulet, Luc | 109182 |
| Boyer, Erick | 167920 |
| Brunet, Marco | 181050 |
| Charlebois, Yannick | 141604 |
| Chen, Bo | 180193 |

| Full Name | PPG ID |
|---|---|
| Daoust, André | 118959 |
| DeRepentigny, Eric | 168676 |
| Faubert, Suzanne | 109445 |
| Feeny, Rachel | 109451 |
| Fortier, Serge | 139588 |
| Gagner, Jeannine | 109488 |
| Gagné, Marie-Claude | 159743 |
| Gauvin, Mathieu | 230948 |
| Gingras, Denis | 141603 |
| Giroux, Benoit | 234157 |
| Godin, Maxime | 141602 |
| Grenier, François | 232713 |
| Grondin, Jocelyne | 110966 |
| Guay, Daniel | 109538 |
| Guillemette, Gilles | 109542 |
| Haineault, Denis | 109559 |
| Houde, Sylvain | 159796 |
| Lafleur, Jean-François | 154627 |
| Lafleur, Jean-Georges | 119380 |
| Landry, Hubert | 111217 |
| Laniel, Lyse | 109734 |
| Laurin, François | 109743 |
| Lavoie, Claude | 109746 |
| Lavoie, Richard | 166840 |
| Lebel, France | 109753 |
| Leduc, Claude | 111243 |
| Leduc, Martin | 111244 |
| Lefebvre, Luc | 229672 |
| Levac, Thomas | 109763 |
| Levasseur, Jacques | 109764 |
| Lussier, Marc | 109795 |
| Léger, Yannick | 180192 |
| Maheu, Guy | 109808 |
| McSween, Jean-Claude | 109873 |
| Mendez, Roger | 226459 |
| Messier, Christian | 168448 |
| Montpetit, Pierre | 119605 |
| Moïse, Pierre Luc | 234347 |

PPG103095

| Full Name | PPG ID |
|---|---|
| Moïse, Réjean | 119604 |
| Nadeau, Michel | 111449 |
| Nadeau, Sébastien | 168038 |
| Nadon, Serge | 109936 |
| Picard, Kevin | 236563 |
| Picard, Michel | 111534 |
| Piché, Patrick | 119709 |
| Piette, Alain | 110033 |
| Poirier, Réal | 119726 |
| Poissant, Ronald | 110043 |
| Poupart, Yves | 110050 |
| Quevillon, André | 110057 |
| Raymond, Eric | 144530 |
| Reid, Donald | 119754 |

| Full Name | PPG ID |
|---|---|
| Reid, Guylaine | 111588 |
| Rodrigue, Alexandre | 200650 |
| Routhier, Ginette | 110111 |
| Santerre, Thomas | 197662 |
| St-Jacques, Richard | 180189 |
| St-Onge, Robert | 110241 |
| Thériault, Michel | 119939 |
| Thériault, Roger | 119940 |
| Trahan, Armand | 167911 |
| Turgeon, Yves | 110314 |
| Vargas, Leonardo | 233027 |
| Viau, Alexis | 234348 |
| Viau, Mario | 110340 |

Page A-21 of 22

PPG103096

**Non-USCA**

| Full Name | PPG ID | LOCATION |
|---|---|---|
| Oscos, Gustavo Adolfo | 109984 | PPG IND de MEXICO S.A. de C.V. (CHE) |
| Uthurriague, Daniel | 113989 | PPG IND. SALES, INC.- PARIS BRANCH (CHE) |
| Yen, Chien-Cheng Art | 112093 | PPG IND. INT'L. INC. - TAIWAN BRANCH (CH |

PPG103097

**A-156**

*Exhibit B*

**Former Spinco Employees**

**United States**

| Full Name | PPG ID |
|---|---|
| Abbott, Charles W | 123834 |
| Abel, Dianne S | 140726 |
| Abraham, Fred | 100008 |
| Abshire, Curliss J | 120677 |
| Abshire, Harvey R | 123856 |
| Adams, George C | 217118 |
| Aguilar, Rodolfo | 106253 |
| Alberssen, Mark A | 214337 |
| Alcock, James R | 123934 |
| Alexander, Joyce A | 217037 |
| Alexander, Patricia P | 140467 |
| Alexander, Robert N | 143166 |
| Alfred, Peter | 143338 |
| Alleman, Joseph B | 100047 |
| Allen, Daniel R | 143239 |
| Allen, Frances I | 106258 |
| Allen, James H | 140436 |
| Allen, John I | 107459 |
| Allen, Kathie L | 106261 |
| Allen, Randy D | 110431 |
| Allen, Victoria Jane | 162709 |
| Allison, Virgil O | 163350 |
| Almany, Donald M | 140258 |
| Amos, Edward V | 236881 |
| Amos, Finley D | 152602 |
| Amos, Patricia L | 124022 |
| Anderson, Dale G | 140570 |
| Anderson, Glenn J | 207714 |
| Anderson, Mary Frances | 236905 |
| Anderson, Nickerson J | 139900 |
| Anderson, Shirley Ann | 236912 |
| Andreas, William | 152570 |
| Andrews, Charles M | 152573 |
| Andrus, Justine | 217061 |
| Andry', Rebecca L | 149729 |
| Angus, William H | 140287 |

| Full Name | PPG ID |
|---|---|
| Ankenbruck, Joel C | 107471 |
| Antoine, Clifford | 236963 |
| Antoine, Lawrence | 217432 |
| Anzalone, James W | 152589 |
| Arabie, M L | 152582 |
| Archer, Cynthia L | 124095 |
| Archer, N A | 124097 |
| Ardoin, Debra S | 158391 |
| Ardoin, John C | 141166 |
| Ardoin, John W | 124102 |
| Ardoin, Wesley J JR | 152597 |
| Armentor, Sidney J | 152593 |
| Armstrong, John B JR | 140193 |
| Arnaud, Iry J | 152576 |
| Arnold, Paul R | 217253 |
| Arnold, Ronald J | 124133 |
| Ash, Donald R | 237035 |
| Ash, G Brent | 124145 |
| Ash, Jordan D | 259715 |
| Ash, K E | 152607 |
| Ashby, Kevin W | 217081 |
| Aston, Linda K | 124157 |
| Athey, William R | 100148 |
| Atkinson, Raymond L | 152609 |
| Augustine, Junius | 164521 |
| Avery, George O | 140451 |
| Axtell, Lowell J | 106279 |
| Axtle, Richard A | 109104 |
| Babaz, Carlos | 109106 |
| Babe, Glenn H | 162453 |
| Bachman, Mae Imogene | 237116 |
| Bacon, Betty J | 237121 |
| Bacque, Larry L | 140578 |
| Bailey, Larry G SR | 124216 |
| Bailey, Thomas A | 221953 |
| Baker, Bernice M | 110469 |



Exhibit

Rathburn 30b6- 3

EC 8-11-20

PPG103098

**A-157**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Baker, Carl E | 106286 |
| Baker, Dian A | 100184 |
| Baker, Judy L | 106288 |
| Baker, Karen D | 124237 |
| Baker, Michael J | 124242 |
| Baker, Ronald M | 124248 |
| Baldwin, John B | 141081 |
| Balser, Glowel G | 141935 |
| Barber, Forrest H | 100212 |
| Barbre, Jeffery | 124314 |
| Bares, Michael R | 100220 |
| Barker, John E JR | 100224 |
| Barnes, Richard J JR | 107494 |
| Barrax, Judith A | 237309 |
| Barrilleaux, Clay | 124376 |
| Barrios, Gillis W | 124377 |
| Barrow, Harvey L | 124380 |
| Barrow, Justine N | 217488 |
| Barry, Veda L | 224526 |
| Barth, Raymond K | 100247 |
| Barton, Johnie W | 100251 |
| Bass, Howard C | 142078 |
| Bates, Paul A | 202701 |
| Batson, James L | 142223 |
| Batton, Bonnie L | 207597 |
| Batton, Charles M | 124414 |
| Baudoin, Daniel K (Danny) | 141249 |
| Baumberger, Nancy L | 237390 |
| Baxter, George R | 165992 |
| Baxter, Helena T | 237395 |
| Bayle, Lawrence E SR | 100268 |
| Baynard, Roger E | 107500 |
| Beale, Raymond L JR | 207403 |
| Bean, Charles L | 141304 |
| Beatrice, Anthony J | 142611 |
| Beavers, Robert J | 109127 |
| Beck, Carolyn C | 217486 |
| Beckman, Ervin W JR | 143107 |
| Bedenbaugh, Garnett F | 217095 |

| Full Name | PPG ID |
|---|---|
| Beegle, Burl J | 142945 |
| Beegle, Michael D | 124489 |
| Beeler, Ramon N | 100294 |
| Begnaud, Marla Kae | 111656 |
| Belcher, Ronald E | 217263 |
| Belken, Sharon J | 174326 |
| Bell, Bonnie M | 207653 |
| Bell, Jerry W | 110507 |
| Bell, Michael L | 124512 |
| Belli, Angelina M | 143616 |
| Bellon, Charles W | 100312 |
| Bellow, Dorothy | 237534 |
| Bellow, Hilton | 124524 |
| Benesh, Bob A | 143451 |
| Bennett, George H JR | 143438 |
| Benoit, Curt A | 107512 |
| Benoit, Edward | 237580 |
| Benoit, Eva L | 180555 |
| Benoit, Gable | 143784 |
| Benoit, Jules A | 217003 |
| Benoit, Norma Jean | 237581 |
| Benoit, Ruston L | 124549 |
| Benoit, Wilson L | 143593 |
| Bergeron, Joseph D | 143690 |
| Bergeron, Judy A | 237603 |
| Berisford, Joshua D | 109140 |
| Berry, Charles R | 100350 |
| Berry, Luther W | 124581 |
| Berry, Ronald C | 143843 |
| Berryman, Clement C | 143845 |
| Bertrand, Clarence J | 217463 |
| Bertrand, Donald R | 143859 |
| Bertrand, Garland R | 143860 |
| Best, Lester E | 124597 |
| Biagas, James R | 144061 |
| Biggs, William A III | 217892 |
| Bigley, Daniel R | 144148 |
| Billeaud, Paul D | 124628 |
| Bills, George E | 100376 |

PPG103099

**A-158**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Binford, Dennis H | 124633 |
| Bingham, Ruby A | 237681 |
| Bishop, Floyd L | 144323 |
| Bishop, James W | 106342 |
| Bishop, Mary A | 124646 |
| Black, John M | 110524 |
| Black, Patsy Gail | 180336 |
| Blatt, Ernest L | 165069 |
| Blythe, Robbin E | 210268 |
| Bockhorn, Ricky E | 217970 |
| Bodden, Nix O | 218434 |
| Bogdan, John R JR | 216050 |
| Boggs, Jack L | 145231 |
| Bohrer, Michael R | 100443 |
| Bonner, Steven M | 145254 |
| Bonvillain, Robert H | 124794 |
| Booher, Danny R | 124795 |
| Book, B H | 124797 |
| Book, Hester G | 159108 |
| Boone, Dottie H | 237907 |
| Booth, Genevieve | 237915 |
| Booth, Madlyn J | 145261 |
| Borda, Edwardo R | 124812 |
| Borel, Joann E | 237926 |
| Borel, Larry J | 145266 |
| Borman, Jay O | 237928 |
| Boshell, Nancy P | 106360 |
| Boston, L Eugene | 164194 |
| Boston, Neville A | 145277 |
| Bosworth, James B | 145280 |
| Boucher, Louis A | 161679 |
| Boudreaux, Otis W | 106361 |
| Bouillon, Gloria D | 145285 |
| Boullard, Wickley J | 145286 |
| Bourdier, Eva C | 145288 |
| Bourgeois, Christene | 237969 |
| Bourgeois, Richard M JR | 217182 |
| Bourque, R L JR | 124841 |
| Boutet, Sabine M | 155704 |

| Full Name | PPG ID |
|---|---|
| Boutte, Howard J | 124843 |
| Boutte, Ralph J JR | 106363 |
| Bowen, William H | 124856 |
| Bowers, David L JR | 145298 |
| Bowers, Mary E | 160068 |
| Boyd, Nathan | 178870 |
| Boyd, Virginia A | 238019 |
| Boyette, James H | 100508 |
| Boykin, Joan A | 238029 |
| Boyles, Jerry L | 100513 |
| Bradley, Jimmie A | 107531 |
| Bragg, Larry E | 145333 |
| Brahm, Janelle B | 124925 |
| Brant, Robert E JR | 206962 |
| Brantley, Johnny L | 124933 |
| Breaux, Austin J | 162321 |
| Breaux, Charles E | 145352 |
| Breaux, Manuel R | 145354 |
| Breaux, Maureen M | 124947 |
| Breaux, Melvin T | 107535 |
| Breaux, Patricia R | 222730 |
| Breaux, Ronald T | 124948 |
| Breaux, Wallace J | 124951 |
| Bresley, Allen G | 219110 |
| Briley, Richard L | 100560 |
| Briscoe, Tina P | 107544 |
| Brookover, Jackie C. | 145393 |
| Brookover, Melvin L | 145394 |
| Brooks, Charles L | 145396 |
| Brooks, Connie L | 145398 |
| Brooks, Huey R | 145400 |
| Brooks, Julia R | 207629 |
| Brooks, Patricia A | 106380 |
| Broughman, P N | 125051 |
| Broussard, B A | 125055 |
| Broussard, Daniel R | 106381 |
| Broussard, Joseph L | 100582 |
| Broussard, Katherine | 217441 |
| Broussard, L Gene | 145404 |

PPG103100

**A-159**

*Exhibit B*

| Full Name | PPG ID |
|-----------|--------|
| Broussard, Lillian M | 238172 |
| Broussard, Paul G | 125058 |
| Broussard, Ronald G | 145406 |
| Broussard, Russell J | 125059 |
| Broussard, Terrell J | 125060 |
| Brown, Alvin M | 145410 |
| Brown, Barbara C | 238176 |
| Brown, Irene J | 145421 |
| Brown, Kenneth S | 216996 |
| Brown, Linda | 160099 |
| Brown, Roy L | 106389 |
| Brown, Tommy G | 145438 |
| Brown, Vernon M | 163078 |
| Browning, Frank C | 100603 |
| Bruce, Mitchell V | 100606 |
| Bryeans, Tommy G | 125145 |
| Buck, Grace L | 145466 |
| Buck, James D | 125155 |
| Buck, Paul S | 164883 |
| Budge, Ray J JR | 100625 |
| Budwine, Jimmy L | 145474 |
| Buller, Ennis W | 145476 |
| Bunderson, Doyle N | 109220 |
| Burgess, Linda | 238345 |
| Burgey, D R | 106395 |
| Burkart, Raymond V JR | 217494 |
| Burke, Judy Gay | 145500 |
| Burke, R Greg | 125210 |
| Burkhart, Patricia B | 207618 |
| Burks, Samuel V JR | 163279 |
| Burleigh, Carlyn L | 238365 |
| Burleson, Jessie C | 220163 |
| Burnett, Daniel E | 106398 |
| Burns, Steven W | 125240 |
| Burress, Carol A | 157813 |
| Burton, Mary J | 145516 |
| Burton, Mary Jo | 238400 |
| Burton, Rae R JR | 145517 |
| Bush, Cecil J | 145521 |

| Full Name | PPG ID |
|-----------|--------|
| Bushnell, Paul D | 125277 |
| Butler, Gordon F JR | 145530 |
| Butler, James H | 158358 |
| Butler, Marie G | 145533 |
| Buttikofer, Edward | 145536 |
| Butts, Bryan K | 158384 |
| Byars, April S | 100686 |
| Byars, Carole | 177853 |
| Byars, Robert P | 100687 |
| Byers, Sherilyn M | 217403 |
| Byrne, Paula B | 217053 |
| Cady, Ronald L | 217100 |
| Cagle, Marion C | 145554 |
| Caillouet, E Winston | 100697 |
| Cain, Paul E | 145558 |
| Cains, Joseph J | 125337 |
| Caldwell, R C JR | 125349 |
| Caldwell, Robert C SR | 100704 |
| Caldwell, Sherry L | 125929 |
| Calhoun, James S | 145565 |
| Callahan, John T JR | 125363 |
| Campbell, Leon J | 125405 |
| Campbell, Linda B | 125406 |
| Campbell, Pamela A | 125408 |
| Cannon, Marshall C | 145603 |
| Carlin, George T | 145620 |
| Carlquist, Sharon K | 106418 |
| Carmichael, David P | 145624 |
| Carney, Patricia A | 145628 |
| Carpenter, Benita K | 106422 |
| Carpenter, John R II | 100758 |
| Carrier, Linda A | 106425 |
| Carrier, Peter C | 125486 |
| Carrier, Vivian Q | 145640 |
| Carroll, Larry G | 125492 |
| Carroll, Marilyn R | 238622 |
| Carroll, Ruth R | 238624 |
| Carson, Elton E | 145650 |
| Carter, Earnest L | 125502 |

PPG103101

**A-160**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Carter, Floyd E | 175056 |
| Carter, L Wayne | 217493 |
| Casanova, Leonard M | 145659 |
| Cascio, Selina C | 106428 |
| Casey, Lorraine T | 214951 |
| Casto, James R II | 125545 |
| Caston, Alvin R | 125546 |
| Cavender, Virginia M | 238706 |
| Ceasar, Curtis J | 145683 |
| Ceasar, Orez | 125568 |
| Chaisson, Claude A | 110634 |
| Chaisson, Don E | 125586 |
| Chamberlain, Gwendolyn | 184198 |
| Chambers, J Darryl | 159268 |
| Chambers, Jerry D | 125591 |
| Champagne, Byron P | 106433 |
| Chance, Donna L | 238753 |
| Chapman, Clarence | 145708 |
| Chapman, Jason A | 125619 |
| Chapman, William H | 217329 |
| Chargois, Marvin J | 125625 |
| Chase, Cynthia M | 106435 |
| Chase, Wayne P | 125634 |
| Chavis, Joseph O | 125646 |
| Cheatham, Carson De-wayne | 107591 |
| Chenier, Benjamin A | 125655 |
| Chesson, L B | 145725 |
| Chiasson, Robert M | 100824 |
| Christen, Walter Roy | 145740 |
| Church, David B | 100839 |
| Cimini, Joseph R | 100844 |
| Citizen, Orelian J JR | 145764 |
| Clapperton, Jo J | 155851 |
| Clark, Betty J | 238886 |
| Clark, Dennis H JR | 145772 |
| Clark, Iva V | 238900 |
| Clark, Joseph R | 161862 |
| Clark, Linda J | 100866 |
| Clegg, Alberta L | 238931 |

| Full Name | PPG ID |
|---|---|
| Clegg, Charles E | 106445 |
| Clemens, Glenwood A | 158617 |
| Clement, Sidney | 145796 |
| Clements, William L | 100880 |
| Clifford, Kathleen E | 204117 |
| Clifton, Dennis W | 125756 |
| Clifton, Wayne S | 125757 |
| Cloutman, Evelyn D | 178549 |
| Cobb, Elijah R | 145807 |
| Cobb, John H | 163351 |
| Cochran, Lloyd A | 125783 |
| Cochran, Vernon D | 145815 |
| Coker, Jay F | 145820 |
| Coker, Robbie | 110238 |
| Cole, Freddy A | 125804 |
| Cole, James O | 238994 |
| Coleman, Bradley W | 161538 |
| Coleman, Jessie | 145828 |
| Collins, Christopher G | 100921 |
| Collins, Cliff | 145835 |
| Collins, Dewanda M | 158376 |
| Collins, Herbert L II | 125830 |
| Collins, Lorenzo M | 125832 |
| Collins, Roger D | 125837 |
| Collins, Theodore JR | 145841 |
| Comeaux, Clinton J | 175076 |
| Comeaux, James E | 125854 |
| Comeaux, Leo C | 145845 |
| Conner, Shelley E JR | 145864 |
| Conrad, Dennis G | 125880 |
| Cook, James B | 100956 |
| Cookson, Lois J | 145893 |
| Cookson, William K JR | 163025 |
| Cooley, Buford Vernon | 125909 |
| Cooley, Charlotte M | 239136 |
| Cooley, Pat A | 125910 |
| Cooper Hearne, Linda R | 100971 |
| Cooper, Curtis R | 145898 |
| Cooper, Marjorie A | 149707 |

PPG103102

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Cooper, Monna K | 125926 |
| Copeland, Johnny L | 125939 |
| Corbello, Thomas R | 125949 |
| Cormier, Alvin R | 125955 |
| Cormier, Chester J | 145915 |
| Cormier, Jeffrey D | 106469 |
| Cormier, Lois L | 239179 |
| Cormier, Ronald L | 145916 |
| Cormier, Theresa | 239181 |
| Cormier, Travis J | 239182 |
| Cormier, Walter J | 145917 |
| Cornelius, Roland R | 100982 |
| Cornett, Bobby T | 125965 |
| Cornett, Christine J | 239186 |
| Corry, Levell | 145925 |
| Coulter, Carol A | 145940 |
| Coulter, Gerald L | 217027 |
| Courmier, Artey O | 126001 |
| Courtney, James D JR | 145944 |
| Courville, Dinah H | 217155 |
| Courville, Joyce M | 239222 |
| Cowart, Mark A | 101001 |
| Cox, Jerry W | 218610 |
| Cox, T F | 106472 |
| Cozart, French V | 145955 |
| Cozart, June B | 106473 |
| Cozart, Terrell D | 106474 |
| Crader, Ernest L | 126037 |
| Craven, Jimmy J Jr | 224555 |
| Crawford, Charles J | 145972 |
| Creer, John W | 126071 |
| Croasmun, Henry Louis | 145991 |
| Crochet, Jasper C | 107633 |
| Crochet, Jessie JR | 126075 |
| Crochet, Sarah G | 239340 |
| Crompton, Charles E | 162824 |
| Cromwell, Margaret B | 146462 |
| Cross, James C | 146000 |
| Crow, Charlotte V | 160912 |

| Full Name | PPG ID |
|---|---|
| Crow, Patricia L | 239368 |
| Cryar, James C | 146024 |
| Cryar, Thomas E | 126128 |
| Culley, J L | 126132 |
| Culley, Leonard F | 139721 |
| Culp, Jimmie L | 146035 |
| Cumblidge, Joseph P | 126136 |
| Cumblidge, Paul R | 146038 |
| Cummings, Mike J | 126137 |
| Cunningham, Hilda | 239422 |
| Cunningham, James B | 126141 |
| Cunningham, James H | 146041 |
| Cunningham, Thomas E JR | 126143 |
| Curtis, Daniel L | 204636 |
| Cyr, Michael J | 136609 |
| Daigle, Bajuana L | 144848 |
| Daigle, Eugene JR | 126179 |
| Daigle, Hilary | 146072 |
| Daigle, James P | 126180 |
| Daigle, Joseph A JR | 126181 |
| Dailey, Ronald M | 143271 |
| Dailey, Roxann G | 239501 |
| Dalessandro, Robert N | 156774 |
| Dalrymple, Emma J | 239509 |
| Daniel, Ouida H | 239524 |
| Darbone, Camille C | 217153 |
| Darbone, Davidson J | 217129 |
| Darbonne, Deus L (Lenny) | 160285 |
| Darbonne, Kenneth J | 126214 |
| Dartez, Duane A | 126226 |
| Darwin, Eugene | 126227 |
| Dasch, Lionel JR | 126228 |
| David, Chester L | 165663 |
| David, Ivan L | 146111 |
| David, James P | 126239 |
| Davis, Arthur C | 126250 |
| Davis, Carol L | 126253 |
| Davis, J Murry | 146135 |
| Davis, Jerry M | 146137 |

PPG103103

**A-162**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Davis, Karl V | 110735 |
| Davis, Kenneth L | 146138 |
| Davis, Ricky B | 217436 |
| Davis, Rodney J | 126291 |
| Davis, Wilbur W JR | 211063 |
| Dawson, Martha L | 146161 |
| Day, Marcus M | 239653 |
| Dean, Randall M | 126333 |
| Dean, Warren E | 146169 |
| Deason-Owens, Sabrina | 217322 |
| Deaville, John J | 126338 |
| Deaville, Laura B | 239676 |
| Debolt, J H | 106505 |
| Debolt, Nell | 146177 |
| Declouet, Thaddeus JR | 146181 |
| Deering, William G | 157947 |
| Dees, Martha E | 126351 |
| Degenova, Paul C Jr | 106506 |
| Deitch, Tammy L | 239711 |
| Delancey, Paul P | 146193 |
| Delano, Raymond C | 126366 |
| Delosey, Gene | 146198 |
| DeLuna, Richard F | 107659 |
| Dempewolf, David A | 126386 |
| Denison, John M | 146211 |
| Dennis, Clyde H | 101202 |
| Dennis, Scott A | 126394 |
| Denton, Peggy | 126401 |
| Denton, Walter V JR | 239756 |
| Derouen, John C | 126405 |
| Des Ormeaux, Otis J J JR | 146226 |
| Deshotel, Elmer | 101220 |
| Deshotel, William P | 101222 |
| Detwiler, Leonard E | 126420 |
| Detwiler, Mary Judy | 146235 |
| Devilbiss, Thurlene | 126425 |
| Deville, C W | 126426 |
| Deville, Emma S | 239796 |
| Devine, Christina A | 182401 |

| Full Name | PPG ID |
|---|---|
| Devones, Sammie L | 146240 |
| Devore, Elden R JR | 146242 |
| Diaz, Leonardo | 106515 |
| Dickens, James D | 239823 |
| Dickerson, Claude W | 143644 |
| Dickerson, Donita A | 166079 |
| Dicrease, Barbara A | 126452 |
| Diehl, Paula R | 106516 |
| Dixson, Jessie III | 126489 |
| Doak, Robert L | 146280 |
| Dobbs, Charles W | 146283 |
| Dobbs, John K | 146284 |
| Dobbs, Rose M | 239882 |
| Dodson, John R | 110770 |
| Doland, Tom S | 126505 |
| Dolen, Robert Glen | 126507 |
| Dominguez, Hector L | 221821 |
| Dorsett, Charles M | 146312 |
| Dorsey, Shirley M | 223612 |
| Doty, Jeffrey M | 106531 |
| Doucet, A J | 126543 |
| Doucet, Carlton L | 126545 |
| Doucet, Douglas E | 106532 |
| Doucet, Gerald P | 101288 |
| Doucet, Joan F | 239955 |
| Doucet, Robert W | 146317 |
| Doucette, Mary L | 217274 |
| Douget, A J | 126547 |
| Downey, Elmer L | 146328 |
| Downing, Charles R | 216908 |
| Doyen, Catherine C | 156824 |
| Doyen, Grady D | 146331 |
| Doyle, Carl V | 146332 |
| Doyle, Estelle | 106534 |
| Doyle, John E | 217497 |
| Doyle, Lynn M | 217821 |
| Dragon, Carolyn J | 213807 |
| Drayton, William J | 101303 |
| Drews, Leonard C | 239990 |

PPG103104

*Exhibit B*

| Full Name | PPG ID |
|-----------|--------|
| Driskell, Christa M | 107674 |
| Driskill, John D | 101304 |
| Droddy, Lloyd W | 126592 |
| Droll, Ronald R | 101305 |
| Dubois, Don W | 101311 |
| Dubois, John D JR | 126603 |
| Dubroc, Jerry SR | 126605 |
| Dubus, Faye B | 217103 |
| Duffy, John E | 240023 |
| Dugar, Raymond | 163330 |
| Dugar, Ruby R | 240029 |
| Dugas, Michael J | 160438 |
| Duhon, Carol J | 146357 |
| Duhon, Darrel G | 126615 |
| Duhon, Elizabeth A | 147966 |
| Duhon, Glenn D | 178638 |
| Duhon, Herman | 110789 |
| Duhon, Howard R | 101330 |
| Duhon, Joseph L | 217491 |
| Duhon, Sandra E | 146358 |
| Duminski, Daniel S | 101334 |
| Dumphy, Jack K | 218688 |
| Dunn, Katherine L | 180684 |
| Duplichan, Alias J | 126640 |
| Dupre, Shirley A | 240079 |
| Dupree, Jefferson D | 106540 |
| Dupuis, Luther R | 240080 |
| Durbin, David R. | 146374 |
| Durio, Emery | 146383 |
| Durio, Michael L | 106541 |
| Duriseau, Helen | 240089 |
| Dutton, Lillian O | 167209 |
| Dyle, Curtis E | 223095 |
| Eads, B Wayne (Wayne) | 101357 |
| Eakin, Robert E | 146400 |
| Earls, John D | 158651 |
| Eastham, Charles R | 146409 |
| Eastham, James K | 146410 |
| Eastman, Elizabeth C | 146411 |

| Full Name | PPG ID |
|-----------|--------|
| Eckler, Gordon R | 146421 |
| Eddy, David G | 106546 |
| Eddy, Gilbert F | 146424 |
| Eddy, Margaret M | 146425 |
| Edigo, Kenneth J | 146429 |
| Edwards, James JR | 146435 |
| Edwards, Thomas W | 126739 |
| Edwards, Victor K | 216297 |
| Elee, Hubert A | 146451 |
| Ellender, Elray T | 126757 |
| Ellender, Jackie P | 146452 |
| Eller, Robert B | 146454 |
| Elliott, Kathy A | 218631 |
| Elliott, Kelli A | 109540 |
| Elliott, Larry T | 240241 |
| Ellis, Franklin M | 106552 |
| Ellzey, Dana A | 126783 |
| Emch, Thomas W | 146468 |
| Erlewine, R L | 126815 |
| Erlewine, Samuel A | 146491 |
| Erwin, Jo E | 126825 |
| Estel, William H | 146506 |
| Estep, A John | 146507 |
| Estep, Edward H | 126839 |
| Estep, Paul E | 106559 |
| Ethridge, Celestine L | 126847 |
| Evans, Lane C | 146529 |
| Evans, Ronald G | 146530 |
| Every, Duane A | 101453 |
| Ewalt, Stacey L | 154292 |
| Ewing, Anetta J | 146546 |
| Fabian, Hilton E | 218125 |
| Fagnant, Matthew L | 158800 |
| Falcon, Duane P | 101463 |
| Farber, Glyn V | 126897 |
| Farhatt, David I | 146564 |
| Farhatt, Michael J | 126898 |
| Farley, Marilyn K | 240416 |
| Farley, Wilford P | 163313 |

PPG103105

**A-164**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Farmer, Flora | 259157 |
| Farque, Elizabeth I | 146566 |
| Fast, Adam S (Shane) | 101482 |
| Faul, Claiborne L | 224540 |
| Faulk, Donald J | 146572 |
| Feathers, Robert E | 146576 |
| Fereday, Ernest W | 204678 |
| Ferguson, Donald R | 146594 |
| Ferrari, Linda J | 106575 |
| Ferrell, Dorothy M | 240483 |
| Ferrell, Janice | 160347 |
| Ferrell, W F | 126944 |
| Ferrer, Ralph F | 158381 |
| Fetty, Marlene E | 240496 |
| Fiber, Wilma | 157812 |
| Field, Sharon M | 149683 |
| Fike, John E JR | 146620 |
| Filipski, Mary N | 240514 |
| Findley, Raymond K | 101535 |
| Finocchio, Raymond L | 101543 |
| Fisher, Alton R | 126990 |
| Fitzsimmons, James Lee | 146651 |
| Flaker, David P | 127018 |
| Fletcher, Kenneth D | 217490 |
| Fletcher, Mona Bell | 165491 |
| Fletcher, W W | 127031 |
| Flower, Arnold A | 127040 |
| Floyd, Charles D | 161681 |
| Fluharty, Gregory D | 101583 |
| Fogle, Clifford R | 127057 |
| Foley, Roxie | 127059 |
| Folger, Norman C | 146680 |
| Folger, Norman C JR | 207579 |
| Folley, John D | 180780 |
| Fonner, Frederick A | 146684 |
| Fontenot, Alphonse M | 127064 |
| Fontenot, Arthur | 146685 |
| Fontenot, Austin R | 146686 |
| Fontenot, Carolyn K | 217350 |

| Full Name | PPG ID |
|---|---|
| Fontenot, Charles G | 127068 |
| Fontenot, Claude J | 106586 |
| Fontenot, Darrell J | 146687 |
| Fontenot, Floyd V | 146689 |
| Fontenot, Herbert J | 146690 |
| Fontenot, J H | 127072 |
| Fontenot, J Mckinley | 146691 |
| Fontenot, Rayford J SR | 127076 |
| Fontenot, Richard J | 217018 |
| Fontenot, Richard W | 146693 |
| Fontenot, Robert W | 146694 |
| Fontenot, Roland S | 240654 |
| Fontenot, Shirley M | 149732 |
| Fontenot, Spencer D | 106587 |
| Fontenot, Troy J | 127077 |
| Foote, Robert Henry | 240659 |
| Ford, Francis M | 127089 |
| Ford, T Gilbert | 146700 |
| Foreman, Bradley E | 127095 |
| Foreman, Eude B (Benny) | 127097 |
| Forester, Howell E JR | 213345 |
| Forni, Charles E | 211864 |
| Forrester, Barry L | 222985 |
| Forrester, Donald E | 146704 |
| Forrester, Kristine L | 127107 |
| Forrester, Nancy L | 240688 |
| Forrester, Robert M | 127108 |
| Forrester, Robert R | 146706 |
| Forrester, Wayne E | 213034 |
| Foster, Jesse D | 127120 |
| Fox, Janice Lee | 160348 |
| Fox, Marvin A | 127137 |
| Fox, Othel V JR | 101615 |
| Fox, Stephen L | 101620 |
| Fraker, Joseph E JR | 146724 |
| Francis, Robert C | 146726 |
| Francis, Roger W. | 146727 |
| Frank, John | 127161 |
| Frank, Willie Lee | 146735 |

PPG103106

**A-165**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Franklin, D L | 127164 |
| Franks, Joey D | 101629 |
| Franks, Stephen W | 127174 |
| Frasnelli, Rosemary A | 106594 |
| Frazier, Dennis | 127179 |
| Freeland, Brennan L | 127188 |
| Freeman, Arlene V | 146749 |
| French, Eugene R | 127204 |
| Friedline, George E | 101657 |
| Frilot, Paul A | 127220 |
| Friske, Kenneth H | 101659 |
| Fruge, John A | 107725 |
| Fruge, Kenneth O | 146769 |
| Fruge, Leonard R JR | 127235 |
| Fruge, Robert J | 146770 |
| Fruge, Ruth C | 240824 |
| Frum, Kimberly A | 106599 |
| Fuentes, Roland A | 107726 |
| Fuller, Dustin W | 127249 |
| Fuller, G Camp | 166274 |
| Fuselier, Elwilda B | 160952 |
| Fuselier, Elwin H | 110877 |
| Fuselier, Glen J | 146796 |
| Fuselier, M | 127265 |
| Gaillard, Hubert J | 146805 |
| Galanie, Charles E | 146809 |
| Gallien, Melvin J | 146817 |
| Gallow, Bud | 146820 |
| Gamber, Mary Rose | 206446 |
| Ganter, Brenda D | 240938 |
| Garber, Glenn D | 146832 |
| Gardner, James D | 146835 |
| Garrard, Berry G JR. | 101721 |
| Garrett, Garland L | 217102 |
| Garrett, Jack W | 146845 |
| Garrison, J R | 127382 |
| Gary, Terry L SR | 127390 |
| Garza, Jorge A | 106612 |
| Gaskin, Joyce M | 146853 |

| Full Name | PPG ID |
|---|---|
| Gaspard, Bonnie T | 240999 |
| Gatts, Hilda E | 255605 |
| Gauthier, Pascal M | 112849 |
| Gautreaux, David | 146863 |
| Genna, Philip J | 146880 |
| Gentry, Dale A | 106616 |
| George, Paul D | 127454 |
| Gerdes, Robert K | 101772 |
| Geuder, Dorothea | 172438 |
| Giffin, Jimmy B | 127495 |
| Giggar, Allie H | 241111 |
| Gilbert, Carolyn K | 106623 |
| Gill, Jimmy D | 127511 |
| Gillard, John E | 127513 |
| Gilligan, James M | 101799 |
| Gilmore, Frank E | 101802 |
| Girlinghouse, Earl L | 217498 |
| Gladden, James D | 218516 |
| Glass, Jason C | 106625 |
| Glenn, Kay P | 127554 |
| Glenn, Mildred E | 181677 |
| Glenn, Palmer S | 146935 |
| Glod, Doris L | 153344 |
| Glover, Darren E | 110917 |
| Glover, Irene N | 241182 |
| Gobert, Clarence | 161646 |
| Gobert, D J | 127579 |
| Gobert, George Chester | 146942 |
| Gobert, Norris | 146943 |
| Goddard, Linda K | 106629 |
| Goddard, Randy E | 127582 |
| Goddard, Reatha M | 241190 |
| Goddard, Rose C | 160401 |
| Goddard, Thurman Dean | 146947 |
| Godeaux, Hubert | 146948 |
| Godeaux, Sheila C | 241192 |
| Goetz, Geoffrey J | 101825 |
| Goff, Richard JR | 127594 |
| Goins, Kenneth W | 107757 |

PPG103107

**A-166**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Goins, Sherwood | 162330 |
| Golla, Damian F | 146961 |
| Gomez, Jill A | 247707 |
| Gonzales, Antonio | 217769 |
| Goode, Lanna A | 127633 |
| Goodfellow, Mark A | 127635 |
| Goodfellow, William J | 146974 |
| Goodnight, Franklin L | 146979 |
| Goodwin, James T | 127641 |
| Gorby, J I | 127646 |
| Gorby, Jeffrey A | 106637 |
| Gordon, Tedward R | 127651 |
| Gorrell, Garnet M | 241295 |
| Gorrell, Ruth A | 149541 |
| Gorton, Helen Elizabeth | 241300 |
| Goudy, Robert M | 146999 |
| Gould, Robert L | 127666 |
| Grabert, Alvin F | 147006 |
| Grandstaff, William H | 101880 |
| Granger, Elnora | 241342 |
| Granger, Lindsay T | 147017 |
| Granger, Paulett V (LeBrun) | 241344 |
| Granger, Raymond E JR | 127687 |
| Grass, Lottie W | 160137 |
| Gray, Claudia Jean | 241366 |
| Gray, James R | 147029 |
| Gray, Jon H | 147031 |
| Gray, Joshia E | 147032 |
| Gray, Julia K | 127306 |
| Green, Barbara H | 217507 |
| Green, Bobby J | 101895 |
| Green, Mark S | 212050 |
| Greenlee, Steven W | 107769 |
| Gremillion, Greg G | 127752 |
| Griffin, Freddie R | 127773 |
| Grimes, Mary Catherine | 241452 |
| Grimm, H E | 127798 |
| Grimmett, Carl R | 127800 |
| Grindol, Stephen G | 127802 |

| Full Name | PPG ID |
|---|---|
| Gros, Richard O | 127812 |
| Gros, Wayne A | 127813 |
| Guidry, Ames A | 147111 |
| Guidry, Andrew | 101953 |
| Guidry, Carroll R | 106660 |
| Guidry, David R | 127847 |
| Guidry, James J | 106662 |
| Guidry, Michael B | 101954 |
| Guidry, Rayford W | 147112 |
| Guidry, Roger G | 127852 |
| Guidry, Wilfred | 110970 |
| Guilbeau, Claude E | 127853 |
| Guilbeau, Michael | 127854 |
| Guillet, James M | 106663 |
| Guillory, Alphonse | 147114 |
| Guillory, Clifford J | 147115 |
| Guillory, Curtis B | 127857 |
| Guillory, Davis | 147117 |
| Guillory, Dennis K | 110971 |
| Guillory, Deola M | 241515 |
| Guillory, Donald W | 127858 |
| Guillory, Doris | 147118 |
| Guillory, Eddie J | 127860 |
| Guillory, Emery J | 147119 |
| Guillory, Emmanuel B | 224524 |
| Guillory, Georgie L | 149726 |
| Guillory, Gervis | 147120 |
| Guillory, Gilbert JR | 106665 |
| Guillory, John F | 127862 |
| Guillory, John I | 147121 |
| Guillory, Laura R | 241518 |
| Guillory, Marzetta D | 111218 |
| Guillory, Pridy Ray | 147122 |
| Guillory, Rico P | 127867 |
| Guillory, Roland | 217032 |
| Guillory, Ronald E | 127868 |
| Guillory, Simon | 147123 |
| Guillotte, Curtis W | 147125 |
| Gump, Shirley Jean | 241531 |

PPG103108

**A-167**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Gunto, Cynthia L | 241537 |
| Gunto, Michael J | 147132 |
| Gustin, Jerry D | 101964 |
| Gutierrez, Richard F | 106667 |
| Guy, Alfred L JR | 127899 |
| Guzman, Kenneth P | 217091 |
| Haden, Robert C | 101975 |
| Hafer, Jack W | 147149 |
| Hafer, Larry R | 127921 |
| Hafer, Roxana | 149526 |
| Hafer, Susan L | 106669 |
| Hager, Ray | 147152 |
| Haggman, Eric K | 234578 |
| Hall, Dale E | 127951 |
| Hall, Don Arthur F | 127952 |
| Hall, Lawrence | 241622 |
| Hall, M G | 127963 |
| Hamburg, Raymond D | 217223 |
| Hamilton, Benjamin N | 102009 |
| Hammel, Betty E | 160361 |
| Hammel, Charles L | 164190 |
| Hammit, Larry L | 147191 |
| Hammitt, Garry L | 106679 |
| Hammond, Charles E | 147193 |
| Hampton, Thomas E | 102018 |
| Hanchett, Irma | 147204 |
| Handy, Donald R | 102019 |
| Handy, John L | 147207 |
| Hank, Harry C | 147212 |
| Hankins, James G II | 128048 |
| Hankinson, Robert | 147216 |
| Hanks, Roland L | 128050 |
| Hanna, Donald C | 147218 |
| Hanna, Russell E | 162780 |
| Hanney, Olivia G | 147222 |
| Hanood, Albert J | 147223 |
| Hanson, D Brent | 217355 |
| Hardy, Kirby | 147233 |
| Hardy, Patricia A | 147234 |

| Full Name | PPG ID |
|---|---|
| Hare, Sandra G | 216756 |
| Harmon, Timothy P | 140762 |
| Harrell, William M | 217323 |
| Harrington, Diann W | 102045 |
| Harrington, Donald | 128111 |
| Harrington, Michael F | 158361 |
| Harrington, William C | 147261 |
| Harris, David L | 147264 |
| Harris, Ernest T | 136808 |
| Harris, Frank C | 128122 |
| Harris, Jerry R | 241799 |
| Harris, Phyllis L | 149540 |
| Harris, Teresa L | 241805 |
| Harrison, Carl D | 102053 |
| Harry, Roselyn B | 178850 |
| Hartley, Matthew P | 128168 |
| Hartnett, David L | 161463 |
| Hartnett, Larry J | 107801 |
| Hartzell, C W | 128178 |
| Haught, Carl B | 147311 |
| Haught, Carl S | 128197 |
| Haught, D L | 128198 |
| Haught, Keith E | 128200 |
| Haught, Nina J | 200038 |
| Haught, Rosemary | 106700 |
| Hayes, Bobbie L | 241924 |
| Hayes, Frank J | 147327 |
| Hayes, Henry C JR | 128227 |
| Hayes, Jerry R | 147330 |
| Hayes, Judy E | 221630 |
| Hayes, Rodney L | 147333 |
| Hayles, Bobbie S | 149702 |
| Haynes, Sarah L | 102097 |
| Hazi, Michael D | 105983 |
| Hazlewood, Percy L JR | 102103 |
| Hebert, Bobby D | 217090 |
| Hebert, Dixie Sue | 241957 |
| Hebert, Edward J | 147349 |
| Hebert, Grady G | 147350 |

PPG103109

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Hebert, Jack M | 147351 |
| Hebert, Jerry L | 128265 |
| Hebert, John A | 102112 |
| Hebert, John C | 147352 |
| Hebert, Joseph B JR | 102113 |
| Hebert, Leo Anthony | 217016 |
| Hebert, Lynn N | 107813 |
| Hebert, Mary L | 241962 |
| Hebert, Olin R | 147353 |
| Hebert, Randy A | 106713 |
| Hebert, Wayne P | 106714 |
| Heffer, Donald L | 102119 |
| Heig, Thomas E | 158469 |
| Heisler, Richard G | 176127 |
| Henderson, Billy G | 102136 |
| Hendricks, Charles W | 242036 |
| Hennigan, Micah D | 128346 |
| Henry, Frederick A | 223549 |
| Henry, John C | 147387 |
| Henry, Roy L | 128358 |
| Henslee, Lewis W | 161417 |
| Henthorn, Eva L | 252819 |
| Henthorn, James F | 102148 |
| Henthorn, Janet Onalee | 258320 |
| Henthorn, Rodney D | 128372 |
| Hernandez, Dennis L | 128389 |
| Herrell, Robert M | 102158 |
| Herrington, Danny L | 128408 |
| Hess, James W | 128417 |
| Heurtevant, Betty | 178688 |
| Hewitt, Charolette D | 106724 |
| Hicks, Richard L | 102173 |
| Hider, Emily S | 106727 |
| Higginbotham, Robert | 157810 |
| Higginbotham, Steve | 163305 |
| Higgins, Louis III | 157704 |
| Higgins, Marilyn D | 106729 |
| Hightower, Gary B | 203054 |
| Hill, Charles S | 102183 |

| Full Name | PPG ID |
|---|---|
| Hill, Jimmy H | 147434 |
| Hill, John M | 128472 |
| Hill, Rosellen K | 255607 |
| Himel, Frederick W SR | 147447 |
| Hindman, F D | 106736 |
| Hines, Rickey | 106737 |
| Hirsch, B Paul | 213778 |
| Hissam, B K | 128525 |
| Hissam, Emel B | 147456 |
| Hissom, N D | 147457 |
| Hitefield, Billy L | 242223 |
| Hixson, Donald D | 147461 |
| Hizer, Veronica D | 147463 |
| Hodge, Paul S | 147472 |
| Hodges, Samuel I | 128548 |
| Hoelscher, Charles H | 147475 |
| Hoelzer, Harold H | 242250 |
| Hoenes, Henry J JR | 147476 |
| Hoffpauir, Arville J | 102219 |
| Hoffpauir, Kenneth | 147484 |
| Hoffpauir, L P III | 147485 |
| Hoffpauir, Terrance L | 102221 |
| Hogan, Michael P | 102223 |
| Hohensee, Alan J | 107833 |
| Holdinsky, Roger A | 147497 |
| Holley, James M | 217210 |
| Holliday, Richard L | 102238 |
| Hollier, James T | 147508 |
| Holloway, Luid J JR | 128593 |
| Holman, Joan E | 106748 |
| Holman, Norman F | 106749 |
| Holmes, Deland S | 207621 |
| Holmes, Monica G | 128603 |
| Honore, Gregory M | 128620 |
| Hooper, Cynthia K | 147134 |
| Hopes, June S | 102256 |
| Hornbeck, Joseph A | 147540 |
| Hornsby, Rodgers B | 102268 |
| Hosea, Jack R | 147547 |

PPG103110

**A-169**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Hoskins, Jo Ann | 242393 |
| Hotard, Stephen D | 102272 |
| Hou, Shengyi | 102274 |
| Hovan, Judith I | 106756 |
| Howard, Sandra K | 128691 |
| Howell, Peter P | 220785 |
| Hubbs, Jerry R | 102296 |
| Hudkins, B James | 102301 |
| Hudson, Linda K | 147600 |
| Huffman, Sharon L | 102305 |
| Huffman, Zelma M | 242497 |
| Huggins, Deborah L | 128750 |
| Huggins, Evelyn F | 242500 |
| Huggins, Nancy L | 242504 |
| Huggins, Wayne | 147611 |
| Hughes, Sammy S | 216863 |
| Hulin, Hubert J | 128771 |
| Hull, Carol R. | 242523 |
| Hummel, D W | 128777 |
| Humphery, Sherry M | 107850 |
| Hungerford, Albert Richard | 147628 |
| Hunt, Braxie L | 258633 |
| Hunt, Harold M | 147634 |
| Hunter, Charles D | 128813 |
| Hunter, Dennis W | 102321 |
| Hunter, Jerry L | 102322 |
| Hutchins, Joseph W | 102334 |
| Hutchinson, Randy G | 102335 |
| Hutchison, James S | 147660 |
| Huth, Sandra R | 147662 |
| Hutto, Clinton H | 128852 |
| Ingold, Janet C | 198101 |
| Ingram, Louis S JR | 218470 |
| Irvin, Samuel J JR | 128875 |
| Isaac, Ronald R | 128880 |
| Isaacs, Iris R | 106772 |
| Istre, Gladys P | 160872 |
| Istre, James H Sr | 128891 |
| Ivey, C D | 128893 |

| Full Name | PPG ID |
|---|---|
| Jackson, Dempsey G | 147691 |
| Jackson, Dempsey G JR | 217071 |
| Jackson, Henry H | 147693 |
| Jackson, James O | 147694 |
| Jackson, Karen N | 178548 |
| Jackson, Sheila C | 106775 |
| Jackson, Temple M | 147698 |
| Jacobi, Robert E | 102365 |
| Jacobs, Ralph | 147701 |
| Jarvis, Steven M | 128970 |
| Jean, Helen M | 242752 |
| Jean, Jerome T | 128973 |
| Jean, Robert | 147723 |
| Jeffers, Sue C | 242760 |
| Jeffers, Violet | 160025 |
| Jeffery, Thomas C JR | 147726 |
| Jenkins, Allen S | 147731 |
| Jessen, Melissa R | 158367 |
| Jimenez, Ann M | 102399 |
| Jimenez, Ricardo L | 102400 |
| Jimoh, Kamoru A | 217239 |
| Jinks, Hadley M | 102401 |
| Jinks, Keith A | 129017 |
| Job, Karl H | 220282 |
| Jobes, C R | 129018 |
| John, Thomas J | 106784 |
| Johns, Clarence L | 147750 |
| Johnson, Cecil A | 218498 |
| Johnson, Charles V | 147755 |
| Johnson, Daryl L | 242820 |
| Johnson, Davey L | 147758 |
| Johnson, Harvey A | 147767 |
| Johnson, Huey P | 147768 |
| Johnson, Hugh F | 147769 |
| Johnson, Jeanette R | 242839 |
| Johnson, Jeremy T | 107880 |
| Johnson, Jerry D | 147771 |
| Johnson, John R | 242842 |
| Johnson, Kenward L | 129062 |

PPG103111

**A-170**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Johnson, Nola J | 242861 |
| Johnson, R D | 129078 |
| Johnson, Rhonda E | 129082 |
| Johnson, Terri L | 257710 |
| Johnston, Wade G | 217020 |
| Joiner, Lawrence C | 102438 |
| Jolivette, Anthony | 152445 |
| Jones, Eva E | 242917 |
| Jones, Harold M | 147814 |
| Jones, James E | 147815 |
| Jones, Keith H | 147818 |
| Jones, Louis | 147820 |
| Jones, R W | 129183 |
| Jones, T E | 106798 |
| Jones, W W | 106799 |
| Jordan, John H | 102465 |
| Joseph, Anthony | 106804 |
| Joubert, Aaron L | 242999 |
| Joy, Ruth Ann | 243005 |
| Juarez, Larry W | 107889 |
| Judge, Ray E | 147849 |
| Justice, Larry M | 102480 |
| Kachtik, Marie | 129248 |
| Kalinowski, Esther M | 106811 |
| Kappel, Herbert G | 166292 |
| Kasanicky, Nancy | 160104 |
| Kaspar, Ronald F | 147899 |
| Katchur, David M | 217433 |
| Kaub, Kim V | 158334 |
| Kaufman, William E | 147904 |
| Keel, E D | 129299 |
| Keenan, Ruth M | 149536 |
| Keenan, Sherman S | 147925 |
| Keiser, William D | 147932 |
| Keller, H W | 129329 |
| Kelley, A William | 147937 |
| Kelley, David M | 129334 |
| Kelley, John Edwin | 147938 |
| Kelley, Kevin B | 106824 |

| Full Name | PPG ID |
|---|---|
| Kelley, Larry D | 129338 |
| Kelley, Shirley B | 147939 |
| Kelly, Clifford J | 147942 |
| Kelly, Frank A III | 102553 |
| Kendall, Frank D | 147949 |
| Kendle, Earl P | 243167 |
| Kennerson, Dennis JR | 129372 |
| Kerwin, James C | 217946 |
| Keys, Sam A | 147974 |
| Khoury, Albert W | 163164 |
| Kickel, Clarence G | 147976 |
| Kienholz, Paul J | 147984 |
| Kiger, Jesse M | 164009 |
| Kimble, L H | 129422 |
| Kimble, Sarah A | 129425 |
| King, Genevieve R | 178356 |
| King, Stephanie Dunston | 216454 |
| King, Terri J | 129457 |
| Kinney, Jerry N | 148021 |
| Kinney, Sharon H | 102609 |
| Kinsey, R Wayne | 102610 |
| Kirkhart, Thomas B | 129472 |
| Kirkland, Reche C | 211206 |
| Klem, Anne C | 260775 |
| Kleyle, Peggy E | 106842 |
| Klis, Walter W JR | 157434 |
| Klosterman, Leo R | 129518 |
| Klug, Catherine R | 148061 |
| Klug, Martin L | 129519 |
| Klug, William B | 129520 |
| Knight, Jerry A | 243386 |
| Knoop, John F | 148073 |
| Knowlton, Burton L | 148076 |
| Knowlton, Jeffery C | 102662 |
| Koerber, Katy Mae | 148083 |
| Komoroski, Kenneth S | 205119 |
| Konstanzer, David J | 102688 |
| Konstanzer, Dineta F | 223094 |
| Kordick, Jennifer M | 174352 |

PPG103112

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Kordick, Thomas E | 175184 |
| Krauhs, Stanley W JR | 158106 |
| Kriss, Allan B | 148148 |
| Krueger, Alan L | 102741 |
| Kubicek, Adolph J | 180260 |
| Kuhn, Larry W | 129638 |
| Kuhn, Vickie B | 106847 |
| Kurywchak, Michael J | 102777 |
| Kwiatkowski, Barbara F | 243634 |
| Kyle, Geraldine V | 148197 |
| La Rocque, Gwendolyn T | 217328 |
| Labrie, Israel J | 109724 |
| Lafargue, Dana L | 217241 |
| Lafargue, Douglas P | 129661 |
| Lafleur, David J | 148216 |
| Lafleur, James C | 148218 |
| Lafleur, John B | 129663 |
| Lafleur, Lawrence | 148219 |
| Laizure, Lee I | 129684 |
| Lakes, Danny E | 207071 |
| Lamberson, D F JR | 129699 |
| Lambert, Danny B | 129702 |
| Lambert, Sharon Kay | 243702 |
| Lancaster, G L | 129712 |
| Lancaster, Ruby L | 148239 |
| Lancaster, William E | 205747 |
| Land, Richard Jr | 129716 |
| Landers, George F | 129718 |
| Landry, Annie May | 149725 |
| Landry, Arnold D | 129723 |
| Landry, David A JR | 102818 |
| Landry, Doris J | 102820 |
| Landry, Lloyd J | 217197 |
| Landry, Nancy L | 106865 |
| Landry, Paul L | 148246 |
| Landry, William S | 148247 |
| Lane, Carla S | 102823 |
| Langley, Mary E | 107935 |
| Langley, Richard W | 148260 |

| Full Name | PPG ID |
|---|---|
| Lanier, Morris W JR | 148263 |
| Lanthier, James | 148268 |
| Lapearous, Jerry R | 129770 |
| Lapoint, Gary P | 129772 |
| Laporte, Edward L | 216482 |
| Larsen, Kenneth M | 102836 |
| Latham, Phillip M | 217176 |
| Latour, Claude F | 129793 |
| Laughlin, Janet S | 178432 |
| Laukonen, Eugene G | 102852 |
| Laurence, Frankie I | 148287 |
| Lavergne, Alan W | 129806 |
| Lavergne, E L | 148288 |
| Lavergne, Garland A | 243812 |
| Lavergne, William D JR | 148290 |
| Laviolet, Roy | 129809 |
| Laviolette, Melissa | 102857 |
| Lawrence, James B | 129812 |
| Lawrence, William E | 102864 |
| Lawson, Charles E | 157811 |
| Lawson, Donna J | 259783 |
| Le Blanc, William M | 217506 |
| Leach, Norman D | 148317 |
| Leach, Robin G | 106869 |
| Leasure, Stephen E | 129842 |
| Leblanc, Glenda R | 243869 |
| Leblanc, Hilda G | 148327 |
| LeBlanc, James K (Kemp) | 143820 |
| Leblanc, Leroy J | 129851 |
| LeBlanc, Mary F | 148328 |
| LeBlanc, Ronald W | 102881 |
| Leblanc, Timothy S | 129853 |
| Lebleu, Carl J | 129855 |
| Lebleu, Daniel H SR | 129856 |
| LeBleu, Ervin JR | 148330 |
| LeBoeuf, Robert J | 224531 |
| Ledet, Wilmer J | 148339 |
| Ledoux, Alton J | 148341 |
| LeDoux, Carol L | 243843 |

PPG103113

**A-172**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Ledoux, Erica G | 217050 |
| Ledoux, Herbert W | 129880 |
| Ledoux, James R | 102884 |
| Ledoux, John I | 163302 |
| Lee, Michael L | 106873 |
| Lee, R Kenneth | 148345 |
| Leek, Michael L | 148347 |
| Lefrere, Carl P | 129899 |
| Leger, Auriel | 148354 |
| Leger, Darlene G | 243900 |
| Leger, James A JR | 129901 |
| Leger, James D | 148355 |
| Leger, Jerome J | 129902 |
| Leger, Jimmy L | 129903 |
| Leger, Lydia V | 243901 |
| Leger, Mark C | 168069 |
| Leger, Silton J | 129905 |
| Legg, Jay L | 111249 |
| Lejeune, Ervin J | 148365 |
| Lejeune, Glenn J | 129920 |
| LeJeune, Russell R | 148366 |
| LeJeune, Shirley A | 148367 |
| Lejune, Charles M | 148369 |
| Lemasters, D W | 129921 |
| Lemasters, H E | 106876 |
| Lemasters, Kenneth L | 148374 |
| Lemasters, S I | 129924 |
| Lemelle, Thomas J | 129926 |
| Leming, Paul W | 148375 |
| Lemley, Michael R | 129927 |
| Lenhart, William E III | 148378 |
| Lepretre, Floyd | 129961 |
| Levens, Rolfe K JR | 218313 |
| Levy, William A | 148402 |
| Lewis, Ivan | 129986 |
| Lewis, Leon | 129993 |
| Lewis, Linda A | 148408 |
| Lewis, Malbert J | 164519 |
| Lewis, Noah | 163307 |

| Full Name | PPG ID |
|---|---|
| Lewis, William E | 106882 |
| Lindner, Curtis A | 257479 |
| Liptak, Edward J | 148434 |
| Listenbee, Melvin D Jr | 109779 |
| Litman, Allen J | 163639 |
| Lively, J A | 106892 |
| Livengood, Loran R | 244064 |
| Livingston, G C | 106893 |
| Lockhart, Ross E | 130070 |
| Loehr, Clifford E | 148444 |
| Loftin, Bernard W | 148445 |
| Lognion, Louisa M | 163309 |
| Logsdon, G E | 130087 |
| Logston, Lorna G | 207710 |
| Logston, William R | 130088 |
| Lohr, Shirley A | 148452 |
| Lohri, Louise Marie | 244102 |
| London, Joseph | 164929 |
| Long, Alicia E | 130093 |
| Long, Craig R | 103009 |
| Long, Urdell | 148458 |
| Lopez, Frederick | 148466 |
| Lormand, Felix A | 148472 |
| Louden, Bernard G | 148473 |
| Louviere, Gerane H | 217485 |
| Lovejoy, Estelle W | 149777 |
| Lovesky, James E | 103031 |
| Lowery, Evanna M | 130178 |
| Loy, Carol S | 244192 |
| Loy, Ronald L | 130190 |
| Ludwig, Patricia A | 205197 |
| Luent, Patricia L | 244214 |
| Lusk, D B | 106913 |
| Lyles, Kenneth | 106914 |
| Lynch, Robert P | 221337 |
| Lynch, Terri F | 103066 |
| Lyons, Frank M | 130246 |
| Lytton, Sally E | 252039 |
| MacEwan, Brenda L | 106916 |

PPG103114

**A-173**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Mack, Delores | 244275 |
| Mack, Robert | 148538 |
| Mackey, Elbert R | 103081 |
| Madden, James A | 107975 |
| Maddox, Adrian R | 148548 |
| Maddox, Melvin V JR | 103090 |
| Maidens, James JR | 148569 |
| Makris, Bonnie H | 160300 |
| Malbrew, Moses | 130305 |
| Malcolm, David W | 216601 |
| Maldonado, Martin E | 103110 |
| Maloney, B Allen | 148590 |
| Malveaux, Merid D | 244362 |
| Malvo, Joyce L | 148594 |
| Mammen, Irene M | 172387 |
| Managan, William V | 103127 |
| Mansell, J Douglas (Douglas) | 103136 |
| Manuel, Alton J | 148601 |
| Manuel, Curtis J JR | 176469 |
| Manuel, H W | 130335 |
| Manuel, Jeffrey L | 130336 |
| Manuel, R S | 130338 |
| Manuel, Richard M | 130340 |
| Manuel, Theresa F | 149733 |
| Maple, Donald L | 148604 |
| Marcantel, Carroll | 148606 |
| Marcantel, Gerald W | 244401 |
| Marcantel, Julius B | 148608 |
| Marcantel, Philip Tonas | 130348 |
| Marino, Teresa L | 155405 |
| Marlow, Marvin J JR | 106928 |
| Marsch, Darren L | 103163 |
| Martin, Charles W | 130400 |
| Martin, Joe E | 218576 |
| Martin, Marilyn L | 130413 |
| Martin, Mary R | 217404 |
| Martin, Michael D | 130416 |
| Martin, Mitchell T | 130417 |
| Martin, Sandra E | 244497 |

| Full Name | PPG ID |
|---|---|
| Martin, Thomas L | 148654 |
| Martin, Tommy L | 130428 |
| Mask, Jerry D | 218725 |
| Mason, Anita M | 199279 |
| Mason, Evelyn G | 106935 |
| Mason, George E | 148667 |
| Mason, James E | 207622 |
| Mason, Leeman W | 106937 |
| Mason, Melvin L | 218097 |
| Mason, Richard L | 148669 |
| Massie, Howard T JR | 148674 |
| Masters, D M | 106939 |
| Mateo, Carlos A | 203931 |
| Mathew, Joseph | 166077 |
| Matte, John A | 109834 |
| Matthews, Arthulus JR | 130467 |
| Matthews, Henry J JR | 217342 |
| Matthews, Robert J | 130474 |
| Mattiza, Dick S | 158448 |
| Mattox, Michael W | 207669 |
| Matz, Lewis W Jr | 140201 |
| Mayfield, Bruce W | 130494 |
| Mayfield, Darrell G | 106948 |
| Mayo, Ronald L | 217288 |
| Mc Entire, Virginia Jo | 149719 |
| Mc Kimmie, Mary Jo | 207652 |
| Mc Laughlin, Charlotte R | 199237 |
| McAdams, Michael D | 103238 |
| McCain, Lloyd R | 103245 |
| McCaleb, Steve W | 107999 |
| McCardle, Dennis D | 130542 |
| McCardle, Patti J | 207662 |
| McCauley, Dan J | 111352 |
| McClendon, Billie H | 148741 |
| McComb, Percy J | 148747 |
| McCorquodale, Robert J | 148755 |
| McCracken, Shirley J | 244745 |
| McDaniel, Alton | 148764 |
| McDaniel, James R | 144537 |

PPG103115

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| McDaniel, Thomas D | 130619 |
| McDermitt, J Gregory | 206622 |
| Mcdiffitt, Mary F | 244937 |
| McDonald, Grover T | 130621 |
| McDonald, John Cory | 136386 |
| McDonough, William N | 148775 |
| McElwee, Jo Ann Evans | 106960 |
| McFarlain, Gwendolyn | 244797 |
| McFrederick, Greta Lou | 148783 |
| McGavock, Bert W | 109860 |
| McGee, Brian P | 130648 |
| McGee, Harlan E | 130649 |
| McGee, Janice G | 148284 |
| McGee, Tim R | 148788 |
| McGinnis, Thelma J | 244813 |
| McGuire, Brian M | 103308 |
| McGuire, Kenneth R | 148797 |
| McInnis, E Earl | 148802 |
| McInnis, Gerald B | 148803 |
| McKee, Delia M | 157482 |
| McKeough, David T | 103323 |
| McKowen, James A | 103327 |
| McLaughlin, Robert J | 148825 |
| McLendon, Ervin | 130705 |
| McManus, Earl J SR | 148830 |
| McMasters, Fred J | 148831 |
| McMichael, James E | 103336 |
| McNabb, Bonnie K | 244897 |
| McNabb, William F | 130725 |
| McNew, Charles | 211270 |
| McPherson, George E | 148845 |
| Meadows, James E JR | 103357 |
| Means, Dawn M | 130767 |
| Means, James B | 103358 |
| Meche, Rose M | 244949 |
| Meek, Donald K | 103366 |
| Meeker, David E | 148861 |
| Meeks, Anthony J SR | 130783 |
| Meeks, George W | 148863 |

| Full Name | PPG ID |
|---|---|
| Meeks, Howard O II | 103367 |
| Melendy, Lynn A | 109879 |
| Mellard, Kirk M | 103372 |
| Melott, Melvina M | 244982 |
| Melott, Norma K | 258634 |
| Menard, Willard J | 148881 |
| Menge, Betty L | 148883 |
| Mercer, John D | 144051 |
| Merchant, Kenneth J (Jerry) | 103383 |
| Meredith, William A | 148888 |
| Mesloh, Karl R | 157466 |
| Mestayer, Lionel J JR | 111389 |
| Meyers, Deloris | 245036 |
| Milam, J Edwin | 148927 |
| Miles, Robert E | 130870 |
| Miller, Drucilla S | 245112 |
| Miller, Ezora D | 245119 |
| Miller, Glenda J | 245124 |
| Miller, John G | 130917 |
| Miller, John J | 106070 |
| Miller, Joseph R | 148955 |
| Miller, Lloyd W | 148958 |
| Miller, Luther J | 103451 |
| Miller, Maurice C | 130928 |
| Miller, Nathan L | 130934 |
| Miller, Peter D | 130937 |
| Miller, Reed O | 148964 |
| Miller, Richard D JR | 106986 |
| Miller, Richard H | 218493 |
| Miller, Stephen D | 103458 |
| Miller, Tally J | 148971 |
| Miller, Terry S | 148972 |
| Milligan, Peggy R | 103464 |
| Mills, Gerald L | 224135 |
| Mills, Kenneth E | 217991 |
| Miner, David W | 217261 |
| Minter, Charles R | 149001 |
| Mire, Viola T | 245206 |
| Mitchell, Betty A | 149012 |

PPG103116

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Mitchell, Boyd B | 130997 |
| Mitchell, Robert F | 149016 |
| Mobley, Dale R | 131019 |
| Monic, Eldon M | 103509 |
| Monteith, Will H | 228975 |
| Montes, Melvin D | 131051 |
| Montgomery, Marshall P | 149037 |
| Montie, John W | 149041 |
| Moody, Horace A | 149042 |
| Moon, James C JR | 131069 |
| Moore, Beverly J | 245313 |
| Moore, Bill G | 106997 |
| Moore, Billie D | 216512 |
| Moore, Gerald E | 103522 |
| Moore, Lemuel H JR | 131101 |
| Moore, Morgan C | 230534 |
| Moore, Thomas N | 131117 |
| Mora, Balbina A | 109920 |
| Moran, Donald R Jr | 141768 |
| Moran, Margaret A | 149062 |
| Moreau, Eric W | 131127 |
| Moreau, Wayne R | 103533 |
| Morgan, Ada V | 245386 |
| Morgan, John A JR | 217212 |
| Morgan, John D | 103542 |
| Morgan, Juanita S | 103544 |
| Morgan, Michael J (Mike) | 131143 |
| Morgan, Richard I | 103545 |
| Morgan, Vernon J | 103547 |
| Morris, Billie M | 149084 |
| Morris, Brett A | 145004 |
| Morris, Charles R | 103554 |
| Morris, Denny R | 131155 |
| Morris, Joseph S | 149088 |
| Morris, Paul J | 103560 |
| Morris, Walter Melvin | 149091 |
| Morrison, Allen D | 131174 |
| Mose, Mary A | 245435 |
| Moser, Jerry J | 103569 |

| Full Name | PPG ID |
|---|---|
| Moss, Robert L | 149109 |
| Mossor, Ruby V | 245457 |
| Mott, Murray L | 131205 |
| Mounts, William E Jr | 131206 |
| Mouser, Betty J | 245469 |
| Mouton, Larry E | 103591 |
| Mueller, Ronald W | 103601 |
| Muery, Charles A | 103603 |
| Mullett, David E | 103609 |
| Mullett, Elizabeth E | 245501 |
| Mullins, Jimmy I | 131233 |
| Mumm, Douglas | 149138 |
| Munds, Shelby B | 158382 |
| Munoz, Martin | 221828 |
| Murdock, Raymond E SR | 149144 |
| Murdock, Ruth K | 160326 |
| Murray, Robert D | 149157 |
| Murrell, George N | 149159 |
| Muzzy, Carol L | 149544 |
| Myers, Barbara A | 149164 |
| Myers, Louis C | 149176 |
| Myers, Robert D | 131287 |
| Myslinsky, Martha M | 149420 |
| Nash, John F | 142345 |
| Natalini, Marlene D | 149196 |
| Navarre, Juanita G | 149197 |
| Navas, Luis R | 149198 |
| Neal, Linda N | 198424 |
| Neal, Milton R | 103660 |
| Ned, Benjamin E | 149208 |
| Ned, Jerry L | 108051 |
| Neeley, Harold C JR | 204735 |
| Neely, James E | 149209 |
| Neff, Laverna R | 149212 |
| Neikirk, Gerald R | 149215 |
| Nelms, Joseph A | 131347 |
| Nelson, Henry J | 131354 |
| Nelson, Jack A | 149218 |
| Nelson, James K | 215187 |

PPG103117

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Nething, George W | 149222 |
| Neugent, Angela S | 131362 |
| Newman, William T | 149228 |
| Nichols, David W | 216709 |
| Nichols, Louise B | 107032 |
| Nickodem, Jacob J | 207699 |
| Nida, Wallace J | 149243 |
| Nipper, Martin P | 103711 |
| Nippert, Alfred C | 245707 |
| Nixon, David E | 158370 |
| Nixon, Haskell L | 149252 |
| Nolan, Eathel I | 245724 |
| Noland, Linda S | 149258 |
| Nope, James R | 103723 |
| Ogea, John R | 149293 |
| Ogea, Mary L | 245817 |
| Oglesby, Walter L JR | 103753 |
| Oldfield, Charles D | 149300 |
| Olinger, Ronald D | 103762 |
| Oliver, James M | 131521 |
| Oliver, Wilgus A | 131525 |
| Olivier, James A | 103764 |
| Olmsted, Roland | 217122 |
| Olson, Richard F | 136860 |
| Olson, Robert E | 103767 |
| Omear, Paul E | 207555 |
| O'Neal, Kenneth L | 131540 |
| Oneil, Bryan W JR | 149322 |
| Onken, Arnold C JR | 131542 |
| Opal, Joseph J JR | 131547 |
| O'Quain, Bobby W | 131548 |
| O'Quain, Rodney | 131549 |
| Orloski, William G | 103782 |
| Orourke, Brian P | 103785 |
| Otto, Jack M | 150164 |
| Otto, Vicki L | 103801 |
| Owen, Robert C | 217023 |
| Owens, Raymond R | 131598 |
| Pabon, Clifford | 150139 |

| Full Name | PPG ID |
|---|---|
| Pabon, Clifford | 150139-2 |
| Paden, James R | 107054 |
| Paden, Terrell L | 131609 |
| Paden, Wilda M | 149535 |
| Pair, Doc Carlton | 103827 |
| Panunto, Anthony P | 103851 |
| Papillion, B P | 131647 |
| Papillion, Walman E | 150205 |
| Parham, Carroll H | 164327 |
| Parish, Allan D | 103858 |
| Parish, Joseph C | 150208 |
| Park, Johnny S | 158431 |
| Parker, Adam E. | 154822 |
| Parker, Betty W | 217042 |
| Parker, John W | 103863 |
| Parker, Kathryn S | 107063 |
| Parker, William R | 131683 |
| Parks, Kenneth K | 150225 |
| Parks, William H | 150226 |
| Parnell, Charles R | 103866 |
| Parr, Boyd M | 150230 |
| Parsons, Bonnie Jo | 107065 |
| Parsons, Ernest F | 103872 |
| Parsons, Robert W | 207487 |
| Parsons, T H | 131705 |
| Patel, Ramesh | 143925 |
| Paulk, Shadye L | 150271 |
| Peacock, Richard A | 206732 |
| Pearce, James M | 150290 |
| Peard, William J | 150291 |
| Peavy, Leroy | 150294 |
| Peck, Ronald E | 103911 |
| Pecorino, Elizabeth M | 107070 |
| Peek, Dale A | 131786 |
| Pellerin, James C | 150307 |
| Pellett, Gerald F | 150309 |
| Penisch, Mary L | 150315 |
| Penn, Melinda S | 217354 |
| Penn, Richard W | 131810 |

PPG103118

A-177

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Penn, Trudy F | 246175 |
| Penny, Amy B | 102797 |
| Perez, Beatrice | 181135 |
| Perez, Ismael | 103934 |
| Perigo, Gary G | 103936 |
| Perkins, David G | 150326 |
| Perkins, Eugene G | 163161 |
| Perron, S Paul | 150331 |
| Perry, Rodney G | 217397 |
| Perry, Sandra | 246219 |
| Perry, Sandra | 246219 |
| Perry, Sheila D | 131847 |
| Persinger, Lionel L | 150342 |
| Pertuit, Robert K | 103951 |
| Peshoff, Robert L | 131854 |
| Pete, Lawrence SR | 150347 |
| Peterson, Christopher | 103956 |
| Peterson, Hanson A | 163168 |
| Pethel, Betty L | 246239 |
| Petrie-Bird, Shirley A | 160164 |
| Petruccelli, Michael E | 150360 |
| Pettit, Georgia Ann | 246262 |
| Peveto, Gerald W | 131876 |
| Phillips, Charles O | 150379 |
| Phillips, Harold L | 157834 |
| Phillips, Jack | 212516 |
| Phillips, Jerry JR | 246300 |
| Phillips, Robert A | 103982 |
| Phillips, Robert D | 150390 |
| Phillips, Thomas R Jr | 131920 |
| Picard, Ralph F | 150394 |
| Pickett, Bartholomew | 131929 |
| Pierpoint, Mabel V | 160882 |
| Pierpoint, Michael D | 131947 |
| Pierrottie, Jeffrey B | 108103 |
| Pigott, Clifton M | 224562 |
| Pinkston, Donald C | 104005 |
| Pinson, Roger D | 131959 |
| Pitcher, Erin Buckley | 100624 |

| Full Name | PPG ID |
|---|---|
| Pitman, John M | 217426 |
| Pittman, Joseph D | 104013 |
| Poche', Scott R | 131987 |
| Polen, Iris J | 149533 |
| Pond, Sidney P | 132004 |
| Pooser, James W | 150443 |
| Popillion, Dora Mae | 246443 |
| Porche, John W | 150451 |
| Portie, Grady A | 217173 |
| Posego, John J | 150454 |
| Poszywak, Leonard J | 212967 |
| Potts, Jeffrey G | 132035 |
| Potts, Jimmy D JR | 214243 |
| Pouchie, Robert B | 132038 |
| Poullard, James A | 150471 |
| Pounds, Janet | 104063 |
| Pousson, Harris L | 150474 |
| Pratt, Lewis J | 104082 |
| Prejean, Gary P | 107095 |
| Prejean, Herbert J | 132064 |
| President, Emmanual C | 142227 |
| Procko, Andrew | 157520 |
| Pruett, Johnie J | 150522 |
| Prunty, Darrell W | 132111 |
| Pryor, Philip E | 132112 |
| Pugh, Brian E | 107100 |
| Pulse, Kathleen | 160005 |
| Pulver, Philip W | 150536 |
| Qualls, Gregory J | 217337 |
| Quebedeaux, Fay L | 246640 |
| Quirk, Edward M | 132151 |
| Quiroz, Cynthia A | 107105 |
| Racca, Joseph H JR | 132156 |
| Racer, Patricia A | 149530 |
| Racer, Stephen P | 107106 |
| Raimer, Jocelyn H | 178433 |
| Rainwater, Loy K | 150566 |
| Ralston, Samuel L JR | 150571 |
| Ramos, Mauro | 108119 |

PPG103119

**A-178**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Ramsey, Howard A | 246717 |
| Ramsey, William H | 217747 |
| Randall, James C | 104158 |
| Rao, Dave L | 104167 |
| Rao, Stephanie S | 111537 |
| Raper, Fred M | 150579 |
| Rau, Donald R | 110065 |
| Reado, Junus V JR | 132259 |
| Rechlicz, Thomas A | 104191 |
| Reddoch, Cyril Thomas | 132268 |
| Redou, Eddie III | 110077 |
| Redou, Ethel Lena | 257748 |
| Reed, Cary D | 132279 |
| Reed, Johnnie JR | 150597 |
| Reed, R L | 132286 |
| Reese, Thomas C | 136870 |
| Reeves, Charlie F | 150606 |
| Reeves, Wilda D | 149736 |
| Reich, Joan L | 149656 |
| Reid, Robert D | 216558 |
| Reinhardt, Arthur E III | 104219 |
| Reinhardt, Linda P | 104220 |
| Rempert, Norma C | 150626 |
| Rene, Orelia | 246885 |
| Rene, William | 150629 |
| Renfroe, Curtis | 246890 |
| Rentas, Orlando | 221818 |
| Reon, Joseph H | 165964 |
| Reynolds, T E | 132343 |
| Rhodes, James A | 217450 |
| Rhodes, James R | 111602 |
| Riccobon, Bruna A | 150652 |
| Richard, A Robin JR | 150659 |
| Richard, Debra F | 132366 |
| Richard, Larry J | 150660 |
| Richard, Maria Ellina | 246962 |
| Richard, Patricia | 246963 |
| Richard, Raymond T | 150662 |
| Richard, W Patrick | 217000 |

| Full Name | PPG ID |
|---|---|
| Richards, Judson R | 150666 |
| Richardson, Frank A II | 218338 |
| Richardson, Steve T | 104267 |
| Richey, Steven C | 132392 |
| Richman, Glenda M | 104270 |
| Rideau, Linda F | 107140 |
| Rider, Larry L | 247002 |
| Ridge, Gretchen A | 150688 |
| Riel, Edna F | 166303 |
| Ries, Mary E | 160403 |
| Riggenbach, Earl W | 132422 |
| Rilee, Mary Lou | 105592 |
| Riley, Calvin S SR | 150706 |
| Rine, Gary E | 132428 |
| Rine, Jay L | 132429 |
| Rine, Robert E | 150712 |
| Ring, Duane L | 150716 |
| Ringuet, Christi T | 142990 |
| Rion, Barbara L | 217031 |
| Ripley, Betty Jane | 107145 |
| Ritz, K L | 132449 |
| Rivera, Celestino | 111619 |
| Robbins, Arthur L JR | 150742 |
| Robbins, Brenda S | 132467 |
| Robert, Gregory P | 104313 |
| Roberts, David A | 132483 |
| Roberts, L L | 132491 |
| Roberts, Lee Roy | 150750 |
| Roberts, Paul L | 164868 |
| Roberts, Steven R | 104317 |
| Roberts, T E | 150753 |
| Robertson, Calvin D | 150755 |
| Robertson, Wayne C | 104324 |
| Robicheaux, Cedric J | 150761 |
| Robinson, Albert H | 150766 |
| Robinson, Donald L | 132518 |
| Robinson, Gilbert R | 150773 |
| Robison, Larry J | 107154 |
| Robison, Micheal R | 107457 |

PPG103120

**A-179**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Rockich, Samuel W | 150783 |
| Rockwell, Paul E | 150784 |
| Rogers, Jesse P | 258879 |
| Rogers, Thomas A JR | 150806 |
| Roman-Rivera, Eusebio | 175422 |
| Romero, Carroll | 132615 |
| Ronayne, Kenneth C | 132623 |
| Rosamore, Roy A | 150820 |
| Rose, Brenda K | 247245 |
| Rose, Charles D | 104374 |
| Rose, George M | 132636 |
| Rose, H V | 132637 |
| Rosie, George W | 132653 |
| Ross, Harvey L | 150836 |
| Rothermund, Robert N JR | 205606 |
| Rougeau, Curtis A | 132682 |
| Royal, Calvin R | 132701 |
| Rozas, Christopher L | 132706 |
| Ruble, K Lyn | 107171 |
| Ruckman, M E | 106141 |
| Rush, Doretta R | 160958 |
| Rush, Linda F | 160312 |
| Rush, Nancy S | 247383 |
| Russell, Jack E | 104438 |
| Russell, Richard R Jr | 153317 |
| Rutter, Alan D | 104445 |
| Rutter, William | 247410 |
| Ryan, Selidia | 247421 |
| Ryder, Dores A JR | 104452 |
| Sallier, Julian C. | 150915 |
| Salvo, Chris O | 150923 |
| Sammis, Mark R | 132796 |
| Sanders, Eddie A | 132818 |
| Sanders, Jack R | 132819 |
| Sanders, Roy E | 104481 |
| Sands, John F | 150933 |
| Santee, Larry D | 132834 |
| Sapp, Charles B | 107189 |
| Sapp, William Eric | 108157 |

| Full Name | PPG ID |
|---|---|
| Sargert, Laurice F | 150942 |
| Sathe, Avinash T | 158174 |
| Saunders, Lois L | 107192 |
| Savant, Kenneth W | 107193 |
| Savoy, Donald E | 104506 |
| Sawyers, Marilyn S | 247560 |
| Schalon, Beverly S | 104522 |
| Scharf, Edward A JR | 104529 |
| Scharrier, Hershal E | 150968 |
| Scherich, R E | 150975 |
| Schexnayder, Lynell | 150978 |
| Schexnayder, Sylvia A | 247608 |
| Schilling, Wilbur N | 150983 |
| Schmidt, Robert L | 150993 |
| Schneider, Albert A | 104559 |
| Schofield, Sally Ann | 247651 |
| Schrimsher, Brent L | 132921 |
| Schwarzauer, William A III | 104594 |
| Scott, B A | 132949 |
| Scott, Nellie A | 158114 |
| Scott, Sandra L | 108184 |
| Seckman, Donald L | 132990 |
| Seiter, John J | 104632 |
| Self, Donald C | 151063 |
| Sell, George D | 133002 |
| Semien, Antoine | 161744 |
| Semien, Donald | 133011 |
| Semien, Jesse J | 133013 |
| Semien, Lyonel P | 133014 |
| Sensat, Mary Jane | 106695 |
| Sensat, Russell L | 133019 |
| Serice, Donna H | 108194 |
| Shaffer, Patricia A | 153986 |
| Shankle, Guyler | 162647 |
| Shannon, Robert J | 104669 |
| Shao, Dakang | 141323 |
| Sharp, Andrew W | 223063 |
| Shaw, Marcia M | 212220 |
| Sheets, Elaine M | 104692 |

PPG103121

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Shelton, William R | 151114 |
| Shenefiel, Donald E | 151118 |
| Shepherd, Armenta | 247925 |
| Shepherd, Debora L | 207569 |
| Shepherd, Jon C | 104705 |
| Shepherd, Vaughn L | 160379 |
| Sherman, Lee A | 247936 |
| Shoemake, Kelly N | 133153 |
| Shreve, J O | 133171 |
| Shuff, Donald J | 133174 |
| Shuff, Jacob J | 151154 |
| Shuff, Joe A | 151155 |
| Shuff, Rufus L | 133176 |
| Shutler, James H | 151161 |
| Siler, Natalie Julian | 106166 |
| Simmons, Elbert W | 133220 |
| Simmons, Harry G III | 104754 |
| Simmons, Penelope | 198353 |
| Simmons, Robert B | 151178 |
| Simmons, Roger L | 107237 |
| Simon, Betty Jean | 248088 |
| Simon, Brigitte C | 133230 |
| Simon, Henry | 133231 |
| Simon, Roger | 151180 |
| Sims, J L Jr | 248108 |
| Singleton, John E | 151201 |
| Sirman, Janice M | 149782 |
| Siso, Angel L | 104782 |
| Sistrunk, Donald M | 133287 |
| Sittig, Joyce | 149745 |
| Siverand, Marion | 151215 |
| Skinner, Felman | 151227 |
| Skipper, Susan L | 106170 |
| Slawinski, Tresa M | 149587 |
| Slaydon, Ronald H | 151237 |
| Slider, Donald D | 151239 |
| Slie, Sandra K | 248171 |
| Slokan, Albert R | 133315 |
| Smalley, Edward C | 104807 |

| Full Name | PPG ID |
|---|---|
| Smith, Amie T | 111749 |
| Smith, Bonnie W | 248226 |
| Smith, Charles W | 133351 |
| Smith, Clay A | 133357 |
| Smith, Dale R | 104824 |
| Smith, David E | 133364 |
| Smith, Della G | 133368 |
| Smith, Donna J | 248243 |
| Smith, Douglas E | 211774 |
| Smith, Douglas M JR | 151268 |
| Smith, Elaine A | 163166 |
| Smith, Estella | 248249 |
| Smith, James | 107257 |
| Smith, Jason K | 141693 |
| Smith, Jason S | 111758 |
| Smith, John D | 133408 |
| Smith, Joseph H | 151282 |
| Smith, Kenneth R | 133421 |
| Smith, Larry D | 133425 |
| Smith, Loretta M | 108231 |
| Smith, Mary C | 248306 |
| Smith, Melvin J | 151290 |
| Smith, Patricia A | 104853 |
| Smith, Patricia D (Diane) | 117208 |
| Smith, R L | 133455 |
| Smith, Ralph M | 217362 |
| Smith, S D | 151302 |
| Smith, Sonny L | 133468 |
| Smith, Thomas R | 133478 |
| Smith, Timothy J | 154075 |
| Smith, Tracy S | 107266 |
| Smith, William D | 151311 |
| Smithhart, Charles B | 104871 |
| Smittle, Eileen C | 248365 |
| Snead, William K | 176669 |
| Snodgrass, John K | 174371 |
| Snodgrass, John O | 151325 |
| Snow, Dessie W | 160559 |
| Soileau, Earl J | 151346 |

PPG103122

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Soileau, Kenneth W | 133523 |
| Soileau, Patrick E | 151347 |
| Soileau, Paul A | 133524 |
| Somerick, Richard J | 133528 |
| Sonnier, Chester L | 133532 |
| Sonnier, Gary K | 107272 |
| Sonnier, Joseph G | 151354 |
| Sonnier, M J | 133537 |
| Sonnier, Percy J | 151355 |
| South, Tina D | 133544 |
| Spears, Raymond L | 151370 |
| Spencer, A C | 107277 |
| Spencer, Alfred G | 104915 |
| Spencer, D N | 133568 |
| Spencer, Justus G | 151380 |
| Spier, Wayne L | 104920 |
| Spivey, Linda D | 217439 |
| Splettstoesser, Bradley M | 224705 |
| St.Romain, Preston J III | 133620 |
| Stackpole, Edith M | 151409 |
| Stacy, Clifford R | 163311 |
| Stagg, Walter JR | 151411 |
| Stalnaker, Christina D | 141120 |
| Standiford, Lora L | 104942 |
| Standiford, William R | 104943 |
| Starkey, Darrell V | 151428 |
| Starkey, E Bradley | 133667 |
| Starkey, J C | 133668 |
| Starkey, William L | 151429 |
| Stawecki, Lisa M | 104961 |
| Stear, Ronald B | 104962 |
| Steele, Cheryll L | 180768 |
| Steele, D L | 133683 |
| Stegall, Truman R | 104968 |
| Stehney, Darlene M | 160098 |
| Stehney, William F | 104971 |
| Stein, Hiram J JR | 133699 |
| Stemple, David C | 207594 |
| Stemple, Linda L | 252042 |

| Full Name | PPG ID |
|---|---|
| Stephenson, James D | 163342 |
| Stevens, Joseph T JR | 133725 |
| Stewart, Greta S | 255644 |
| Stewart, Michael R | 104997 |
| Stocker, Robert P | 105011 |
| Stone, John T JR | 111808 |
| Stone, Ronald D | 105021 |
| Stout, Bernard | 133785 |
| Stradwick, Fredrick R | 133799 |
| Stratton, James V | 111809 |
| Strawderman, Ruth D | 167500 |
| Street, Coleman K | 105037 |
| Strickland, Ivy J | 156817 |
| Strickland, Johnny D | 163895 |
| Stutes, Elie JR | 151533 |
| Stutes, Joseph A (Al) | 161403 |
| Sullivan, Kevin F | 105061 |
| Sullivan, Mack P | 111814 |
| Summers, Darrel W | 133863 |
| Suttle, William L | 133886 |
| Suydam, R C | 133889 |
| Sweeney, Joe | 207643 |
| Sweeney, Luther B JR | 151572 |
| Sweet, Lawrence E | 217255 |
| Talbot, Robert J | 151595 |
| Talbott, David F | 133931 |
| Tallman, Annie Mae | 248975 |
| Tallman, Joretta J | 256772 |
| Tank, Helen | 248980 |
| Tarver, Billy E | 151600 |
| Tarver, D C | 133944 |
| Tatala, Mary Lee | 133946 |
| Taylor, Edward P | 217315 |
| Taylor, Gwendolyn L | 149740 |
| Taylor, Johnny R | 151614 |
| Taylor, Rhonda | 249023 |
| Taylor, Terry A | 107319 |
| Tedesco, Nancy M | 134003 |
| Templeton, A L | 134009 |

PPG103123

**A-182**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Teng, Huijia | 144798 |
| Tennant, Forrest L | 249050 |
| Tenney, Jan C | 105131 |
| Terry, Cornelia R | 249062 |
| Tessmer, Richard P | 151640 |
| Tezeno, Marcella T | 151644 |
| Theriot, Christopher | 110283 |
| Thibodaux, Milton J JR | 134039 |
| Thibodeaux, Amy E | 105148 |
| Thibodeaux, Beulah L | 249083 |
| Thibodeaux, Brady A | 134040 |
| Thibodeaux, Dean J | 151650 |
| Thibodeaux, Earl | 105149 |
| Thibodeaux, Lorena P | 249084 |
| Thibodeaux, Phillip L | 151651 |
| Thibodeaux, Sylvia L | 151652 |
| Thiele, C R | 134049 |
| Thiele, Robert L | 218199 |
| Thierry, Mary E | 107323 |
| Thistrup, Wilton | 151658 |
| Thomas, Alton JR | 134052 |
| Thomas, Amos M | 151659 |
| Thomas, Andrew J | 252505 |
| Thomas, Archie N | 165352 |
| Thomas, James V Jr | 151673 |
| Thomas, John M | 151675 |
| Thomas, Lawrence E | 151679 |
| Thomas, Paul E | 151681 |
| Thomas, Ronald W | 151684 |
| Thomas, Sheldon Brooks | 151685 |
| Thomas, Steven L | 107328 |
| Thomas, W H | 134088 |
| Thompson, Bradley D | 134095 |
| Thompson, Green T JR | 151698 |
| Thompson, Karen S | 134114 |
| Thompson, Osie W | 134121 |
| Thorn, Harold N | 151708 |
| Thornley, William E | 105183 |
| Tillman, Lois D | 151722 |

| Full Name | PPG ID |
|---|---|
| Tofflemire, David F | 249244 |
| Tollenger, Frances D | 178754 |
| Tolzda, David G | 134191 |
| Tommasi, Jeremy P | 134197 |
| Toro, Carlos A | 105223 |
| Torres, Gerry E | 101343 |
| Torres, Julio A | 151746 |
| Torres, Migdalia R | 197557 |
| Torres, Neftali | 105227 |
| Tousaint, Elizabeth C | 151749 |
| Tracy, Darrell W | 134230 |
| Trader, Eldora G | 249301 |
| Trafford, Allan T III | 134231 |
| Trafford, Paul W | 134232 |
| Trahan, B R | 144547 |
| Trahan, Deborah W | 158371 |
| Trahan, Katherine B | 107342 |
| Trail, Madeline L | 249306 |
| Trammel, Ted A | 151762 |
| Tramonte, Joseph V | 134241 |
| Tran, Gia V | 221907 |
| Travis, Frances E | 250914 |
| Treme, Darrell L | 134247 |
| Tripp, Richard P | 158252 |
| Trouard, Denise H | 134276 |
| Trouille, Glenn D | 134277 |
| Trouth, Richard R | 151775 |
| Truitt, Loretha M | 249354 |
| Tugwell, Nancy B | 217517 |
| Tullier, Elliott J JR | 151792 |
| Tunick, Barry | 151794 |
| Tunks, Leland E JR | 134307 |
| Tuomala, Roger W | 105271 |
| Turano, Garland A | 151795 |
| Turek, Judith M | 134311 |
| Turner, Barbara J | 105276 |
| Turner, Roy D | 218737 |
| Tuttle, Phillip D | 151814 |
| Tyler, Scot A | 175062 |

PPG103124

**A-183**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Tyson, Ellen A | 151820 |
| Tyson, Willard B | 151821 |
| Uppercue, Brooke A | 105305 |
| Valek, Christopher A | 207030 |
| Valentine, Lionel S | 134370 |
| Valentine, Wallace L | 151849 |
| Valere, Ernesteen B | 249488 |
| Valerie, Gerald J | 151850 |
| Valmont, Laura Lee | 160917 |
| Van Hoozer, Katie J | 176792 |
| Vancamp, James D | 151856 |
| Vancamp, Joseph W | 164886 |
| Vance, Larry W | 105329 |
| Vance, Owen C | 151858 |
| Vancleef, Donald E | 151860 |
| Vander, Elton D | 134389 |
| Vanduzen, B D | 163684 |
| Vanwinkle, Kyle D | 134404 |
| Vaughan, John A | 249556 |
| Veal, Charles R | 214067 |
| Veillon, Harry A | 105349 |
| Veillon, Margaret M | 151877 |
| Velasquez, Ruben JR | 107369 |
| Venable, Johnny R | 105352 |
| Veronesi, James V | 105356 |
| Veshio, Leslie N | 205817 |
| Vest, Stanley A | 134439 |
| Viator, Patrick | 107373 |
| Vice, Thomas G | 134444 |
| Victorian, Philip J | 151892 |
| Vidrine, Delbert J | 107375 |
| Villanueva, Rey | 108315 |
| Vincent, Auburn K (Butch) | 105369 |
| Vincent, Cecil | 151897 |
| Vincent, Elwood J | 134471 |
| Vincent, Ione M | 158372 |
| Vincent, James H | 151898 |
| Vincent, Larry J SR | 151899 |
| Vincent, Russell J | 134476 |

| Full Name | PPG ID |
|---|---|
| Vincent, Voorhies J | 134478 |
| Vizena, Tommy R | 151909 |
| Volin, David R | 202719 |
| Wade, David W | 134508 |
| Wade, Eva B. | 249661 |
| Wade, Jerome E | 151929 |
| Wade, Ronnie E | 154366 |
| Wagner Blair, Glenna | 160322 |
| Walborn, Kenneth S JR | 151941 |
| Waldmiller, Paul A | 105406 |
| Walker, Barbara O | 151945 |
| Walker, Terry L | 107386 |
| Wallace, James R | 111911 |
| Wallace, William E | 111912 |
| Wallace, William N | 219428 |
| Wallace, Wilton G | 151961 |
| Walsh, Daniel M | 105436 |
| Walsh, James A SR | 107387 |
| Walter, Aubrey C | 249771 |
| Walters, James R | 142751 |
| Walton, David E | 151979 |
| Ward, Terry W | 217202 |
| Warden, Jerry P | 151990 |
| Ware, Leland V | 217181 |
| Ware, Reginald A | 111919 |
| Wareham, David A | 134636 |
| Warner, Sarah A | 217416 |
| Warren, Cedric D | 217097 |
| Washington, Artie C Sr | 152002 |
| Washington, Joseph A | 152003 |
| Washington, Paul | 111922 |
| Washington, Smitty A | 134663 |
| Wassum, T R | 134667 |
| Watkins, Carol J | 249860 |
| Watley, Jackie | 134682 |
| Watson, David | 152012 |
| Watson, Helen K | 249878 |
| Watson, John A | 203969 |
| Wayman, John F | 152020 |

PPG103125

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Weatherly, Pam S | 211887 |
| Weaver, David L | 105496 |
| Webb, Joseph A | 134732 |
| Weber, Beverly J | 105502 |
| Weber, D Mark | 152038 |
| Weekley, Faye E | 249930 |
| Weekley, Sadie T | 249933 |
| Weidner, Joseph D | 134775 |
| Weidner, Robert C | 134776 |
| Weigl, Hermina R | 249948 |
| Weihrich, John A | 152045 |
| Weir, James | 105516 |
| Weiss, Scott R | 108339 |
| Welch, Amos J | 249958 |
| Welch, James M | 152053 |
| Wells, D O | 134792 |
| Wells, David A | 134791 |
| Wells, Jeanette R | 152058 |
| Wentzell, Charles H | 110370 |
| Werkheiser, Maryellen E | 153815 |
| Westman, Thomas H | 105547 |
| Weston, Floyd | 152088 |
| Wettemann, Ronald E | 108344 |
| Wheeler, Amy P | 250031 |
| Whitaker, Gary L | 219263 |
| Whitaker, Robert J | 152108 |
| White, Carlton Jr | 152110 |
| White, David L | 152111 |
| White, Frances J | 216859 |
| White, Nelma H | 250072 |
| White, Richard E | 134874 |
| White, Roger D | 134875 |
| White, Waylon L | 216337 |
| Whitehair, Opal B | 134894 |
| Whitehead, Randy K | 134896 |
| Whitfield, Scott J | 134901 |
| Whitley, Patricia S | 158373 |
| Whitney, Erwin C | 218950 |
| Whittington, Matthew D | 145167 |

| Full Name | PPG ID |
|---|---|
| Whorton, Bert E | 250110 |
| Whorton, Elaine T | 107413 |
| Whorton, John E | 250111 |
| Whorton, Kenneth W | 152136 |
| Widcamp, Linda | 250120 |
| Wieczorkowski, Richard J | 207572 |
| Wiethe, Jeffrey J | 110376 |
| Wiggins, Charles M | 108350 |
| Wilcox, Carl J | 152145 |
| Wildberger, Dassell R | 152148 |
| Wildblood, Lloyd II | 134935 |
| Wiley, P W | 134943 |
| Wilk, Edward J | 105602 |
| Wilkins, Timothy A | 152162 |
| Willer, Patrick G | 108355 |
| Williams, Alta M | 250165 |
| Williams, Barbara W | 250167 |
| Williams, C R | 134969 |
| Williams, David E | 152530 |
| Williams, Frank W | 217093 |
| Williams, Hazel | 180752 |
| Williams, Jeremiah C | 107418 |
| Williams, Joyce B | 217142 |
| Williams, Julia M | 152188 |
| Williams, Richard A | 143550 |
| Williams, Richard E | 216126 |
| Williams, Robert E | 152196 |
| Williams, Ronald H | 158110 |
| Williams, Tommy L | 152200 |
| Williams, Walter K | 152201 |
| Williams, Wanda J | 250234 |
| Williamson, James D | 105626 |
| Williamson, Jeffrey G | 135036 |
| Williamson, Larry K | 135037 |
| Willis, Anthony G | 135045 |
| Willis, Francis G JR | 152202 |
| Willoughby, Harold E | 152208 |
| Wilson, Bobby J | 216593 |
| Wilson, Dennis M | 174369 |

PPG103126

**A-185**

*Exhibit B*

| Full Name | PPG ID |
|---|---|
| Wilson, Gary L | 105641 |
| Wilson, Hiram R | 216514 |
| Wilson, Jason | 108363 |
| Wilson, Leroy | 135090 |
| Wilson, Robert G | 152231 |
| Wilson, Stephen G | 135100 |
| Wilson, Virginia D | 152234 |
| Winey, Larry M | 135112 |
| Winn, Mitchell S | 135119 |
| Winstead, Charles W | 105666 |
| Winzor, Anna L | 250347 |
| Witt, Jonathan C | 105677 |
| Witt, Terry E | 107426 |
| Wolfe, Gaylen J | 135157 |
| Wood, James H | 105702 |
| Wood, M Lynne | 105704 |
| Wood, Mark W | 105705 |
| Wood, Mary Ann | 223093 |
| Wood, Robert L | 216588 |
| Woods, James M | 105711 |
| Woods, Jerry A | 135212 |
| Woofter, George W | 107433 |
| Woolfolk, Dolores S | 149723 |
| Woolsey, William E | 163831 |
| Woolwine, C W JR | 135231 |
| Wren, Jon R | 107435 |
| Wright, Shirley N | 250489 |
| Wyatt, Lois H | 152321 |
| Wyche, James E III | 152323 |
| Yates, Rose E | 135309 |
| Yeater, Gail L | 107441 |
| Yellott, Robert H | 152345 |
| Yerkey, Robbie Lynn | 178389 |
| Yoho, Howard E | 207501 |
| Yoho, Lawrence W | 135338 |
| Yost, Rudy G | 105762 |
| Young, Buell J | 216781 |
| Young, Elgin E JR | 135354 |
| Young, Irwin O | 217185 |

| Full Name | PPG ID |
|---|---|
| Young, Kenneth D | 135359 |
| Young, Lennis E JR | 135363 |
| Young, Mark A | 105770 |
| Yuravage, Robert T | 105781 |
| Zamora, Melanie G | 175133 |
| Zellner, Mary M | 176086 |
| Zeringue, Leon J JR | 105808 |

PPG103127

**Canada**

| Full Name |
|---|
| Amy, Jessie |
| Arciero, Conrad |
| Beauchesne, Robert |
| Bouffard, Ronald |
| Bozonat, Jean |
| Brault, Lise |
| Cayouette, Gaetan |
| Charron, Alain |
| Cote, Robert |
| Daneau Tardiff, Muguette |
| Dube, Gaetan |
| Dubuc, Robert |
| Dubuc, Jacques |
| Durocher, Claire |
| Falardeau, Margaret |
| Faucher, Denis |
| Gaudreau, Jean-Maurice |
| Graham, Reginald |
| Grenier, Marcel |
| Jolin, Pierre |
| Jones, Barrington |
| Keyser, Eileen |
| King, Sydney |
| Lazure, Diane |
| Leduc, Denis |
| Legault, Pierre |
| Lemay, Jean-Marc |
| Marchand, Marcel |
| Marleau, Helen |
| Morissette, Raymond |
| Ouellet, Roger |
| Pilote, Marcel |
| Ramadan, Mahmoud |
| Roy, Helene |
| Smith, Pat |
| St-Denis, Claude |
| Strunga, Deborah |
| Talbot, Cecil |
| Theveneau-Trudel, Anne |
| Turbide, Michel |
| Wolanyk, Michael |
| Wyndham, Norman |

PPG103128

# EXHIBIT H

| From: | Michael Smith (Atlanta) [Michael.Smith@axiall.com] |
|---|---|
| Sent: | 8/14/2013 10:28:35 AM |
| To: | Harper, James [jharper@ppg.com] |
| CC: | Gette, Joseph [jgette@ppg.com]; Robinson, Rachel (Atlanta) (rachel.robinson@towerswatson.com) [rachel.robinson@towerswatson.com]; Travis DeHaven (tdehaven@JonesDay.com) [tdehaven@JonesDay.com]; Rathburn, Karen [rathburn@ppg.com]; Dean Adelman [Dean.Adelman@axiall.com] |
| Subject: | RE: Response to Employee Matters Agreement Errors_attachment No_v3.xlsx |

Jim,

Thanks for you note.  We will draft an amendment to finalize Schedule B of the Employee Matters Agreement.

Regarding transferring pension balances between PPG and Northern Trust, we believe this would be cleanest and would ensure that the participants would only receive one 1099.  We have spoken to Northern Trust and they have indicated that the benefit payments can be reversed, and they did not indicate that it would be cumbersome for them to handle in this manner.  To facilitate this process, it would be best if you could work with Melinda DeArman and Dina Jones from the TW pension administration team.

Please let me know if we need to discuss anything further.

Mike


Michael L. Smith
Director – Compensation, Benefits & HR Systems
Axiall Corporation
115 Perimeter Center Place, Suite 460
Atlanta, Georgia 30346
(770) 395-4567 Office
(770) 395-4509 Fax

**From:** Harper, James [mailto:jharper@ppg.com]
**Sent:** Friday, August 09, 2013 3:39 PM
**To:** Michael Smith (Atlanta)
**Cc:** Gette, Joseph; Robinson, Rachel (Atlanta) (rachel.robinson@towerswatson.com); Travis DeHaven (tdehaven@JonesDay.com); Rathburn, Karen
**Subject:** RE: Response to Employee Matters Agreement Errors_attachment No_v3.xlsx

Mike
1) PPG  acknowledges participants not included on Exhibit B, including the Deferred surviving spouses referenced below (Item #2) will remain the responsibility of PPG.
2) I will reach out to Melinda Dearman next week to insure she receives data required to support Axiall payments to Patterson & Crow, beginning 01-September-2013.

The Exhibits should then be "final", and we can now complete the reconciliation of health care coverage and pension costs between Axiall and PPG for the period 01-February-2013 to present. I know that Melinda's team has been working on this task as well, so we should be able to present the reconciliation to you and Karen for approval.
Can you advise if we want to transfer YTD balances between Northern and PPG for individuals we've exchanged since 01-February-2013 so they receive a single 1099 this year? If so, please advise name/number of the appropriate Northern contact. If the data exchange process proves to be cumbersome, we can simply communicate to participants why they will receive two 1099's. Let me know how you'd like to proceed on this item.

Jim



Exhibit
Rathburn 30b6- 4
EC 8-11-20

Confidential Information

PPG005248

**From:** Rathburn, Karen
**Sent:** Monday, August 05, 2013 11:21 AM
**To:** Michael Smith (Atlanta)
**Cc:** Gette, Joseph; Harper, James; Robinson, Rachel (Atlanta) (rachel.robinson@towerswatson.com); Travis DeHaven (tdehaven@JonesDay.com)
**Subject:** RE: Response to Employee Matters Agreement Errors_attachment No_v3.xlsx

Mike,

Jim is going to respond to your questions below.

Karen

**From:** Michael Smith (Atlanta) [mailto:Michael.Smith@axiall.com]
**Sent:** Monday, August 05, 2013 11:19 AM
**To:** Rathburn, Karen
**Cc:** Gette, Joseph; Harper, James; Robinson, Rachel (Atlanta) (rachel.robinson@towerswatson.com); Travis DeHaven (tdehaven@JonesDay.com)
**Subject:** RE: Response to Employee Matters Agreement Errors_attachment No_v3.xlsx

Karen,

We accept your response below and the EMA list as final but please respond to the following two items that was on my email to you last Thursday 8/1/13:

2) Deferred surviving spouses who were not listed on Exhibit B are remaining with PPG, even if there is support that their spouse had worked at a location that is now part of Axiall. See confirmation from our phone call with PPG on June 18th (phone notes sent by email on June 18th).  For instance, Janice Murphy was supposed to commence benefit payments on July 1, and PPG needs to place this participant into payment status. (Additional email sent to Jim yesterday regarding Janice Murphy.)

3) We have not received information from PPG on two of the individuals who were added to the EMA listing by February 20th – Marilyn Patterson, Ruth Ann Crow. Note that we did receive information for Rita Bellard. (Email from Karen on February 20th)

Thank you.
Mike

Michael L. Smith
Director – Compensation, Benefits & HR Systems
Axiall Corporation
115 Perimeter Center Place, Suite 460
Atlanta, Georgia 30346
(770) 395-4567 Office
(770) 395-4509 Fax

**From:** Rathburn, Karen [mailto:rathburn@ppg.com]
**Sent:** Friday, August 02, 2013 6:00 PM
**To:** Michael Smith (Atlanta)

PPG005249

**Cc:** Gette, Joseph; Harper, James; Robinson, Rachel (Atlanta) (rachel.robinson@towerswatson.com)
**Subject:** Response to Employee Matters Agreement Errors_attachment No_v3.xlsx

Mike,

Sorry for the delay in our response back to you. We used the chart provided to us by your collective team and added our information to it.

Upon further research and analysis, we do agree that the following people should remain with PPG as they were indeed Silicas employees:

238182 Cormier
147222 Haney
102268 Hornsby
147755 Johnson
244497 Martin

We do know a few things based upon our experience with Lake Charles. We know that Location 82 on the documentation that you provided to us is a reference to CA&D and that Location 71 is Silicas. Further, we also know that the information that you provided is often very dated and we have more recent documentation indicating that the person was with CA&D at the time of retirement/termination. As such, we continue to maintain that the 16 employees should have been transferred to Axiall.

Please let us know if there are further questions – we have researched all that you asked and have been cooperative in this process. At this point, we feel that it should be concluded.

Regards,

Karen

The information transmitted, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you received this in error, please contact the sender and delete the material from any computer. Axiall Corporation (formerly known as Georgia Gulf corporation) is a Delaware corporation. This communication may come from Axiall Corporation or one of its subsidiaries.

The information transmitted, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you received this in error, please contact the sender and delete the material from any computer. Axiall Corporation (formerly known as Georgia Gulf corporation) is a Delaware corporation. This communication may come from Axiall Corporation or one of its subsidiaries.

PPG005250

# EXHIBIT I

EXECUTION COPY

**EMPLOYEE MATTERS AGREEMENT**

**DATED AS OF JULY 18, 2012**

**BY AND AMONG**

**PPG INDUSTRIES, INC.,**

**EAGLE SPINCO INC.**

**and**

**GEORGIA GULF CORPORATION**



Exhibit

Rathburn 30b6- 5

EC 8-11-20

Bellon-AX000181

## EMPLOYEE MATTERS AGREEMENT

This Employee Matters Agreement (this "*Agreement*"), dated as of July 18, 2012, is entered into by and among PPG Industries, Inc. a Pennsylvania corporation ("*Burgundy*"), Eagle Spinco Inc., a Delaware corporation ("*Spinco*"), and Georgia Gulf Corporation, a Delaware corporation ("*Grizzly*," and together with Burgundy and Spinco, the "*Parties*").

**WHEREAS,** pursuant to the Separation Agreement, dated as of July 18, 2012, by and between Burgundy and Spinco (such agreement, as amended, restated or modified from time to time, the "*Separation Agreement*"), Burgundy and Spinco have set out the terms on which, and the conditions subject to which, they wish to implement the Spinco Reorganization (as defined in the Separation Agreement) and the Distribution (as defined in the Separation Agreement).

**WHEREAS,** pursuant to the Agreement and Plan of Merger, dated as of July 18, 2012, by and among Burgundy, Spinco, Grizzly and Grizzly Acquisition Sub, Inc. (such agreement, as amended, restated or modified from time to time, the "*Merger Agreement*"), immediately following the Distribution, a Subsidiary of Grizzly will merge with and into Spinco, subject to Schedule 8.3(e) to the Merger Agreement (the "*Merger*") and Spinco Common Stock will be converted into Grizzly Common Stock on the terms and subject to the conditions of the Merger Agreement.

**WHEREAS,** in connection with the foregoing, the Parties have agreed to enter into this Agreement to allocate, among Burgundy, Spinco and Grizzly, Assets, Liabilities and responsibilities with respect to certain employee compensation, pension and benefit plans, programs and arrangements and certain employment matters.

**NOW THEREFORE,** in consideration of the mutual agreements, covenants and other provisions set forth in this Agreement, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

Unless otherwise defined in this Agreement, capitalized words and expressions and variations thereof used in this Agreement or in its Exhibits have the meanings set forth below.

    1.1    "*Affiliate*" has the meaning given to it in the Separation Agreement.

    1.2    "*Agreement*" means this Employee Matters Agreement, including all the Exhibits hereto.

    1.3    "*Assets*" has the meaning given to it in the Separation Agreement.

    1.4    "*Burgundy Benefit Plan*" has the meaning given to it in the Merger Agreement.

    1.5    "*Burgundy Flex Plan*" means Burgundy's health care flexible spending, dependent care spending and commuter transportation plans.

    1.6    "*Burgundy Group*" has the meaning given to it in the Separation Agreement.

Bellon-AX000182

1.7    "*Burgundy US DB Plan*" means, collectively and separately, the Burgundy Retirement Income Plan and the Burgundy Retirement Pension Plan.

1.8    "*Burgundy US DC Plan*" means, collectively and separately, the Burgundy Employee Savings Plan; the Burgundy Defined Contribution Retirement Plan; the Burgundy Defined Contribution Retirement Plan for Employees Covered by the Collective Bargaining Agreement between Burgundy and the International Association of Machinists and Aerospace Workers, Local Lodge 470 of District 161; and the Burgundy Defined Contribution Retirement Plan for Employees Covered by Collective Bargaining Agreements.

1.9    "*Business Transfer Time*" has the meaning given to it in the Separation Agreement.

1.10    "*Closing Date*" has the meaning given to it in the Merger Agreement.

1.11    "*Code*" means the Internal Revenue Code of 1986, as amended, or any successor federal income tax Law. Reference to a specific Code provision also includes any temporary or final regulation in force under that provision.

1.12    "*Covered Retirees*" means Former Spinco Employees who were represented by a union during their employment in the United States with Burgundy or its Subsidiaries.

1.13    "*Current Spinco Employee*" means any individual listed on *Exhibit A* to this Agreement, which *Exhibit A* may be updated by Burgundy on the Closing Date to reflect new hires and terminations in the ordinary course of business consistent with past practice.

1.14    "*Effective Time*" has the meaning given to it in the Merger Agreement.

1.15    "*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended. Reference to a specific provision of ERISA also includes any temporary or final regulation in force under that provision.

1.16    "*Excluded Benefits Liabilities*" means (a) any additional Liabilities (*i.e.*, Liabilities that are additional to the Liabilities to provide to Covered Retirees retiree medical benefits based on Burgundy's retiree medical plans in effect on the date of this Agreement, including, for the avoidance of doubt, any cost increases associated with such Liabilities) resulting from any past, current or future actions, lawsuits, grievances, complaints, or other legal proceedings challenging modifications to and/or terminations of retiree medical benefits for Covered Retirees made by Burgundy or its Subsidiaries prior to the Effective Time; and (b) any Liabilities with respect to the employment or termination of employment by Burgundy of any current or former employee of Burgundy who is not a Current Spinco Employee or a Former Spinco Employee. For the avoidance of doubt, Excluded Benefits Liabilities shall not include (i) the Liabilities to provide to Covered Retirees or any other Spinco Employees retiree medical benefits based on the retiree medical plans of Burgundy and its Subsidiaries in effect on the date of this Agreement (including, for the avoidance of doubt, any cost increases associated with such Liabilities), (ii) any Liabilities with respect to Covered Retirees or any other Spinco Employees resulting from modifications and/or terminations of retiree medical benefits on or after the Effective Time or (iii) any Liabilities resulting from any current or future actions, lawsuits,

2

Bellon-AX000183

grievances, complaints, or other legal proceedings with respect to the items described in clauses (i) and (ii), all of which Liabilities Spinco assumes pursuant to Section 2.2(a) of this Agreement.

1.17    "*Former Spinco Employee*" means any individual listed on *Exhibit B* to this Agreement, which *Exhibit B* may be updated by Burgundy on the Closing Date to reflect (a) any individual who is listed on *Exhibit A* as a Current Spinco Employee and who ceases to be employed by Burgundy or one of its Subsidiaries prior to the Effective Time, (b) any individual who, after December 31, 2010, (i) became an inactive employee and was engaged in the Eagle Business prior to becoming an inactive employee or (ii) became a surviving spouse of an inactive employee who was engaged in the Eagle Business prior to becoming an inactive employee, and (c) any other individual that Burgundy reasonably determines in its good faith judgment is an inactive employee or surviving spouse of an inactive employee who was engaged in the Eagle Business prior to becoming an inactive employee; provided, however, that Burgundy may only add an individual to *Exhibit B* to this Agreement pursuant to clause (c) of this Section 1.17 if Burgundy removes an individual from *Exhibit B* to this Agreement; and provided, further, that Grizzly shall have the right, prior to the Effective Time, to confirm that each of the individuals proposed to be listed on the final *Exhibit B* to this Agreement was engaged in the Eagle Business (or the surviving spouse of such an individual) and if Grizzly reasonably demonstrates to Burgundy, in Burgundy's reasonable, good faith judgment, that such individual was not engaged in the Eagle Business (or the surviving spouse of such an individual), such individual shall not be included on the final version of *Exhibit B* to this Agreement. Subject to applicable Law, Burgundy shall provide to Grizzly all information reasonably available to Burgundy that is reasonably requested by Grizzly in order for Grizzly to conduct the confirmation described in the proviso to the immediately preceding sentence.

1.18    "*Grizzly Benefit Plan*" has the meaning given to it in the Merger Agreement.

1.19    "*Grizzly Common Stock*" means the common stock, par value $0.01 per share, of Grizzly.

1.20    "*Law*" has the meaning given to it in the Separation Agreement.

1.21    "*Liabilities*" has the meaning given to it in the Separation Agreement.

1.22    "*Participating Company*" means (a) Burgundy and (b) any other Person (other than an individual) that is a participating employer in a Burgundy Benefit Plan.

1.23    "*Person*" has the meaning given to it in the Separation Agreement.

1.24    "*Spinco Benefit Plan*" has the meaning given to it in the Merger Agreement.

1.25    "*Spinco Common Stock*" has the meaning given to it in the Separation Agreement.

1.26    "*Spinco Employee Flex Plan Accounts*" means the accounts of the Spinco Employees under the Burgundy Flex Plan.

1.27    "*Spinco Employees*" means the Current Spinco Employees and the Former Spinco Employees.

3

Bellon-AX000184

1.28   "*Spinco Entities*" has the meaning given to it in the Separation Agreement.

1.29   "*Spinco Group*" has the meaning given to it in the Separation Agreement.

1.30   "*Spinco Financing*" has the meaning given to it in the Merger Agreement.

1.31   "*Subsidiary*" has the meaning given to it in the Separation Agreement.

1.32   "*TCI Interests*" has the meaning given to it in the Separation Agreement.

1.33   "*Transaction Agreements*" has the meaning given to it in the Merger Agreement.

1.34   "*Transfer Interest*" means interest calculated based on the actual rate of return on Burgundy US DB Trust Assets between the Effective Time and the applicable date of transfer; provided that the Parties shall jointly select and engage an independent investment consultant with whom none of the Parties has had a material relationship in the last two years to verify the rate of return determined by Burgundy. Each of Grizzly and Burgundy shall bear 50% of the costs of the investment consultant referred to in the immediately preceding sentence.

<u>TERMS DEFINED IN THIS AGREEMENT</u>

| Defined Term | Section |
|---|---|
| 2012 Spinco Employee Bonuses | Section 4.1 |
| 2013 Spinco Employee Bonuses | Section 4.2 |
| Actuary | Section 6.2(b) |
| Adjusted CN DB Transfer Amount | Section 6.3(c) |
| Aggregate Flex Plan Balance | Section 3.4(b) |
| Burgundy | Preamble |
| Burgundy CN DB Plan | Section 6.3(a) |
| Burgundy CN DC Plans | Section 6.1(b) |
| Burgundy CN SERP | Section 6.5(d) |
| Burgundy DCP I | Section 6.5(b) |
| Burgundy DCP II | Section 6.5(c) |
| Burgundy US DB Trust | Section 6.2(b) |
| Burgundy US SERP | Section 6.5(a) |
| CBAs | Section 7.3 |
| CN DB Asset Transfer Report | Section 6.3(b) |
| CN DB Transitional Period | Section 6.3(c) |
| COBRA | Section 5.1 |
| Determination Date | Section 6.2(d) |
| Estimated CN DB Transfer Amount | Section 6.3(b) |
| Estimated US DB Transfer Value | Section 6.2(b) |
| Exhibit E CBAs | Section 7.1 |
| Final Adjusted CN DB Transfer Amount | Section 6.3(c) |
| Final Estimated CN DB Transfer Amount | Section 6.3(b) |
| Final Transferred US DBL APV | Section 6.2(e) |
| Final US DB Transfer Value | Section 6.2(e) |
| Foreign CBAs | Section 7.3 |

4

Bellon-AX000185

Grizzly.................................................................................................................... Preamble
Grizzly True Up Amount ......................................................................................Section 6.2(d)
Initial US DB Transfer.........................................................................................Section 6.2(b)
Initial US DB Transfer Amount............................................................................Section 6.2(b)
LC CBA .................................................................................................................. Section 7.2
Merger.................................................................................................................... Recitals
Merger Agreement ................................................................................................. Recitals
New Plans ............................................................................................................. Section 3.3
Overfunding Amount .............................................................................................Section 6.2(d)
Parties..................................................................................................................... Preamble
Section 6.2(e) Notice of Objection .......................................................................Section 6.2(e)
Section 6.2(e) Resolution Period ..........................................................................Section 6.2(e)
Section 6.3(b) Notice of Objection .......................................................................Section 6.3(b)
Section 6.3(b) Resolution Period ..........................................................................Section 6.3(b)
Section 6.3(c) Notice of Objection .......................................................................Section 6.3(c)
Section 6.3 (c) Resolution Period ..........................................................................Seciton 6.3(c)
Separation Agreement............................................................................................ Recitals
Spinco .................................................................................................................... Preamble
Spinco CN DB Plan ...............................................................................................Section 6.3(a)
Spinco CN DC Plans..............................................................................................Section 6.1(b)
Spinco CN SERP ....................................................................................................Section 6.5(d)
Spinco DCP I..........................................................................................................Section 6.5(b)
Spinco DCP II.........................................................................................................Section 6.5(c)
Spinco Flex Plan .................................................................................................. Section 3.4(a)
Spinco US DB Plan ................................................................................................Section 6.2(a)
Spinco US DB Trust ...............................................................................................Section 6.2(b)
Spinco US SERP .....................................................................................................Section 6.5(a)
TCI ......................................................................................................................... Section 2.1
Transferred CN DB Liabilities...............................................................................Section 6.3(a)
Transferred US DB Liabilities ...............................................................................Section 6.2(a)
Transferred US DBL APV ......................................................................................Section 6.2(d)
TW DB Plan ........................................................................................................... Section 6.4
TW DC Plan ........................................................................................................... Section 6.4
Underfunding Amount ...........................................................................................Section 6.2(d)
US DB Transfer Value............................................................................................Section 6.2(b)
WARN .................................................................................................................... Section 5.2
Welfare Benefits .................................................................................................... Section 5.3
Year 1 Payment......................................................................................................Section 6.2(d)
Year 2 Payment......................................................................................................Section 6.2(d)
Year 3 Payment......................................................................................................Section 6.2(d)

## ARTICLE II
### EMPLOYMENT OF CURRENT SPINCO EMPLOYEES;
### ASSUMPTION AND RETENTION OF LIABILITIES GENERALLY;
### SPINCO PARTICIPATION IN BURGUNDY BENEFIT PLANS

2.1     Employment of Current Spinco Employees. Burgundy shall cause all Current Spinco Employees to be employees of Spinco, a Spinco Entity or, if the transfer of the TCI

5

Bellon-AX000186

Interests occurs at or prior to the Business Transfer Time, Taiwan Chlorine Industries, Ltd. ("*TCI*"), as applicable, no later than the Business Transfer Time. A Spinco Employee shall not be deemed to have terminated employment for purposes of determining eligibility for severance benefits under a Burgundy Benefit Plan or a Spinco Benefit Plan solely as a result of the consummation of the transactions contemplated by the Transaction Agreements.

      2.2    <u>Assumption and Retention of Liabilities Generally</u>.

      (a)    From and after the Business Transfer Time, except as otherwise expressly provided in this Agreement, Spinco shall assume or retain, as applicable, and Spinco on behalf of the Spinco Group hereby agrees to, or to cause the applicable member of the Spinco Group to, pay, perform, fulfill and discharge in due course in full, and to indemnify and hold harmless the Burgundy Group for, (i) all Spinco Benefit Plans and all Liabilities with respect to all Spinco Benefit Plans, (ii) all Liabilities with respect to the employment or termination of employment of all Spinco Employees, (iii) all Liabilities with respect to the provision of, or claims for, retiree health and/or life insurance benefits to Spinco Employees, (iv) all Liabilities with respect to any past, current or future actions, lawsuits, grievances, complaints, or other legal proceedings by any Spinco Employee with respect to the employment or termination of employment by the Burgundy Group or the Spinco Group, including with respect to any Burgundy Benefit Plan and the Liabilities described in clause (iii) of this Section 2.2(a), and (v) any other Liabilities expressly assumed or retained by, or assigned or allocated to, any member of the Spinco Group under this Agreement. Notwithstanding the preceding sentence and anything in this Agreement to the contrary, the Spinco Group shall not assume, and Burgundy shall retain, indemnify and hold Grizzly and its Subsidiaries harmless against, the Excluded Benefits Liabilities.

      (b)    The Parties agree that to the extent provided under the applicable Laws of any foreign jurisdictions, (i) any employment agreements between Burgundy and its Affiliates, on the one hand, and any non-U.S. Spinco Employee, on the other hand, and (ii) any collective bargaining agreements applicable to any non-U.S. Spinco Employees in such jurisdictions, will in each case have effect at and after the Business Transfer Time as if originally made between Spinco, or the applicable Spinco Entity employing such individual, and the other parties to such employment agreement or collective bargaining agreement.

      2.3    <u>Spinco Participation in Burgundy Benefit Plans</u>. Effective as of the Business Transfer Time, (a) Spinco and each Spinco Entity shall cease to be a Participating Company in any Burgundy Benefit Plan, other than any Spinco Benefit Plan, (b) the Spinco Employees shall cease to accrue further benefits and shall cease to be active participants in the Burgundy Benefit Plans (other than any Spinco Benefit Plan), and (c) the Parties shall take all necessary action to effectuate the foregoing.

**ARTICLE III**
**TERMS OF EMPLOYMENT FOR SPINCO EMPLOYEES**

      3.1    <u>Levels of Compensation and Benefits for Bargained Spinco Employees</u>. Spinco shall provide, or shall cause to be provided, to each Current Spinco Employee covered by a CBA, compensation, benefits and terms of employment in accordance with applicable Law and the terms of the applicable CBA, and, with respect to any Current Spinco Employee covered by a

6

CBA, the terms and conditions of the applicable CBA shall supersede any terms and conditions of this Agreement that are inconsistent therewith.

3.2 <u>Levels of Compensation and Benefits for Non-Bargained Spinco Employees</u>. For a period of one year following the Effective Time, Spinco shall provide, or shall cause to be provided by the applicable member of the Spinco Group, to each Current Spinco Employee who is not covered by a CBA (a) base compensation and bonus opportunities that, in each case, are no less favorable in the aggregate than were provided to the Current Spinco Employee immediately before the Effective Time; <u>provided</u>, <u>however</u>, that during such one year period the base compensation of each Current Spinco Employee shall be at least equal to such Current Spinco Employee's base compensation immediately prior to the Effective Time; and (b) all other compensation and benefits that are no less favorable in the aggregate than the other compensation and benefits provided to such Current Spinco Employee immediately prior to the Effective Time; <u>provided</u>, <u>however</u>, that Spinco's obligations under this Section 3.2 with respect to health, dental, prescription drug, life insurance, disability, flexible spending, accident and sickness benefits shall apply until December 31, 2013. For the one year period following the Effective Time, Spinco shall provide, or shall cause to be provided to each Current Spinco Employee who is not covered by a CBA severance benefits that are no less favorable than the severance benefits provided to the Current Spinco Employee immediately before the Effective Time (giving effect, for the avoidance of doubt, to the service credit provisions set forth in Section 3.3). In addition to the foregoing, Spinco shall, and shall cause the Spinco Group to, comply with applicable Law regarding compensation and benefits of the Spinco Employees who are not covered by a CBA.

3.3 <u>Service Credit and Welfare Plans</u>. For all purposes (including vesting, eligibility to participate and level of benefits) under the employee benefit plans of Grizzly and its Subsidiaries (including Spinco and its Subsidiaries) providing benefits to any Current Spinco Employees after the Effective Time (the "**New Plans**"), following the Effective Time, Grizzly and Spinco shall cause each Current Spinco Employee to be credited with his or her years of service with Burgundy, Spinco and their Subsidiaries and their respective predecessors before the Effective Time, to the same extent as such Current Spinco Employee was entitled, before the Effective Time, to credit for such service under any corresponding Burgundy Benefit Plan in which such Current Spinco Employee participated or was eligible to participate immediately prior to the Effective Time; <u>provided</u> that the foregoing (a) shall not make a Spinco Employee eligible for any Grizzly Benefit Plan that was unavailable for eligibility purposes to new participants as of the Effective Time, and (b) shall not apply with respect to any New Plan that is a frozen defined benefits plan or to the extent that its application would result in a duplication of benefits with respect to the same period of service. In addition, and without limiting the generality of the foregoing, following the Effective Time, (x) Grizzly and Spinco shall cause each Current Spinco Employee to be immediately eligible to participate, without any waiting time, in any and all corresponding New Plans to the extent coverage under any such New Plan is comparable to a Burgundy Benefit Plan in which such Current Spinco Employee participated immediately before the Effective Time, and (y) for purposes of each New Plan providing medical, dental, pharmaceutical and/or vision benefits to any Current Spinco Employee, Grizzly and Spinco shall use commercially reasonable efforts to cause (i) all pre-existing condition exclusions and actively-at-work requirements of such New Plan to be waived for such employee and his or her covered dependents, unless and to the extent the individual, immediately prior to entry in any such New Plan, was subject to such conditions under the corresponding Burgundy

7

Bellon-AX000188

Benefit Plan, and (ii) any eligible expenses incurred by such employee and his or her covered dependents during the portion of the plan year of the Burgundy Benefit Plan ending on the date such employee's participation in the corresponding New Plan begins to be taken into account under such New Plan for purposes of satisfying all deductible, coinsurance and maximum out-of-pocket requirements applicable to such employee and his or her covered dependents for the applicable plan year as if such amounts had been paid in accordance with such New Plan. For the avoidance of doubt, neither this Section 3.3 nor any other provision in this Agreement shall be construed to provide for service credit or eligibility to an employee or former employee of Grizzly (other than a Spinco Employee) in any Spinco Benefit Plan or any other plan or arrangement maintained by the Spinco Group or an applicable member thereof.

 3.4 <u>Flexible Spending Accounts</u>.

  (a) Immediately following the Effective Time, Spinco shall adopt one or more plans providing for health care flexible spending, dependent care spending and commuter transportation spending accounts for the benefit of the Spinco Employees (collectively, the "***Spinco Flex Plan***"), which plans shall be effective immediately following the Effective Time. The Parties shall take all actions necessary or appropriate so that, effective as of the Effective Time, (i) the account balances under the Spinco Employee Flex Plan Accounts shall be transferred to the Spinco Flex Plan; (ii) the elections, contribution levels and coverage levels of the Spinco Employees shall apply under the Spinco Flex Plan in the same manner as under the Burgundy Flex Plan; and (iii) from and after the Effective Time, the Spinco Employees shall be reimbursed from the Spinco Flex Plan in a comparable manner based on the same terms as the Burgundy Flex Plan for claims incurred at any time during the plan year in which the Effective Time occurs.

  (b) As soon as reasonably practicable after the Effective Time, Burgundy shall determine the Aggregate Flex Plan Balance and notify Grizzly of the amount of such Aggregate Flex Plan Balance in writing. For purposes of this Section 3.4, the term "***Aggregate Flex Plan Balance***" shall mean, as of the Effective Time, the aggregate amount of contributions that have been made to the Spinco Employee Flex Plan Accounts for the plan year in which the Effective Time occurs minus the aggregate amount of reimbursements that have been made from the Spinco Employee Flex Plan Accounts for the plan year in which the Effective Time occurs. If the Aggregate Flex Plan Balance is a negative amount, Grizzly shall cause Spinco to pay the absolute value of such amount to Burgundy as soon as practicable following Grizzly's receipt of the written notice thereof. If the Aggregate Flex Plan Balance is a positive amount, Burgundy shall pay such positive amount to Spinco as soon as practicable following Burgundy's delivery to Grizzly of the written notice thereof.

 3.5 <u>Earned Vacation</u>. Following the Effective Time, for each Current Spinco Employee who is not covered by a CBA, Spinco shall, or shall cause the applicable member of the Spinco Group to, honor all unused vacation, personal days and sick days of each such Current Spinco Employee during the calendar year in which the Effective Time occurs, and thereafter, Spinco shall, or shall cause the applicable member of the Spinco Group to, cause the Current Spinco Employees who are not covered by a CBA to be subject to, and commence to accrue benefits under, the vacation, sick leave and other personal time off policies of Grizzly or its Subsidiaries applicable to the respective Current Spinco Employee (giving effect, for the avoidance of doubt, to the service credit provisions set forth in Section 3.3).

8

Bellon-AX000189

3.6   <u>HRA Accounts</u>. Spinco shall assume all Liabilities with respect to health reimbursement accounts held by Spinco Employees covered by a CBA and Spinco shall indemnify and hold harmless the Burgundy Group for any such Liabilities.

**ARTICLE IV**
**ANNUAL BONUS AWARDS FOR SPINCO EMPLOYEES**

4.1   <u>2012</u>. If the Effective Time occurs prior to the payment of bonuses to eligible Spinco Employees in respect of the 2012 calendar year ("***2012 Spinco Employee Bonuses***"), (a) Burgundy shall calculate the 2012 Spinco Employee Bonuses in accordance with the terms of the applicable Burgundy bonus plans and shall provide Grizzly with such calculations, (b) no later than March 15, 2013, Spinco or the applicable member of the Spinco Group shall pay to the eligible Spinco Employees the 2012 Spinco Employee Bonuses as calculated by Burgundy, and (c) Burgundy shall reimburse Spinco or the applicable member of the Spinco Group for the portion of the 2012 Spinco Employee Bonuses equal to the product obtained by multiplying (i) the aggregate amount of the 2012 Spinco Employee Bonuses by (ii) the quotient obtained by dividing (A) the number of days from and including January 1, 2012 through and including the earlier of December 31, 2012 and the date on which the Effective Time occurs by (B) 366, such reimbursement to be made within ten calendar days following receipt by Burgundy of written confirmation from Grizzly of the payment of the 2012 Spinco Employee Bonuses.

4.2   <u>2013</u>. Subject to Section 3.2 of this Agreement, Spinco or the applicable member of the Spinco Group shall be responsible for determining and paying to eligible Spinco Employees the annual bonus awards in respect of the 2013 calendar year ("***2013 Spinco Employee Bonuses***"); <u>provided</u>, <u>however</u>, that Burgundy shall reimburse Spinco or the applicable member of the Spinco Group for the portion of the 2013 Spinco Employee Bonuses equal to the product obtained by multiplying (a) the aggregate amount of the 2013 Spinco Employee Bonuses by (b) the quotient obtained by dividing (i) the number of days from and including January 1, 2013 through and including the date on which the Effective Time occurs by (ii) 365, such reimbursement to be made within ten calendar days following receipt by Burgundy of written confirmation from Grizzly of the payment of the 2013 Spinco Employee Bonuses. Prior to the Effective Time, Grizzly shall establish performance targets and payout levels for purposes of determining the 2013 Spinco Employee Bonuses consistent with the requirements of Section 3.2 of this Agreement, which performance targets and payout levels shall be comparable (in terms of degree of difficulty and expected payouts) to those used to determine the 2012 Spinco Employee Bonuses, taking into account the Merger; <u>provided</u>, <u>however</u>, that if the Effective Time occurs after February 28, 2013, Grizzly shall consult in good faith with Burgundy regarding the performance targets and payout levels for purposes of determining the 2013 Spinco Employee Bonuses.

**ARTICLE V**
**COBRA AND HIPAA; WARN ACT;  WELFARE BENEFITS;**
**WORKERS COMPENSATION; DISABILITY BENEFITS**

5.1   <u>COBRA and HIPAA</u>. Spinco shall assume all Liabilities resulting from any events occurring on or after the Business Transfer Time with respect to Spinco Employees and their eligible dependents, in respect of health insurance under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("***COBRA***"), and the Health Insurance Portability and

9

Bellon-AX000190

Accountability Act of 1996, Sections 601, et seq. and Sections 701, et seq. of ERISA, Section 4980B and Sections 9801, et seq. of the Code and applicable state or similar Laws and Spinco shall indemnify and hold harmless the Burgundy Group for any such Liabilities. Burgundy shall retain all Liabilities resulting from any events occurring before the Business Transfer Time with respect to Spinco Employees and their eligible dependents, in respect of health insurance under COBRA, and the Health Insurance Portability and Accountability Act of 1996, Sections 601, et seq. and Sections 701, et seq. of ERISA, Section 4980B and Sections 9801, et seq. of the Code and applicable state or similar Laws and Burgundy shall indemnify and hold harmless Spinco and Grizzly for any such Liabilities.

5.2     WARN Act. Spinco shall assume all Liabilities incurred by Burgundy and its Subsidiaries pursuant to the Worker Adjustment and Retraining Notification Act ("*WARN*") and any similar statute in connection with any Spinco Employee, to the extent any such Liabilities arise from actions of Grizzly or its Subsidiaries (including Spinco and its Subsidiaries) following the Effective Time and Spinco shall, and shall cause the Spinco Group to, indemnify and hold harmless the Burgundy Group for any such Liabilities. Burgundy shall otherwise be solely responsible for compliance with all obligations under WARN and any similar statute in connection with any Spinco Employee prior to the Effective Time.

5.3     Welfare Benefits. Burgundy shall be solely responsible (and shall indemnify Grizzly) for claims for health, life insurance, accidental death and disability, severance, dental and prescription drug benefits ("*Welfare Benefits*") that are incurred by or with respect to any Spinco Employee before the Business Transfer Time and during such Spinco Employee's employment with Burgundy or any of its Subsidiaries. Spinco shall be solely responsible (and shall indemnify Burgundy) for claims for Welfare Benefits that are incurred by or with respect to any Spinco Employee on or after the Business Transfer Time. For purposes of this Section 5.3, any claim for a benefit under a Welfare Benefit plan shall be considered incurred when the services are rendered, the supplies are provided or medication is prescribed, and not when the condition arose; provided that claims relating to a hospital confinement that begins on or before the Business Transfer Time but continues thereafter shall be treated as incurred on or before the Business Transfer Time. This Section 5.3 shall not apply to (a) Liabilities with respect to the provision of, or claims for, retiree health and/or life insurance benefits, if any, to Spinco Employees, which are covered by Section 2.2(a)(iii) of this Agreement or any actions, suits or proceedings with respect to such matters, which are covered by Section 2.2(a)(iv) of this Agreement, or (b) claims by Spinco Employees for short-term and/or long-term disability benefits, which are covered by Section 5.4 of this Agreement.

5.4     Spinco Employee Disability Benefits. Spinco shall assume all Liabilities resulting from claims by Spinco Employees for short-term and/or long-term disability benefits and Spinco shall indemnify and hold harmless the Burgundy Group for any such Liabilities.

## ARTICLE VI
## PENSION PLANS AND DEFERRED COMPENSATION PLANS

6.1     Burgundy Defined Contribution Plans.

(a)     Burgundy U.S. DC Plan. No Spinco Employee shall accrue any benefit under the Burgundy US DC Plan after the Effective Time. No Assets or Liabilities of the

10

Bellon-AX000191

Burgundy US DC Plan shall be transferred to a retirement plan maintained by Grizzly or any of its Subsidiaries (including Spinco and its Subsidiaries), other than in connection with a rollover of a Spinco Employee's account balance under the Burgundy US DC Plan. Following the Effective Time, Grizzly shall cause a defined contribution plan sponsored by a member of the Spinco Group that is qualified under Section 401(a) of the Code to accept a rollover of (i) the cash portion of any "eligible rollover distribution" (within the meaning of Section 402(c)(4) of the Code) to a Spinco Employee from any Burgundy US DC Plan and (ii) the portion of any such eligible rollover distribution that consists of a promissory note applicable to a loan from such Burgundy US DC Plan to such Spinco Employee.

(b)     Burgundy CN DC Plans. No Spinco Employee shall accrue any benefit under the Burgundy defined contribution pension plans or retirement savings arrangements covering Canadian employees ("*Burgundy CN DC Plans*") after the Effective Time. No Assets or Liabilities of the Burgundy CN DC Plans shall be transferred to pension plans or retirement savings plans maintained by Grizzly or any of its Subsidiaries (including Spinco and its Subsidiaries), other than in connection with an individual transfer of a Spinco Employee's account balance under the Burgundy CN DC Plans. As soon as practicable following the Closing Date, but effective as of the Effective Time, Spinco shall establish or shall cause a member of the Spinco Group to establish defined contribution pension plans or retirement savings arrangements designed, where applicable, to be registered under applicable Canadian Laws or designate existing defined contribution pension plans or retirement savings arrangements that are so qualified (such plans or arrangements in either case, the "*Spinco CN DC Plans*") to provide benefits to Spinco Employees employed in Canada. After the Closing Date, Burgundy and Spinco will allow Spinco Employees who so elect to transfer their account balances in the Burgundy CN DC Plans to the Spinco CN DC Plans.

6.2     U.S. DB Plan Spinoff.

(a)     As soon as practicable following the Effective Time, Spinco shall, or shall cause a member of the Spinco Group to, establish one or more defined benefit pension plans designed to be a qualified plan under Section 401(a) of the Code (such plans collectively and separately, the "*Spinco US DB Plan*"), to provide benefits to Spinco Employees, and to accept the transfer of Assets and Liabilities provided for in this Section 6.2. Effective as of the completion of the Initial US DB Transfer (as defined below), Burgundy shall direct the trustee of the Burgundy US DB Plan to transfer to the Spinco US DB Plan, and Grizzly shall cause the Spinco US DB Plan to assume and be responsible for (and Grizzly and Spinco shall indemnify Burgundy for), all Liabilities of the Burgundy US DB Plan for benefits accrued through the Effective Time by the Spinco Employees who were participants in the Burgundy US DB Plan before the Effective Time (the "*Transferred US DB Liabilities*"), and Burgundy and the Burgundy US DB Plan shall have no further responsibility for the Transferred US DB Liabilities. In the event a Spinco Employee with respect to whom Liability has been transferred from the Burgundy US DB Plan to the Spinco US DB Plan pursuant to this Section 6.2 has a qualified domestic relations order pending or approved in the Burgundy US DB Plan as of the transfer date, all documentation concerning such qualified domestic relations order shall be assigned to the Spinco US DB Plan. In all events, the Burgundy US DB Plan shall be responsible for paying to Spinco Employees who have elected to commence payments all monthly benefit payments that are required to be paid prior to the date of the Initial US DB Transfer and the Spinco US DB

11

Bellon-AX000192

Plan shall be responsible for paying to Spinco Employees all monthly benefit payments that are required to be paid on or after the date of the Initial US DB Transfer.

(b)     After the Effective Time, the Parties shall cause the transfer from the trust funding the Burgundy US DB Plan (the "*Burgundy US DB Trust*") to the trust designated to fund the Spinco US DB Plan (the "*Spinco US DB Trust*") a portion of the Assets of the Burgundy US DB Trust, having a value, as of the Effective Time, equal to the amount required to be transferred under Section 414(l) of the Code (the "*US DB Transfer Value*") in the manner set forth in this Section 6.2(b). Mercer LLC (the "*Actuary*") shall deliver to the Parties an initial estimate of the US DB Transfer Value (the "*Estimated US DB Transfer Value*") on the first business day following the date on which the Effective Time occurs, and the Parties shall cause the transfer of Assets from the Burgundy US DB Trust to the Spinco US DB Trust equal to 90 percent of the Estimated US DB Transfer Value plus Transfer Interest thereon in respect of the period commencing on the Effective Time and ending on the date of such transfer (such sum, the "*Initial US DB Transfer Amount*") as promptly as practicable (and in no event more than 5 days) after the date on which the Actuary has delivered to the Parties the Estimated US DB Transfer Value (such transfer, the "*Initial US DB Transfer*"). The Parties shall determine the Final US DB Transfer Value (as defined in Section 6.2(e)) in accordance with the procedural provisions set forth in Section 6.2(e). In the event the Final US DB Transfer Value exceeds the Initial US DB Transfer Amount, the Parties shall promptly (and in any event within 5 days after the determination of the Final US DB Transfer Value) cause the transfer of Assets from the Burgundy US DB Trust to the Spinco US DB Trust equal to the amount by which the Final US DB Transfer Value exceeds the Initial US DB Transfer Amount plus Transfer Interest thereon in respect of the period commencing on the Effective Time and ending on the date of such transfer. In the event the Initial US DB Transfer Amount exceeds the Final US DB Transfer Value, the Parties shall promptly (and in any event within 5 days after the determination of the Final US DB Transfer Value) cause the transfer of Assets from the Spinco US DB Trust to the Burgundy US DB Trust equal to the amount by which the Initial US DB Transfer Amount exceeds the Final US DB Transfer Value plus Transfer Interest thereon in respect of the period commencing on the Effective Time and ending on the date of such transfer back to the Burgundy US DB Trust. The determination of the US DB Transfer Value and the Final US DB Transfer Value shall be made using the assumptions and methodologies set forth on, and otherwise in accordance with, *Exhibit C* to this Agreement.

(c)     The Assets transferred from the Burgundy US DB Trust pursuant to this Section 6.2 shall be in the form of cash. The Assets transferred from the Spinco US DB Trust pursuant to this Section 6.2, if any, shall be in the form of cash.

(d)     The Parties shall determine the Final Transferred US DBL APV (as defined in Section 6.2(e)) in accordance with the procedural provisions set forth in Section 6.2(e). If the Final Transferred US DBL APV exceeds the Final US DB Transfer Value (such excess, the "*Underfunding Amount*"), Burgundy shall, on the later of (i) the one year anniversary of the Effective Time, and (ii) five days following the first date that both the Final Transferred US DBL APV and the Final US DB Transfer Value have been determined (the "*Determination Date*"), pay to Grizzly (or to a member of the Spinco Group as directed by Grizzly) an amount equal to the Underfunding Amount and Grizzly (or such member of the Spinco Group as directed by Grizzly) shall deposit such Underfunding Amount in the Spinco US DB Trust immediately following receipt of such Underfunding Amount from Burgundy. If the

12

Bellon-AX000193

Final US DB Transfer Value exceeds the Final Transferred US DBL APV (the amount of such excess, the "*Overfunding Amount*"), Grizzly shall pay, or cause to be paid, to Burgundy an amount equal to the lesser of (x) $50 million and (y) the Overfunding Amount (the lesser of clauses (x) and (y), the "*Grizzly True Up Amount*") in accordance with the following schedule:

| Payment Date | Payment Amount |
|---|---|
| The later of the first anniversary of the Effective Time and five days following the Determination Date | If no portion of the Spinco Financing is repaid prior to the first anniversary of the Effective Time, the lesser of (x) $5 million and (y) the Grizzly True Up Amount. <br><br> If any portion of the Spinco Financing is repaid prior to the first anniversary of the Effective Time, the lesser of (x) $10 million and (y) the Grizzly True Up Amount. <br><br> The amount of the payment required to be made by this item, the "*Year 1 Payment*"). |
| Second anniversary of the Effective Time | If no portion of the Spinco Financing is repaid prior to the first anniversary of the Effective Time, the lesser of (x) $15 million and (y) an amount equal to the Grizzly True Up Amount minus the Year 1 Payment. <br><br> If any portion of the Spinco Financing is repaid prior to the first anniversary of the Effective Time, the lesser of (x) $10 million and (y) an amount equal to the Grizzly True Up Amount minus the Year 1 Payment. <br><br> The amount of the payment required to be made by this item, the "*Year 2 Payment*"). |
| Third anniversary of the Effective Time | The lesser of (x) $15 million and (y) an amount equal to the Grizzly True Up Amount minus the Year 1 Payment minus the Year 2 Payment. <br><br> The amount of the payment required to be made by this item, the "*Year 3 Payment*"). |
| Fourth anniversary of the Effective Time | The lesser of (x) $15 million and (y) an amount equal to the Grizzly True Up Amount minus the Year 1 Payment minus the Year 2 Payment minus the Year 3 Payment. |

For purposes of this Agreement, "*Transferred US DBL APV*" shall mean the present value of the Transferred US DB Liabilities determined as of the Effective Time (where applicable, based on the ultimate benefit multiplier under the applicable Exhibit E CBAs or the LC CBA) in accordance with the actuarial assumptions used by Burgundy with respect to the Burgundy US DB Plan for the 2012 plan year for purposes of Section 430 of the Code except that (i) the interest rate and mortality assumptions shall be adjusted to the Effective Time in accordance with Sections 430(h)(2) and 430(h)(3) of the Code, and (ii) the calculation shall be made in accordance with the provisions of Section 430(h)(2)(C)(iv)(II) of the Code (as enacted by

13

Bellon-AX000194

Section 40211 of the Moving Ahead for Progress in the 21st Century Act) applicable to the 2013 calendar year regardless of when the Effective Time occurs. For the avoidance of doubt, the interest rate assumption referred to in the immediately preceding sentence shall be based on the 24-month average segment rates ending on the last day of the month that is five months prior to the month in which the Effective Time occurs and the IRS-mandated mortality static table assumption for the plan year containing the Effective Time.

(e) As soon as administratively practicable following the Effective Time, the Actuary shall provide Grizzly's actuary with its determination of the US DB Transfer Value and the Transferred US DBL APV, together with a complete computer file containing the employee data for the Spinco Employees who participated in the Burgundy US DB Plan immediately prior to the Effective Time and all other relevant information used by the Actuary or otherwise reasonably requested by Grizzly's actuary as needed to calculate the US DB Transfer Value and the Transferred US DBL APV; provided, however, that the Actuary shall not provide any information with respect to an employee who is not a Spinco Employee that would identify such individual. The US DB Transfer Value and the Transferred US DBL APV provided by the Actuary pursuant to the immediately preceding sentence shall be the "*Final US DB Transfer Value*" and the "*Final Transferred US DBL APV*" and shall be final and binding upon the Parties unless prior to the close of business on the 30th day following Grizzly's receipt of the information described in the first sentence of this Section 6.2(e), Grizzly delivers to Burgundy a written notice (a "*Section 6.2(e) Notice of Objection*") stating that Grizzly believes that the Actuary's calculation of the US DB Transfer Value and the Transferred US DBL APV contains factual or mathematical errors, fails to comply with ERISA, or otherwise fails to comply, in the case of the US DB Transfer Value, with the actuarial assumptions expressly set forth in *Exhibit C* and states in reasonable detail the basis for such belief. Should Grizzly timely provide a 6.2(e) Notice of Objection, the Parties shall use their reasonable best efforts to resolve promptly (but in any event within 15 days following such Section 6.2(e) Notice of Objection (such period, the "*Section 6.2(e) Resolution Period*")) any disagreements regarding the US DB Transfer Value and the Transferred US DBL APV and if they so resolve the disagreements, the agreed US DB Transfer Value and the agreed Transferred US DBL APV shall be the "*Final US DB Transfer Value*" and the "*Final Transferred US DBL APV*" and shall be final and binding upon the Parties. In the event that the Parties cannot resolve such disagreements during the 6.2(e) Resolution Period, the Parties shall, within 15 days following the 6.2(e) Resolution Period, jointly select and engage an independent third actuary with whom none of the Parties have had a material relationship in the last two years, who shall render its determination promptly (and in any event within 30 days following its engagement) in accordance with the requirements of this Section 6.2 and whose determination shall be the "*Final US DB Transfer Value*" and the "*Final Transferred US DBL APV*" and shall be final and binding upon the Parties. In no event (except for inaccuracy of the data provided) shall (i) the US DB Transfer Value determined by the third actuary be more than the US DB Transfer Value claimed by Grizzly or less than the US DB Transfer Value determined by the Actuary, or (ii) the US DBL APV determined by the third actuary be more than the US DBL APV claimed by Grizzly or less than the US DBL APV determined by the Actuary. Each of the Parties shall bear the fees, costs and expenses of their respective actuaries, and the fees, costs and expenses of the third actuary shall be borne one half by Burgundy and one half by Grizzly. Any decision by the third actuary shall be treated as confidential information by the Parties, except as may be required to obtain judgment on the award or enforce performance thereof or except as disclosure may be required by Law.

14

Bellon-AX000195

(f)     For each Spinco US DB Plan that is newly created, Grizzly shall cause to be provided to Burgundy written evidence of (i) the adoption of the Spinco US DB Plan by the applicable member of the Spinco Group, (ii) the creation of the trust thereunder, and (iii) the submission by the Spinco Group of the Spinco US DB Plan to the Internal Revenue Service for a favorable determination letter. Grizzly and Burgundy shall cooperate in the filing of any Internal Revenue Service Forms 5310A required by the transfer of Assets and Liabilities described herein, and anything contained herein to the contrary notwithstanding, the transfer of Assets and Liabilities described herein shall not take place until the 31st day following the filing of all required Forms 5310A. In addition, Grizzly and Burgundy shall cooperate in (A) making all other filings required or appropriate under the Code or ERISA and any applicable securities Laws, (B) implementing all required or appropriate communications with participants, (C) transferring required or appropriate records, and (D) taking all such other actions as may be necessary and appropriate to implement the provisions of this Section 6.2 in a timely manner.

6.3     Canadian DB Plan Spinoff.

(a)     As soon as practicable following the Closing Date but effective as of the Effective Time, Spinco shall, or shall cause a member of the Spinco Group to, establish a defined benefit pension plan designed to be a registered pension plan under applicable Canadian Laws, or designate an existing defined benefit pension plan that is so qualified (such plan, in either case, the "*Spinco CN DB Plan*"), to provide benefits to Spinco Employees employed in Canada, and to accept the transfer of Assets and assumption of Liabilities relating to the benefits accrued by the Spinco Employees under the Burgundy Canada Non-Contributory Retirement Plan for Salaried Employees (the "*Burgundy CN DB Plan*") up to the Effective Time. Upon the completion of the transfer of the Final Adjusted Transfer Amount (as defined below), Spinco (or the applicable member of the Spinco Group) and the Spinco CN DB Plan shall assume and be responsible for (and Grizzly and Spinco shall indemnify Burgundy for) all Liabilities of Burgundy and the Burgundy CN DB Plan for the benefits accrued through the Effective Time by the Spinco Employees who were participants in the Burgundy CN DB Plan before the Effective Time (the "*Transferred CN DB Liabilities*"), and Burgundy and the Burgundy CN DB Plan shall have no further responsibility for the Transferred CN DB Liabilities.

(b)     Except as otherwise required by the relevant regulatory authorities, the Estimated CN DB Transfer Amount (as defined below) shall be calculated as of the Effective Time in accordance with *Exhibit D* to this Agreement. As soon as administratively practicable following the Effective Time, the Actuary shall provide Grizzly's actuary with its determination of the amount of Assets corresponding to the Transferred CN DB Liabilities in the Burgundy CN DB Plan (the "*Estimated CN DB Transfer Amount*"), together with a complete computer file containing the employee data for the Spinco Employees who participated in the Burgundy CN DB Plan immediately prior to the Effective Time and all other relevant information used by the Actuary or otherwise reasonably requested by Grizzly's actuary as needed to calculate the Estimated CN DB Transfer Amount; provided, however, that the Actuary shall not provide any information with respect to an employee who is not a Spinco Employee that would identify such individual. The Estimated CN DB Transfer Amount provided by the Actuary pursuant to the immediately preceding sentence shall be the "*Final Estimated CN DB Transfer Amount*" and shall be final and binding upon the Parties unless prior to the close of business on the 30th day following Grizzly's receipt of the information described in the second sentence of this Section 6.3(b), Grizzly delivers to Burgundy a written notice (a "*Section 6.3(b) Notice of Objection*")

15

Bellon-AX000196

stating that Grizzly believes that the Actuary's calculation of the Estimated CN DB Transfer Amount contains factual or mathematical errors, fails to comply with applicable Law, or otherwise fails to comply with the assumptions expressly set forth in *Exhibit D* and states in reasonable detail the basis for such belief. Should Grizzly timely provide a Section 6.3(b) Notice of Objection, the Parties shall use their reasonable best efforts to resolve promptly (but in any event within 10 days following such Section 6.3(b) Notice of Objection (such period, the "*Section 6.3(b) Resolution Period*")) any disagreements regarding the Estimated CN DB Transfer Amount and if they so resolve the disagreements, the agreed Estimated CN DB Transfer Amount shall be the "*Final Estimated CN DB Transfer Amount*" and shall be final and binding upon the Parties. In the event that the Parties cannot resolve such disagreements during the Section 6.3(b) Resolution Period, the Parties shall, within 10 days following the Section 6.3(b) Resolution Period, jointly select and engage an independent third actuary with whom none of the Parties have had a material relationship in the last two years, who shall render its determination promptly (and in any event within 20 days following its engagement) in accordance with the requirements of this Section 6.3 and whose determination shall be the "*Final Estimated CN DB Transfer Amount*" and shall be final and binding upon the Parties. In no event (except for inaccuracy of the data provided) shall (i) the Estimated CN DB Transfer Amount determined by the third actuary be more than the Estimated CN DB Transfer Amount claimed by Grizzly or less than the Estimated CN DB Transfer Amount determined by the Actuary. Each of the Parties shall bear the fees, costs and expenses of their respective actuaries, and the fees, costs and expenses of the third actuary shall be borne one half by Burgundy and one half by Grizzly. Any decision by the third actuary shall be treated as confidential information by the Parties, except as may be required to obtain judgment on the award or enforce performance thereof or except as disclosure may be required by Law. As soon as practicable following the determination of the Final Estimated CN DB Transfer Amount, the Parties shall prepare and file with the relevant regulatory authorities an asset transfer report (the "*CN DB Asset Transfer Report*").

       (c)    The Final Estimated CN DB Transfer Amount shall bear interest at the rate of return of the Burgundy CN DB Plan between the Effective Time and the actual date of transfer (the "*CN DB Transitional Period*") and shall be further adjusted for benefit payments and plan expenses during the CN DB Transitional Period (the Final Estimated CN DB Transfer Amount as so adjusted, the "*Adjusted CN DB Transfer Amount*"). As soon as practicable after the approval of the Asset Transfer Report by the relevant regulatory authorities, and in any event, within 15 days following such time, the Actuary shall provide Grizzly's actuary with its calculation of the Adjusted CN DB Transfer Amount, together with the relevant information used by the Actuary or otherwise reasonably requested by Grizzly's actuary as needed to calculate the Adjusted CN DB Transfer Amount; provided, however, that the Actuary shall not provide any information with respect to an employee who is not a Spinco Employee that would identify such individual. The Adjusted CN DB Transfer Amount provided by the Actuary pursuant to the immediately preceding sentence shall be the "*Final Adjusted CN DB Transfer Amount*" and shall be final and binding upon the Parties unless prior to the close of business on the 30th day following Grizzly's receipt of the information described in the second sentence of this Section 6.3(c), Grizzly delivers to Burgundy a written notice (a "*Section 6.3(c) Notice of Objection*") stating that Grizzly believes that the Actuary's calculation of the Adjusted CN DB Transfer Amount contains factual or mathematical errors, fails to comply with applicable Law, or otherwise fails to comply with the assumptions expressly set forth in *Exhibit D* and states in reasonable detail the basis for such belief. Should Grizzly timely provide a Section 6.3(c) Notice of Objection, the Parties shall use their reasonable best efforts to resolve promptly (but in any

16

event within 10 days following such Section 6.3(c) Notice of Objection (such period, the "**Section 6.3(c) Resolution Period**")) any disagreements regarding the Adjusted CN DB Transfer Amount and if they so resolve the disagreements, the agreed Adjusted CN DB Transfer Amount shall be the "**Final Adjusted CN DB Transfer Amount**" and shall be final and binding upon the Parties. In the event that the Parties cannot resolve such disagreements during the Section 6.3(c) Resolution Period, the Parties shall, within 10 days following the Section 6.3(c) Resolution Period, jointly select and engage an independent third actuary with whom none of the Parties have had a material relationship in the last two years, who shall render its determination promptly (and in any event within 20 days following its engagement) in accordance with the requirements of this Section 6.3 and whose determination shall be the "**Final Adjusted CN DB Transfer Amount**" and shall be final and binding upon the Parties. In no event (except for inaccuracy of the data provided) shall (i) the Adjusted CN DB Transfer Amount determined by the third actuary be more than the Adjusted CN DB Transfer Amount claimed by Grizzly or less than the Adjusted CN DB Transfer Amount determined by the Actuary. Each of the Parties shall bear the fees, costs and expenses of their respective actuaries, and the fees, costs and expenses of the third actuary shall be borne one half by Burgundy and one half by Grizzly.

(d)     As soon as practicable after the determination of the Final Adjusted CN DB Transfer Amount, the Parties shall cause the funding agent of the Burgundy CN DB Plan to transfer the Final Adjusted CN DB Transfer Amount to the funding agent of the Spinco CN DB Plan. The Assets transferred pursuant to this Section 6.3 shall be in the form of cash.

(e)     Grizzly and Burgundy shall cooperate in (i) making all filings required under applicable Canadian Law, (ii) implementing all appropriate communications with participants, (iii) transferring appropriate records, and (iv) taking all such other actions as may be necessary and appropriate to implement the provisions of this Section 6.3 in a timely manner.

(f)     Notwithstanding anything to the contrary contained in this Section 6.3, if any regulatory authority requires that the Final Estimated CN DB Transfer Amount or the Final Adjusted CN DB Transfer Amount be calculated in a different manner than described above, the Parties agree that the Final Estimated CN DB Transfer Amount or the Final Adjusted CN DB Transfer Amount, as applicable, will be calculated in accordance with the requirements of such regulatory authority.

6.4     Taiwanese Pension Plan. This Section 6.4 shall have effect only if the TCI Interests are transferred to Spinco at or prior to the Business Effective Time. From and after the Business Effective Time, Spinco shall cause TCI (a) to retain, pay, perform, fulfill and discharge, in due course in full (and Spinco shall indemnify Burgundy for), all Liabilities under the old pension plan governed by the Labor Standards Law of Taiwan (the "**TW DB Plan**") and its new pension plan governed by the Labor Pension Act of Taiwan (the "**TW DC Plan**"), and (b) to retain the Assets of the TW DB Plan.

6.5     Nonqualified Deferred Compensation.

(a)     As of the Effective Time, Spinco shall establish a U.S. nonqualified retirement plan (the "**Spinco US SERP**") which is substantially identical to the corresponding U.S. Burgundy Nonqualified Retirement Plan then in effect ("**Burgundy US SERP**"). From and after the Effective Time, (i) Spinco shall assume the Liabilities for all benefits under the

17

Bellon-AX000198

Burgundy US SERP with respect to Spinco Employees who were participants in the Burgundy US SERP as of immediately prior to the Effective Time, (ii) Spinco shall pay all such benefits under the Spinco US SERP in accordance with its terms and (iii) Spinco shall indemnify Burgundy for all such Liabilities described in the immediately preceding clauses (i) and (ii). Notwithstanding anything to the contrary contained in this Section 6.5(a), following the one-year anniversary of the Effective Time, Spinco shall have no obligation to provide additional benefits pursuant to the Spinco US SERP.

(b)      As of the Effective Time, Spinco shall establish a deferred compensation plan (the "*Spinco DCP I*") which is substantially identical to the corresponding Burgundy Deferred Compensation Plan, as amended July 14, 2004 then in effect ("*Burgundy DCP I*"). Notwithstanding the foregoing, the deemed investment opportunities provided under the Spinco DCP I will be the same as offered by Grizzly in its corresponding plan. From and after the Effective Time, (i) Spinco shall assume the Liabilities for all benefits under the Burgundy DCP I with respect to Spinco Employees who were participants in the Burgundy DCP I as of immediately prior to the Effective Time, (ii) Spinco shall pay all such benefits under the Spinco DCP I in accordance with its terms and (iii) Spinco shall indemnify Burgundy for all such Liabilities described in the immediately preceding clauses (i) and (ii). Notwithstanding anything to the contrary contained in this Section 6.5(b), following the one-year anniversary of the Effective Time, Spinco shall have no obligation to provide for additional deferrals of compensation pursuant to the Spinco DCP I.

(c)      As of the Effective Time, Spinco shall establish a deferred compensation plan (the "*Spinco DCP II*") which is substantially identical to the corresponding Burgundy Deferred Compensation Plan, as amended September 24, 2008 then in effect ("*Burgundy DCP II*"). Notwithstanding the foregoing, the deemed investment opportunities provided under the Spinco DCP II will be the same as offered by Grizzly in its corresponding plan. From and after the Effective Time, (i) Spinco shall assume the Liabilities for all benefits under the Burgundy DCP II with respect to Spinco Employees who were participants in the Burgundy DCP II as of immediately prior to the Effective Time, (ii) Spinco shall pay all such benefits under the Spinco DCP II in accordance with its terms and (iii) Spinco shall indemnify Burgundy for all such Liabilities described in the immediately preceding clauses (i) and (ii). Notwithstanding anything to the contrary contained in this Section 6.5(c), following the one-year anniversary of the Effective Time, Spinco shall have no obligation to provide for additional deferrals of compensation pursuant to the Spinco DCP II.

(d)      As of the Effective Time, Spinco shall establish a Canadian nonqualified retirement plan (the "*Spinco CN SERP*") which is substantially identical to the corresponding Burgundy Non-Registered Retirement Plan then in effect ("*Burgundy CN SERP*"). From and after the Effective Time, (i) Spinco shall assume the Liabilities for all benefits under the Burgundy CN SERP with respect to Spinco Employees who were participants in the Burgundy CN SERP as of immediately prior to the Effective Time, (ii) Spinco shall pay all such benefits under the Spinco CN SERP in accordance with its terms and (iii) Spinco shall indemnify Burgundy for all such Liabilities described in the immediately preceding clauses (i) and (ii). Notwithstanding anything to the contrary contained in this Section 6.5(d), following the one-year anniversary of the Effective Time, Spinco shall have no obligation to provide for additional deferrals of compensation pursuant to the Spinco CN SERP.

18

Bellon-AX000199

## ARTICLE VII
## COLLECTIVE BARGAINING AGREEMENTS

7.1     Exhibit E CBAs. Effective immediately after the Business Transfer Time, (a) Spinco shall, or shall cause the applicable member of the Spinco Group to, assume the collective bargaining agreements (collectively, the "*Exhibit E CBAs*") identified on *Exhibit E* to this Agreement (including the obligation to honor the terms and conditions thereof and any obligations thereunder requiring a successor to recognize a particular labor union as authorized representative and bargaining agent of an employee group or for any other purpose), (b) Spinco (or the applicable Subsidiary of Spinco) shall be the "Employer" for purposes of each such Exhibit E CBA, (c) the Spinco Group shall have sole responsibility for all Liabilities arising under the Exhibit E CBAs, and (d) Spinco shall indemnify and hold harmless Burgundy and its Affiliates with respect to the Liabilities described in the immediately preceding clause (c). Following the Effective Time, Grizzly and Spinco shall, or shall cause the Spinco Group to, provide any employee benefit required to be provided to any Spinco Employee covered by an Exhibit E CBA pursuant to an employee benefit plan maintained by Burgundy or any of its Affiliates to instead be provided pursuant to an employee benefit plan maintained by Grizzly or one of its Subsidiaries (including Spinco and its Subsidiaries). For the avoidance of doubt, notwithstanding the preceding sentence and anything in this Agreement to the contrary, the Spinco Group shall not assume, and Burgundy shall retain, indemnify and hold Grizzly and its Subsidiaries harmless against, the Excluded Benefits Liabilities.

7.2     LC CBA. Effective immediately after the Business Transfer Time, (a) Spinco shall, or shall cause the applicable member of the Spinco Group to, assume all obligations under the Agreement between PPG Industries, Inc. Chemicals Lake Charles Complex and Local Lodge 470 of District 161 International Association of Machinists and Aerospace Workers dated August 29, 2009 (Lake Charles, Louisiana) (such agreement or any successor to such agreement, the "*LC CBA*") insofar as such obligations relate to Spinco Employees (including the obligation to honor the terms and conditions thereof and any obligations thereunder requiring a successor to recognize a particular labor union as authorized representative and bargaining agent of an employee group or for any other purpose), (b) Spinco (or the applicable Subsidiary of Spinco) shall be the "Employer" of any Spinco Employees covered by the LC CBA, (c) the Spinco Group shall have sole responsibility for all Liabilities relating to Spinco Employees arising under the LC CBA, and (d) Spinco shall indemnify and hold harmless Burgundy and its Affiliates with respect to the Liabilities described in the immediately preceding clause (c). Following the Effective Time, Grizzly and Spinco shall, or shall cause the Spinco Group to, provide any employee benefit required to be provided to any Spinco Employee covered by the LC CBA pursuant to an employee benefit plan maintained by Burgundy or any of its Affiliates to instead be provided pursuant to an employee benefit plan maintained by Grizzly or one of its Subsidiaries (including Spinco and its Subsidiaries). For the avoidance of doubt, notwithstanding the preceding sentence and anything in this Agreement to the contrary, the Spinco Group shall not assume, and Burgundy shall retain, indemnify and hold Grizzly and its Subsidiaries harmless against, the Excluded Benefits Liabilities.

7.3     Foreign CBAs. As of the Business Transfer Time, the unions representing Spinco Employees located in jurisdictions outside of the United States will continue to represent those employees for purposes of collective bargaining with their respective employers, and the collective bargaining agreements identified on *Exhibit F* to this Agreement (the "*Foreign

19

Bellon-AX000200

A-212