# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**CHARLES W. BELLON, ROBERT E. EAKIN,
JUDY GAY BURKE, LOUISE NICHOLS,
WILTON G. WALLACE, BERNADOT F.
VEILLON, BARBARA BROWN, and
ROBERT E. WILLIAMS, on behalf
of themselves and others similarly situated,**

      Plaintiffs,

v.                                              **CIVIL ACTION NO.: 5:18-CV-114
                                                              (GROH)**

**THE PPG EMPLOYEE LIFE AND OTHER
BENEFITS PLAN, PPG INDUSTRIES, INC.,
and THE PPG PLAN ADMINISTRATOR,**

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' RULE 56(d) MOTION AND
## GRANTING PPG'S MOTION FOR SUMMARY JUDGMENT

Now before the Court is Plaintiffs' Motion for Relief under Rule 56(d) and the parties' cross motions for summary judgment.[1] The Court has thoroughly reviewed the briefing, exhibits and applicable legal authorities. Having carefully considered the same, the Court concludes that Plaintiffs' Rule 56(d) Motion should be denied, and the Defendants' Motion for Summary Judgment should be granted.

### I. BACKGROUND

This civil action arises out of a commercial business transaction involving Defendant PPG Industries, Inc. ("PPG") merging its commodity chemicals division with

---

[1] Plaintiffs seek summary judgment only as to Counts VI, VII and III.

1

Georgia Gulf to create a separate public company named Axiall Corporation ("Axiall"). Plaintiffs contend that this transaction and subsequent developments violated various provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"). Further, Plaintiffs allege breach of contract against PPG and violation of fiduciary duty against PPG and the PPG Plan Administrator.

This matter was previously scheduled for pretrial conference on February 19, 2021; however, based upon the nature and timing of the parties' summary judgment briefing, the Court entered an Order generally continuing the case pending resolution of the Plaintiffs' Rule 56(d) Motion. ECF No. 216. The matter is now ripe for adjudication.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material

fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Under this Rule, a court is permitted "to deny summary judgment or to order a continuance if the nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." Evans v. Techs. Applications & Servs. Co., 80 F.3d 954, 961 (4th Cir. 1996). "To satisfy Rule 56(d)'s mandates and obtain additional discovery, the nonmoving party 'must specifically allege why the information sought would [be] sufficient to create a genuine issue of material fact such that it would [ ] defeat[ ] summary judgment." Synovus Bank v. Stevens L. Firm, No. 4:19-CV-01411-SAL, 2020 WL 6384653, at *3 (D.S.C. Oct. 30, 2020) (quoting Strag v. Bd. of Trustees, Craven Cmty. College, 55 F.3d 943, 954 (4th Cir. 1995)).

The Court may deny a Rule 56(d) motion if the moving party "had a reasonable opportunity to conduct discovery" and "did not identify any specific information that would create a genuine dispute of material fact" sufficient to survive summary judgment. Gordon v. CIGNA Corp., 890 F.3d 463, 478 (4th Cir. 2018) (citing Hodgin v. UTC Fire & Sec. Ams. Corp., 885 F.3d 243, 250 (4th Cir. 2018)) (internal quotations omitted). Said another way, "a court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014). In sum, Rule 56(d) requires the Court to deny summary judgment where the nonmovant "has not had the opportunity to discover information that is essential to his opposition." Ingle ex rel. Est. of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (citations omitted).

## III. DISCUSSION

The Court first discusses the Plaintiffs' Rule 56(d) Motion because its success might require denial of the Defendants' Motion for Summary Judgment. After determining that the Court need not grant the Plaintiffs' Rule 56(d) Motion, the Court turns to the Defendants' Motion for Summary Judgment, which shall be granted. Accordingly, the Plaintiffs' Motion for Partial Summary Judgment will be denied.

**A. Plaintiffs' Rule 56(d) Motion**

Plaintiffs filed their Rule 56(d) Motion because of the Defendants' untimely production of certain documents, which occurred after summary judgment briefing closed. Specifically, the documents at issue are from PPG's Employee Benefits Committee ("EBC") and refer to an amendment in 1984 that added a reservation of rights ("ROR") clause. Defendants produced the documents on December 4, 2020. Although this

documentation was requested by Plaintiffs during discovery in 2019, Defendants state that they were diligent in searching but failed to find the requested documents.

Based upon the parties' declarations, the Court finds that the Defendants' underlying search for documents was adequate; however, the Court also finds that the EBC documents, which nobody disputes were responsive and discoverable, should have been disclosed much sooner. Indeed, Ms. Rathburn's assistant found these documents and believed they were important enough to have them scanned, yet she apparently never told Ms. Rathburn about finding them. This blunder, which is attributed to the Defendants, has greatly impacted this case. Indeed, it resulted in Plaintiffs' Rule 56(d) Motion and the subsequent briefing that came with it, which could have been avoided.

Nonetheless, the Court finds that the EBC documents are not the sort of smoking gun that Plaintiffs suggest. As Defendants aptly note, Plaintiffs argued that "[t]here was no [ROR] in the PPG Life insurance Plan before 1984" on the first page of their Response to Defendants' Motion for Summary Judgment. ECF No. 186. To the extent Plaintiffs argue that PPG's decision to remove the previously existing 1969 ROR would have somehow bolstered their claims, this argument lacks merit.

As explained in greater detail below, the Plaintiffs' claims fail and summary judgment in favor of Defendants is warranted. Nothing presented in Plaintiffs' Rule 56(d) Motion changes the Court's analysis. Succinctly, the EBC documents, while responsive to Plaintiffs' requests, are not material to the ultimate issues currently before the Court. Therefore, Plaintiffs' Motion for Relief Pursuant to Rule 56(d) is **DENIED**.

**B. Defendants' Motion for Summary Judgment**

In their Motion, Defendants seek summary judgment on all eight counts within Plaintiffs' Amended Complaint. As explained more fully herein, the Court finds no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. Accordingly, Summary Judgment is warranted.

1. PPG did not terminate any vested benefits.

Plaintiffs allege that the Plan "did not permit PPG to unilaterally remove participants and transfer them and PPG's obligations under the PPG Plan to another entity like Axiall." ECF No. 69 at 14. They further claim that PPG violated §§ 502(a)(1)(B) and (a)(3); 29 U.S.C. § 1132(a)(1)(B) and (a)(3). Id. Specifically, by "transferring to Axiall PPG's obligations to provide them with retiree life insurance coverage under the PPG Plan, and in terminating Plaintiffs and Class Members' already earned and vested rights to retiree life insurance coverage under the PPG Plan, Defendants violated the PPG Plan." Id. Plaintiffs' claim is without merit.

PPG argues, and the Court so finds, that Plaintiffs were not participants in the PPG plan at the time their benefits were terminated, and PPG was not the entity that terminated their benefits. In January 2013, PPG closed the transaction with Georgia Gulf that created Axiall. As part of the transaction, PPG divested itself of the commercial chemical portion of its operations, to which Plaintiffs previously belonged. Axiall also assumed responsibility for certain benefits of PPG's former employees. From January 2013 through December 2015, Axiall provided Plaintiffs with the retiree life insurance benefits at issue here. In August 2015, Axiall notified participants in *its* plan that it intended to terminate their benefits in January 2016.

PPG cannot be sued for Axiall's decision to terminate Plaintiffs' benefits under a plan managed by Axiall. See Stanton v. Gulf Oil Corp., 792 F.2d 432, 434 (4th Cir. 1986) (explaining that "[a] civil action may be brought under ERISA only by a plan 'participant,' 'beneficiary,' 'fiduciary,' or the Secretary of Labor." (citing 29 U.S.C. § 1132(a)(2))). In an attempt to circumvent this legal certainty, Plaintiffs argue that PPG's liability arises from transferring the retiree life insurance obligations to Axiall. In other words, Plaintiffs' theory is that PPG terminated their benefits at the time of the Axiall transaction.

Plaintiffs theory fails as a matter of law. "Since [the defendant] currently has no control or discretion regarding Plaintiffs' benefits, it cannot provide redress of Plaintiffs' claims under § 502(a)(1)." Colin v. Marconi Com. Sys. Employees' Ret. Plan, 335 F. Supp. 2d 590, 598 (M.D.N.C. 2004). Indeed, when a "former employer is in no position, where it is no longer associated with the Plan, to pay out benefits to plaintiffs, only the Plan and the current plan administrator can pay out benefits to plaintiffs." Id. (quoting Hall v. Lhaco, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998) (cleaned up)).

Plaintiffs argue that their benefits were vested, and the Plan did not explicitly allow PPG to transfer their vested benefits to another entity—each of which are faulty assertions. Plaintiffs aver that their benefits are vested based upon the language used by PPG in the Plan. Specifically, the Plan states, "[u]pon retirement, your participation in the Basic Group Life Insurance Program is terminated and replaced with Retiree Life Insurance coverage. This coverage is provided by the Company." ECF No. 175 at 225 (A-437).

"It is well-established that ERISA does not prohibit a company from terminating or modifying previously offered benefits that are not vested." Gable v. Sweetheart Cup Co.,

7

Inc., 35 F.3d 851, 855 (4th Cir. 1994). Moreover, "ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued." Philips v. Amoco Oil Co., 799 F.2d 1464 (11th Cir. 1986). "To vest benefits is to render them forever unalterable. Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest 'must be found in the plan documents and must be stated in clear and express language.'" Sprague v. General Motors Corp., 133 F.3d 388, 400 (6th Cir. 1998) (quoting Wise v. El Paso Natural Gas Co., 986 F.2d 929, 937 (5th Cir.), cert. denied, 510 U.S. 870 (1993)) (collecting cases). An Employer "or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." M and G Polymers USA, LLC v. Tackett, 574 U.S. 427, 434–35 (2015) (quoting Curtis-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). Indeed, the Supreme Court has long recognized that "employers have large leeway to design disability and other welfare plans as they see fit." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003).

Simply stated, the Plan language Plaintiffs rely upon is not the type of clear and express language required to create vested benefits in a welfare plan. Contrary to Plaintiffs' assertion, Plan language stating "[t]his coverage is provided by the Company" is not an unequivocal promise for lifetime benefits. ECF No. 186 at 11. Even if the Court were inclined to stretch the plain meaning of the Plan's language to Plaintiffs' desired interpretation, the Plan contained an ROR, which is "plainly inconsistent with any alleged intent to vest those benefits." Gable, 35 F.3d at 856 (citing Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1519 (8t Cir. 1988)). Thus, the Court concludes Count I must

be dismissed because PPG did not terminate Plaintiffs' benefits, and even if it had, those benefits never vested.

### 2. Counts II and V were untimely filed.

First, the Court finds that Plaintiffs' Section 510 violation claims are untimely. Plaintiffs allege Interference with Benefits (Count II) and Discrimination (Count V) under Section 510 of ERISA. Defendants persuasively argue that these claims are time-barred.

As explained by another District Court in this Circuit,

> Section 510 of ERISA makes it "unlawful for any person to discharge" an employee who is participating in a covered plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. However, ERISA does not contain an express statute of limitations. In accordance with Wilson v. Garcia, 471 U.S. 261 (1985), therefore, this Court must "borrow the state statute of limitations that applies to the most analogous state-law claim." A Society Without A Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011) (citing Wilson, 471 U.S. at 266–67); see also Payne v. Blue Cross & Blue Shield of Va., No. 91–2583, 1992 WL 235537, at *2 (4th Cir. Sept. 24, 1992) ("A federal court must look to the most analogous state statute of limitations in which the federal court sits to determine the appropriate filing deadline for ERISA actions.").

Lawson v. Altria Ret. Plan for Hourly Emps. (Tobacco Workers), No. 3:12CV460-HEH, 2012 WL 3638570, at *2 (E.D. Va. Aug. 22, 2012).

Here, PPG suggests the Court should apply West Virginia's statute of limitations ("SOL") for employment discrimination or wrongful termination claims. The Court concurs with courts in the Eastern District of Virginia that have concluded "claims brought under ERISA § 510 are most analogous to state-law wrongful termination claims." Weakley v. Homeland Sec. Sols., Inc, No. 3:14CV785 (REP-RCY), 2015 WL 11112158, at *13 (E.D. Va. May 19, 2015), report and recommendation adopted sub nom. Weakley v. Homeland

Sec. Sols., Inc., No. 3:14CV785, 2015 WL 11112159 (E.D. Va. June 16, 2015), aff'd, 622 F. App'x 253 (4th Cir. 2015) (citing Lawson, 2012 WL 3638570).

Although the Fourth Circuit has not yet squarely addressed this issue, "the majority of courts of appeals that have addressed this issue have concluded that . . . the most analogous statute of limitations for Section 510 claims are based on employment discrimination and/or wrongful termination law." Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1137–38 (7th Cir. 1992) (collecting cases[2]). This Court finds the analysis performed by the Third, Fifth, Ninth and Tenth Circuits, as well as other district courts in this Circuit most persuasive. Succinctly, wrongful termination is closer than breach of contract "because a section 510 action, at its core, is a claim by the employee that she was fired for an improper purpose." Lawson, at *4 (quoting Sutter v. First Union Nat'l Bank of Va., Inc., 932 F.Supp 753, 757 (E.D. Va. 1996).

As this Court has previously explained, Wrongful termination "is a tort action. Accordingly, under West Virginia Code § 55–2–12(b) (the default statute of limitations for personal injury claims), the statute of limitations runs after two years." Coleman v. Hous. Auth. of City of Weirton, No. 5:12CV151, 2014 WL 320179, at *3 (N.D. W. Va. Jan. 29, 2014) (cleaned up). Accordingly, a two-year SOL applies to Plaintiffs' section 510 claims.

---

[2] "Felton v. Unisource Corp., 940 F.2d 503 (9th Cir. 1991) (most analogous state statute of limitations for a Section 510 claim is that for wrongful termination or retaliatory discharge claims); McClure v. Zoecon, Inc., 936 F.2d 777, 778–79 (5th Cir. 1991) (most analogous statute of limitations is state statute for wrongful discharge claims); Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1205 (10th Cir.1990) (most analogous statute of limitations is one for employment discrimination); Gavalik v. Continental Can Co., 812 F.2d 834, 843–46 (3rd Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 495, (1987) (applied state statute of limitations for employment discrimination cases). But see Heideman v. PFL Inc., 904 F.2d 1262, 1267 (8th Cir. 1990), cert. denied, 498 U.S. 1026 (1991) (concluded without analysis that state statute of limitations for contracts covered the Section 510 claim); Clark v. Coats & Clark, Inc., 865 F.2d 1237, 1242 (11th Cir. 1989) (concluded that Section 510 claims are founded in contract and, therefore, most analogous state statute of limitations was that applicable to contract actions)." Id.

Even if the Court were to calculate the deadline in a light most favorable to Plaintiffs, the latest possible date for triggering the SOL would be when Axiall terminated Plaintiffs' benefits on January 1, 2016.[3] Plaintiffs initiated this lawsuit on July 12, 2018. In their Response to PPG's Motion for Summary Judgment, Plaintiffs do not dispute that their claims are time-barred if the Court were to adopt the two-year SOL for wrongful discharge. Thus, at best, the Complaint was filed six months too late. Accordingly, Counts II and V must be dismissed.

### 3. Defendants did not breach any fiduciary duty.

In Count IV, Plaintiffs allege that PPG and the Plan Administrator violated 29 U.S.C. §1104(a) by removing Plaintiffs from the PPG Plan and transferring certain obligations to Axiall. 29 U.S.C. 1104(a), as it existed during the relevant period, provided,

> **(a) Prudent man standard of care**
>
> **(1)** Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>     **(A)** for the exclusive purpose of:
>
>         **(i)** providing benefits to participants and their beneficiaries; and
>         **(ii)** defraying reasonable expenses of administering the plan;
>
>     **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
>     **(C)** by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

---

[3]     The Court finds that the SOL should be calculated from the date the Axial transaction closed, in 2013, when PPG transferred the obligations. Thus, Plaintiffs lawsuit needed to be filed by January 2015.

11

> **(D)** in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104.[4]

The Fourth Circuit succinctly explained the SOL for a breach of fiduciary claim under § 1104 in Browning: "section 413 'creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment.'" Browning v. Tiger's Eye Benefits Consulting, 313 F. App'x 656, 660 (4th Cir. 2009) (quoting Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1551 (3d Cir.1996)).

In response to PPG's Motion, Plaintiffs argue that they "had no reason to know in 2013 that Rathburn had breached her duty and they suffered no harm from her action until January 1, 2016. Accordingly, they had no reason or basis to sue in 2013." ECF No. 186 at 28. In a case cited by Plaintiffs, the Ninth Circuit explained its two-step test for determining whether a claim is time barred under § 1113(2): "First, we isolate and define the underlying violation upon which the plaintiff's claim is founded. Second, we inquire when the plaintiff had actual knowledge of the alleged breach or violation." Sulyma v. Intel Corp. Inv. Pol'y Comm., 909 F.3d 1069, 1072–73 (9th Cir. 2018), aff'd, 140 S. Ct. 768, (2020) (cleaned up).

Here, Plaintiffs' underlying claim is founded upon PPG's removal of Plaintiffs from the Plan and its transfer of certain obligations to Axiall. See ECF No. 69 at 16.[5] Indeed,

---

[4] This version of the statute was in effect from December 23, 2008, to December 19, 2019.
[5] For example, in paragraph 74, Plaintiffs allege that the "Plan Administrator and PPG violated their fiduciary duties . . . by unilaterally removing Plaintiffs and the Class from the PPG Plan and transferring to Axiall PPG's obligations . . . ."

12

nowhere in Count IV do the Plaintiffs allege that the discontinuation of their benefits *by Axiall* constituted a breach of fiduciary duty by PPG or the Plan administrator, nor could they. PPG cannot be held liable as a fiduciary for Axiall's decision to stop providing a welfare benefit to Plaintiffs; nonetheless, Plaintiffs ask this Court to use *that* event to calculate the SOL for their breach of fiduciary claim. The Court finds that the SOL began to run in January 2013, and Plaintiffs had actual knowledge of their claim (as they to pled it) in 2013. The three-year SOL defined in § 1113(2) applies. Therefore, Plaintiffs' Complaint needed to be filed in 2016—two years prior to when it was filed.

The Court further notes that Plaintiffs do not dispute their actual knowledge of the Axiall transaction and transfer of their benefits in 2013, upon which the claims in their Amended Complaint are based. They contest "actual knowledge of a breach" prior to August 15, 2015; but this position is inconsistent with their pleading and the evidence of the case. See, e.g., ECF No. 196 at 16n.19.

Moreover, PPG and the Plan administrator were not acting as fiduciaries by transferring liabilities under the Axiall transaction. PPG's argument on this point is well supported. In Flanigan, the Second Circuit held that "[b]ecause GE's decision to spin-off the division along with its pension plan was, at its core, a corporate business decision, and not one of a plan administrator, GE was acting as a settlor, not a fiduciary, when it transferred the surplus to Lockheed. Therefore, GE's general fiduciary duties under ERISA were not triggered." Flanigan v. General Elec. Co., 242 F.3d 78 (2d. Cir 2001).

"[T]he ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing

13

its assets." Phillips v. Amoco Oil Co., 799 F.2d 1464 (11th Cir. 1986). In another case, the appellate court was tasked with determining "whether AT&T acted in a fiduciary capacity when it amended its pension and welfare plans and allocated the assets and liabilities of those plans between AT&T and Lucent." Systems Council EM-3 v. AT&T Corp., 159 F.3d 1376, 1379 (D.C. Cir. 1998). Although "the employer has allocated assets of its pension and welfare plans in a manner that allegedly benefits the employer to the employees' detriment . . . under Lockheed, it does not implicate the statute's fiduciary provisions." Id. at 1380 (citing Lockheed Corp. v. Spink, 517 U.S. 882 (1996)). Indeed, the court found it was "clear that AT&T was not acting as a fiduciary when it amended its pension and welfare plans . . . ." Id.

Here, Plaintiffs allege that PPG and the Plan administrator breached their fiduciary duties to the Plaintiffs under ERISA by "removing Plaintiffs . . . from the PPG Plan and transferring to Axiall PPG's obligations[,]" but the law is clear that the Defendants were not acting as fiduciaries when taking the necessary steps to complete the Axiall transaction. ECF No. 69 at 16. Accordingly, assuming arguendo Count IV is not time barred, it nonetheless fails because the Defendants were not acting as fiduciaries.

4. ERISA preempts Plaintiffs' breach of contract claim.

Count VI of the Amended Complaint contains one substantive paragraph: "PPG violated its contractual commitments to the participants who are members of the Subclass to provide 'lifetime income' benefits to the surviving spouses of such participants." ECF No. 69 at 17. Plaintiffs concede that "the PPG Plan provides this benefit[,]" yet they contend that ERISA is inapposite because this claim "does not depend on or relate to Plan provisions." ECF No. 186 at 31.

14

The Court finds Plaintiffs' arguments wholly unpersuasive, and the case Plaintiffs rely upon is easily distinguishable. In Pizlo v. Bethlehem Steel Corp., the Fourth Circuit found ERISA did not preempt state law claims, for *inter alia* breach of contract, where they *were not related* to an employee benefit plan. Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 (4th Cir. 1989). Looking more closely at the case, the Pizlo Court explained, "[t]he claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term." Id. at 120.

To be clear, the Defendant in Pizlo was alleged to have breached an employment contract by terminating its employees—contrary to the terms of the alleged contract. Further, the only other case cited by Plaintiffs turned on "plaintiff's inclusion of the words 'benefits' and 'retirement benefits' in her complaint [as] part of her measurement of damages for defendants' alleged violation of the WVWCA and not a separate cause of action for the recovery of ERISA benefits." Boswell v. Echostar Satellite L.L.C., No. CV 1:07-0279, 2007 WL 9718620, at *4 (S.D. W. Va. June 20, 2007).

The instant case is patently distinguishable. Plaintiffs do not allege wrongful discharge or termination in violation of an employment contract, which then includes certain benefits as a valuation of damages. Here, Plaintiffs allege, in a single sentence, that PPG violated its contractual commitments to the participants to provide lifetime income benefits to the surviving spouses of such participants. It is not lost on the Court that Plaintiffs identify themselves as "participants" in Count VI. If this alleged breach of contract claim has no relation to or dependence upon the Plan, why did Plaintiffs explicitly chose to circumscribe their claim to participants?

15

The Court concludes that the breach of contract claim in Count VI is an attempt to circumvent ERISA's broad preemption, which clearly applies to this claim because it relates to an ERISA-covered plan. See Aetna Health Inc. v. Davila, 542 U.S. 200, 216 (2004) (explaining that "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted"); Elmore v. Cone Mills Corp., 23 F.3d 855 (4th Cir. 1994); Vallone v. CAN Financial Corp., 375 F.3d 623 (7th Cir. 2004) (noting, "claims by a beneficiary for wrongful denial of benefits (no matter how they are styled) have been held by the Supreme Court to 'fall [ ] directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes'" (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62–63 (1987))).

5. The surviving spouse benefit was not a pension plan.

Plaintiffs claims in Counts VII and VIII are premised on the presupposition that the surviving spouse benefit offered by PPG was a "pension plan" within the meaning of 29 U.S.C. § 1002(2)(A). Contrary to Plaintiffs' assertion, it is not a pension plan.

ERISA clearly defines pension plan:

the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

**(i)** provides retirement income to employees, or

**(ii)** results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or

program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

29 U.S.C. § 1002(2)(A).

Conversely, a "welfare plan" is defined as

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

In their Response, Plaintiffs offer no legal authority to support their assertion that the surviving spouse benefit is a pension plan under ERISA. Conversely, this Court finds the authority provided by PPG quite persuasive. Faced with a remarkably similar question, the Third Circuit found that the "death benefit provides 'benefits in the event of . . . death.' See 29 U.S.C. § 1002(1) (defining a welfare plan). This fits readily within the definition of a welfare benefit. . . . "[T]he fact that a welfare benefit appears in a larger plan that also provides pension benefits does not change the character of that welfare benefit." In re Lucent Death Benefits ERISA Litig., 541 F.3d 250, 255 (3d Cir. 2008) (citing Rombach v. Nestle USA, Inc., 211 F.3d 190, 193–94 (2d Cir. 2000)).

In Rombach, the Second Circuit noted that "it does not matter that Nestle called the disability retirement pension portion of its plan a 'pension benefit' and made it part of its master 'pension plan.' Its meaning and function remained clear; **it was a benefit**

17

**triggered by disability**. And, under the plain language of the statute, 'to the extent' that Nestle's Pension Plan provides benefits that are triggered by disability, that portion of the plan is a welfare plan under §1002(1)." Rombach v. Nestle USA, Inc., 211 F.3d 190, 194 (2d Cir. 2000) (emphasis added). "The primary difference between a *pension* plan and a *welfare* plan "is the nature of the benefit furnished—a **pension** plan provides retirement income or other deferred income, while a **welfare** plan provides benefits upon the occurrence of various specified contingencies." *Cook* at pp. 2–16 to 2–17 (emphasis added)." Kerber v. Qwest Pension Plan, No. CIVA 05CV00478BNBKLM, 2008 WL 4377562, at *6 (D. Colo. Sept. 19, 2008), aff'd, 572 F.3d 1135 (10th Cir. 2009).

Thus, the Court concludes that surviving spouse benefit was not a "pension plan" under ERISA, but it was a welfare benefit. As such, Counts VII and VIII fail as a matter of law because they necessarily depend upon the benefit being a pension plan—which under ERISA's definition, it is not

6. PPG did not violate ERISA's document production requirements.

Plaintiffs allege that the Plan administrator violated 29 U.S.C. § 1024(b) on three occasions "by failing to send all documents that [Plaintiffs] repeatedly requested in writing . . . ." ECF No. 69 at 15.[6] Plaintiffs also seek to recover from PPG on this claim under a theory of *respondeat superior*. Id. Plaintiffs sent letters to PPG in September and October 2016, as well as February 2017, requesting Plan documents. Id. at 10. Plaintiffs allege that the Plan administrator responded to all three letters but failed to produce every document they requested. Id. Plaintiffs specifically allege that the Plan administrator did

---

[6] The Court notes that Plaintiffs refer to "Exhibits 2-4" in paragraph 69; however, there are no Exhibits attached to the Plaintiffs' Amended Complaint.

not produce any summary plan descriptions ("SPDs") or other Plan documents dated prior to October 2002. Id.

In determining the scope of ERISA's document production requirement, the Fourth Circuit clearly articulated its limited nature:

> The Appellants and the Amici argue that § 104(b)(4) should be construed broadly to encompass any documents that would assist participants and beneficiaries in determining their rights under a plan and in determining whether a plan is being properly administered. They assert that other courts have interpreted § 104(b)(4) broadly. But our examination of the two circuit court cases addressing the scope of § 104(b)(4) does not convince us that § 104(b)(4) should be construed broadly.

Faircloth v. Lundy Packing Co., 91 F.3d 648, 653 (4th Cir. 1996) (internal citation omitted). The Faircloth Court further noted that "if Congress had intended § 104(b)(4) to encompass all documents that provide information about the plan and benefits, Congress could have used language to that effect." Id. at 654. Under the standard articulated in Faircloth, other courts in this Circuit have held that "§ 104(b)(4) certainly does not require Defendants to provide . . . a series of outdated plan descriptions." Colin v. Marconi Com. Sys. Employees' Ret. Plan, 335 F. Supp. 2d 590, 613 (M.D.N.C. 2004) (citing Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan, 188 F.3d 895, 903 (7th Cir. 1999) ("[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4)."); Leung v. Skidmore, Owings & Merrill LLP, 213 F.Supp.2d 1097, 1104 (N.D. Cal. 2002) ("Had Congress desired that section 1024(b)(4) provide for disclosure of outdated documents, it would have been easy to adopt statutory language to that effect.")).

As thoroughly explained above, PPG was not required to provide SPDs or other documents not encompassed under § 1024(b), or referenced in Plaintiffs' Amended

Complaint, from "before October 2002." Although the Plaintiffs' claim fails because PPG complied with § 1024(b), the Court finds it prudent to note that PPG aptly points out Plaintiffs' respondeat superior theory of recovery against PPG is wholly without support or authority in the law. To the extent PPG was named in Count III, the Court would have dismissed it regardless of the Plan administrator's liability. Further, the Court notes that Plaintiffs sent their letter requests to PPG's Human Relations Department and legal counsel, rather than the Plan administrator as contemplated by 29 U.S.C. § 1024(b). The Court need not reach Plaintiffs' potential deficiency because of PPG's compliance.

### IV. CONCLUSION

Having thoroughly reviewed the Defendants' Motion for Summary Judgment, the Court considered the facts and legal arguments therein, as well as those presented by Plaintiffs in their Response, and for the reasons stated more fully herein, the Court concludes there is no genuine dispute as to any material fact and the Defendants are entitled to judgment as a matter of law. Therefore, it is the **ORDER** of this Court that the Defendants' Motion for Summary Judgment [ECF No. 171] shall be and is hereby **GRANTED and this Civil Action is DISMISSED WITH PREJUDICE**.

Plaintiffs' Motion for Relief Pursuant to Rule 56(d) [ECF No. 209] and Motion for Summary Judgment as to Counts VI, VII and III [ECF No. 173] are **DENIED** for the reasons articulated above.

The Clerk of Court is **DIRECTED to TERMINATE as MOOT** all Motions that remain pending and to remove this Civil Action from the Court's active docket.

**IT IS SO ORDERED.**

**DATED**: June 28, 2021

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE