**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| CHARLES W. BELLON, ROBERT E. EAKIN, | ) | |
| JUDY GAY BURKE, LOUISE NICHOLS, | ) | |
| WILTON G. WALLACE, BERNADOT F. | ) | |
| VEILLON, BARBARA BROWN, and ROBERT | ) | |
| E. WILLIAMS, on behalf of themselves | ) | |
| and others similarly situated, | ) | |
| | ) | Case No. 5:18-cv-00114 |
| Plaintiffs, | ) | |
| | ) | Chief Judge Gina M. Groh |
| v. | ) | |
| | ) | CLASS ACTION |
| THE PPG EMPLOYEE LIFE AND OTHER | ) | |
| BENEFITS PLAN, PPG INDUSTRIES, INC., and | ) | |
| THE PPG PLAN ADMINISTRATOR, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**AMENDED RENEWED MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

Table of Authorities .................................................................................................II

Argument ...............................................................................................................5

I.      Applicable Legal Standards ........................................................................5

        A.      Rule 23's Framework ......................................................................5

        B.      The Merits Framework ....................................................................6

II.     Plaintiffs' Proposed Class Would Require an Individualized Assessment of Each
        Member's Knowledge, Making It Unamenable to Class Treatment. ...............11

III.    Plaintiffs' Proposed Class Does Not Satisfy Any Other Rule 23 Requirement. ...............17

        A.      Ascertainability and Numerosity .......................................................17

        B.      Adequacy of Representation ..............................................................18

        C.      Plaintiffs Also Fail to Satisfy Rule 23(B). ...........................................18

IV.     Plaintiffs' Proposed Subclass Does Not Comply With Rule 23. .....................20

Conclusion ............................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraham v. Ocwen Loan Servicing, LLC*,
    321 F.R.D. 125 (E.D. Pa. 2017)............................................................................18

*Baker v. Boeing Co.*,
    2020 WL 6292716 (D.S.C. Sept. 2, 2020), *report and recommendation*
    *adopted sub nom. Baker v. Boeing Co., Inc.*, No. 18-cv-2574, 2020 WL
    5652129 (D.S.C. Sept. 23, 2020) ....................................................................7, 11

*Blackshear v. Reliance Standard Life Ins. Co.*,
    509 F.3d 634 (4th Cir. 2007), *abrogated on other grounds by Metro. Life Ins.*
    *Co. v. Glenn*, 554 U.S. 105 (2008)...........................................................................9

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ...................................................................................14

*Comcast Corp. v. Behrend*,
    569 U.S. 27, 133 S. Ct. 1426 (2013)............................................................. *passim*

*Crosby v. City of Gastonia*,
    No. 06-cv-462, 2008 WL 1944399 (W.D.N.C. May 1, 2008)....................12, 13, 19

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) ...................................................................................14

*Melton ex rel. Dustin v. Carolina Power & Light Co.*,
    283 F.R.D. 280 (D.S.C. 2012) ...................................................................................6

*Dykes v. Portfolio Recovery Assocs., LLC*,
    No. 15-cv-110, 2016 WL 346959 (E.D. Va. Jan. 28, 2016) ...................................17

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ......................................................................... *passim*

*Gable v. Sweetheart Cup Co.*,
    35 F.3d 851 (4th Cir. 1994) ...............................................................................9, 11

*Gen. Tel. Co. of SW v. Falcon*,
    457 U.S. 147 (1982)....................................................................................................6

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
    141 S. Ct. 1951 (2021)................................................................................................6

ii

*Grayson O Co. v. Agadir Int'l LLC*,
856 F.3d 307 (4th Cir. 2017) ...............................................................15

*Great Lakes Commc'n. Corp. v. AT&T Corp.*,
124 F. Supp. 3d 824 (N.D. Iowa 2015)................................................10

*Knisely v. Allied Health Benefits, Inc.*,
No. 3:14-cv-15, 2015 WL 5634612 (N.D.W. Va. Sept. 24, 2015).........20

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ...........................................................7, 17

*New v. GameStop, Inc.*,
232 W. Va. 564, 753 S.E.2d 62 (2013)............................................10, 11

*Paulino v. Dollar Gen. Corp.*,
No. 12-cv-75, 2014 WL 1875326 (W.D. W. Va. May 9, 2014).........5, 19

*Player v. Maher Terminals, Inc.*,
841 F.2d 1123 (4th Cir. 1988) ..............................................................1

*Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives*,
875 F.3d 160 (4th Cir. 2017) ...........................................................1, 18

*Rhodes v. E.I. du Pont de Nemours & Co.*,
253 F.R.D. 365 (S.D.W. Va. 2008)........................................................20

*Rodriguez v. MEBA Pension Trust*,
872 F.2d 69 (4th Cir. 1989) .....................................................................9

*S. Power Co. v. Cleveland Cnty.*,
24 F.4th 258 (4th Cir. 2022) ....................................................................7

*Schultz v. AT&T Wireless Servs., Inc.*,
376 F.Supp.2d 685 (N.D.W. Va. 2005) ...............................................11

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) .......................................................13, 14, 16

*Tootle v. ARINC, Inc.*,
222 F.R.D. 88 (D. Md. 2004)...........................................................12, 13

*Visco v. Aiken Cnty.*,
974 F.Supp.2d 908 (D.S.C. 2013).........................................................16

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
510 F.3d 474 (4th Cir. 2007) ...................................................................9

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011)..........................................................................................*passim*

*In re YRC Worldwide, Inc. ERISA Litig.*,
   No. 09-cv-2593, 2011 WL 1303367 (D. Kan. Apr. 6, 2011)....................................................19

*In re Zetia (Ezetimibe) Antitr. Litig.*,
   7 F.4th 227 (4th Cir. 2021) ......................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 23 ......................................................................*passim*

This Court should deny Plaintiffs' amended motion for class certification for the same reason it should grant summary judgment to PPG: Plaintiffs' vesting claim, however articulated, is wholly without merit.  Vesting requires, at a minimum, that the employee knew of the retiree life insurance benefit offered and the company's alleged intention to make it unalterable.  Plaintiffs have pointed to *no* facts to support such a conclusion as to any of the named Plaintiffs or the proposed class.  And , as PPG will separately explain in a motion for summary judgment at the close of discovery, there is no direct evidence that PPG in 1969 removed any reservation-of-rights language as to future retiree life insurance benefits, as Plaintiffs have claimed.[1]

Given these deficiencies of proof, PPG respectfully submits that the Court should hold Plaintiffs' amended motion for class certification in abeyance pending the close of discovery and the Court's consideration of PPG's forthcoming renewed motion for summary judgment, as it has the discretion to do.  *Cf. Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives*, 875 F.3d 160, 164 (4th Cir. 2017) (affirming grant of summary judgment and finding it unnecessary to address class certification); *Player v. Maher Terminals, Inc.,* 841 F.2d 1123 (4th Cir. 1988) (noting that the rules do not preclude a district court from considering a motion for summary judgment prior to the issue of class certification).

However, if the Court wishes to assess class certification prior to the merits, Plaintiffs' amended class certification motion should be denied because their claim requires individualized analyses incompatible with class treatment, their class and subclass are not ascertainable,

---

[1]     The 1984 documents Plaintiffs cite regarding a purported removal of a reservation-of-rights clause in 1969 refer to a booklet that addressed only retiree ***medical*** benefits, ***not*** retiree life insurance benefits.  (Dkt. 341, Declaration of Karen Rathburn, ¶¶ 4–6, Ex. A.) However, even assuming there was a 1969 change affecting retiree life insurance benefits, the unilateral-contract theory the Fourth Circuit remanded for further factual development still turns on individualized inquiries that make this case unsuitable for class certification.

numerosity cannot be determined, Plaintiffs do not fall within any class whose benefits could theoretically have vested, and their claim otherwise fails to meet the requirements of Rule 23(b) for class certification.

This Court must view Plaintiffs' amended motion for class certification in the context of this case's history. Before the appeal, Plaintiffs pursued a unilateral contract vesting theory. As articulated by Plaintiffs to the Fourth Circuit, "[w]orkers who were employed in 1969 or hired thereafter before September 1, 1984[,] relied on and accepted PPG's offer by continuing or accepting employment with PPG during the 1969–1984 period." (Appeal No. 21-1812. Dkt. 16, at 16.) Addressing this vesting theory in light of PPG's purported 1969 removal of a reservation-of-rights clause, the Fourth Circuit found that there may be unresolved issues of fact regarding whether PPG's retiree life insurance benefit had vested for plan participants "who worked between 1969 and 1984" and remanded this case for consideration of those issues. (Dkt. 233, at 12.)[2]

This Court should limit Plaintiffs to the unilateral-contract theory presented to the Fourth Circuit and remanded by that Court. This requires, at a minimum, that the offer of allegedly unalterable benefits be communicated to the participant. Determining which members of the proposed class received such a communication would require an individualized inquiry, making this case unsuitable for class certification. In addition, Plaintiffs have not alleged, much less provided support for the proposition, that any named Plaintiff or member of the proposed class received such a communication.

Clearly anticipating the problems with trying to certify a class for a unilateral-contract theory, Plaintiffs have attempted to recast their theory on remand. As Plaintiffs describe it, they

_____

[2]      PPG cites to the page numbers on the bottom of Plaintiffs' memorandum in support of their amended motion for class certification.

2

now are pursuing a "waiver" theory under which PPG's alleged removal in 1969 of a reservation-of-rights clause vested future retiree life insurance benefits for anyone who worked for PPG between 1969 and 1984, whether or not those individuals were aware of PPG's alleged removal of the clause.  (Dkt. 292, at 4 n.4.)  This Court should not permit Plaintiffs to pursue a different theory on remand than that presented to the Fourth Circuit.  But in any event, Plaintiffs' newly formulated theory fails for numerous reasons.

Plaintiffs cite no case law for the proposition that "waiver" is a standalone cause of action. In addition, ERISA requires that PPG made an express promise of unalterable benefits, and Plaintiffs cite no evidence to show that it did.  And, even if ERISA does not apply, Plaintiffs' recast theory relies on contractual principles that require each Plaintiff to show, *at a minimum,* that he or she knew of the alleged promise.  As a result, even if this Court were to permit Plaintiffs to pursue something other than a unilateral-contract theory at this juncture, individualized issues of knowledge still would predominate over issues common to the class; the class is not ascertainable because Plaintiffs cannot establish that any of the class had the requisite knowledge; and the named Plaintiffs are not adequate representatives because they cannot establish their own such knowledge.

## BACKGROUND

Conspicuously absent from Plaintiffs' latest class certification submission is any meaningful discussion of the theory they advanced on appeal and that was the subject of the Fourth Circuit's remand.  Plaintiffs' unilateral-contract theory as presented to the Fourth Circuit was that "[w]orkers who were employed in 1969 or hired thereafter before September 1, 1984[,] relied on and accepted PPG's offer by continuing or accepting employment with PPG during the 1969–1984 period."  (Appeal No. 21-1812, App. Dkt. 16, at 16.)  This was also the theory Plaintiffs pursued in this Court prior to taking an appeal.  (Dkt. 186, at 17 ("Plaintiffs were hired and began work

under the same, unqualified promise of lifetime insurance as those who retired before September 1984 (whose benefits PPG treats as vested)."); Dkt. 210, at 8 ("PPG offered vested benefits to Plaintiffs and other pre-1984 employees—which they accepted by working and deciding to remain at PPG," and "This evidence defeats PPG's reliance on the 1984 [reservation-of-rights clause], since, once PPG offered vested benefits to Plaintiffs and other pre-1984 employees—which they accepted by working and deciding to remain at PPG—PPG was not free to renege on its promise.").

Considering Plaintiffs' unilateral-contract theory, the Fourth Circuit found there may be unresolved issues of fact regarding whether Plaintiffs' benefits vested as a result of PPG's purported 1969 action to remove a reservation-of-rights clause.  As the Fourth Circuit explained, "if the retiree life insurance coverage constituted a vested benefit between 1969 and 1984, it could not subsequently be taken away from the eligible Plan participants who worked during that 15-year period."  (Dkt. 233, at 16.)  The Fourth Circuit remanded for further factual development as relevant to that theory.[3]

Discussing the remand, the Fourth Circuit noted that the district court "*may* find it appropriate" to consider Plaintiffs' vesting theory in light of "principles of waiver and estoppel." (Dkt 233, at 20–21, n.12) (emphasis added).)  Contrary to Plaintiffs' assertions, however, waiver is not a stand-alone cause of action.  (*See, e.g*., Dkt. 292, at 4 n.4).  Under both federal and state law, waiver pertains to a party's "right to assert a breach of contract," and is not a separate cause of action.  (Dkt. 284, at 15 (citing *Potter v. Bailey & Slotnick, PLLC*, No. 21-0009, 2022 WL 1715164, at *7 (W. Va. May 27, 2022), and *Laschkewitsch v. Legal & Gen. Am., Inc.*, 247

---

[3]     Despite previously claiming the theory remanded by the Fourth Circuit sounded in state law and other pre-ERISA legal considerations (*see, e.g.*, Dkt. 296, at 4–5 n.2), Plaintiffs now take the position that the only remaining claim is governed by ERISA.  (Dkt. 292, at 5–7; Dkt. 336, at 9–10.)  As explained below, Plaintiffs' post-remand claim fails on the merits whether it arises under ERISA or state law.

F.Supp.3d 710, 719 (E.D.N.C. 2017), *aff'd*, 725 F. App'x 252 (4th Cir. 2018).)  As a result, the Fourth Circuit's suggestion that this Court consider waiver on remand is best understood in the context of the unilateral-contract theory presented to the Fourth Circuit.

In addition, the Fourth Circuit stated that the district court might choose to consider Plaintiffs' theory that "the monthly component of the Benefits Plan's optional 'surviving spouse benefit,' as a promised monthly payment to the surviving spouse for life, constituted a vested benefit."  (Dkt. 233, at 20–21, n. 12.)  This theory is the basis for Plaintiffs' proposed subclass, as discussed further below.

## ARGUMENT

### I.      Applicable Legal Standards

#### A.       Rule 23's Framework

Federal Rule of Civil Procedure 23 governs class certification.  *Paulino v. Dollar Gen. Corp.*, No. 12-cv-75, 2014 WL 1875326, *2 (W.D. W. Va. May 9, 2014).  Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).  In addition to establishing the Rule 23(a) prerequisites, Plaintiffs must satisfy one of the Rule 23(b) subparts.  Fed. R. Civ. P. 23(b).  Rule 23(b)(1) is satisfied where (A) foregoing class treatment would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," or (B) the result for some individual class members "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(A)–(B).  Rule 23(b)(2) is satisfied where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  And Rule 23(b)(3) is satisfied where "the questions

of law or fact common to class members predominate over any questions affecting only individual members," thereby making resolution as a class "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As Plaintiffs recognize, "[i]f an action is brought under all three, 23(b)(1) and (2) are preferred to 23(b)(3)." (Dkt. 336, at 19 (citing *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 598 (W.D.N.C. 2010)).)

"[A] party seeking class certification must do more than plead compliance with the . . . Rule 23 requirements. . . . Rather, the party must present evidence that the putative class complies with Rule 23." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citing *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 1432 (2013)). Given the foregoing, "actual, not presumed, conformance" must be established. *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982); *see also Melton ex rel. Dustin v. Carolina Power & Light Co*., 283 F.R.D. 280, 286 (D.S.C. 2012) ("[A] party must do more than articulate a hypothetical application of the rule.") (citing *Wal-Mart*, 564 U.S. at 350).

### B. The Merits Framework

#### 1. Rule 23 Requires an Analysis of the Merits of Plaintiffs' Claim.

Contrary to Plaintiffs' superficial attempt to address these requirements, certification under Rule 23 requires a "'rigorous analysis' [that] will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 564 U.S. at 351. This means that "a court has an obligation before certifying a class to "determin[e] that Rule 23 is satisfied, even when that requires inquiry into the merits." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960–61 (2021) (courts at the class certification stage should be "open to all probative evidence . . . regardless of whether the evidence is also relevant to a merits question."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (courts must determine whether Rule 23 is satisfied, "even when that requires inquiry into the merits of the claim"); *see also In re Zetia*

(*Ezetimibe*) *Antitr. Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (citing *Comcast Corp.* for the proposition that a party seeking class certification must affirmatively demonstrate compliance with Rule 23 using "evidentiary proof"); *EQT Prod. Co.*, 764 F.3d at 357–58 (citing *Comcast Corp.* for the proposition that courts may need to "probe behind the pleadings" to determine whether class certification is warranted).

Put differently, "[s]ince the requirements of Rule 23 are often 'enmeshed in the factual and legal issues comprising the plaintiffs' cause of action' . . . the district court must rigorously examine the core issues of the case at the certification stage." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (citing *Wal-Mart*, 564 U.S. at 351.)

> **2.    This Court Should Limit Plaintiffs to the Unilateral-Contract Theory They Presented on Appeal and on which the Fourth Circuit Remanded the Case.**

Here, as in *Goldman Sachs* and *Wal-Mart*, the Court must probe the merits of Plaintiffs' claim because proof of commonality, typicality, and adequacy of representation all "necessarily overlaps with [their] merits contention." *Wal-Mart*, 564 U.S. at 351.  The Court should evaluate the merits of Plaintiffs' claim, and thereby Plaintiffs' class certification motion, through the lens of the elements of unilateral-contract theory that was the subject of the remand.  As set forth below, that analysis clearly shows that Plaintiffs cannot meet their burden under Rule 23.  As a result, their amended renewed class certification motion must be denied in its entirety.

A unilateral contract requires: "(1) [a] specific offer; (2) communication of that offer to the employee; and (3) performance of employment-related duties in reliance on the offer." *Baker v. Boeing Co.*, 2020 WL 6292716, at *4 n.2 (D.S.C. Sept. 2, 2020), *report and recommendation adopted sub nom. Baker v. Boeing Co., Inc.*, No. 18-cv-2574, 2020 WL 5652129 (D.S.C. Sept. 23, 2020); *see also S. Power Co. v. Cleveland Cnty.*, 24 F.4th 258, 264 (4th Cir. 2022) (stating that the elements of a unilateral contract are consideration, offer, and acceptance by performance).  In other

words, to be entitled to recover for breach of a unilateral contract, each member of the class must establish that PPG communicated a specific offer of unalterable retiree life insurance benefits to him or her, and that he or she accepted that offer by continuing to work for PPG.

### 3. Plaintiffs' Recast Theory of Vesting Is Not Properly Before This Court and in Any Event Requires Individualized Knowledge.

In their filings post-remand, Plaintiffs now attempt to disavow a unilateral-contract theory. (*See, e.g.*, Dkt. 292, at 5.)  They eschew the label "unilateral contract" and instead describe their theory as follows:

- PPG's 1969 removal of the ROR was intentional, voluntary and knowing; by removing the ROR PPG voluntarily relinquished and waived its right to change, modify or terminate the Plan[4] and thereby contractually vested Plan participants' rights to retiree life insurance.

- For approximately 15 years—even after ERISA's passage—PPG provided[5] vested life insurance benefits under the PPG Plan to Plaintiffs and other Class members.

(Dkt. 335, at 2.)

Assuming this formulation substantively differs from  a unilateral-contract theory, this Court should not permit Plaintiffs to pursue a different vesting theory on remand than it presented to the Fourth Circuit on appeal. As the Fourth Circuit has explained, this shift in strategy from appeal to remand is prohibited:

The mandate rule is a specific application of the law of the case doctrine.  The rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district

---

[4]    Plaintiffs repeatedly assert, without any support, that a unified Plan existed in 1969.  (*See, e.g.,* Dkt. 335, at 2, ¶ 3; Dkt. 336, at 3.)  Post-remand discovery shows that, in the 1960's, PPG treated its various benefits separately, issuing separate booklets for various benefits.  (*See, e.g.*, Rathburn Decl., Ex. B (1965 salaried retiree life insurance booklet); Ex. C (1966 salaried medical benefits booklet); Ex. A (1969 salaried retiree supplemental medical plan booklet); Ex. D (1973 "A Concern for Your Future" handbook that states it "explains the *various plans* that comprise the total benefit program." (emphasis added)).

[5]    Obviously, PPG does not "provide" a life insurance benefit until the participant dies.

court." Significantly, as the district court recognized, Volvo did not raise the franchise element issue in the earlier proceedings, either in the district court or in this Court. As the district court also recognized, under the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories. Consequently, it properly concluded that Volvo had waived its contention on the franchise element and, as a result, was not entitled to raise it on remand.

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co*., 510 F.3d 474, 481 (4th Cir. 2007) (internal citations omitted). Here, as explained above, Plaintiffs pursued a unilateral-contract theory up to and throughout the appeal, and they should be held to it.

But even if this Court were to consider the recast vesting theory being pursued by Plaintiffs on remand, Plaintiffs still must establish individual knowledge of the promised unalterable benefits, whether under ERISA or contract principles.

Under ERISA, which governs Plaintiffs' vesting claim,[6] the Fourth Circuit has held that a retiree life insurance benefit generally vests "at the time of the plan participant's death." *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 641 (4th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). In remanding this case, however, the Fourth Circuit suggested that vesting might have occurred as early as 1969, as a result of PPG's purported amendment of its retiree life insurance plan. (Dkt. 233, at 16.) Assuming the benefit could have theoretically vested before death, vesting under ERISA at the very least requires a clear, unambiguous communication: the employer must have communicated the retirees' right to vested welfare benefits "in the plan documents" and "in clear and express language." *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994) (quoting *Wise v. El Paso Natural Gas Co.*,

---

[6] In remanding this case, the Fourth Circuit suggested that different legal standard might govern pre-ERISA vesting. *But see, e.g., Rodriguez v. MEBA Pension Trust*, 872 F.2d 69 (4th Cir. 1989) (evaluating whether and when acts that occur prior to ERISA's effective date are governed by ERISA or a pre-ERISA legal standard). PPG addressed this point in response to Plaintiffs' post-remand motion to amend their complaint. (Dkt. 267, at 7–9.)

986 F.2d 929, 937 (5th Cir. 1993), and citing *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th Cir.1990)).   Yet, Plaintiffs have not attempted to identify "clear and express language" regarding retiree life insurance that in 1969 or thereafter communicated to Plaintiffs or the class members a right to an unalterable, future reitree life insurance benefit.  *See id.*

Should Plaintiffs attempt yet again to recast their theory as not governed by ERISA, or otherwise attempt to evade the requirement of clear and express language, such a theory would still require individualized knowledge.  As set forth above, Plaintiffs' waiver theory is still a contractual theory: that PPG's purported 1969 amendment resulted in a "contractual" agreement with future retirees.  And whether under a unilateral-contract theory, state contract law, or any other contractual theory Plaintiffs may attempt to advance, vesting requires showing, *inter alia*, that the plaintiff at least knew about the alleged promise.[7]  One party's intent, if not communicated, does not create an enforceable contract and does not translate to vested benefits.  *See New v. GameStop, Inc.*, 232 W. Va. 564, 572, 753 S.E.2d 62, 70 (2013) ("West Virginia contract law requires mutual assent to form a valid contract. . . . In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract.'"); *Great Lakes Commc'n. Corp. v. AT&T Corp.*, 124 F. Supp. 3d 824, 849 (N.D. Iowa 2015) (as with an offer, "uncommunicated assent does not make a contract").

Accordingly, even Plaintiffs' revised framing requires evidence that PPG made known its alleged removal of the retiree life insurance benefit's reservation-of-rights clause, and that putative class members accepted that offer by rendering services between 1969 and 1984.   Unlike the proverbial tree that silently falls in the forest when no one is around, PPG's alleged actions must

---

[7]       As discussed *supra* at 3, "waiver" is not an independent cause of action.

have been known to those who allegedly acted in response thereto, under either federal or state law.

## II.     Plaintiffs' Proposed Class Would Require an Individualized Assessment of Each Member's Knowledge, Making It Unamenable to Class Treatment.

Under any viable unilateral-contract theory, Plaintiffs' claim requires at least two inherently individualized inquiries: (a) whether each individual Plaintiff was aware that, in 1969 or sometime thereafter, PPG removed a reservation-of-rights clause from its retiree life insurance benefit policy with the intent to vest the retire life insurance benefit; and (b) whether, with that knowledge, the individual Plaintiff accepted PPG's purported offer of a vested welfare benefit, before 1984, by rendering service.  These individualized issues defeat commonality and typicality.

In *Baker*, for example, the court found that the plaintiff could not establish a unilateral contract because the plaintiff "repeatedly stated that he did not know of the policies at issue . . . until long after he performed his employment-related duties."  2020 WL 6292716, at *4 n.2.  In light of his statements, the court found the plaintiff "could not have relied on Defendant's policies when performing [his] duties and, therefore, could not have entered into a unilateral contract with Defendant." *Id.*  West Virginia law similarly requires that, to form a unilateral contract, "one party [must] make a promissory offer" with "the other accept[ing] by performing an act rather than by making a return promise." *Schultz v. AT&T Wireless Servs., Inc.*, 376 F.Supp.2d 685, 691 (N.D.W. Va. 2005) (finding an unsigned agreement enforceable when plaintiff continued service with defendant after receiving terms and conditions).  Likewise, as also discussed above, even a standard contract theory requires an offer and acceptance. *McCormick*, 175 W. Va. at 224; *GameStop*, 232 W. Va. at 572.  And ERISA, which Plaintiffs concede governs their claim, requires even more: an unambiguous communication to the participant that the retiree life insurance benefit cannot be altered. *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994).

As evidenced by these decisions, evaluating the proof for Plaintiffs' unilateral-contract claim necessarily will require an individualized inquiry into each class member's alleged knowledge (whether he or she knew of PPG's purported 1969 amendment to remove its reservation-of-rights clause) and the member's subsequent actions (whether he or she then performed his or her job in reliance on the alleged promise of vested retiree life insurance benefits or otherwise knowingly accepted the benefit). This individualized inquiry precludes class certification. Common issues of fact do not predominate, as required by Rule 23(a)(2), and the claims of the representative parties are not typical of the claims of the class as a whole, as required by Rule 23(a)(3). Courts have recognized in a variety of analogous situations that claims requiring individualized knowledge cannot be resolved on a class-wide basis. *Crosby v. City of Gastonia*, No. 06-cv-462, 2008 WL 1944399, at *4 (W.D.N.C. May 1, 2008) (vested benefits claim lacked commonality and typicality where it turned on individual promises); *Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 97 (D. Md. 2004) (common legal claims "will [still] require an individualized showing regarding each plaintiff's acquisition of information about the new [benefit] plan.") (citation omitted).[8]

*Crosby* is instructive.[9] 2008 WL 1944399, at *3–*5. There, the district court denied a motion for class certification after finding that the proposed class did not share a common question

---

[8]    During the parties' last round of post-remand class certification briefing, Plaintiffs attempted to distinguish *Crosby* and *Tootle*, (Dkt. 292, at 7, n.6), albeit to no avail. *Tootle* held that class certification was inappropriate where the claims turned on, *inter alia*, "each plaintiff's acquisition of information about the new [benefit] plan." 222 F.R.D. at 97. That is the same problem facing Plaintiffs here.

[9]    Plaintiffs previously contended *Crosby* is distinguishable because the plaintiffs there all had different contracts, whereas here the class members allegedly are covered by a single benefit plan. (Dkt. 292, at 7 n.6.) But, insofar as the theory the Fourth Circuit remanded is concerned, each putative class member here needs to demonstrate knowledge of PPG's alleged offer or action in allegedly removing a reservation-of-rights clause in 1969, meaning that the proposed class should suffer the same fate as the *Crosby* class.

of contract breach.  Because the contracts at issue "lack[ed] uniformity," and "proof of the defendant's breach of the class representative's contract [would] not prove the defendant's breach of the rest of the class members' contracts," the court held that a class action was unavailable.  *Id.* at *3.  In other words, "[m]erely because one [ ] class representative[] can prove that he has a claim against the defendant does not mean that every other member of the class would have a valid claim."  *Id.* at *4; *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) ("Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree.").

The same is true here.  Even if one Plaintiff were able to establish that in 1969 he or she knowingly accepted a promise of alleged vested retiree life insurance, it would have no impact on any other class member's claim.  This defeats commonality.  *Crosby*, 2008 WL 1944399, at *4; *Tootle*, 222 F.R.D. at 97.

And to that end, every one of the named Plaintiffs testified that he or she was unaware of the purportedly vested nature of PPG's retiree life insurance benefit at any point before 1984 and did not accept their job or continue to work because of the retiree life insurance benefits.  (Dkt. 340, Declaration of Alexis E. Bates, Ex. A, Bellon 2022 Dep. Tr. 17:5–18:7, 22:7–25:11, 31:4–32:12; *id.* at Ex. B, Eakin 2022 Dep. Tr. 23:6–24:4, 27:7–19; *id.* at Ex. C, Nichols 2022 Dep. Tr. 22:23–25:11; *id.* at Ex. E, Veillon 2022 Dep. Tr. 12:15–13:23, 15:4–17; *id.* at Ex. D Wallace 2022 Dep. Tr. 16:10–17:23; *id.* at Ex. F. Williams 2022 Dep. Tr. 13:1–16:1.)  In fact, most of the Plaintiffs conceded that they did not even know about or consider the retiree life insurance benefit until they approached retirement.  (*Id.* at Ex. B, Eakin 2022 Dep. Tr. 27:7–19; *id.* at Ex. C. Nichols 2022 Dep. Tr. 42:13–43:2; *id.* at Ex. D, Wallace 2022 Dep. Tr. 20:8–24; *id.* at Ex. F, Williams 2022 Dep. Tr. 34:15–19.)  In other words, not a single one of the Plaintiffs will be able to prove their

knowing acceptance of PPG's alleged offer of vested benefits by working between 1969 and 1984. *Sprague*, 133 F.3d at 397 ("The plaintiffs have no basis for complaining of a refusal to certify a proposed class where the representatives of the class cannot prevail on the merits."). This testimony, in addition to showing no commonality, also defeats typicality, which requires that a named plaintiff's "interest in prosecuting [his or her] own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006). Plaintiffs themselves concede they were not aware of the alleged removal of reservation-of-rights language that they contend caused the welfare benefits to vest between 1969 to 1984. (*Id.* at Ex. A, Bellon 2022 Dep. Tr. 41:14–44:2; *id*. at Ex. B, Eakin 2022 Dep. Tr. 41:10–44:20; *id*. at Ex. C, Nichols 2022 De. Tr. 54:2–58:4; *id*. at Ex. D., Wallace 2022 Dep. Tr. 33:24–34:19; *id*. at Ex. E., Veillon 2022 Dep. Tr. 25:19–28:10; *id*. at Ex. F, Williams 2022 Dep Tr. 40:21–41:17.)

In short, the named Plaintiffs cannot show their claims arise from the same event as those of absent class members; and whatever proof Plaintiffs may have regarding their claims, it will not advance the claims of other class members. Accordingly, Plaintiffs cannot show they and the absent class members "suffered the same harms and have the same claims" that can be established through common evidence. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir. 1998) (reversing class certification where the proposed class representatives did "not 'advance the same factual and legal arguments' as the class they [were] supposed to represent.").

In the current round of briefing, Plaintiffs proffer the following common issues for the principal class:[10]

---

[10]      Plaintiffs assert the common issues in the case "includ[e]" the five they list. (Dkt. 336, at 9). Having elected to identify these specific issues, Plaintiffs cannot raise other alleged common

- Whether PPG amended the Plan to remove its previously-reserved right to amend the Plan[11] in or about 1969;

- Whether the right of the Class to retiree life insurance was vested; and

- (All Counts) The appropriate Class/Subclass-wide remedy.

(Dkt. 336 at 9.)  While these questions may be common to the class, none will "generate common *answers*" that will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original).  None will provide a "common answer to the crucial question" of whether any class member was aware of PPG's alleged removal of a reservation-of-rights clause in 1969 or PPG's alleged waiver of its right to discontinue benefits in the future and, armed with that knowledge, continued to render service thereafter.  *Id.* at 352.  Even assuming *arguendo* that Plaintiffs can prove PPG removed reservation-of-rights language regarding its retiree life insurance benefit in 1969 and did so in a manner that could be considered evidence of vesting, Plaintiffs still must show they were aware of PPG's action or intent—an inherently individualized inquiry.  Similarly, the question of what remedy should be awarded *if* any putative class member prevails does not provide a "common answer" that would merit class treatment.  *Dukes*, 564 U.S. at 350.

The same is true of the two alleged commonality points that Plaintiffs purport to identify for their proposed subclass: "the meaning of the term 'guaranteed lifetime income' in the Plan," and "whether Subclass member rights to Survivor Income Benefits were vested."[12]  (Dkt. 336, at 9, points c and d).  Even if those points were common to the subclass, once again, the subclass's claim must be considered in the context of the theory the Fourth Circuit remanded.  And there is

---

issues for the first time in their reply brief. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (issues raised for first time in reply brief are waived).

[11]    As discussed *supra* at 8 n.4, Plaintiffs provide no evidence that a unified Plan existed in 1969.

[12]    The remaining flaws with Plaintiffs' class certification arguments regarding the subclass are addressed *infra*.

no dispute that the surviving spouse benefit the subclass seeks was not established until 1974. (Rathburn Decl., Ex. F–L.)  Thus, whatever allegedly occurred in 1969 can have no bearing on a benefit that did not exist until some later point in time.  *Sprague*, 133 F.3d at 397; *Visco v. Aiken Cnty.*, 974 F.Supp.2d 908, 920 (D.S.C. 2013).

Plaintiffs' remaining commonality arguments are nothing more than unsupported conclusions.   (Dkt. 336, at 9–10.)   Conclusory assertions like, "[a]ll questions arise from Defendant's uniform treatment," and "all [questions] can be answered by common evidence and 'in one stroke,'" *id.* (citations omitted), fall well short of Plaintiffs' Rule 23 burden to "present evidence that the putative class complies with Rule 23."  *EQT Prod. Co.*, 764 F.3d at 357 (citing *Wal-Mart*, 564 U.S. at 350, and *Comcast Corp.*, 569 U.S. at 43).  Equally deficient is Plaintiffs' conclusory claim that their contentions raise common questions "whose answer depend on interpretation of common Plan documents, a uniform course of conduct by PPG as far as changes to these documents, and federal common law contract principles."  (Dkt. 336, at 10.)  Plaintiffs cite no evidence and provide no substantive explanation as to how, given the theory the Fourth Circuit remanded, these assertions provide "common *answers*" that will "drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 350 (emphasis in original).

Finally, the cases Plaintiffs cite in their commonality discussion provide no meaningful support for their arguments.  None of these cases involved the type of individualized inquiry that will be necessary to resolve the theory the Fourth Circuit remanded.  Simply citing cases where commonality was found, without demonstrating how those cases align with the issues in this case, does not satisfy Plaintiffs' Rule 23 burden.  *EQT Prod. Co.*, 764 F.3d at 357.

III.    **Plaintiffs' Proposed Class Does Not Satisfy Any Other Rule 23 Requirement.**

Plaintiffs similarly fail in their attempt to satisfy the remaining Rule 23 requirements to certify a class.  Those requirements are not met for many of the same reasons that Plaintiffs cannot satisfy commonality and typicality.

A.    **Ascertainability and Numerosity**

A plaintiff may satisfy Rule 23's ascertainability requirement by demonstrating that a putative class may be "readily identif[ied]" using "objective criteria." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019).  However, Plaintiffs also must "'demonstrate that class members will be identifiable without extensive and individualized fact-finding or mini-trials.'" *Dykes v. Portfolio Recovery Assocs., LLC*, No. 15-cv-110, 2016 WL 346959, at *4 (E.D. Va. Jan. 28, 2016).

Here, Plaintiffs declare in conclusory fashion that the proposed class and subclass "can be 'readily identified'" by reference to their "PPG retiree status, date of hire, compensation (salaried), transfer to Axiall and termination of life insurance," all of which, Plaintiffs contend "can be determined from available records."  (Dkt. 336, at 7–8.)  But, as discussed above, only those Plaintiffs who, at a minimum, had the requisite knowledge of PPG's purported offer in 1969 can try to pursue a claim.  With the class defined more narrowly as those with a valid claim, as it must be, identifying those who qualify for the class would require extensive individualized fact-finding and a series of mini-trials. *See Dykes*, 2016 WL 346959, at *4 (denying class certification where "not all of the 3,330 proposed class members have a valid claim" and determining validity would turn on "individual circumstances of each class member") (quotation omitted).

Likewise, Plaintiffs fail to demonstrate numerosity, which requires that the class be so numerous that joinder is impractical and the class mechanism is needed.  Plaintiffs point to the "hundreds" of retirees, "many" of whom had elected the surviving spouse benefit, whose liabilities

17

were transferred to Axiall.  (Dkt. 336, at 8.)  This group of retirees, however, is again the wrong putative class.  That class definition tells the Court nothing about those who may have a valid vesting claim based on events allegedly occurring in 1969, or how many class members that may include.  This lack of evidence defeats Plaintiffs' attempt to show numerosity for the remaining claim in this case.  *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125, 182 (E.D. Pa. 2017) ("[W]here there is a 'complete lack of evidence specific to the number of persons possibly within the class, a finding that plaintiffs satisfy numerosity 'crosse[s] the line separating inference and speculation.'" (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012)).

### B.    Adequacy of Representation

Given Plaintiffs' admission that they lack any knowledge of PPG's purported offer in 1969, they clearly lack the ability to "fairly and adequately protect the interests" of unknown absent class members who might possess knowledge sufficient to pursue the theory the Fourth Circuit remanded.  And because the necessary showing would require individualized evidence, *see* discussion s*upra*, Plaintiffs cannot show any common objectives or proof that would allow them to demonstrate they would be adequate representatives of absent class members.  *Plotnick*, 182 F. Supp. 3d at 589, *aff'd*, 875 F.3d 160 (denying class certification where representatives could not "fairly and adequately protect the interests of the class").

Thus, regardless of whether Plaintiffs are motivated to pursue their own individual claims and have retained counsel to do so, none of these considerations support a finding that they would be adequate class representatives for the claim the Fourth Circuit remanded.  *Id*.

### C.    Plaintiffs Also Fail to Satisfy Rule 23(b).

Although the Court could stop its analysis with Plaintiffs' failure to satisfy the requirements of Rule 23(a), Plaintiffs fare no better under Rule 23(b).  Plaintiffs argue that their proposed class

and subclass satisfy both subsections of Rule 23(b)(1), as well as 23(b)(2) and 23(b)(3).  (Dkt. 336, at 14–20.)  None of these provisions is applicable to Plaintiffs' facts.

Beginning with Rule 23(b)(1), certification fails because the question of whether each Plaintiff or class member vested by working between 1969 and 1984 would not create incompatible standards for anyone else or dispose of anyone else's vesting claim such that it would substantially impair or impede another former PPG employee from protecting his or her interests in individual litigation.  As discussed above, resolving the theory remanded by the Fourth Circuit does not ask the Court to opine on Plan administration, and it will not in any way determine the rights of all Plan participants.  As a result, Rule 23(b)(1) is inappropriate.  *Crosby*, 2008 WL 1944399, at *5.

Similarly, Rule 23(b)(2) is inapplicable now that Plaintiffs seek neither declaratory nor injunctive relief.  (*See* Dkt. 69 ¶ 58, the operative Amended Complaint, which mentions "injunctive" relief only once, to assert in conclusory fashion that the case is certifiable as a class action under Rule 23(b)(2). *See also* Dkt. 251 ¶ 58 (same).)  *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-cv-2593, 2011 WL 1303367, at *14 (D. Kan. Apr. 6, 2011) (denying class certification under Rule 23(b)(2) where plaintiffs failed to "identify any particular injunctive relief with sufficient specificity" to carry their burden).

Finally, Rule 23(b)(3) certification is inappropriate here because, as explained above, common questions do not predominate over the individualized inquiries required by the theory remanded by the Fourth Circuit, even as reconceptualized by Plaintiffs.  Nor would class treatment be a superior method to adjudicate Plaintiffs' claims, given that the Court, as factfinder, will have to make determinations about individual understandings of the alleged vested benefit offered in 1969.  *Paulino*, 2014 WL 1875326, at *7 ("[A] class action is not the superior method of

adjudication when the Court is forced to conduct individualized inquiries for each class member."); *see also Knisely v. Allied Health Benefits, Inc.,* No. 3:14-cv-15, 2015 WL 5634612, at *4 (N.D.W. Va. Sept. 24, 2015) (same).

### IV.    Plaintiffs' Proposed Subclass Does Not Comply with Rule 23.

Plaintiffs' proposed subclass—consisting of "[a]ll Class members who elected the Surviving Spouse Income Benefit coverage"—also falls far short of Rule 23's requirements and should not be certified.  The surviving spouse benefit, added as an option in 1974, permitted retirees to elect to receive a smaller lump sum life insurance payment upon the participant's death along with a monthly payment to the surviving spouse thereafter, only if the participant predeceased them.  (Rathburn Decl. ¶¶ 14–18, Exs. F–L.)  Entitlement to the benefit thus could not be determined until the participant's death or their spouse's, whichever came first.  And, as discussed *supra*, under the theory remanded by the Fourth Circuit, whatever may have allegedly happened in 1969 cannot have any bearing on a benefit that did not exist until sometime thereafter.

In addition, Plaintiffs do not even attempt to meet their burden of proving that their subclass complies with Rule 23(a).  *Rhodes v. E.I. du Pont de Nemours & Co.,* 253 F.R.D. 365, 372 (S.D.W. Va. 2008) (denying class certification where plaintiffs did not demonstrate that *each* count met the requirements of Rule 23).  Plaintiffs merely "plead[] compliance with" Rule 23, instead of presenting evidence that the subclass complies with it.  *EQT Prod. Co.,* 764 F. 3d at 357.  Nor should Plaintiffs be allowed to cure this defect on reply because they have waived it by failing to fully develop the analysis in their opening brief.  *Mowery*, 42 F.4th at 434.

PPG addressed *supra* the shortcomings in Plaintiffs' commonality arguments for the subclass.  In addition to those flaws, Plaintiffs also fail to identify representatives for their proposed subclass, let alone establish that they are adequate.  Nowhere in their filings do Plaintiffs show how any of their claims align with those in the proposed subclass.  In their Complaint, Plaintiffs

state that Bellon, Eakin, Wallace, and Williams are all representatives of the subclass. (Dkt. 69 ¶ 55.) Now, Plaintiffs seem to suggest that only Eakin and Wallace are representatives of the subclass because their claims are "based on the promise of 'guaranteed' lifetime income" which arise[s] from the same events and plan documents and share the same legal theory." (Dkt. 336, at 11.) Bellon and Williams, whose spouses predeceased them, no longer qualify. (*Id.* at 11 n.7.) Plaintiffs do not attempt to explain this change. In their supporting memorandum, Plaintiffs introduce Veillon and Brown as "surviving spouses and designated beneficiaries of former salaried employees who received a PPG pension, participated in the PPG Plan and elected coverage for the SIB (Survivor Income Benefit)." But Veillon's spouse did not elect the surviving spouse benefit, *id.* at 3; Dkt. 152-11, and Brown is not offered as a class representative, *id.* at 1 n.2.

As is self-evident from the name, a surviving-spouse is not eligible to receive the life insurance benefit until the condition precedent for the benefit is satisfied: the death of the plan participant prior to his or her spouse. In other words, the only class members who might theoretically have a valid vesting claim are those whose PPG-employee spouses retired and died prior to 1984, resulting in benefits vesting for the surviving spouse before PPG added reservation-of-rights language back into its Plan. Plaintiffs have identified no class member who fits this description, as would be necessary to satisfy the numerosity and ascertainability requirements of Rule 23. *See* cases cited *supra* regarding standards for establishing numerology and ascertainability.

Plaintiffs also cannot establish that they would be adequate subclass representatives, given that they do not fall into the category of having a valid vesting claim themselves. They fail to identify the events, or legal theory the subclass relies on for their claims as distinct from the Class. Thus, they have not met their burden as to typicality under Rule 23. *See supra* at 15–16.

21

Finally, Plaintiffs have made no effort to show that their subclass satisfies Rule 23(b).  They

opt instead either to contend that their "Class/Subclass" or that their "Class and Subclass" meet

the standard, presumably for the same reasons.  (Dkt. 336, at 14–20.)  But Plaintiffs' class and

subclass bring claims for different benefits, which are based on different facts, events, and legal

theories.  Lumping them together for a conclusory recitation of compliance, with no supporting

evidence or individualized analysis, cannot suffice.  *EQT Prod. Co.,* 764 F. 3d at 357.  Because

Plaintiffs have failed to carry their burden, their motion for class certification should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, PPG respectfully requests that the Court hold Plaintiffs'

amended motion for class certification in abeyance pending the close of discovery and the Court's

consideration of PPG's renewed motion for summary judgment, and deny Plaintiffs' motion to

certify their proposed class and subclass in its entirety.

Dated: April 3, 2023                          Respectfully submitted,

                                              THE PPG EMPLOYEE LIFE AND OTHER
                                              BENEFITS PLAN, PPG INDUSTRIES, INC., and
                                              THE PPG PLAN ADMINISTRATOR


                                              By:  */s/ Kameron Miller*
                                              One of Their Attorneys

Theodore A. Schroeder
Littler Mendelson
625 Liberty Avenue
26th Floor
Pittsburgh, PA  15222-3110
(412) 201-7624 (T)
(412) 774-1959 (F)
tschroeder@littler.com

Kameron Miller (WVSB No. 10774)
Littler Mendelson, P.C.
707 Virginia Street, East
Suite 1010
Charleston, WV 253001

(304) 599-4622 (T)
(304) 881-0871 (F)
kmiller@littler.com

Joseph J. Torres (*admitted pro hac vice*)
Alexis E. Bates (*admitted pro hac vice*)
Hope H. Tone-O'Keefe (*admitted pro hac vice)*
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654-3456
(312) 840-8685 (T)
(312) 527-0484 (F)
jtorres@jenner.com
abates@jenner.com
htoneokeefe@jenner.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES W. BELLON, ROBERT E.   )
EAKIN, JUDY GAY BURKE, LOUISE  )
NICHOLS, WILTON G. WALLACE,   )
BERNADOT F. VEILLON, BARBARA  )
BROWN, and ROBERT E. WILLIAMS, on )
behalf of themselves and others similarly )
situated,                             )
                                    )
                 Plaintiffs,    )
                                    )
              v.           )   No. 5:18-CV-114
                                    )
THE PPG EMPLOYEE LIFE AND    )   CLASS ACTION
OTHER BENEFITS PLAN, PPG       )
INDUSTRIES, INC., and the PPG PLAN )
ADMINISTRATOR,            )
                                    )
               Defendants.   )

## CERTIFICATE OF SERVICE

I, Kameron Miller, hereby certify that on April 3, 2023, I electronically filed the foregoing PPG's Response to Plaintiffs' Amended Motion to Certify Class with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

> James T. Carney
> James T. Carney, Esq.
> 845 Northridge Drive
> Pittsburgh, PA 15216
> (412) 657-0992
> jtcarney10@comcast.net
>
> John Stember
> Stember Cohn & Davidson-Welling, LLC
> The Hartley Rose Building
> 425 First Avenue, 7th Floor
> Pittsburgh, PA 15219
> (412) 338-1445
> Fax: (412) 338-1446

jstember@stembercohn.com

Maureen Davidson-Welling
Stember Cohn & Davidson-Welling, LLC
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
(412) 338-1445
Fax: (412) 338-1446
mdw@stembercohn.com

Michael A. Adams
Lewis Brisbois Bisgaard & Smith, LLP
3054 Pennsylvania Avenue
Weirton, WV 26062
(304) 491-4728
Fax: (304) 224-2263
michael.adams@lewisbrisbois.com