**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA (Wheeling)**

| | |
|---|---|
| CHARLES W. BELLON, ROBERT E. EAKIN, JUDY GAY BURKE, LOUISE NICHOLS, WILTON G. WALLACE, BERNADOT F. VEILLON, BARBARA BROWN, and ROBERT E. WILLIAMS, individually, and on behalf of all others similarly situated, | Case No. 5:18-cv-00114 <br><br> Chief Judge Gina M. Groh <br><br> CLASS ACTION |
| Plaintiffs, | |
| v. | |
| THE PPG EMPLOYEE LIFE AND OTHER BENEFITS PLAN, PPG INDUSTRIES, INC., and THE PPG PLAN ADMINISTRATOR, | |
| Defendants | |

**PLAINTIFFS' CORRECTED REPLY IN SUPPORT**
**OF PLAINTIFFS' AMENDED RENEWED MOTION FOR CLASS CERTIFICATION**

James T. Carney, Esquire
WV I.D. No. 9644
jtcarney10@comcast.net
845 Northridge Drive
Pittsburgh, PA 15216
T.: (412) 561-0533

Stephen G. Skinner, Esquire
WV I.D. No. 6725
sskinner@skinnerfirm.com
Skinner Law Firm
115 E. Washington Street
Charles Town, WV 25414
T: (304) 725-7029

John Stember, Esquire (*pro hac vice*)
jstember@stembercohn.com
Maureen Davidson-Welling, Esquire (*pro hac vice*)
mdw@stembercohn.com
**Stember Cohn &**
    **Davidson-Welling, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
T.: (412) 338-1445

Dated:  April 10, 2023

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ..........................................................................................................2

    A. The Court Should Not Further Delay Class Certification.........................................2

    B. Defendants Earlier Admitted That Count I Should Be Certified and Their Belated Objections to Class Treatment Now That A Trial Is Imminent Are Unpersuasive .........................................................................................................2

    C. Plaintiffs' ERISA Count I Vesting Theories Are Not Barred By the "Mandate Rule" ....................................................................................................3

    D. Count I Liability Does Not Turn on "Individual Issues" Since Individualized Knowledge/Reliance Is Not an Element of Proof of ERISA Benefits Claims........................................................................................................5

    E. Count I Satisfies All Rule 23(a) Requirements.........................................................9

    F. Count I Can Be Certified Under Rule 23(b)(1), (b)(2), or (b)(3) .........................12

    G. The Subclass Satisfies all Rule 23 Requirements and Should Be Certified .........13

CERTIFICATE OF SERVICE

# I.  **INTRODUCTION**[1]

Plaintiffs submit this Reply in support of their Amended Renewed Motion for Class Certification. This case began with PPG's sale of operations to Axiall, and its transfer of PPG's obligations for life insurance for retirees of the sold operations to Axial, terminating PPG Plan coverage, and refusing to resume it when Axiall discontinued coverage.  In this class suit, Plaintiffs seek injunctive relief to overturn PPG's actions and reinstate all affected retirees and spouses in the PPG Plan. This action epitomizes the type of case envisioned by the authors of Rule 23 of the Federal Rules. There are about 500 members in the Class and about 170 in the Subclass, and the factuals and legal issues are common to all Class and Subclass members.[2]

That this case was and is a typical class action was recognized by Defendants in the initial phase of this case (before summary judgment in Defendants favor). Significantly, Defendants did not then oppose class certification of Count I; but the Court did not rule on the motion for Class/ Subclass certification.  In the second phase (after Fourth Circuit remand), Defendants now baselessly oppose certification of Count I to try to stave off a class trial. Defendants rely on legally unsound, unsupported, waived, and meritless arguments, but the Court should not be misled.  **Plaintiffs <u>do not</u> need to prove "individualized knowledge"** of 1969 events or retiree life insurance benefits by any Class member; indeed, there are no "individualized issues" here, and Rule 23 requirements are fully satisfied.

---

[1] Citations to "Def.Br. at _" refer to Defendants' Response in Opposition to Plaintiffs' Amended Renewed Motion to Certify Class (Dkt. 339). Citations to "AC ¶___" and "AA ¶___" are to Plaintiff's' Amended Class Action Complaint (Dkt. 69) and Defendants' Amended Answer (Dkt. 74), respectively.  Citations to "Ex.___" refer to exhibits in the Appendix (Dkt. No. 152) to Plaintiffs' previously-filed Motion for Class Certification.

[2] Defendants belatedly contend the ROR removal in 1969 only applied to medical benefits. (Def.Br. at 1 n.1) This argument is waived by the mandate rule and wrong. Even the few documents Defendants submit to try to show this confirm that before 1969 PPG benefit plans contained language stating retiree life insurance could be changed, which after 1969 was no longer included.  See, e.g., 341-2 at 7; cf 341-4 at 7. This merits argument should await further development. Defendants are still producing minutes and materials from the 1968-1970 period relevant to this question. In all events, this is a merits argument that need not be addressed here.

## II. <u>ARGUMENT</u>[3]

### A.      <u>The Court Should Not Further Delay Class Certification</u>

Defendants ask this Court to postpone Class certification until resolution of a future

defense summary judgment motion. (Def.Br. at 1).  Yet FRCP Rule 23(c)(1) instructs courts to

decide class certification at "an early practicable time." This case is in its fifth year.  It is time to

resolve class certification. Moreover, the Court's post-remand schedule set deadlines for class

certification before summary judgment, and contemplated that the issues would be decided in

that order.  (Dkt. 250 at 2).  There is no good reason to depart from that schedule now.

Plaintiffs were prohibited from filing an Amended Complaint a few days after the Court

issued its schedule because they did not raise this possibility before the Court issued its schedule.

Here, Defendants are trying to change the schedule five months after the scheduling order issued.

They should be held to the same standard as Plaintiffs.  Their request should be denied.

### B.      <u>Defendants Earlier Admitted That Count I Should Be Certified and Their Belated Objections to Class Treatment Now That A Trial Is Imminent Are Unpersuasive.</u>

Earlier—when not facing imminent trial and likely believing one would never occur—

Defendants admitted that Count I claims should be certified.  <u>See</u> Dkt. 165 at 2 ("**<u>PPG agrees</u>**

**<u>that class certification in this case can be granted under [FRCP] 23</u>** …")(emph. supp); <u>id.</u> at

5 (admitting Class's **<u>"common experience is sufficient for class treatment"</u>**)(emph. supp); <u>id.</u>

(stating certification is "**<u>permissible"</u>** under Rule 23(b)(1), (b)(2))(emph. supp).

Nonetheless, now, with trial scheduled and summary judgment on Count I decided

against them, Defendants have raised groundless objections to class certification of Count I.

---

[3] While the Fourth Circuit held that Plaintiffs' evidence creates a material dispute of fact as to whether benefits were vested, see Dkt. 233, Defendants rehash merits arguments against vesting they made to and that were rejected by the Fourth Circuit. <u>See</u> Def. Mem. At 10-11 (arguing "vesting under ERISA at the very least requires a clear, unambiguous communication…Yet, Plaintiffs have not attempted to identify 'clear and express language'"). The Court should ignore Defendants' attempt to revisit these arguments.

What changed?  Nothing.  Defendants oppose class certification not because they believe it is unwarranted but because they see opposition as another chance to re-argue the merits in a case that the Fourth Circuit remanded for trial.  This is improper.  See Amgen v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013) (class certification is not a "license to engage in free-ranging merit inquiries…").  Defendants should be held to their earlier admissions.

**C.**      **Plaintiffs' ERISA Count I Vesting Theories Are Not Barred By the "Mandate Rule"**

Defendants assert Plaintiffs bring a "unilateral contract" vesting by working claim, and that the "mandate rule" bars other Count I vesting theories.  Def.Br. at 8-9.  Neither is correct.

To be clear, Plaintiffs brought an ERISA claim to enforce the terms of the PPG Welfare Plan, and contend with respect to the Class claims that PPG's unilateral, voluntary decision to remove the ROR clause in 1969 and to leave it out for more than a decade after ERISA's passage, while maintaining an ROR for other benefits, established during this period that Defendants offered contractually vested retiree life insurance benefits, which they could not later take away.  This is not a vesting by working argument; Plaintiffs do not argue that they earned vested retirees benefits merely by working at PPG until retirement.  Rather, Class members were entitled to vested benefits because they were employed at a time when the PPG Plan provided vested retiree benefits.  The Fourth Circuit recognized the viability of this theory.  (See Dkt. 237)

In addition, Plaintiffs contend now (as they did before the Fourth Circuit) that PPG waived any right to reinsert a ROR applicable to employees who worked during the 1969–1984 period. Thus, the Fourth Circuit stated:

> …plaintiffs assert that vesting first occurred in 1969, prior to ERISA's enactment in 1974. …plaintiffs describe the removal of the [ROR] clause, "[t]his type of action is virtually unheard-of and establishes PPG's intention to waive its rights and offer unalterable (i.e., vested) benefits to its employees who were employed in 1969 or hired thereafter before

September 1, 1984, when PPG reinserted [a ROR clause] in the Plan." *See* Br. of Appellants 15.

Ordinary principles of contract law apply to the plaintiffs' vesting claim, whether or not we should utilize post-ERISA precedents in ascertaining if vesting occurred in 1969. *See Wheeler*, 62 F.3d at 638 ("We interpret an ERISA [employee benefit] plan under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense."). In assessing the vesting claim just as we "would any other contract claim," we look not only "to the terms of the [Benefits Plan]," but also to "other manifestations of the parties' intent." *See Booth v. Wal-Mart Stores, Inc. Assocs.Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000)... Certainly, the purposeful deletion of the pre-1969 [ROR] clause from the Plan may be seen as a manifestation of PPG's intent to relinquish its right to modify or terminate Plan benefits and voluntarily undertake an obligation to provide vested retiree life insurance coverage. *S Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 651 (9th Cir. 1988) ("Words deleted from a contract may be the strongest evidence of the intention of the parties." ...; *cf. Davidson Cnty. v. Ground Improvement Techniques, Inc.*, No. 95-2176, 1996 WL 195512, at *3 (4th Cir. Apr. 24, 1996) (unpublished) (concluding, based on the parties' deletion of an arbitration clause from a standard construction contract, that their "intent was clear — they expressly chose *not* to arbitrate").

Ignoring the Fourth Circuit's opinion, Defendants contend that Plaintiffs are limited to a single vesting theory, see Def.Br. at 7-9, but this assertion is refuted by the Fourth Circuit's opinion, where it wrote in footnote 12:

On remand, the district court may also find it appropriate to address two alternative theories of the Plaintiffs' Count I claim that we do not unnecessarily reach today: (1) that the monthly payment component of the Benefits Plan's optional "surviving spouse benefit" as a promised monthly payment to the surviving spouse for life constitutes a vested benefit, and (2) that applying principles of waiver and estoppel, PPG cannot terminate retiree life insurance coverage for eligible Plan participants who worked between 1969 and 1984.[4]

---

[4] In yet another argument on the merits Defendants (Def.Br. at 4-5) contend that the waiver issue should not be certified as a class action because the waiver doctrine does not create an independent cause of action. Plaintiffs are not so contending. Plaintiffs' waiver claim is that the Defendants breached the terms of the Plan by relying on the 1984 ROR to take away Plaintiffs' retiree life insurance when in removing the original ROR, they had waived their right to apply any ROR to employees whose employment continued or commenced between 1969 and 1984. Further, waiver depends entirely on Defendants' intent and conduct, see, e.g., Salyers v. Metropolitan Life Ins. Co., 871 F.3d 934, 940-941 (9th Cir. 2017), and presents no individual issues. Similarly, even if PPG could transfer or delegate its duty to provide retiree life insurance coverage to another party, it was obligated to resume providing

On appeal, Plaintiffs argued that ERISA recognizes the waiver doctrine, and the Fourth Circuit allowed that theory of vesting to proceed as well.  Id.

**D.  Count I Liability Does Not Turn on "Individual Issues" Since Individualized <u>Knowledge/Reliance Is Not An Element of Proof of ERISA Benefits Claims</u>.**

In an effort to manufacture "individual issues" to defeat certification, Defendants erroneously contend that Count I cannot be certified, purportedly because Plaintiffs cannot prove their own or Class member knowledge of 1969 events or reliance on that information in accepting or keeping employment.  (Defs' Br. at 1, <u>see</u> <u>id.</u> 8-16).  In fact, Class members **do not** need to prove this. Nor have Defendants cited *any* ERISA case law showing otherwise. And even if Plaintiffs had brought a unilateral contract claim, Defendants' argument would still fail, since the hypothesized "individual issues" simply do not exist.

According to Defendants, Plaintiffs have pursued a "unilateral contract theory" of vesting. To recover, Defendants argue, <u>each</u> Plaintiff must show that s/he was aware of 1969 events and the specific offer of vested benefits and, further, relied on it in accepting employment or remaining employed with PPG between 1969 and 1984.  Yet, under this logic, no participant in any benefit plan would be entitled to benefits promised by the plan unless he can show he: (a) knew of the benefits (e.g., by reading a benefits book that might be upwards of a hundred pages) and (b) decided to become employed or remain employed based on the employer's offer to provide these benefits.[5]  Plainly, this is not the law (and contrary to common experience, where employees are often covered by benefit plans and have rights under plans they have never read).

_____

coverage when the party to whom it delegated this obligation ceased to perform in accordance with the terms of the Plan.  When PPG refused to resume such coverage it effect terminated Plan coverage.

[5] Under PPG logic, an employee who did not know his employer had a long-term disability ("LTD") plan or did not rely on those benefits as a reason to become or stay employed had no right to claim LTD benefits even if disabled. That isn't the case. Contrary to PPG's self-serving assertions, under ERISA, the relevant legal question is objective

In fact, before ERISA, most claims for employee benefits were decided under a unilateral contract theory (albeit without the onerous knowledge and reliance requirements that Defendants seek to import).  However, the legal landscape changed with ERISA, which created a statutory right to plan benefits so long as employees met the eligibility requirements.  See 29 U.S.C. § 1132(a)(1)(B).

Entitlement to benefits under ERISA **does not depend** on whether participants were aware of the benefits (let alone eligibility conditions) in accepting or continuing employment or whether they relied on the "offer" of benefits in doing so.  29 U.S.C. § 1132(a) states:

> (a)  Persons empowered to bring a civil action. A civil action may be brought—
>
> (1)  by a participant or beneficiary—
>
> > (A)  for the relief provided for in subsection (c) of this section, or
> >
> > (B)  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Under the statute, entitlement to benefits depends on plan terms, not participant subjective knowledge or reliance.  See id.  Indeed, the Second Circuit made this clear in Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202 (2d Cir. 2002), where it rejected defendant's argument that reliance is an element of proof in ERISA benefit claim, stating

> [A]n action under ERISA to enforce plan terms sounds in contract, and a plaintiff generally need not show equitable factors such as **reliance** or prejudice to enforce contractual terms. We therefore conclude that a plaintiff need not show reliance, prejudice, or any other equitable factor to enforce plan terms in a claim under § 1132(a)(1)(B).

---

—what are the plan terms offered by the employer—and does not depend on the secret, subjective understandings of employees.

36 F.3d at 1213 (emph. supp.).  Consistent with this, numerous courts have certified ERISA class

actions under § 1132(a)(1)(B) for vested health or life insurance benefits, without requiring that

class members establish individual knowledge or reliance.  See, e.g., Cates v. Cooper Tire and

Rubber Co., 253 F.R.D. 422 (N.D. Oh. 2008) (certifying ERISA claims for vested lifetime

medical benefits).

     Ignoring the applicable law, Defendants instead advance their "unilateral contracts

theory" argument, but this is a red herring, and also misconstrues the law of unilateral contracts.

Specific "individualized knowledge" of all terms is not required to form a unilateral contract or

to enforce it terms—as confirmed by cases Defendants themselves cite.

     For example, in Schultz v. AT&T Wireless Servs., Inc., 376 F.Supp.2d 685 (N.D.W.Va.

2005), cited by Defendants, an AT&T customer asserted that he was not bound by the terms and

conditions of AT&T's Welcome Guide, including an arbitration clause.  The district court

rejected plaintiff's argument, explaining that the offer of phone service was a unilateral contract,

and the terms of AT&T's offer were enforceable even if plaintiff had not read them before

accepting:

> Under West Virginia law, the formation of a contract requires offer and
> acceptance, as well as consideration. Cook v. Hecks, Inc., 176 W.Va. 368,
> 373–74, 342 S.E.2d 453 (1986). "The concept of a unilateral contract,
> where one party makes a promissory offer and the other accepts by
> performing an act rather than by making a return promise, has ... been
> recognized." Id. at 373, 342 S.E.2d 453. ...In ProCD, Inc. v. Zeidenberg,
> 86 F.3d 1447 (7th Cir.1996), the court found that terms inside a box of
> software could bind consumers who use the software after being given an
> opportunity to read and reject the terms and return the item. Later, in Hill v.
> Gateway 2000, 105 F.3d 1147 (7th Cir.1997), the Seventh Circuit extended
> the holding in Zeidenberg to enforce an arbitration clause which was
> contained inside the box for a Gateway 2000 system. The Hill court found
> that "[a] vendor, as master of the offer, may invite acceptance by conduct,
> and may propose limitations on the kind of conduct that constitutes
> acceptance. A buyer may accept by performing the acts the vendor proposes
> to treat as acceptance." Id. at 1149. The court went on to explain that **"[a]**

> ***contract need not be read to be effective***; people who accept take the risk
> that the unread terms may in retrospect prove unwelcome." Id. at
> 1148.... Thus, this Court is satisfied that by activating and/or continuing
> use of his phone, the plaintiff accepted the terms and conditions
> contained in AT&T's Welcome Guide.

Schultz, 376 F. Supp. 2d at 691–92 (emph.supp.). Indeed, it is black letter law that the failure of

an offeree to read or ascertain the terms of contract will not prevent enforcement of the contract.

See New v. GameStop, Inc., 232 W. Va. 564, 578 (2013) (cited by Defendants, "failure to read a

contract before signing it does not excuse a person from being bound by its terms.").

As these cases show, parties can (and often do) enter into unilateral contracts without

learning all of the terms of the offer, and the enforceability of those terms does not depend on

whether the accepting party read and understood the specifics at the time he entered into the

contract.  Thus, the customer in Schultz who accepted AT&T's offer to provide cell phone

service was bound by the terms and conditions of AT&T's offer though he never read or signed

them and, analogously, Plaintiffs and the Class accepted PPG's offer of employment (including

the terms of its salaried benefit Plans), and, accordingly, those terms are binding on Plaintiffs,

the Class, and PPG, irrespective of whether Class members read the benefit books or knew of

1969 events.[6]  (To be sure, Defendants would not agree that the ROR in post-1984 Plan

documents is ineffective if a participant had not read it.)

More importantly, while PPG repeatedly clamors that Plaintiffs must prove

"individualized knowledge" by each Class member, it has failed to cite *any* ERISA case that

actually establishes PPG's (incorrect) foundational premise that a § 1132(a)(1)(B) claim for

---

[6] Defendants assert that "[o]ne party's intent, if not communicated, does not create an enforceable contract and does not translate to vested benefits."  (Def. Br. at 10).  Yet, Defendants forget that mutual assent to create a contract is based on *objective evidence*, not hidden intent. Here, it is undisputed that Plaintiffs and all Class members (or spouses) were eligible for Defendants' salaried benefit plans and worked for PPG until retirement and participated in Defendants' thereafter.  To be sure, there is objective evidence of mutual intent to contract.

benefits under the terms of a plan requires proof of individualized knowledge or reliance.  See Def. Br. generally.  Nor has PPG cited a single case where class certification of an ERISA § 1132(a) benefits claim was denied because plaintiffs could not prove individual knowledge of all terms and reliance thereon while employed.  See id.  Instead, Defendants implausibly extrapolate this requirement from a footnote in a single inapplicable, unpublished, non-ERISA, individual at-will employment case applying South Carolina law (citing Baker v. Boeing Co., 2020 WL 6292716, *4 n.2 (D.S.C. Sept. 2, 2020).  (Def.Br. at 7).  Individual knowledge is not a prerequisite to entitlement to benefits under ERISA.

In short, despite pages of argument contending that "individual knowledge" is a required element of proof of Class members' ERISA benefit claims, PPG has not proffered any legal authority establishing this proposition—undoubtedly because the law is to the contrary.

**E.**     **Count I Satisfies All Rule 23(a) Requirements.**

Defendants assert that Retirees cannot meet commonality, typicality, adequacy, and numerosity requirements of Fed.R.Civ.P. 23(a), see Def. Br. at pp.11-18, but the underlying premise of this argument is wrong as a matter of law (discussed above), and the objections to class treatment are unavailing.

As to commonality, Defendants erroneously contend that "[u]nder any viable unilateral-contract theory, Plaintiffs' claim requires…individualized inquiries."  Def.Br. at p.11.  This is wrong.  Plaintiffs do not need to establish a "unilateral contract" to enforce the terms of an ERISA plan.  See 29 U.S.C. § 1132(a)(1)(B); see, e.g., Emami v. Empire Healthchoice Assurance, Inc., 2020 WL 4745817, at *3 (D.N.J. Aug. 17, 2020) ("A plaintiff must prove the following elements to prevail under a [§] 502(a)(1)(B) cause of action: '(1) the plan is covered

by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan.'")(cit.om.).

Further, whether PPG provided vested retiree life between 1969 and 1984 is a common question that *can* be resolved for all Plaintiffs and Class members in one stroke by common evidence. The same Plan terms applied to the entire Class and Subclass, all of whom PPG admits previously received Plan benefits, Dkt. 165 at p.5, and whether PPG vested retiree life coverage for all of them depends on common evidence of *PPG*'s intent—as the Fourth Circuit's analysis of the evidence supporting Count I makes clear. See Dkt. 233 at pp.18-20 ("the purposeful deletion of the pre-1969 [ROR] clause from the Plan may be seen as a manifestation of PPG's intent to relinquish its right to modify or terminate Plan benefits and voluntarily undertake an obligation to provide vested retiree life insurance coverage."; discussing other common evidence and concluding it was sufficient to create a material dispute of fact as to vesting). Under the Fourth Circuit's controlling analysis, the same Plan documents, EBC minutes, and other common evidence of PPG's intent will be used to determine vesting for all Class and Subclass members on Count I; thus, vesting indisputably presents common questions that "will 'drive the resolution of the litigation.'" (Def.Br. at 15).

PPG (Def.Br. at 12-13) also points to a scant trio of supposedly "analogous" contexts where courts have denied certification—but these cases are inapposite, either because they do not involve ERISA benefit claims under 29 U.S.C. § 1132(a)(1)(B), or because certification denials were due to defendants having offered non-identical contracts (unlike here, where all Plaintiffs and Class members were in the same Plan and subject to the same Plan terms).[7] And, since the

---

[7] Defendants' purportedly "analogous" authorities are inapposite. See Def.Br. at pp.12-13 (citing Crosby v. City of Gastonia, 2008 WL 1944399 (W.D.N.C. May 1, 2008), Tootle v. ARINC, Inc., 222 FRD 88 (D. Md. 2004), and Sprague v. Gen. Motors Corp., 133 F.3d 388, 398) (6th Cir. 1998)).

Plan terms are the same for all Class member here, Plaintiffs have "suffered the same harms" and proof of Plaintiffs' claims will "advance the claims of other class members." (Def.Br. at 14).

As to typicality and adequacy, Defendants contend that Plaintiffs cannot adequately represent the interests of non-plaintiffs who knew of and relied on retiree life insurance; thus, Plaintiffs claims are not typical of the Class.  (Def.Br. at 12, 18).  This is a reiteration in a different guise of Defendants' argument that each Class member must show that s/he knew of the 1969 amendment and relied on it in deciding to continue or accept employment with PPG. Once it is recognized that proof of individual knowledge of and reliance on the 1969 change is unnecessary, this argument becomes moot.

As to numerosity and ascertainability, in yet another derivation of the same flawed argument, Defendants assert that Plaintiffs cannot satisfy these requirements since they allegedly cannot determine without minitrials which or how many putative Class members knew of the 1969 change or relied on it.  Def.Br. at pp.17-18. Again, Defendants are simply recycling the already discredited unilateral contract theory.  The Class is ascertainable based on Defendants' records, see Dkt. 152-36, includes more than 500 individuals, see id., and membership does not depend on individual knowledge or reliance since neither is an element of the Count I claim. Nor did Defendants have any trouble identifying the Class in Interrogatory answers prior to remand—belying their current positions.  See Carney Declaration filed herewith at ¶¶ 4-5 and Exs.1-2 thereto.  In sum, Defendants' serial Rule 23(a) objections lack merit.

---

Tootle addressed certification of ERISA *fiduciary breach* claims under 29 U.S.C. § 1104, and, unlike here, reliance is an element of an ERISA fiduciary breach claim.  Crosby is a non-ERISA case that denied certification of breach of contract claims because (unlike here) the contracts "offered by defendant" "lacked uniformity."  2008 WL 1944399, at *3).  By contrast, here, it is undisputed that all putative Class members were participants in the same Plan and subject to the same Plan terms.  In Sprague, the court denied certification of claims based on non-uniform "side deal" contracts negotiated by GM with early retirees. Again, this is distinguishable, since here all Class members were participants in the same Plan and subject to the same Plan terms.

**F.**   **Count I Can Be Certified Under Rule 23(b)(1), (b)(2), or (b)(3).**

Defendants now object that Count I cannot be certified under any subsection of Rule 23(b), but they did <u>not</u> object to Plaintiffs' original motion for certification of Count I under each subpart of Rule 23(b). Accordingly, Defendants have waived any objection to certification of Count I under each part of Rule 23(b) now.

Even if the Court considers the Defendants' belated objections, none has merit. Defendants assert that Count I cannot be certified under FRCP 23(b)(1)—ostensibly because it will not "create incompatible standards for anyone else" or be "dispositive" of others' claims— but, again, this argument rests on the false premise that Count I requires proof of individualized knowledge/reliance, which it does not.  <u>See</u> discussion, <u>supra</u>.  In reality, as held by the Fourth Circuit's analysis of the Count I, vesting will be proved by common evidence of PPG's intent, which will be dispositive of the issues for Plaintiffs <u>and</u> the Class, and failure to certify could result in different standards for identically-situated Class members.

Defendants contend the claim does not "ask the Court to opine on Plan administration" and will not "determine the rights of all Plan participants." Def.Br. at p.19.  Yet, it is difficult to imagine a case which focuses more on plan administration and determining the rights of plan participants than this one.  In all events, this assertion does not show why Count I does not satisfy the requirements for certification under Rule 23(b)(1).

Next, Defendant now argue—disingenuously reversing their prior position—that Count I does not satisfy the requirement for class certification under Rule 23(b)(2) because Plaintiffs allegedly "seek neither declaratory nor injunctive relief."  (Def.Br. at p.19).  However, **Defendants previously acknowledged that "Plaintiffs seek injunctive relief…for the class as**

**a whole."** Dkt. 165 at p.7 (citing Fed.R.Civ.P. 23(b)(2)).  Moreover, Defendants assertions are

refuted by the Amended Complaint, which contains clear prayers for injunctive relief, *inter alia*:

> F.      Direct the Plan Administrator and PPG to reinstate Plaintiffs and the Class
> as participants in the PPG Employee Life and Other Benefits Plan and
> restore their retiree life insurance coverage under the PPG Plan;

AC at Prayer, No. F, see also Nos. G-H.  That the Amended Complaint only uses the term

"injunctive" once is not dispositive. The question is whether injunctive relief is sought and

whether Defendants acted on grounds applicable generally to the Class. See Dewhurst v. Century

Aluminum Co., 2010 WL 2889063, at *2 (S.D.W. Va. 2010); Kohl v. Ass'n of Trial Lawyers of

Am., 183 F.R.D. 475, 486 (D. Md. 1998). Such is the case here, warranting certification.

Finally, Defendants oppose FRCP 23(b)(3) certification on the ground that Count I

requires examination of the extent to which each Class member knew of the 1969 change and

relied on it in accepting and/or continuing employment with PPG.  As Defendants would have it,

this means that individual issues predominate over common issues.  We have already

addressed—and refuted—this argument. See, supra.  Accordingly, certification of the Class

under Count I is appropriate under Rule 23(b)(3).

**G.      The Subclass Satisfies all Rule 23 Requirements and Should Be Certified.**

The unique Subclass claim, based on the Plan's "guaranteed" language, is that on election

of the SIB benefit at retirement, Subclass members were vested in SIB coverage and their

surviving spouses were "guaranteed" payment of these benefits should they outlive their PPG

retiree spouse. Defendants now oppose Subclass certification, Def.Br. at 20-22, but their

objections are years too late, and even if considered, they lack merit.[8]

---

[8] Defendants claim that a party cannot raise new issues in a reply brief. However, Plaintiffs are not raising a new issue in pointing out that Subclass certification has been demonstrated but responding to Defendants' attacks.

It is Defendants who improperly raise new issues—by belatedly oppos Subclass certification and raising new merits arguments (e.g., 1969 ROR removal only applied to PPG's medical plan, that individual knowledge was

First, Defendants contend that that the SIB was created in 1974 and thus not covered by the 1969 removal of the ROR; however, this is a merits argument (not a reason to deny class certification) that the court need not—and therefore is not permitted to—decide now. Amgen, 568 U.S. at 466. In any event, it is undisputed that SIB was created during the 1969-1984 period when PPG benefit plans had no ROR, and the SIB contains contractual vesting language.

Second, Defendants argue the Subclass representatives' claims are not typical, as the only surviving spouses "who might…have a valid vesting claim are those whose PPG-employee spouses retired and died prior to 1984" (Def.Br. 21). This is an unnecessary merits argument, and a defense that would apply equally to all Subclass members (all of whom by definition were alive to be transferred to Axiall much later). See Ps' Class Cert Motion (limiting Class and Subclass to those transferred to Axiall in 2013). Non-"unique" defenses do not destroy typicality. See Fernandez v. RentGrow, Inc., 341 F.R.D. 174, 204 (D. Md. 2022) (rejecting argument that non-unique defense destroyed typicality; certifying class).

Third, Defendants generally contend that the Plaintiffs have not satisfied the basic requirements of Rule 23(a), but ignore the materials submitted in connection with this motion as well as materials in the record in connection with prior motions for class certification. See Carney Declaration filed herewith, and Exhibits 2 and 3 thereto, confirming numerosity criteria. Second, the issue of whether PPG guaranteed SIB payment to surviving spouses of employees who elected the SIB option is obviously an issue which, by definition, is common to the Subclass. Third, the claims of the Subclass representatives are typical of the claims of all members of the Subclass because they are based on the same plan language and seek to obtain

---

an element of proving vesting that Plaintiffs lacked) that they should have raised before the Fourth Circuit if at all, and having failed to do so are barred from raising now. See Def. Mem. at 8-9 citing Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir. 2007), for proposition that mandate rule "forecloses" a party from raising new arguments post-remand.

the same benefit.  Carney Decl. ¶¶10-11 and Exs 6-7 (Eakin Decl. ¶¶11-13; Wallace Decl. ¶¶ 11-13).  Finally, as demonstrated by the record, the Subclass representatives have been involved in the case from day one, answering interrogatories and requests for production, being deposed twice and involved in various conferences and will fairly and adequately represent the interests of the class.

Fourth, PPG falsely contends that Plaintiffs have not identified representatives of the Subclass nor shown how their claims "align," (Def.Br. at 20) but Plaintiffs identified Robert Eakin and Wilton Wallace as proposed Subclass representatives in their Motion for Class Certification.  (Dkt. 335 at 4).  Both elected payment of guaranteed SIB to their surviving spouses, suffered the same harm (loss of PPG Plan coverage), and seek the same relief (reinstatement in PPG Plan).  See Carney Decl. Exs 4-5 (Eakin Decl. ¶8, Wallace Decl. ¶8).[9]

Fifth, Defendants contend that the Subclass does not satisfy Rule 23(b), but adjudicating Subclass members' identical claims based on the meaning of "guaranteed" in the PPG Plan on an individual basis could result in inconsistent decisions, FRCP 23(b)(1).  Further, PPG now shamelessly contends the Class fails to satisfy Rule 23(b)(2) because "Plaintiffs seek neither declaratory nor injunctive relief," but it earlier admitted otherwise, and the prayer for relief in the Amended Complaint puts the lie to this contention.  See AC, Prayer for Relief, Nos. F-H.

Lastly, the question of the meaning of "guaranteed" is an issue common issue whose answer will determine Subclass liability, and there are no individual issues for the Subclass claim. Thus, a class action is the superior way of resolving this common issue.  Accordingly, the Subclass satisfies Rule 23(a) and each of the subparts of Rule 23(b).

---

[9] Plaintiffs no longer propose Messrs. Bellon and Williams because their spouses have died, and they have no financial interest in pursuing this claim, and no longer propose Barbara Brown (a surviving spouse) due to health concerns, but their change in circumstance has no bearing on whether Eakin and Wallace are adequate to represent the Subclass.  Plaintiffs do not propose Bernadot Veillon as her husband did not elect SIB.

Respectfully submitted,

/s/James T. Carney, Esquire

Stephen G. Skinner, Esquire     James T. Carney, Esquire
WV I.D. No. 6725     WV I.D. No. 9644
sskinner@skinnerfirm.com     jtcarney10@comcast.net
**Skinner Law Firm**     845 Northridge Drive
115 E. Washington Street     Pittsburgh, PA 15216
Charles Town, WV 25414     T.: (412) 561-0533
T: (304) 725-7029

John Stember, Esquire (*pro hac vice*)
jstember@stembercohn.com
Maureen Davidson-Welling, Esquire (*pro hac vice*)
mdw@stembercohn.com
**Stember Cohn & Davidson-Welling, LLC**
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
T.: (412) 338-1445

Dated:  April 10, 2023

16

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CHARLES W. BELLON, ROBERT E. EAKIN, JUDY GAY BURKE, LOUISE NICHOLS, WILTON G. WALLACE, BERNADOT F. VEILLON, BARBARA BROWN, and ROBERT E. WILLIAMS, on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>THE PPG EMPLOYEE LIFE AND OTHER BENEFITS PLAN, PPG INDUSTRIES, INC., and THE PPG PLAN ADMINISTRATOR,<br><br>     Defendants. | Case No. 5:18-cv-00114<br><br>Chief Judge Gina M. Groh<br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of **PLAINTIFFS' CORRECTED REPLY IN SUPPORT OF PLAINTIFFS' AMENDED RENEWED MOTION FOR CLASS CERTIFICATION** was filed with the Clerk of Court using the Court's CM/ECF system, which will send notifications of such filing to the following:

Joseph Torres, Esquire
Alexis Bates, Esquire
Hope H. Tone-O'Keefe, Esquire
Jenner & Block LLP
353 North Clark Street
Chicago, IL  60654-3456
JTorres@jenner.com; ABates@jenner.com;
HToneOKeefe@jenner.com

Theodore Schroeder, Esquire
Littler Mendelson, PC
625 Liberty Avenue, 26th Flr.
Pittsburgh, PA  15222-3110
TSchroeder@littler.com

Kameron Miller, Esquire
Littler Mendelson, P.C
707 Virginia Street, East, Suite 1010
Charleston, WV  25301
kmiller@littler.com

Dated:  April 10, 2023

/s/James T. Carney, Esquire
James T. Carney, Esquire