IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

| | |
|---|---|
| **CHARLES W. BELLON, ROBERT E. EAKIN, JUDY GAY BURKE, LOUISE NICHOLS, WILTON G. WALLACE, BERNADOT F. VEILLON, BARBARA BROWN, and ROBERT E. WILLIAMS, on behalf of themselves and others similarly situated,**<br><br>Plaintiffs,<br>**v.**<br><br>**THE PPG EMPLOYEE LIFE AND OTHER BENEFITS PLAN, PPG INDUSTRIES, INC., and THE PPG PLAN ADMINISTRATOR,**<br><br>Defendants. | **CIVIL ACTION NO.: 5:18-CV-114 (GROH)** |

## REPORT AND RECOMMENDATION

On April 12, 2023, came the Plaintiffs, by counsel James T. Carney, Esq., and came the Defendants PPG Industries, Inc. ("PPG"), by counsel, Joseph J. Torres, Esq., before the undersigned for oral argument on Plaintiffs' Amended Renewed Motion [ECF No. 335] for Class Certification by zoom videoconferencing.[1] Upon consideration of the parties' briefs, attached exhibits, and oral arguments, the undersigned **RECOMMENDS** that Plaintiffs' Amended Renewed Motion [ECF No. 335] for Class Certification be **GRANTED** and Plaintiffs' Renewed Motion [ECF No. 276] for Class Certification be **TERMINATED** as moot.

---

[1] On March 3, 2023, Judge Groh referred Plaintiffs' Renewed Motion [ECF No. 276] for Class Certification to the undersigned. See ECF No. 320. This Motion [ECF No. 276] was ripe for review as Defendants had filed a Response [ECF No. 284] on December 30, 2022, and Plaintiffs had filed a Reply [ECF No. 292] on January 6, 2023. However, on March 6, 2023, Judge Groh denied Plaintiffs' Motion [ECF No. 251] for Leave to File a Second Amended Complaint by Oral Order [ECF No. 324], which in turn eliminated some of the arguments in Plaintiffs' Renewed Motion [ECF No. 276] for Class Certification. For that reason, the undersigned issued an Order requiring the parties to file an amended renewed motion, response, and reply, taking Judge Groh's ruling into consideration. ECF No. 328.

## I.     BACKGROUND[2]

In January of 2013, PPG merged its commodity chemicals business with an entity called Georgia Gulf Corporation to form Axiall Corporation. ECF No. 69 at 2.[3] In the 2013 merger, PPG transferred to Axiall its obligations under the PPG Employee Life and Other Benefits Plan (the "Benefits Plan" or the "Plan"). Id. Among those obligations transferred under the Plan was the provision of retiree life insurance coverage to eligible former employees of PPG's commodity chemicals business. Id. Under the Plan, when a retired salaried employee dies, his/her beneficiary is entitled to a one-time lump-sum payment. ECF No. 336 at 9; ECF Nos. 152-5, 152-15, 152-16. PPG also offered a survivor's insurance benefit ("SIB"), also referred to as the surviving spouse income benefit, whereby certain salaried employees could elect at retirement to receive a smaller lump-sum life insurance payment (half) upon their death in exchange for a "guaranteed" lifetime monthly payment to their surviving spouse. ECF No. 336 at 9-10; ECF No. 339 at 25; see also ECF Nos. 152-5, 152-15, 152-16, 152-17. Axiall continued to provide Plaintiffs (and similarly situated PPG retirees) with retiree life insurance coverage and SIB after the transfer. ECF No. 69 at 2. On December 31, 2015, however, Axiall terminated the retiree life insurance coverage and SIB of the Plaintiffs and members of the putative Class and Subclass. Id.

In July of 2018, eight Plaintiffs,[4] each a PPG retiree, or the surviving spouse of

---

[2] This background section is limited to the facts and procedural history relevant to the Motion for Class Certification and, by extension, the remaining Count One vesting claim.

[3] Throughout this Report and Recommendation, when the undersigned cites to the page number of a document filed on the electronic docket, it is in reference to the page number designated at the top of each page automatically generated within CM/ECF and PACER.

[4] The named Plaintiffs are Charles W. Bellon, Robert E. Eakin, Judy Gay Burke, Louise Nichols, Wilton G. Wallace, Bernadot F. Veillon, Barbara Brown, and Robert E. Williams. All of them are retired former

such a retiree, brought this action seeking to "restore and recover contractually-vested retiree life insurance coverage and associated benefits" from PPG.[5] ECF No. 69 at 1. The original complaint [ECF No. 1] was filed in this case on July 12, 2018, and the Amended Complaint [ECF No. 69] was filed in January of 2020. In September of 2020, Plaintiffs' first Motion [ECF No. 150] to Certify Class was filed, which bears similarities to the current version. PPG did not object at that time to certification. See ECF No. 165. In June 2021, the district court awarded summary judgment to PPG on all claims without issuing a prior ruling on the then-ripe and unopposed motion for class certification. ECF No. 1, 69, and 227. Plaintiffs appealed the summary judgment decision. The Fourth Circuit vacated the summary judgment ruling only as to the vesting claim in Count One, which it remanded for further proceedings after identifying a genuine issue of material fact on the question of vesting. Bellon v. PPG Emp. Life & Other Benefits Plan, 41 F.4th 244 (4th Cir. 2022).

Count One, which is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), asserts that when PPG transferred its obligations under the Plan in 2013 to Axiall,

---

salaried PPG employees (or their spouses) who worked for the commodity chemicals unit of PPG until retirement, at which point they began collecting their pensions and received benefits. ECF No. 69 at 3-5. Due to health issues, Plaintiffs Burke and Brown have not been proposed as Class representatives. See ECF No. 335 at 1. Plaintiff Bellon worked for PPG from 1967 until 2002. ECF No. 69 at 3-4. Plaintiff Eakin worked for PPG from 1962 until 2001. Id. at 4. Plaintiff Williams worked for PPG from 1959 until 1993. Id. Plaintiff Wallace worked for PPG from 1977 until 2001. Id. Plaintiff Burke worked for PPG from 1963 to 2001. Id. Plaintiff Nichols worked for PPG from 1977 to 2012. Id. Plaintiff Veillon is the widow and life insurance beneficiary of Harry A. Veillon, who worked for PPG from 1967 until 2006. Id. at 5. Plaintiff Brown is the widow and life insurance beneficiary of Thomas Brown, who worked for PPG from 1960 until 1997. Id.

[5] According to Plaintiffs, Class members have each lost life insurance of no less than $2,500, and on average of about $30,000. See ECF No. 152-36; ECF No. 336 at 12. Subclass members also lost surviving spouse SIB coverage (equal to 30% of pension after 65), which can exceed the value of PPG life Insurance. Id.

Plaintiffs (and Class members) possessed already earned and vested rights to retiree life insurance coverage under the Plan that could not be lawfully terminated. ECF No. 69 at 14. And, because their retiree life insurance coverage was vested under the Plan, Plaintiffs contend that the PPG Defendants are obliged under ERISA to supply such coverage, regardless of whether Axiall provides coverage under a new benefits plan. Bellon, 41 F.4th at 247. Plaintiffs aver that PPG's termination of coverage violated the Plan by taking away vested retiree life insurance benefits.[6] ECF No. 69 at 14.

With respect to the Count One vesting claim, the Fourth Circuit interpreted the district court's ruling on the summary judgment and Rule 56(d) motions as suggesting that "even if retiree life insurance coverage constituted a vested benefit between 1969 and 1984, the adoption of the reservation of rights clause in 1984 allowed PPG to thereafter terminate such coverage for Plan participants who worked between 1969 and 1984, but who had not yet retired." Bellon, 41 F.4th at 251. The Fourth Circuit disagreed and held that if "the removal of the prior reservation of rights clause in 1969 vested the retiree life insurance coverage for Plan participants working between 1969 and 1984 — the new reservation of rights clause allowed PPG to modify or terminate the retiree life insurance coverage for only those Plan participants hired after the clause's adoption in 1984." Id. at 252-253. After reviewing the record for evidence of PPG's intent to vest, the Fourth Circuit found there was a genuine dispute of material fact as to whether retiree life insurance coverage was "vested" in eligible employees working for PPG

---

[6] In addition to the aforementioned "vesting claim," Count One alleges that — regardless of whether the plaintiffs had a vested right to retiree life insurance coverage under the Benefits Plan — PPG contravened ERISA by transferring its obligation for that coverage to Axiall without identifying such a transfer in the summary plan description as a circumstance that may result in the loss of benefits (the "transfer claim"). The Fourth Circuit affirmed the district court's award of summary judgment as to the Count One transfer claim and only remanded the vesting claim. See Bellon, 41 F.4th at 247 n.4.

during the fifteen-year period from 1969 to 1984 and thus remanded the Count One

vesting claim to this Court. Id. at 246, 253-255.

Further post-remand discovery has been conducted, and Plaintiffs again seek to

certify the class. ECF Nos. 276, 335. Plaintiffs move for certification of Count One on

behalf of a class of:

> All retired former salaried PPG Industries, Inc. ("PPG") employees (and the
> surviving spouses and other beneficiaries of such retired former
> employees): (a) Who were participants in the PPG Employee Life and Other
> Benefits Plan ("PPG Plan"); (b) Who were employed in 1969 or became
> employed between 1969 and September 1,1984; (c) Who, upon retirement,
> began receiving life insurance under the PPG Plan; (d) Who PPG removed
> from the PPG Plan in 2013 and for whom PPG transferred to Axiall
> Corporation ("Axiall") its retiree life insurance coverage obligations under
> the PPG Plan; and (e) Whose retiree life insurance coverage was
> terminated by Axiall effective December 31, 2015.

ECF No. 335 at 3. Plaintiffs also seek certification of a subclass for Count One defined

as: "All Class members who elected the Surviving Spouse Income Benefit coverage

(SIB)." Id. at 4. As it pertains to the Count One subclass, Plaintiffs allege that "PPG's

termination of Plaintiffs and Subclass members' PPG [Plan coverage] violated the Plan

by taking away 'guaranteed' 'lifetime income' benefits that constitute vested retiree life

insurance benefits."[7] ECF No. 336 at 12. Relying on the "guaranteed" language, the

Subclass theory in essence states that "on election of the SIB benefit at retirement,

Subclass members were vested in SIB coverage and their surviving spouses were

'guaranteed' payment of these benefits should they outlive their PPG retiree spouse."

ECF No. 351 at 15.

---

[7] The Fourth Circuit noted on remand that the district court may find it appropriate to address the
alternative theory of Plaintiffs' Count One vesting claim that the monthly payment component of the
Benefit Plan's optional "surviving spouse benefit," as a promised monthly payment to the surviving spouse
for life, constitutes a vested benefit. Bellon, 41 F.4th at 255 n.12.

## II.     LEGAL STANDARD

The certification of a class action is governed by Federal Rule of Civil Procedure 23. "Rule 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). After it has been demonstrated that a class meets the requirements of Rule 23(a), the movant must also show that the class action falls within one of the three Rule 23(b) categories. Id. If an action can be brought under all three, 23(b)(1) and (2) are preferred to 23(b)(3). Pender v. Bank of Am. Corp., 269 F.R.D. 589, 598 (W.D.N.C. 2010).

Rule 23(b)(1) is satisfied where (A) foregoing class treatment would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," or (B) the result for some individual class members, "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(2) authorizes class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Certification under this provision is appropriate 'only when a single injunction or declaratory judgment would provide relief to each member of the class.'" EQT Prod. Co., 764 F.3d at 357 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011)).

6

Certification under Rule 23(b)(3) is appropriate when (1) common questions of law or fact "predominate over any questions affecting only individual class members," and (2) proceeding as a class is "superior to other available methods of litigation." EQT Prod. Co., 764 F.3d at 357.

In addition to the explicit Rule 23 requirements above, the Fourth Circuit has recognized that "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" Id. at 358. This is commonly referred to as the "ascertainability" requirement. See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig., 341 F.R.D. 128, 140 (D. Md. 2022).

"A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements." EQT Prod. Co., 764 F.3d at 357. "Rather, the party must present evidence that the putative class complies with Rule 23." Id. "To determine whether the party seeking certification has carried its burden, a district court may need to 'probe behind the pleadings before coming to rest on the certification question.'" Id. (internal citations omitted). "Although Rule 23 does not give district courts a 'license to engage in free-ranging merits inquiries at the certification stage,' a court should consider merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" Id. at 357-358. "It is the plaintiffs' burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." Id. at 358 (citing Dukes, 564 U.S. at 350-351).

### III.   DISCUSSION

Earlier in this litigation, Plaintiffs filed a motion for class certification. See ECF No. 150. PPG did not oppose that motion, acknowledging that the Rule 23 requirements were met to certify the class. See ECF No. 165. Now, two and a half years later, faced with the same Amended Complaint post-remand, PPG objects to class certification.

Plaintiffs argue PPG should be held to its original position on certification. PPG was in a better position than anyone at the time of the original motion to consider possible arguments and theories for each count that would or would not favor class certification, and it deemed certification to be appropriate. Now, after the Fourth Circuit has held that the Count One vesting claim is a triable issue sufficient to survive summary judgment, PPG now contends class certification is not appropriate because Plaintiffs cannot prevail on their Count One claim. Essentially, PPG is taking another stab at the merits through the lens of class certification. Although PPG attempts to justify this shift in position by arguing Plaintiffs' theories changed after their initial response to the motion to certify, the Count as it existed and the relief sought have not.[8] In sum, the Court has good reason to give little to no consideration to PPG's new merit-based objections to certification, especially considering PPG's original response, wherein they explicitly stated: "in this case the Court need not consider the merits of Plaintiffs' claims … in order to certify the proposed class." ECF No. 165 at 3.

However, it is "the plaintiffs' burden to demonstrate compliance with Rule 23" and "the district court has an independent obligation to perform a 'rigorous analysis' to

---

[8] Moreover, even assuming the trajectory of Plaintiffs' Count One ERISA vesting claim may have changed after PPG had already submitted their response in September of 2020, that was only because PPG did not produce critical responsive documents until after the close of discovery.

ensure that all of the prerequisites have been satisfied." EQT Prod. Co., 764 F.3d at 358 (citing Dukes, 564 U.S. at 350-351). Because the Court must undergo its own review of Rule 23 compliance, and PPG's new objections may assist the Court in ensuring that review and analysis is rigorous, the undersigned will consider and address them.

As referenced above, PPG primarily relies on a new merit-based argument post-remand to demonstrate that this Class is not certifiable. PPG contends that Plaintiffs' Count One "unilateral contract" vesting theory,[9] presented to the Fourth Circuit on appeal, requires individual knowledge of a promise for unalterable benefits, and that Plaintiffs must be held to this "unilateral contract" theory on remand per the "mandate rule." ECF No. 339. This knowledge element, PPG purports, would require a level of individual inquiry for each Class member that would make this claim unsuitable for certification.[10] Id. If individual knowledge is indeed required for Plaintiffs to prove their Count One vesting claim, then class certification under Rule 23 could be in jeopardy.[11] However, if all that Plaintiffs and the Class would have to prove is that PPG's voluntary

---

[9] PPG describes Plaintiffs' "unilateral contract" vesting theory as: "'[w]orkers who were employed in 1969 or hired thereafter before September 1, 1984[,] relied on and accepted PPG's offer by continuing or accepting employment with PPG during the 1969–1984 period.'" ECF No. 339 at 7 (citing Appellant Br.).

[10] Specifically, PPG contends that Plaintiffs and each of the proposed Class members will need to individually prove that they (1) personally knew PPG removed the ROR clause from its retiree life insurance benefit policy in 1969 with the intent to vest the benefit (or were otherwise aware of a promise from PPG for vested life insurance benefits), and armed with that knowledge, (2) accepted PPG's purported offer by rendering service before 1984. ECF No. 339 at 16. These individualized fact-intensive inquiries, PPG argues, would defeat commonality as they would predominate over issues common to the class. Id. at 8, 16-20.

[11] For example, in addition to PPG's commonality argument summarized in the preceding footnote, PPG argues the Class is not ascertainable because Plaintiffs cannot establish that any of the Class had the requisite knowledge, and the numbers provided by Plaintiffs do not accurately reflect a Class who may have a valid vesting claim because it is unclear which members had knowledge of an offer for vested benefits. ECF No. 339 at 8, 22-23. Identifying those who qualify for the Class would require extensive individualized fact-finding. Id. at 22. Moreover, PPG argues that Plaintiffs are not adequate representatives because they cannot establish their own such knowledge of vested benefits. Id. at 8, 18-19, 23.

action of removing the reservation of rights ("ROR") clause from the terms of the Plan in 1969 vested life insurance benefits for all Class members, without the need to show individualized knowledge of either the 1969 removal or a promise for unalterable benefits, then class certification would be appropriate, as Plaintiffs otherwise satisfy the Rule 23 requirements for the reasons discussed in Section B.

"Although Rule 23 does not give district courts a license to engage in free-ranging merits inquiries at the certification stage, a court should consider merits questions to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." EQT Prod. Co., 764 F.3d at 357-358 (internal citations omitted). "Since the requirements of Rule 23 are often 'enmeshed in the factual and legal issues comprising the plaintiffs' cause of action,' the district court must rigorously examine the core issues of the case at the certification stage." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 654 (4th Cir. 2019) (citing Dukes, 564 U.S. at 351). Because almost all of PPG's opposition brief is dependent on this one merit-driven issue of proof that attacks all of the Rule 23(a) prerequisites and the Rule 23(b) categories, the undersigned must first consider the permissible Count One vesting theories post-remand, and whether a showing of individual knowledge and reliance is required for Plaintiffs to ultimately prevail as to all possible theories. Only then can the Court determine whether the Rule 23 requirements are satisfied.

### A.    Initial Merits Questions

#### 1.    The Mandate Rule

First, PPG argues Plaintiffs must be held to their "unilateral contract" theory on remand per the "mandate rule" and should not be permitted to pursue a different theory

on remand than that presented to the Fourth Circuit on appeal. ECF No. 339. Based on its arguments, PPG's insistence on this "unilateral contract" theory appears to be an attempt to hold Plaintiffs to an evidentiary standard that requires a showing of reliance on a promise for unalterable life insurance benefits.

A shift in strategy from appeal to remand is prohibited under the mandate rule. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 480-81 (4th Cir. 2007) (noting a remand proceeding is not the occasion for raising new arguments or legal theories that were not raised either before the district court or on appeal). PPG claims Plaintiffs are now impermissibly pursuing a new theory, which PPG has described in two very similar ways. First, PPG defines Plaintiffs' new theory as follows: "PPG's alleged removal in 1969 of a reservation of rights clause vested future retiree life insurance benefits for anyone who worked for PPG between 1969 and 1984, whether or not those individuals were aware of PPG's alleged removal of the clause." ECF No. 339 at 8. For the second description, PPG quotes Plaintiffs' Motion for Class Certification, which characterizes Plaintiffs' current vesting theory as follows: "PPG's 1969 removal of the ROR was intentional, voluntary and knowing; by removing the ROR PPG voluntarily relinquished and waived its right to change, modify or terminate the Plan and thereby contractually vested Plan participants' rights to retiree life insurance." See ECF No. 339 at 13 (citing ECF No. 335 at 2).

In their Reply brief, Plaintiffs summarize their current Count One theory as follows:

> To be clear, Plaintiffs brought an ERISA claim to enforce the terms of the PPG Welfare Plan, and contend with respect to the Class claims that PPG's unilateral, voluntary decision to remove the ROR clause in 1969 and to leave it out for more than a decade after ERISA's passage, while maintaining [a] ROR for other benefits, established during this period that

Defendants offered contractually vested retiree life insurance benefits, which they could not later take away.

ECF No. 351 at 5. At the end of the day, these three descriptions are just iterations of the same theory, some more descriptive than others.[12] While the undersigned agrees with PPG that this appears to be the theory Plaintiffs are currently pursuing post-remand, it is not new. Accordingly, PPG's mandate rule argument fails.

The undersigned has carefully reviewed the parties' appellate briefs as well as the Fourth Circuit's published opinion remanding the Count One vesting claim. Contrary to PPG's assertions, Plaintiffs' post-remand theory was presented on appeal as one of Plaintiffs' main arguments, and the Fourth Circuit incorporated it into its core reasoning for remand.[13] Moreover, the Fourth Circuit invited the district court's consideration of Plaintiffs' alternative vesting theories.[14] In other words, Plaintiffs are not pursuing a

---

[12] Hereinafter, the Court will refer to this as Plaintiffs' current theory.

[13] Below are excerpts from the Fourth Circuit's analysis that reference the theory PPG now claims Plaintiffs should not be permitted to pursue on remand. In fact, these excerpts go to the heart of the Fourth Circuit's reasoning for why remand is appropriate.

> In any event, the plaintiffs do not ask the courts to "lightly infer" vesting. Rather, for proof of vesting, they principally rely on PPG's purposeful removal in 1969 of the then-existing reservation of rights clause according PPG discretion to modify the Benefits Plan and its retiree life insurance coverage. As the plaintiffs describe the removal of the reservation of rights clause, "[t]his type of action is virtually unheard-of, and establishes PPG's intention to waive its rights and offer unalterable (i.e., vested) benefits to its employees who were employed in 1969 or hired thereafter before September 1, 1984, when PPG reinserted [a reservation of rights clause] in the Plan."

Bellon, 41 F.4th at 254. The Fourth Circuit goes on to say:

> Certainly, the purposeful deletion of the pre-1969 reservation of rights clause from the Plan may be seen as a manifestation of PPG's intent to relinquish its right to modify or terminate Plan benefits and voluntarily undertake an obligation to provide vested retiree life insurance coverage.

Id.

[14] The Fourth Circuit noted:

different theory or argument on remand. They are pursuing one of the central theories they presented to the Fourth Circuit on appeal, which is permissible and not barred by the mandate rule.

### 2.   Individual Knowledge and Reliance Requirements

Next, a review of the Fourth Circuit opinion, ERISA, and contractual principles, leads to the conclusion that, at least under Plaintiffs' current vesting theory, evidence of personal knowledge of a promise for unalterable benefits and reliance on that promise is not required for proof of Plaintiffs' Count One vesting claim. That said, just because Plaintiffs' current vesting theory may be appropriate for class certification, it does not necessarily mean every theory is suitable.

On appeal, Plaintiffs, in addition to other vesting theories, brought forth an estoppel argument. Plaintiffs stated that "[e]mployees who worked between 1969 and Sept. 1984 reasonably relied on PPG's revocation of the ROR to their detriment when they decided to remain at PPG or accepted work there under the reasonable belief that retiree benefits were secure." Appellant Reply Br., Appeal No. 21-1812, ECF No. 38 at 17. While the Fourth Circuit permitted consideration of this estoppel theory on remand, it was not the subject of the remand or even addressed in the opinion. See Bellon, 41 F.4th at 255 n.12. Under this estoppel theory, it would be difficult to meet the Rule 23 requirements. See Sprague v. Gen. Motors Corp., 133 F.3d 388, 398 (6th Cir. 1998)

---

On remand, the district court may also find it appropriate to address two alternative theories of the plaintiffs' Count I vesting claim that we do not unnecessarily reach today: (1) that the monthly payment component of the Benefits Plan's optional "surviving spouse benefit," … constitutes a vested benefit; and (2) that, applying principles of waiver and estoppel, PPG cannot terminate retiree life insurance coverage for eligible Plan participants who worked between 1969 and 1984.

Bellon, 41 F.4th at 255 n.12.

(holding that the plaintiffs' estoppel theory in an ERISA benefits claim was not susceptible to class-wide treatment because of the need for individualized proof such as what statements were made to each person, how that person interpreted those statements, and whether each person justifiably relied on those statements to his or her detriment). But, as previously discussed, based on their post-remand briefing, Plaintiffs are no longer relying on an estoppel argument. And, as illustrated below, unlike an estoppel claim, Plaintiffs' current vesting theory does not require individualized proof. It relies on PPG's unilateral conduct and the interpretation of common plan documents that will determine the rights of the whole class, regardless of each member's subjective understanding of their benefits under the Plan before 1984.

### a.      The Fourth Circuit Opinion

As the Fourth Circuit put it, the "issue of whether the plaintiffs' retiree life insurance coverage ever constituted a vested benefit is wholly material to the proper resolution of the Count I vesting claim." Bellon, 41 F.4th at 253. Now at issue, what is required to prove that claim.

The Fourth Circuit was satisfied with using the same Plan documents, EBC minutes, PPG's actions towards all participants, and other common evidence of PPG's intent as proof of vesting for all of the Plaintiffs on Count One.[15] If the factfinder

---

[15] See Footnote 7 above, which contains the first portion of the Fourth Circuit's summary of the relevant proof of vesting. The Fourth Circuit describes the other relevant evidence as follows:

In addition to PPG's deletion of the pre-1969 reservation of rights clause, the plaintiffs have other evidence that arguably manifests PPG's intent to vest the retiree life insurance coverage during the 15-year period between 1969 and 1984. That evidence includes the undisclosed EBC minutes, explaining in 1984 that PPG had removed the reservation of rights clause in 1969 because that provision had "caused doubt in the minds of retirees and the sense of security that retirees look for was absent." … The plaintiffs' evidence also includes the 1981 summary plan description, which included a reservation of rights clause for other Plan benefits, but not for retiree life insurance coverage. Under the plaintiffs'

ultimately finds that the life insurance coverage was vested, then Fourth Circuit precedent "compels the conclusion that PPG 'waiv[ed] its statutory right to modify or terminate [that benefit].'" Bellon, 41 F.4th at 253 (citing Gable v. Sweetheart Cup Co., 35 F.3d 851, 855 (4th Cir. 1994)). The Fourth Circuit found there was sufficient evidence to create a genuine dispute of material fact on the question of vesting. Id. at 246, 253-255. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Knibbs v. Momphard, 30 F.4th 200, 213 (4th Cir. 2022) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A dispute is 'genuine' if 'a reasonable jury could return a verdict for the non-moving party.'" Id. In other words, by definition, there was enough evidence on the record for a reasonable jury to return a verdict for Plaintiffs on the Count One vesting claim. Nevertheless, PPG argues otherwise.[16]

PPG now states that Plaintiffs, as Class representatives, cannot prevail on their Count One vesting claim because they have all testified in their respective December 2022 depositions that they were unaware of the "vested nature of PPG's retiree life insurance benefit" before 1984 and "did not accept their job or continue to work because of the retiree life insurance benefits." ECF No. 339 at 18. Significantly, however, the Fourth Circuit's opinion is silent on any purported personal knowledge or reliance requirement for Plaintiffs' vesting claim. The opinion indicates that common evidence of

---

evidence, PPG treated the retiree life insurance coverage as a vested benefit from 1969 to 1984, well past ERISA's 1974 enactment.

Bellon, 41 F.4th at 254.

[16] "[A]bsent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." See Volvo Trademark Holding Aktiebolaget, 510 F.3d at 481 (internal citation omitted).

plan-related documents, board minutes, and other evidence of PPG's conduct towards benefits showing PPG's intent to vest is enough for Plaintiffs to survive summary judgment and proceed to trial. For PPG, the fact that the named Plaintiffs were allegedly unaware of the unalterable nature of the life insurance benefit over thirty-eight years ago is, at best, circumstantial extrinsic evidence within the "genuine dispute" of whether PPG intended to vest the life insurance coverage during that fifteen-year period. At worst, it is of no consequence to Count One because a participant's subjective understanding of the terms of his/her benefits plan is irrelevant to that participant's rights under the plan. Either way, the Plaintiffs' lack of personal knowledge of the 1969 ROR removal or of a promise for unalterable benefits is not dispositive, as PPG suggests, and accordingly, individualized inquiries would not be "required" by the parties or this Court.

### b.    ERISA and Contractual Principles

Beyond what can be gleaned from the Fourth Circuit's opinion, the nature of ERISA claims for the restoration of benefits weighs against imposing a knowledge and/or reliance requirement in this case. Under PPG's reasoning, participants in any benefit plan would not be entitled to benefits promised by the plan unless they can show they: (a) knew of the benefits (e.g., by reading a lengthy benefits book or by getting the benefits explained to them in a meeting or announcement) and (b) decided to work for the organization or remain employed there based on the employer's offer to provide the specific benefits. This runs contrary to ERISA case law for contractual vesting claims.

ERISA, which was enacted in 1974, created a statutory right to plan benefits so long as employees met the eligibility requirements. Under ERISA, entitlement to

benefits depends on an objective reading of the plan terms, not on a participant's subjective knowledge of them or reliance on them.[17] See Fulghum v. Embarq Corp., 785 F.3d 395, 409–10 (10th Cir. 2015); see also 29 U.S.C. § 1132(a)(1)(B) (stating that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

In Fulghum, the Tenth Circuit analyzed an ERISA contractual vesting claim brought by an already-certified class. 785 F.3d at 402-410. In determining whether the benefits were vested and thus whether the class members were entitled to benefits, the Tenth Circuit did not care how the class members or Plaintiffs subjectively understood the terms of the plan. Id. Rather, the Tenth Circuit used an objective approach, stating, "[r]ead in context, no reasonable person in the position of a plan participant would have understood any of the language identified by Plaintiffs as a promise of lifetime health or life insurance benefits." Id. at 409–10. "That same reasonable person would have understood the Plans permitted the amendments made by Defendants." Id. at 410. And even when the terms of the plan are ambiguous, as they were in Deboard v. Sunshine Min. & Ref. Co., 208 F.3d 1228, 1240-41 (10th Cir. 2000), the "extrinsic evidence of the parties' intent to create vested insurance benefits" that the Tenth Circuit considered was

---

[17] Based on the cases cited by the parties, the undersigned could only identify three instances in which an ERISA claim requires some form of a reliance showing. The first instance is the previously discussed estoppel theory. See Sprague, 133 F.3d at 398. Second, fiduciary breach claims under 29 U.S.C. §§ 1104, 1105 have a reliance element. See Tootle v. ARINC, Inc., 222 F.R.D. 88, 94 (D. Md. 2004). Lastly, the Fourth Circuit has required evidence of reliance when plaintiffs are alleging that a faulty ERISA plan description, including nonreceipt of a proper summary plan description (SPD), prohibits a company from exercising its right to modify the plan. Gable, 35 F.3d at 859. Only then must a plaintiff "show some significant reliance upon, or possible prejudice flowing from," the lack of notice of an accurate description of the plan terms. Id.; see also Aiken v. Policy Management Sys. Corp., 13 F.3d 138, 141 (4th Cir.1993). In any event, these three examples are not relevant to Plaintiffs' remaining ERISA vesting claim for the restoration of benefits.

the conduct of the employer defendant, not the employees' knowledge or understanding of the terms of the plan.

Here, all of Plaintiffs and the Class members life insurance benefits are subject to the same Plan and terms. Ultimately, "plaintiffs bear the burden of proving that their employer's ERISA plan contains a promise to provide vested benefits." Gable, 35 F.3d at 855. Plaintiffs, however, do not bear the burden of proving they were actually aware of that promise when they were working for their employer and relied on it in deciding to continue or begin working there.

Further, the Second Circuit has rejected an argument that reliance is an element of proof in a claim for benefits under ERISA. See Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1213 (2d Cir. 2002). In Feifer, the court concluded that "a plaintiff need not show reliance, prejudice, or any other equitable factor to enforce plan terms in a claim under § 1132(a)(1)(B)." Id. Such a holding is "consistent with the principle that an action under ERISA to enforce plan terms sounds in contract, and a plaintiff generally need not show equitable factors such as reliance or prejudice to enforce contractual terms." Id.

Looking beyond ERISA cases,[18] courts applying "ordinary principles of contract law" have held that a party's lack of awareness of certain terms does not mean that the contract is unenforceable. For example, in Schultz v. AT&T Wireless Servs., Inc., 376 F.Supp.2d 685 (N.D.W. Va. 2005), a customer asserted that he was not bound by the terms and conditions of AT&T's Welcome Guide, which was not signed by either party. The court held that AT&T's offer of phone service was a unilateral contract, the terms of

---

[18] "Ordinary principles of contract law apply to the plaintiffs' vesting claim, whether or not we should utilize post-ERISA precedents in ascertaining if vesting occurred in 1969." Bellon, 41 F.4th at 254.

the offer were enforceable even if the customer had not read them, and the customer accepted the terms "by activating and/or continuing use of his phone." Schultz, 376 F. Supp. 2d at 691–92. Indeed, the failure of an offeree to read or ascertain the terms of a contract will not prevent enforcement of the contract unless a showing of fraud, misrepresentation, or duress can be made. See New v. GameStop, Inc., 753 S.E.2d 62, 76 (W. Va. 2013).

In sum, it is established that the terms of the plan govern a § 1132(a)(1)(B) claim for benefits under ERISA, with an understanding that the court also looks to other objective manifestations of the parties' intent to vest. See Bellon, 41 F.4th at 254. Parties can enter into contracts without learning all of the terms of the offer, and the enforceability of those terms does not depend on whether the accepting party read and understood the specifics at the time he or she entered into the contract. The customer in Schultz who accepted AT&T's offer to provide cell phone service was bound by the terms and conditions of the offer even though he never read or signed them. 376 F. Supp. 2d at 691–92. Arguably, as a salaried PPG employee who worked between 1969 and 1984, part of his or her employment compensation package included the retiree benefit plans offered by PPG.[19] ECF No. 351 at 10. Even if that employee did not read or understand all of the terms of PPG's retiree life insurance coverage in the Plan, which for arguments sake included contractually vested retiree life insurance benefits, PPG would still be bound to provide that vested benefit under the terms of the Plan upon retirement. Surely, if a former PPG employee who began work after 1984 had his retirement benefits terminated and brought suit to restore them, PPG would certainly not

---

[19] By its terms, all salaried PPG employees are covered by the PPG Plan upon starting work and receive retiree life insurance on retirement. ECF No. 336 at 14.

agree that the ROR in post-1984 Plan documents is ineffective because the retiree did not have personal knowledge of the ROR clause in his benefits plan while working at PPG.

At bottom, Plaintiffs' current theory is dependent on PPG's intent to provide vested life insurance benefits, which they contend is established by PPG's unilateral, voluntary decision to remove the ROR clause in 1969, which continued to be left out of the Plan for more than a decade after ERISA's passage, while PPG simultaneously maintained a ROR for other benefits. Plaintiffs personal awareness of the 1969 ROR removal or an awareness for a promise of vested benefits when they worked at PPG, although helpful, is not required. Plaintiffs can rely on the terms of the Plan, other common plan-related documents, PPG board minutes, and other evidence of PPG's conduct to demonstrate PPG's intent to vest retiree life insurance for all eligible employees. Therefore, individualized inquiries into each Class member's knowledge and reliance on that knowledge will not be necessary for Plaintiffs' current vesting theory of their Count One claim.[20]

## B.  Class Certification

Plaintiffs' Motion for Class Certification is governed by Rule 23 of the Federal

---

[20] To the extent PPG relies on Sprague to demonstrate the need for individualized inquiries in ERISA contractual vesting cases, that court's denial of class certification was based on a bilateral contract theory where General Motors ("GM") individually negotiated non-uniform "side deal" contracts with each early retiree. 133 F.3d at 398. In that case, "[p]roof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree" because that theory did not rely on the terms of the welfare plan. Id. Each individual contract negotiated by each early retiree likely differed in form, terms, circumstances, place, and in the representations made. Id. Sprague is distinguishable, however, from this case because Plaintiffs are not claiming PPG made individual, non-uniform side deals with certain PPG employees for vested benefits that differed in terms and circumstance. Plaintiffs base their vesting claim solely on PPG's unilateral, voluntary, and uniform conduct of removing the ROR in 1969 and on the terms of the plan applicable to everyone in order to prove vesting.

Rules of Civil Procedure. In reviewing Plaintiffs' Motion, this Court "has broad discretion in deciding whether to certify a class," Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001), and "should give Rule 23 a liberal rather than a restrictive construction." Gunnells v. HealthPlan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003) (internal quotations and citations omitted).

To begin, "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" EQT Prod. Co., 764 F.3d at 358. This is commonly referred to as the "ascertainability" requirement. Id. However phrased, a "class cannot be certified unless a court can readily identify the class members in reference to objective criteria." Id. There must be an "administratively feasible [way] for the court to determine whether a particular individual is a [class] member." Krakauer, 925 F.3d at 658 (quoting EQT Prod. Co., 764 F.3d at 358). "The plaintiffs need not be able to identify every class member at the time of certification." EQT Prod. Co., 764 F.3d at 358. But, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Id. (internal quotations omitted).

Plaintiffs move for certification of Count One on behalf of a class of:

> All retired former salaried PPG Industries, Inc. ("PPG") employees (and the surviving spouses and other beneficiaries of such retired former employees): (a) Who were participants in the PPG Employee Life and Other Benefits Plan ("PPG Plan"); (b) Who were employed in 1969 or became employed between 1969 and September 1,1984; (c) Who, upon retirement, began receiving life insurance under the PPG Plan; (d) Who PPG removed from the PPG Plan in 2013 and for whom PPG transferred to Axiall Corporation ("Axiall") its retiree life insurance coverage obligations under the PPG Plan; and (e) Whose retiree life insurance coverage was terminated by Axiall effective December 31, 2015.

ECF No. 335 at 3. Plaintiffs' Subclass is defined as: "All Class members who elected the Surviving Spouse Income Benefit coverage (SIB)." Id. at 4.

Plaintiffs have satisfied the "objective criteria" component. The Plaintiffs' proposed Class and Subclass definitions do not rely on subjective terms. The definitions are clear, succinct, and easily ascertains eligible Class and Subclass members based on uncontroverted and available facts. The proposed Class can be "readily identified" based on objective criteria: PPG retiree status, date of hire, compensation (salaried), transfer to Axiall, and termination of retiree life insurance.[21] Likewise, there is an administratively feasible way for the Court to determine whether a particular individual is a Class and Subclass member with minimal effort. PPG and Axiall kept records of hire dates, who was transferred, whether they were salaried or hourly, and the amount of individual retiree life insurance under the PPG Plan, including who elected SIB (for purposes of the Subclass). See ECF Nos. 152-17, 152-35, 152-36. Additionally, Axiall sent letters to all eligible PPG retirees regarding termination of life insurance, and those letters also identify who elected the monthly SIB as well as specify the monetary amount lost in basic life insurance. See ECF Nos. 152-37, 152-38.

PPG argues the Class is not ascertainable because Plaintiffs cannot identify which members of the Class had the requisite knowledge of vested benefits and, by extension, a valid claim. ECF No. 339 at 8, 22. Determining the eligibility of each Class

---

[21] Axiall did not terminate retiree life insurance benefits for transferred PPG retirees who retired before September of 1984. See ECF No. 152-32; ECF No. 336 at 14. While there is no specification in the Class definition that all PPG retirees in the Class/Subclass retired after September 1984, the objective criteria that the individual's "retiree life insurance coverage was terminated by Axiall effective December 31, 2015" adequately removes those who retired before September 1984 from the Class and Subclass. Thus, the undersigned is satisfied with the Class definition as constructed because the Class/Subclass members are identifiable, and there is no risk that retirees who are still receiving their life insurance benefits could be included in this class action.

member based on their personal knowledge, PPG contends, would require extensive individualized fact-finding that makes the Class unascertainable. Id. at 22. However, as previously determined herein, this Court need not wade into these waters to identify the appropriate class. Rather, the entire Class can be readily identified using the objective Class/Subclass definitions and the determination of member eligibility is administratively feasible based on available records. The Class and Subclass are ascertainable, and the inquiry next turns to the Rule 23(a) prerequisites.

### 1.     Rule 23(a)

Under Rule 23(a), the party seeking certification must first demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The final three requirements of Rule 23(a) tend to merge, "with commonality and typicality serving as guideposts for determining whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009) (quotations omitted).

### a.     Numerosity

Numerosity requires that a class be so large that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Though no specified number is needed to maintain a class action, as a general guideline, a class that encompasses fewer than 20 members will likely not be certified while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." In re Zetia

(Ezetimibe) Antitrust Litig., 7 F.4th 227, 234 (4th Cir. 2021). "Plaintiffs need not establish the precise number of class members at the certification stage to satisfy the numerosity requirement so long as they provide 'a reasonable estimate of the number of class members.'" In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig., 341 F.R.D. at 146 (quoting Harris v. Rainey, 299 F.R.D. 486, 489 (W.D. Va. 2014)).

Here, PPG documents show that PPG terminated its coverage under the Plan and transferred hundreds of retired, salaried non-union participants (many of whom elected SIB) to Axiall. ECF No. 152-36. Then, Axiall sent letters to around 500 PPG retirees (around 150 of whom had elected SIB) notifying them of the termination of their life insurance benefits. See e.g. ECF Nos. 152-37, 152-38.

Given a potential Class size of around 500 members and a potential Subclass of about 150, joinder is clearly impracticable. PPG claims that the numbers provided by Plaintiffs do not accurately reflect a Class and Subclass who may have a valid vesting claim because it is unclear which members had knowledge of an offer for vested benefits. ECF No. 339 at 22-23. To the contrary, the numbers provided by Plaintiffs are accurate because the question of vesting will apply class-wide: either everyone in the Class will have vested benefits or none of them will (i.e., the vesting inquiry will not turn on individualized knowledge). The Class size and Subclass size estimated by Plaintiffs far surpasses the presumption of impracticability of joinder based on the numbers alone as it is far outside the "gray area" cases consisting of classes between twenty to forty members. In re Zetia (Ezetimibe) Antitrust Litig., 7 F.4th at 234. Accordingly, the undersigned finds that Plaintiffs have satisfied the numerosity requirement. See also Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 183 (4th Cir. 1993) (affirming

that "480 potential class members would easily satisfy the numerosity requirement");

Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984) (approving a 74-person class); Reed v. Alecto Healthcare Servs., LLC, 2022 WL 4115858, at *4 (N.D.W. Va. July 27, 2022) (finding that the plaintiffs satisfied the numerosity requirement with a showing of hundreds of potential class members).

### b.    Commonality

Commonality requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, Plaintiffs must demonstrate that class members have suffered the "same injury," not merely that they have all suffered a violation of the same provision of law. Dukes, 564 U.S. at 349-50. Claims must depend upon a "common contention," and that common contention must be of such a nature that it is "capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350. "A single question of law or fact common to the members of the [C]lass will satisfy the commonality requirement." Id. at 369.

Here, the undersigned will first note that PPG thought in 2020 that the "common experience" of the proposed Class members was sufficient to meet commonality and typicality. ECF No. 165 at 5. Specifically, that common experience in PPG's own words includes that "(i) the proposed class members previously received retiree life insurance benefits under the PPG Plan; (ii) as a result of the Axiall Transaction, PPG transferred the obligation and liabilities for these benefits to Axiall; (iii) Axiall terminated these

retiree life insurance benefits; and (iv) Plaintiffs allege PPG's actions violated various provisions of ERISA." Id.

In addition to the "common experience" of the proposed Class and Subclass members described by PPG above, Plaintiffs have identified multiple questions that are common to the Class and Subclass, that would generate common answers, and the resolution of which are central to the validity of their claims. Plaintiffs' common questions of law and fact include: (a) whether PPG amended the Plan to remove its previously-reserved right to amend the Plan in or about 1969; (b) whether the right of the Class to retiree life insurance was vested; (c) the meaning of the term "guaranteed lifetime income" in the Plan; (d) whether Subclass member rights to Survivor Income Benefits were vested; and (e) the appropriate Class/Subclass-wide remedy. ECF No. 336 at 15.

On the other hand, PPG now contends that Plaintiffs' claims require at least two inherently individualized inquiries that are not capable of class-wide resolution: "(a) whether each individual Plaintiff was aware that, in 1969 or sometime thereafter, PPG removed a reservation-of-rights clause from its retiree life insurance benefit policy with the intent to vest the retiree life insurance benefit; and (b) whether, with that knowledge, the individual Plaintiff accepted PPG's purported offer of a vested welfare benefit, before 1984, by rendering service." ECF No. 339 at 16. PPG argues that these individualized issues of knowledge defeat commonality as they would predominate over issues common to the class. Id. at 16-17.

Plaintiffs' remaining Count One vesting claim seeks "benefits due…under the terms of the plan." See Berry v. Wells Fargo & Co., 2018 WL 9989754, at *7 (D.S.C.

2018) ("Rule 23(a)'s commonality requirement is often satisfied in ERISA cases because a class of participants in the same benefit plan may assert identical legal claims arising from the same … facts"). These questions of fact, and their answers, are common because every Class/Subclass member was subject to the same Plan and terms that govern all of their life insurance benefits. All Class/Subclass members suffered the same injury: the termination of their life insurance benefits. These questions arise from Defendants' uniform treatment of the Class and Subclass, which can be answered with the interpretation of common evidence "in one stroke." Plaintiffs aim to demonstrate vesting for the Class through common historical evidence and common Plan documents that did not contain a ROR beginning in 1969 until September 1, 1984.[22] An answer to the common question of vesting, which the Fourth Circuit has already described as "material" and ready to proceed to trial, would apply to every Class member and will resolve the Count One claim for the entire Class. PPG's purported "individualized inquiries" are not needed for Plaintiffs and the Class to prove their claim and therefore do not defeat commonality.

Subclass members will presumably rely on the same vesting arguments and evidence as the Class as it pertains to PPG's liability for the lump-sum life insurance coverage. However, PPG's liability as to the monthly SIB payments will presumably be based on a separate vesting theory, given that option under the Plan did not appear to be offered until after the alleged 1969 ROR removal. Plaintiffs contend that PPG vested SIB coverage for Subclass members who elected it since the Plan expressly provides

---

[22] Plaintiffs plan to prove the terms of and amendments to the Plan in the 1969-1984 time period from summary plan descriptions and newsletters. Plaintiffs intend to use historical minutes and materials of the PPG Employee Welfare Board, Board of Directors ("BOD") and BOD Management Committee, as well as from the plan documents to prove that PPG offered vested benefits.

that SIB payment is "guaranteed." An answer to the Subclass vesting question will resolve the claims of every Subclass member. Plaintiffs plan to show that SIB benefits were vested for the Subclass based on the terms of the Plan documents and historical minutes and materials of PPG committees that amended the Plan to offer SIB. In short, Plaintiffs have successfully demonstrated that they satisfy the commonality requirement for the Class and Subclass.

### c.     Typicality

To satisfy the typicality requirement, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims of the class." Fed. R. Civ. P. 23(a)(3). "The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). "That is not to say that typicality requires the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." Id. at 467. Put simply, "[t]he essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." Id. at 466 (internal quotations omitted).

As commonality and typicality tend to merge in many respects, the reasons that the Class representatives' claims are typical are very similar to the reasons why Plaintiffs satisfy commonality, as are PPG's commonality and typicality objections. PPG argues that because Plaintiffs conceded in their depositions that they had no knowledge of the vested benefits offered between 1969 and 1984, they cannot simultaneously "advance the interests of the absent class members" in prosecuting their own case. ECF No. 339 at 19. This again is a flawed premise.

The Class representatives and the absent members are similarly situated legally and factually because PPG pursued the same course of conduct as to all Class and Subclass members. See Berry, 2018 WL 9989754, at *9 ("As a general matter, the 'typicality' prerequisite is satisfied in instances where plaintiffs' claims arise out of the common course of conduct of one or more defendants."). The claims of Plaintiffs Bellon, Eakin, Nichols, Veillon, Wallace, and Williams are typical of the claims of the Class as they arise from the same event (the Axiall Transaction), the same plan documents, and the same legal theory.[23] Similarly, Plaintiff Eakin's and Plaintiff Wallace's SIB claims, which are based on the Plan's language of "guaranteed" lifetime income, are typical of the claims of the Subclass as they arise from the same event (the Axiall Transaction), rely on the same Plan documents and share the same legal theory. ECF Nos. 152-7, 152-8. Moreover, the named Plaintiffs have suffered the same harm as the Class and Subclass: the Class has lost their life insurance coverage and the Subclass has lost their life insurance coverage plus SIB. If the Class/Subclass members were to bring suit individually, each would undoubtedly bring a similar if not identical ERISA action as their proposed representatives to restore and recover their benefits. See Pender, 269 F.R.D. at 597 ("In an ERISA action, typicality is met when the class representative and class members have suffered the same harm … and would assert the same violations under ERISA.").

---

[23] Plaintiffs plan to prove their ERISA benefits claim by showing that operative Plan documents did not authorize PPG to terminate coverage for the Class because their benefits had already vested. As mentioned previously, in order to prove vesting, Plaintiffs plan to present evidence of PPG's removal of the ROR in 1969 and historical documents and other plan documents over the next fifteen years reflecting PPG's intent to vest life insurance benefits even after ERISA's passage in 1974 while reserving its rights to eliminate other employee benefits during that same period.

In short, Plaintiffs, the Class, and the Subclass have suffered the same harms and have the same claims and interest in proving Defendants' liability and will use common evidence to do so. Because Plaintiffs' proof of their own claims will simultaneously advance the interests of every Class and Subclass member, their claims are typical and closely aligned. If Plaintiffs cannot ultimately prove vesting, the Class and Subclass would not be able to either. In other words, as goes the claims of the Plaintiffs, so go the claims of the Class.

### d.   Adequacy of Representation

For the last prerequisite, Plaintiffs must demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). "Determining adequacy of representation ... requires the Court to determine: (1) whether the named plaintiffs ... have any conflicts of interest with other class members; and (2) whether the named plaintiffs ... will prosecute the action vigorously on behalf of the entire class." In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig., 341 F.R.D. at 150 (internal citations omitted). "For a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'" Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010) (quoting Gunnells, 348 F.3d at 430). A conflict is not fundamental when "all class members 'share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants].'" Id. (brackets omitted).

Almost identical to their typicality objection, PPG offers that Plaintiffs are not adequate representatives because, as they cannot establish their own knowledge of vested benefits, they "clearly lack the ability to 'fairly and adequately protect the interests' of unknown absent class members who might possess knowledge sufficient to pursue the theory the Fourth Circuit remanded." ECF No. 339 at 23. Plaintiffs submit that there are no conflicts between themselves and the proposed Class/Subclass.

The fact that the Class/Subclass members and the named representatives share common objectives (restoring life insurance and SIB) and the same factual and legal positions and have the same uniform interest in establishing PPG's liability has already been established and discussed at length in the commonality and typicality sections. See also Plaintiffs' Declarations, ECF Nos. 152-6, 152-7, 152-8, 152-9, 152-11, 152-12. Moving on to the second inquiry, which PPG does not contest, the undersigned is confident that the named representatives will prosecute this action vigorously on behalf of the entire Class and Subclass. Plaintiffs have demonstrated their commitment to this case as Class/Subclass representatives by sitting for depositions,[24] searching for documents, assisting in preparation of interrogatory answers, reviewing case-related documents, and participating in case-related conference calls. See Plaintiffs' Declarations, ECF Nos. 152-6, 152-7, 152-8, 152-9, 152-11, 152-12. Plaintiffs Bellon, Wallace, and Eakin even appeared virtually for the lengthy class certification hearing on April 12, 2023. Finally, Plaintiffs have retained capable counsel with both relevant experience and sufficient resources to represent the Class and Subclass. ECF Nos. 152-1 at 3, 152-39, 152-40, 152-41. It is apparent Plaintiffs have and will continue to

---

[24] Plaintiffs Bellon, Eakin, Wallace, Nichols, Veillon, and Williams have each sat for two depositions. See ECF Nos. 255, 256, 257, 258, 261, and 273.

"fairly and adequately protect the interests of the class." Accordingly, the Court should appoint named Plaintiffs Bellon, Eakin, Nichols, Veillon, Wallace, and Williams as Class representatives and Plaintiffs Eakin and Wallace as representatives of the Subclass.

### 2.    Rule 23(b) Categories

Since Plaintiffs have demonstrated that the proposed Class and Subclass meet the requirements of Rule 23(a), they must now show that this action properly falls within at least one of the three Rule 23(b) categories. EQT Prod. Co., 764 F.3d at 357. Plaintiffs move for certification under all three. PPG now objects to certification under all Rule 23(b) subsections, but it is again worth noting that PPG originally argued that the proposed class was certifiable under Rule 23(b)(1) and (b)(2). ECF No. 165 at 6. For the reasons discussed below, the undersigned concludes that all three categories are appropriate for certification. Based on the mandatory nature of (b)(1) and (b)(2) classes, if an action can be brought under all three, (b)(1) and (b)(2) classes are preferred to (b)(3). See Pender, 269 F.R.D. at 598. Thus, the undersigned first recommends certification under either Rule 23(b)(1) or (b)(2). However, should the Court disagree with the undersigned's conclusion that the monetary relief sought is incidental to injunctive relief, the undersigned alternatively recommends certification under Rule 23(b)(3).

### a.    Rule 23(b)(2)

Rule 23(b)(2) authorizes class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, Plaintiffs argue that certification is proper under Rule 23(b)(2) because Plaintiffs seek the same injunctive relief for the class as a whole (reinstatement of life insurance coverage in the PPG Plan) to redress PPG's conduct uniformly applicable to the Class/Subclass. ECF No. 336 at 23. The ERISA provisions that make up the Count One vesting claim allow Plaintiffs to bring a civil action "to enjoin any act or practice which violates … the terms of the plan" in addition to allowing equitable relief. ECF No. 69 at 14 (citing 29 U.S.C. § 1132(a)(3)). Plaintiffs' Amended Complaint frames the specific injunctive relief sought as follows: "Direct the Plan Administrator and PPG to reinstate Plaintiffs and the Class as participants in the PPG Employee Life and Other Benefits Plan and restore their retiree life insurance coverage under the PPG Plan." ECF No. 69 at 19. If this was the only form of relief Plaintiffs and the Class sought, the Class would unequivocally meet the Rule 23(b)(2) standard.[25]

However, as Plaintiffs point out in their brief, they also seek to recover lump sum life insurance payments and, where applicable, SIB payments due to surviving spouses and beneficiaries of PPG retirees who died during the class period without coverage.[26] See ECF No. 336 at 23-24; ECF No. 69 at 19. In other words, some Class and Subclass members seek monetary damages to collect the one-time life insurance payment and unpaid monthly SIB while others seek injunctive relief to simply have their

---

[25] PPG's argument as to why Rule 23(b)(2) is not met is simply that Plaintiffs are not seeking declaratory or injunctive relief, evidenced by the fact that "injunctive" relief is only mentioned once in the Amended Complaint in conclusory fashion. ECF No. 339 at 24. Beyond this assertion being clearly refuted by Plaintiffs' prayer for relief, it is also refuted by PPG's own prior admission that "Plaintiffs seek injunctive relief for the class as a whole." See ECF No. 165 at 7.

[26] The Amended Complaint's prayer for relief states the following: "Direct the Plan Administrator and PPG to pay any claims for retiree life insurance coverage for Plaintiffs and Class members not paid during the period it was not in force but would have been paid had it not been terminated." ECF No. 69 at 19. "Direct the Plan Administrator and PPG to pay 'lifetime income' benefits or SIB to the surviving spouses of all Class members who had elected the same…." Id.

coverage and promised future SIB payments restored under the Plan. Plaintiffs contend this monetary "relief is incidental to injunctive relief restoring Class coverage" and is thus permissible in a Rule 23(b)(2) certification. ECF No. 336 at 23-24.

If plaintiffs are ultimately successful in establishing PPG's liability on the Class and Subclass vesting claims, the district court would then issue an injunction reinstating the Class and Subclass under the Plan and restoring life insurance and SIB coverage. However, for the group of beneficiaries and spouses bringing claims for retirees who have died between the termination of their coverage in 2015 and the resolution of this lawsuit and for the surviving spouses who had already been receiving SIB payments before the 2015 termination, the Court would need to determine the separate monetary recoveries to which those individual Class/Subclass members would be entitled. In that sense, a single injunction restoring coverage under the Plan would not provide class-wide relief to *every* member, just to the PPG retirees of the Class/Subclass still living. See Dukes, 564 U.S. at 360 (stating Rule 23(b)(2) certification is only appropriate "when a single injunction or declaratory judgment would provide relief to *each* member of the class"). On the other hand, Dukes also says that a class should not be certified under Rule 23(b)(2) "when *each* class member would be entitled to an individualized award of monetary damages." Id. Here, *each* class member would *not* be entitled to monetary damages and to the portion of the class that would, those damages are not "individualized."

After Dukes, the Fourth Circuit weighed in and held that "where monetary relief is 'incidental' to injunctive or declaratory relief, Rule 23(b)(2) certification may be permissible." Berry v. Schulman, 807 F.3d 600, 609 (4th Cir. 2015). However, where

monetary relief predominates, certification of the class under Rule 23(b)(2) is not permissible.[27] Id. The Supreme Court clarified in Dukes that claims for individualized monetary relief—in that case, back-pay awards under Title VII—are not "incidental" for purposes of Rule 23(b)(2). 564 U.S. at 363-67. That said, the Supreme Court refrained from deciding "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2)." Id. at 366. The Fourth Circuit's decision in Schulman, which discussed Dukes at length, reaffirmed at least in this circuit that monetary damages are permissible under Rule 23(b)(2) so long as they are "incidental" to injunctive relief.[28] Schulman, 807 F.3d at 609.

In Dukes, the necessity of further litigation to resolve the employer's statutory defenses to Title VII claims for backpay asserted by individual class members prevented the Court from treating these backpay claims as "incidental" to claims for injunctive relief. 564 U.S. at 365-66. In so finding, the Supreme Court adopted the Fifth Circuit's definition of monetary relief that is incidental: that is "'damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive … relief.'" Id. (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)). Further, such "'incidental damages should not require additional hearings to resolve the

---

[27] This rule flows from the premise underlying the mandatory nature of Rule 23(b)(2) classes: "If a class action is more about individual monetary awards than it is about uniform injunctive or declaratory remedies, then the 'presumption of cohesiveness' breaks down and the procedural safeguard of opt-out rights becomes necessary." Schulman, 807 F.3d at 609.

[28] At least two other federal courts of appeals have considered whether, in light of Dukes, Rule 23(b)(2) certification remains permissible when monetary damages are involved, and both have affirmed the continued validity of Rule 23(b)(2) certification of monetary claims so long as the monetary relief does not depend on complex individualized determinations and is "incidental" to injunctive remedies. See Amara v. CIGNA Corp., 775 F.3d 510, 519–20 (2d Cir. 2014); Johnson v. Meriter Health Servs. Emp. Ret. Plan, 702 F.3d 364, 369–71 (7th Cir.2012).

disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.'" Id.

The nature of the instant case and the monetary relief sought falls squarely within the Fifth Circuit's definition of "incidental," which makes it distinguishable from the Supreme Court's finding as to Title VII back pay claims. Here, PPG's liability would be established for the ERISA benefits claim uniformly for every Class/Subclass member. Any individual claims for damages that result from a determination of liability flow directly from the same ERISA claim seeking to enjoin PPG. Importantly, this case has dragged on for five years resulting in the unfortunate reality of some PPG retirees passing away in the interim without coverage. Had this case been resolved much sooner in Plaintiffs' favor, the Class and Subclass would almost entirely be comprised of PPG retirees seeking exclusively injunctive relief, with few beneficiaries of deceased PPG retirees seeking monetary relief. The intertwined nature of the relief sought, both stemming from the same claim and facts, shows the monetary relief is incidental. The Plaintiffs, on behalf of the Class/Subclass members, in equity, should not be precluded from seeking Rule 23(b)(2) certification simply because it has taken five years to reach this point.

The reason that monetary relief may only arise incidentally from a defendant's liability to the class as a whole is to "protect[ ] the legitimate interests of potential class members who might wish to pursue their monetary claims individually," which the opt-out provision of Rule 23(b)(3) allows for. Amara, 775 F.3d at 523 (quoting Allison, 151 F.3d at 415). Absent Class/Subclass members have no need for such protection in this case because the monetary relief does not depend on complex individualized

determinations for which litigation specific to each individual could make a difference. Moreover, if PPG's liability is established in this matter, unlike a Title VII claim for back pay, the undersigned does not then anticipate affirmative defenses playing any role in the damages determinations.

This Court, in making monetary determinations at the remedy stage, could rely solely on applicable PPG and Axiall documents. See e.g. ECF No. 152-36 (listing the basic life insurance coverage amounts for each Class member) and ECF No. 152-37 (example of Axiall termination letter sent out to all Class and Subclass members, which in this instance, lists the monetary amount lost in basic life coverage for Plaintiff Wallace as $27,800 plus monthly SIB). Accordingly, the monetary totals that would be due to beneficiaries and surviving spouses are objectively identifiable based on available records and would not require extensive or complex individual inquiry. See Amara, 775 F.3d at 524 (finding monetary relief incidental and permissible under Rule 23(b)(2) where the damages due to each individual class member "after the court enjoins CIGNA to reform the terms of its pension plan are easily capable of computation by means of objective standards"). Likewise, sorting out the appropriate monetary relief would not require individual hearings because beyond a simple individual finding of the amount owed (lump sum or SIB payout total), no additional findings of fact or law are necessary.

In sum, the undersigned finds that the monetary relief is incidental to injunctive relief and that this class action is certifiable under Rule 23(b)(2). Even if the monetary relief is not incidental to injunctive relief, certification of this Class and Subclass is proper under Rule 23(b)(3).

**b.** **Rule 23(b)(1)**

Similar to Rule 23(b)(2), Rule 23(b)(1) is best suited to lawsuits seeking declaratory or injunctive relief. Altier v. Worley Catastrophe Response, LLC, 2011 WL 3205229, at *10, 14 (E.D. La. July 26, 2011); see also Wood v. Prudential Ret. Ins. & Annuity Co., 2017 WL 3381007, at *6 (D. Conn. Aug. 4, 2017). The Supreme Court has indicated that the "limitations on money damages available under Rule 23(b)(2) apply with equal force under Rule 23(b)(1)." Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc., 2018 WL 1419792, at *9 n.8 (D. Conn. Mar. 21, 2018); see Dukes, 564 U.S. at 362 (noting that "unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory" and, "[g]iven that structure, we think it clear that individualized monetary claims belong in Rule 23(b)(3)"). Given the previous conclusion that a (b)(2) class action is permissible in this case because the monetary relief is incidental, the undersigned also finds that the incidental monetary relief will not affect certification under Rule 23(b)(1). See 1 MCLAUGHLIN ON CLASS ACTIONS § 5:3 (17th ed. 2020) ("Although Rule 23(b)(1)(A) certification clearly is unavailable in an action seeking predominantly money damages, there is authority accepting the proposition that incidental money damages are allowable in a Rule 23(b)(1)(A) action ...").

Rule 23(b)(1) is satisfied where (A) foregoing class treatment would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," or (B) the result for some individual class members, "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their

interests." Fed. R. Civ. P. 23(b)(1). In essence, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." Tatum v. R.J. Reynolds Tobacco Co., 254 F.R.D. 59, 66 (M.D.N.C. 2008).

Rule 23(b)(1)(A) certification is appropriate here, as competing actions would present a risk of inconsistent adjudications imposing "incompatible standards of conduct" on the opposing party. According to the Supreme Court, Rule 23(b)(1)(A) applies "in cases where the party is obliged by law to treat the members of the class alike." Amchem, 521 U.S. at 614. Resolution of Plaintiffs' and Class/Subclass claims require interpretation of generalized plan documents and PPG's changes to these documents. In order to grant relief to Plaintiffs, this Court would likely have to make decisions about the fundamental nature of the PPG Plan.[29] There is a risk that putative class members would seek relief in other courts, leading to conflicting interpretations of the PPG Plan, conflicting remedies, and incompatible standards of conduct for PPG. See Pender, 269 F.R.D. at 598-599 (certifying ERISA claims under Rule 23(b)(1)(A)). Under ERISA, similarly-situated participants are to be treated consistently. That is why multiple courts have found certification of ERISA claims under Rule 23(b)(1)(A) appropriate, since "ERISA administrators may not discriminate between similarly situated beneficiaries." Clemons v. Norton Healthcare Inc. Ret. Plan, 890 F.3d 254, 280 (6th Cir. 2018) (affirming Rule 23(b)(1)(A) class where issue before the district court was the interpretation of the plan); Alday v. Raytheon Co., 619 F.Supp.2d 726, 736 (D.

---

[29] PPG argues that "resolving the theory remanded by the Fourth Circuit does not ask the Court to opine on Plan administration, and it will not in any way determine the rights of all Plan participants." ECF No. 339 at 24. But for the reasons previously stated, the undersigned disagrees.

Ariz. 2008) (certifying Rule 23(b)(1)(A) class as "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner"); see also Barton v. Constellium Rolled Prod.-Ravenswood, LLC, 2014 WL 1660388, at *5 (S.D.W. Va. April 25, 2014) (certifying Rule 23(b)(1)(A) class in ERISA action).

Rule 23(b)(1)(B) certification is also warranted. In this case, Plaintiffs and Class/Subclass members were participants in the same PPG welfare Plan. PPG terminated their Plan coverage and transferred them to Axiall, eventually resulting in the loss of their retiree life insurance and for some, SIB. Plaintiffs' individual claims interpreting the Plan and challenging PPG's termination of coverage, as a practical matter, will be dispositive of the interests of the other potential members not parties to the case. For example, if it were determined in this case that Plaintiffs' life insurance benefits never vested, any potential class members who would have wanted to bring a separate lawsuit to get their benefits restored will, as a practical matter, have a difficult time establishing vesting as they would have to overcome persuasive legal precedent noting those same benefits did not vest. Thus, it would be better to have the interests of the nonparties represented and protected in this suit rather than risk their interests getting potentially impaired later.

To conclude, PPG said it well back in 2020: "class treatment would alleviate the risk of inconsistent actions at the liability stage and adjudication as to the eight named Plaintiffs would be dispositive of the interests of other proposed class members." ECF No. 165 at 7. This Class and Subclass is thus certifiable under Rule 23(b)(1).

c.      **Rule 23(b)(3)**

Certification under Rule 23(b)(3) is appropriate when (1) common questions of law or fact "predominate over any questions affecting only individual class members," and (2) proceeding as a class is "superior to other available methods of litigation." EQT Prod. Co., 764 F.3d at 357.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc., 521 U.S. at 623. It "focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." Singleton v. Domino's Pizza, LLC, 976 F. Supp.2d 665, 677 (D. Md. 2013). Critically, "[c]ommon liability issues may still predominate even when individualized inquiry is required in other areas." Good v. Am. Water Works Co., Inc., 310 F.R.D. 274, 296 (S.D.W. Va. 2015) (citing Gunnells, 348 F.3d at 429). "At bottom, the inquiry requires a district court to balance common questions among class members with any dissimilarities between class members." Id.

Here, common issues plainly predominate.[30] The key factual and legal questions all turn on PPG Plan provisions and Defendants' uniform treatment of the Class and Subclass, including: (a) whether PPG terminated Class/Subclass members' coverage under the Plan; (b) whether PPG intentionally removed and waived its previously-stated right to amend the Plan in 1969; (c) whether Class members' rights to retiree life insurance vested; (d) the meaning of the term "guaranteed lifetime income" in the Plan; and (e) whether Subclass member rights to SIB vested. Plaintiffs' and the

---

[30] PPG argues the individual knowledge inquiries would predominate, but the undersigned has already addressed and refuted this argument.

Class/Subclass claims and each of these questions can be proven solely with common evidence.[31]

Really, the only difference between some members and others is the remedy sought by the beneficiaries/surviving spouses of the Class/Subclass versus the relief sought by the living PPG retirees of the Class/Subclass (as well as the surviving spouses also seeking to get the SIB benefit reinstated). As the injunctive relief group can be remedied without any individual inquiry, the only question affecting some individual Class/Subclass members in this case is damages because each of those members would be entitled to a different sum. This sole question of damages is obviously permissible in a Rule 23(b)(3) certification and thus would not predominate over the common questions of law and fact because it is precisely what Rule 23(b)(3) is contemplated for: claims for monetary relief. See Dukes, 564 U.S. at 362. As discussed in the (b)(2) section, the monetary totals that would be owed to some Class and Subclass members if liability were established are objectively identifiable based on available records and would not require extensive or complex individual inquiry. The predominance prong is satisfied in this case as resolution of the common questions will largely dispose of the action. See Romeo v. Antero Res. Corp., 2020 WL 1430468, at *9-10 (N.D.W. Va. March 23, 2020) (certifying (b)(3) class where answering the common questions would largely dispose of the litigation despite the need for individualized damage determinations).

Rule 23(b)(3) also requires that a proposed class action be superior to other methods of adjudication so that it will "'achieve economies of time, effort, and expense,

---

[31] Because the undersigned has already addressed in depth all of the common evidence of the Class and Subclass earlier in this Report and Recommendation, for the sake of brevity, it will not be restated here.

and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" <u>Amchem Prod., Inc.</u>, 521 U.S. at 615. When determining whether a class action is superior under Rule 23(b)(3), courts consider these factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The fundamental policy underlying the class action mechanism is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." <u>Amchem Prod., Inc.</u>, 521 U.S. at 617. Consistent with this policy, some courts have concluded that the class action is not a superior mechanism "where individuals have sufficient incentives to pursue their own legal redress." <u>See</u> <u>Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives</u>, 182 F. Supp. 3d 573, 590 (E.D. Va. 2016), <u>aff'd</u>, 875 F.3d 160 (4th Cir. 2017) (finding that the proposed class member company executives have sufficient incentives to enforce their own rights on their own terms when their individual claims averaged in excess of $300,000 a person).

      Class-wide treatment is superior to other adjudication options in this case as members likely have no interest in controlling the prosecution of separate lawsuits, and any interest class members' may have in doing so is far outweighed by the benefits of consolidated treatment. To that end, Plaintiffs aver they are unaware of any other suits filed by potential class members to restore life insurance under the PPG Plan. ECF No.

336 at 26; ECF No. 69 at 13. Further, unlike the company executives in <u>Plotnick</u> with individual claims averaging in excess of $300,000, the average life insurance coverage amount for each Class member is about $30,000, with some worth as little as $2,500. ECF No. 152-36; ECF No. 336 at 12. It is clear individual PPG retirees would have little to no motivation to pursue a claim if they are unable to do so together in a class action because the expense, time, and effort to prosecute an action individually would overcome the minimal financial benefit, if any, received if the individual plaintiff were even successful in restoring his or her coverage.[32] Because the answers to questions of liability will be apply to every Class/Subclass member, it is much more efficient to decide those questions for everyone at once. Duplicative discovery for PPG will be avoided and numerous individual trials could be replaced with one. In short, certification in this case will achieve economies of time, effort, and expense. Finally, there are no foreseeable difficulties in managing this action, which encompasses an identifiable, roughly 500-person Class and 150-person Subclass.

In conclusion, common questions predominate, and class treatment is superior. This class action should therefore be certified pursuant to Rule 23(b)(3) if certification under Rule 23(b)(1) and (b)(2) is unavailable.

### 3.    Appointment of Class Counsel

Rule 23(g) requires that a court certifying a class also appoint class counsel. The Rule directs the court to consider several factors, including "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the

---

[32] In this case, the cost of litigation alone to reinstate or recover life insurance, when pursued individually, could potentially far exceed any financial benefit that could be derived therefrom.

action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1).

In this case, the proposed Class counsel are qualified and able to represent the Class and Subclass. This Court should appoint John Stember and Maureen Davidson-Welling of Stember Cohn & Davidson-Welling, LLC, Stephen Skinner of the Skinner Law Firm, and James T. Carney, Esq., as Class Counsel for the Class and Subclass pursuant to Rule 23(g).

## IV.    RECOMMENDATION

For the reasons outlined above, the undersigned **RECOMMENDS** that Plaintiffs' Amended Renewed Motion [ECF No. 335] for Class Certification be **GRANTED** and Plaintiffs' Renewed Motion [ECF No. 276] for Class Certification be **TERMINATED** as moot.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable GINA M. GROH, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Clerk of Court is **DIRECTED** to transmit copies of this Report and Recommendation to all counsel of record. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

**DATED:** May 22, 2023

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE