IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**CHARLES W. BELLON, ROBERT E. EAKIN,
JUDY GAY BURKE, LOUISE NICHOLS,
WILTON G. WALLACE, BERNADOT F.
VEILLON, BARBARA BROWN, and
ROBERT E. WILLIAMS, on behalf
of themselves and others similarly situated,**

      Plaintiffs,

v.                                                                         **CIVIL ACTION NO.: 5:18-CV-114
(GROH)**

**THE PPG EMPLOYEE LIFE AND OTHER
BENEFITS PLAN, PPG INDUSTRIES, INC.,
and THE PPG PLAN ADMINISTRATOR,**

      Defendants.

**MEMORADUM OPINION AND ORDER ADOPTING R&R, CERTIFYING CLASS,
DENYING MOTION FOR DEFAULT JUDGMENT AS A SANCTION,
DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT,
DENYING MOTIONS FOR HEARINGS,
AND ORDERING MEDIATION**

This case is nearly six years old. The Court previously considered the parties' cross motions for summary judgment and issued a dispositive order. That Order was appealed, and this matter was argued before the Fourth Circuit, which issued a Published Opinion. Significant amounts of time and resources have been expended during the pendency of this litigation, which continues to find every imaginable twist and turn that litigation may sometimes take.

## I. CLASS CERTIFICATION

Plaintiffs first sought class certification in September 2020. ECF No. 150. In response, after receiving additional time to file their response, the Defendants stated they agreed "that class certification in this case can be granted under Federal Rule of Civil Procedure 23 . . . ." ECF No. 165 at 2. This was the same month that the Defendants filed a motion for summary judgment seeking dismissal of the entire civil action.

Plaintiffs renewed their motion to certify class post remand, and now Defendants contend that class certification is inappropriate. The Court referred the motion to Magistrate Judge Robert W. Trumble. ECF No. 320. Judge Trumble issued an exhaustive 46-page R&R recommending that the Undersigned grant Plaintiffs' motion and certify the class. ECF No. 357. The Defendants filed objections. ECF No. 358. The Plaintiffs responded to the Defendants' objections and argue the R&R should be adopted. ECF No. 360. Finally, the Defendants requested oral argument on their objections. ECF No. 359. Having reviewed the Motion and the Defendants' objections, the Court finds no good cause to hold a hearing, so that Motion is **DENIED**. ECF No. 359.

The foundation of the Defendants' objections is simple: the R&R's "conclusions follow from [the] flawed premise" that the Plaintiffs' theory of liability for its only claim "was unchanged from their pre-remand position." ECF No. 358 at 1. Frankly, this assertion is silly. The First Amended Complaint is the operative complaint, and it was filed on January 10, 2020. ECF No. 69. The Fourth Circuit determined that there is a genuine dispute of material fact as to the vesting issue in Count I. See Bellon v. PPG Emp. Life & Other Benefits Plan, 41 F.4th 244 (4th Cir. 2022). Given the Fourth Circuit's treatment of this

case, it is difficult for this Court to take seriously the Defendants' argument that the mandate rule applies as Defendants suggest. It does not.

The R&R correctly explained that Plaintiffs' post-remand theory was presented on appeal as one of the Plaintiffs' main arguments, and the Fourth Circuit incorporated it into its core reasoning for remand. ECF No. 357 at 12n.13. That Defendants continue to make this baseless argument undercuts their credibility. Their objections on this point are **OVERRULED**. To the extent the Court may not have exhaustively covered this objection, it is duplicative of the argument already considered by the Magistrate Judge. The Court explicitly incorporates by reference the analysis in the R&R rejecting the Defendants' arguments on this topic.

Defendants' remaining arguments in support of their objections are similarly meritless and border on being frivolous. Moreover, they present arguments already considered and rejected by the Magistrate Judge. For example, the Defendants claim they "cited numerous decisions that considered the merits of similar unilateral contract claims and also denied class certification of analogous claims." ECF No. 358 at 6. They cite four cases. Contrary to their assertion to this Court, the R&R discusses two of those cases: Schultz v. AT&T Wireless Servs., Inc., 376 F.Supp.2d 685 (N.D. W. Va. 2005) and Tootle v. ARINC, Inc., 222 F.R.D. 88 (D. Md. 2004). Only one of the cases considers class certification, and that case cuts against the Defendants' argument. In Crosby, the district court explained,

> The commonality and typicality requirements are not met in the instant case because the promises made by defendant to the plaintiffs were not uniform. The plaintiffs do not rely on the uniform language of the Fund itself to show a breach of contract. Instead, they rely on the promises that the defendant gave to each of them individually. Depending on what promises, or lack thereof, were made by the defendant to a particular plaintiff whether orally,

3

> in writing, or both, there may or may not be valid claims or defenses by or against that plaintiff. Merely because one police officer, i.e. the class representative, can prove that he has a claim against the defendant does not mean that every other member of the class would have a valid claim. Sprague, 133 F.3d at 398-99.

Crosby v. City of Gastonia, No. 3:06CV462, 2008 WL 1944399, at *4 (W.D.N.C. May 1, 2008). The exact opposite scenario is presented to this Court. The proposed class's claim arises out of their removal from a plan in which they had a vested interest (assuming they can prove that at trial), which does not rely upon individualized, personal knowledge. In sum, the Defendants' objection that the Magistrate Judge did not consider the cases they cited is factually inaccurate and wholly irrelevant.

As the Plaintiffs note in their Response to the Objections, the Defendants cite cases that either "because they do not involve ERISA benefit claims" or "because certification denials were due to defendants having offered non-identical contracts[,]" which are not applicable here. ECF No. 361 at 8. The Defendants' objection is **OVERRULED**, and again, to the extent this Order is silent or lacking in analysis, the Magistrate Judge's thorough and thoughtful explanation is explicitly incorporated.

Next, the Defendants "object" to the R&R's Rule 23 analysis with four sentences. The Defendants contend that "the Magistrate Judge further erred in recommending class certification for the same reasons outlined above." ECF No. 358 at 9. However, the Undersigned has already found that those "reasons outlined above" in the R&R were not errant, and therefore, this objection—which lacks specificity—is **OVERRULED**.

The Court is considering the cross motions for summary judgment simultaneously with this issue, so the objection to defer consideration is **MOOT**. It is the Order of this Court that the R&R is hereby **ADOPTED**, and the Plaintiffs' Amended Renewed Motion

4

for Class Certification is **GRANTED**. ECF No. 335. The Renewed Motion is **TERMINATED as MOOT**. ECF No. 276.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants seek summary judgment pursuant to Rule 56. This Court previously granted the Defendants' motion for summary judgment and dismissed this case with prejudice. ECF No. 227. Thereafter, the Plaintiffs appealed the Court's Order, and it was affirmed by the Fourth Circuit except for the dismissal of Count I. The Fourth Circuit explained, "the district court erred in awarding summary judgment to the PPG defendants on the Count I vesting claim." Bellon, at 255. Indeed, the Court explained that "vesting is a *disputed* issue of material fact." Id. (emphasis in orig.).

Somehow, despite the Fourth Circuit's crystal-clear position and holding on the vesting issue, Defendants argue—using the same evidence as the Fourth Circuit—that Plaintiffs' "suit fails as a matter of fact because there is no evidence supporting either of Plaintiffs' factual premises." ECF No. 376 at 15. To be clear, this Court previously made the finding that the evidence and plan documents, interpreted according to the law, demonstrated that "the retiree life insurance benefit did not vest." Bellon, at 255 (Rushing, J. dissenting in part). That is precisely what the Fourth Circuit rejected and remanded.

Although the Defendants repeatedly cite the mandate rule in their filings, it appears there is some confusion about how the rule works:

> "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)). The mandate rule requires a district court to "implement the spirit of the mandate," prohibits it from altering "rulings impliedly made by the appellate court," and prevents it from reconsidering issues "the parties failed to raise on appeal." Atl. Ltd. P'ship of Tenn., LP v. Riese, 356 F.3d 576, 584 (4th Cir. 2004).

5

Juniper v. Hamilton, 529 F. Supp. 3d 466, 482–83 (E.D. Va. 2021).

Indeed, the Fourth Circuit has criticized a district court's failure to abide its mandate on remand in another case where summary judgment was vacated. Harris v. Pittman, 927 F.3d 266, 273 (4th Cir. 2019) ("[T]he district court improperly drew inferences in favor of Pittman, rather than Harris, and appears to have misapprehended both our mandate and our circuit's governing law."). This Court then must carefully proceed to remain within the boundaries of the mandate.

With that in mind, the Court has little choice but to reject the Defendants' arguments that Plaintiffs "have no evidence that PPG's retiree life insurance benefits were vested before 1984." ECF No. 376 at 15. The Fourth Circuit clearly held differently. Indeed, to grant summary judgment in favor of the Defendants based on a lack of evidence that vesting is possible, this Court would be required to ignore the Fourth Circuit's decision.

The Plaintiffs' response in opposition aptly notes that nearly every argument the Defendants made is waived and barred by the mandate rule "either because PPG is rehashing arguments the Fourth Circuit expressly or implicitly rejected, or because PPG is making new arguments it never presented to the Fourth Circuit and that it therefore waived." ECF No. 382 at 8; see Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir. 2007).

For example, the Defendants argue that Count I is barred by the statute of limitations. ECF No. 376 at 26. Yet, the Defendants did not raise this argument in their first motion for summary judgment, and it was either raised and rejected or waived on appeal. Thus, the Court summarily denies this argument because it has been waived.

6

The remaining points in the Defendants' motion present arguments that go to weight of the evidence and are arguments for trial. The Court finds a genuine dispute of a material fact exists, precluding summary judgment in favor of the Defendants under Rule 56. The Defendants' Motion is **DENIED**. ECF No. 375.

### III. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs also seek summary judgment, arguing they are entitled to this relief because the Defendants' "actions in 1969 vested Class members in their retiree life insurance in effect when they retired;" and Defendants waived their "right to terminate or change the retiree benefit applicable to Class members." ECF No. 373 at 25. Further, the Plaintiffs seek summary judgment in favor of the subclass, arguing "that SIB coverage was vested at the time of retirement when the retiree elected SIB and surrendered his claim for one half of the retiree life insurance to which the retiree was otherwise entitled." Id. The Defendants adamantly oppose the Motion. ECF No. 381.

Plaintiffs first argue that "PPG's removal of the ROR effective in 1969 vested Plaintiffs retiree life insurance such that PPG could not remove those benefits once Plaintiffs retired." ECF No. 373 at 11. Plaintiffs lean heavily on the Fourth Circuit's decision remanding this case. They note that the Fourth Circuit indicated, "to determine vesting, the Court must look not just to the booklets but also to 'other manifestations of the parties' intent' to interpret the Plan." Id. (quoting Bellon, at 254 (cleaned up)).

Plaintiffs contend that "the EBC documents provide incontrovertible evidence of PPG's intent as to vesting." ECF No. 373 at 13. Indeed, they claim that the reason Defendants removed the reservation of rights in 1969 was to relieve employee concerns about losing their retiree benefits in the future. Plaintiffs state that the documents show

7

Defendants "intentionally vested retire[e] life insurance benefits for all retirees employed in 1969 or hired before 1984 by removing the ROR. They confirm that PPG 'contractually cede[d] its freedom' not to vest benefits." Id.

The problem with Plaintiffs' argument—like the Defendants'—is that the Fourth Circuit had nearly all the evidence and arguments before it when it held that "vesting is a disputed issue of material fact." Bellon, at 255. To the extent that new evidence was presented or discussed in the Plaintiffs' Motion, the Court finds it insufficient to overcome the threshold required for summary judgment.

Next, the Plaintiffs include a request for an adverse inference within their motion for summary judgment. Based on the information presented within the Motion, the Court would not be inclined to draw an adverse inference at the summary judgment stage. However, the Plaintiffs have since filed a separate motion seeking default judgment as a sanction related to the same arguments presented here. ECF No. 394. The Court considers this Motion, and the arguments that may have been prematurely presented in the instant motion for summary judgment, below.

Plaintiffs argue that the Defendants have waived their right to apply the reservation of rights to the class to take away their retiree benefits. ECF No. 373 at 16. The Defendants insist that waiver is not a cause of action and the Plaintiffs cannot proceed, much less prevail, under a theory of waiver. The issue with Defendants' position is that it squarely conflicts with the Fourth Circuit's Opinion in this case. Why would the appellate court direct this Court to consider applying principles of waiver and estoppel if they are not possibly available to any plaintiff, much less these Plaintiffs? The Defendants' position is untenable and irreconcilable with the appellate court's Opinion.

8

Nonetheless, the Plaintiffs have not conclusively proven their claim under a waiver theory. In a case cited by the Defendants that the Court reads quite differently, the Supreme Court of Appeals of West Virginia explained, "[i]ndeed, '[w]aiver is ordinarily a matter for jury determination.'" Potter v. Bailey & Slotnick, PLLC, No. 21-0009, 2022 WL 1715164, at *7 (W. Va. May 27, 2022) (quoting Beall, 118 W. Va. at 295, 190 S.E. at 336 (1937)). Further, "waiver is the voluntary or intentional abandonment of a known right or privilege." Tucker v. Beneficial Mortg. Co., 437 F. Supp. 2d 584, 587 (E.D. Va. 2006) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

As this Court understands the Plaintiffs' argument, it intends to present Count I and possibly argue alternative vesting theories in an attempt to succeed on the merits. In other words, there are not "new" counts or theories beyond the mandate, as Defendants protest. Instead, the Plaintiffs have taken ahold of the Fourth Circuit's suggestion to pursue alternate theories and are pursuing those squarely within the mandate.

While the Court finds Plaintiffs' pursuit within appropriate bounds, there is hardly enough evidence for this Court to rule in their favor at the summary judgment phase. As stated by the Fourth Circuit, there is a genuine issue of material fact as to vesting, and it persists. The arguments presented include evidence that requires interpretation and is best suited for determination at trial. The same is true of the Plaintiffs' claims regarding the subclass and surviving spouse benefit. The parties' arguments demonstrate to this Court that summary judgment is not appropriate as there remain genuine issues of material fact yet to be resolved.

Accordingly, the Plaintiffs' Motion for Summary Judgment is **DENIED**. ECF No. 372. The Court notes that the parties' Joint Motion for Extension of Time to File their Motions for Summary Judgment is **DENIED as MOOT**. ECF No. 371.

## IV. PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

This case continues to present discovery issues that rarely burden the Court, yet for some reason, this case is replete with them. In the instant Motion, Plaintiffs ask the Court to enter default judgment against the Defendants for spoliation of what they characterize as "*the* critical box" of documents. ECF No. 394 at 1.

This is not the first time Plaintiffs have alleged concerning (at best) actions by the Defendants during this litigation regarding discovery. Prior to the appeal, Plaintiffs filed a Rule 56(d) Motion. The Court ultimately denied the Motion, but it should be noted that crucial to the Court's analysis at that time was "that the EBC documents, while responsive to Plaintiffs' requests, [were] not material to the ultimate issues currently before the Court." ECF No. 227 at 5.

In other words, the Court did not find the reservation of rights language added to the 1984 document had materially affected the Plaintiffs' position in avoiding summary judgment. However, if the Court had the benefit of the Fourth Circuit's guidance at the time it decided the Rule 56(d) motion, the outcome likely would have been different. This is not to suggest that the parties should revisit that issue, but both parties discussed the motion from their own perspectives, so the Court finds it necessary to clarify what occurred and how it provides a framework within which to review the instant motion.

The Court can hardly think of a harsher sanction than default judgment. Both parties cited the Fourth Circuit's seminal case about spoliation. The Silvestri Court thoroughly explained the doctrine:

> Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999) (citing Black's Law Dictionary 1401 (6th ed.1990)). The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct "which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process); see also United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir.1993) (recognizing "that when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action"); cf. Fed.R.Civ.P. 37(b)(2) (authorizing sanctions for violations of discovery orders).
>
> The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth. "[B]ecause no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition." Shaffer Equipment, 11 F.3d at 457. The courts must protect the integrity of the judicial process because, "[a]s soon as the process falters ... the people are then justified in abandoning support for the system." Id.
>
> Thus, while the spoliation of evidence may give rise to court imposed sanctions deriving from this inherent power, the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses.
>
> While a district court has broad discretion in choosing an appropriate sanction for spoliation, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, 167 F.3d at 779. In addition, a court must find some degree of fault to impose sanctions. We have recognized that when imposing spoliation sanctions, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." Vodusek v.

> Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir.1995). But dismissal should be avoided if a lesser sanction will perform the necessary function. West, 167 F.3d at 779.

Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001).

The Court has thoroughly reviewed the thousands of pages of filings and exhibits in this case to prepare this Order. Legal precedent is clear that default judgment should be reserved for cases that present the most egregious instances of spoliation—whether that is by significant bad faith, extreme prejudice to the aggrieved party, or some combination of the two. On the one hand Plaintiffs argue that PPG has undertaken a grand conspiracy with high-ranking officials strategically destroying the most crucial evidence to their case. On the other hand, Defendants aver that this is just another clerical error from a large company sifting through lots of records. As with most cases, the reality is probably in the middle.

This Court cannot find that default judgment is an appropriate sanction based upon the record presently before it.

> This is so because a default judgment should normally not be imposed so as "to foreclose the merits of controversies as punishment for general misbehavior" save in that rare case where the conduct represents such "flagrant bad faith" and "callous disregard" of the party's obligation under the Rules as to warrant the sanction not simply for the purpose of preventing prejudice to the discovering party but as a necessary deterrent to others. Even in those cases where it may be found that failure to produce results in the discovering party's case being jeopardized or prejudiced, it is the normal rule that the proper sanction "must be no more severe * * * than is necessary to prevent prejudice to the movant."

Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 504 (4th Cir. 1977) (citing National Hockey League v. Met. Hockey Club, 427 U.S. at 643 (1976) (citations omitted)).

Although some inferences may be drawn about PPG's conduct, the Motion is lacking actual evidence of bad faith and a higher level of culpability. For example, there

is no evidence of a high-ranking official directing the destruction of key evidence to advance PPG's interests in this litigation. But, there is clear evidence of incompetence (at best). There is no reason whatsoever in a case like this, involving a large corporation with the means at PPG's disposal, for documents that should have been retained in perpetuity, and should have been subject to a litigation hold, to be destroyed. This is unacceptable. It is also not the first time that PPG's ineptitude and poor practices have created an eleventh-hour discovery issue and considerably more work for the parties and the Court.

Plaintiffs are well founded in their frustration with the Defendants' handling of discovery in this case, and the Court finds that a sanction is warranted for Defendants' repeated and unacceptable mishandling of relevant, material discovery in this case. Although default judgment is not warranted, an adverse inference is.

In this regard, the Fourth Circuit has explained,

> As a general proposition, the trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary. See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir.1993).
>
> To draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence. Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that "the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party." 2 Wigmore on Evidence, § 285 at 192 (Chadbourn rev. 1979).
>
> A party's failure to produce evidence may, of course, be explained satisfactorily. When a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the court may permit proof by secondary evidence. See, e.g., Fed. R. Evid. 1004(1). But when a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses

> both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct. See Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir.1988); Nation–Wide Check Corp. v. Forest Hills Dist., Inc., 692 F.2d 214, 218 (1st Cir.1982). Even if a court determines not to exclude secondary evidence, it may still permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence. An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction. See id. at 217–18.

Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995).

There is no question that PPG's intentional conduct caused the destruction of potentially relevant evidence. Although proof of bad faith is lacking, the circumstances are suspicious. Indeed, the Plaintiffs paint a compelling picture the PPG acted in bad faith. But, there are a couple of factors that cut against their argument.

The most relevant documents ranging from 1968–1970 were removed and, according to Defendants, remain safely in their possession. The Court finds these would have been the documents to destroy if PPG were acting nefariously. Given that the destroyed documents are from 1947–1967, the prejudice to Plaintiffs is diminished (but not altogether extinguished). Further, the Court has reviewed the internal communications at length and finds Defendants' narrative about how the destruction occurred a more likely scenario that is supported by contemporaneous, extrinsic evidence.

PPG's conduct was willful and has resulted in prejudice to the Plaintiffs. Considering the factors enumerated in Wilson, Silvestri, and Vodusek, the Court concludes that an adverse inference is appropriate. Thus, the Plaintiffs' Motion for Default Judgment is **DENIED** [ECF No. 394], and the Defendants' Motion for a hearing on this Motion is **TERMINATED as MOOT**. ECF No. 414. The Court **DIRECTS** the parties to

meet and confer by April 30, 2024, to discuss a mutually agreeable adverse inference for the Court's consideration to be filed no later than **May 24, 2024**. If the parties cannot agree on an appropriate inference for the Court's consideration, then the parties are **DIRECTED** to file each of their proposed inferences, in **one** filing, by the same deadline.

## V. MEDIATION

Given the updated posture of the case this Order creates, the Court finds it appropriate for the parties to mediate again. Further, the Court finds it would be beneficial for the parties to mediate this case before Magistrate Judge Michael J. Aloi. Therefore, the Court **ASSIGNS** this matter to Judge Aloi for mediation only. **The parties are ORDERED to attend mediation before Judge Aloi on or before June 3, 2024**.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein and to Magistrate Judge Aloi.

**DATED**: March 27, 2024

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE